**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:20-cv-46 |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### NATURE OF THE ACTION

1.     In 2015, the State of Texas was put on notice that it was violating the voter registration rights of hundreds of thousands of Texans by willfully ignoring its obligations under the National Voter Registration Act ("NVRA"), a decades-old federal law. After the State still refused to comply, several Texas voters, including Jarrod Stringer, filed suit ("*Stringer I*"). After years of litigation and untold amounts of wasted taxpayer dollars, the State remains steadfast in its refusal to correct these failures—despite having the funds and technologic ability to do so. To this day, the NVRA rights of nearly 1.5 million Texans are violated each year, each time one of those individuals interacts online with the Department of Public Safety ("DPS") driver's license system to renew or update their license.

2.     Under the NVRA, *each time* an eligible resident obtains, renews, or updates his or her driver's license with DPS, the State must ensure that the driver's license application simultaneously serves as a voter registration application.[1]  In 2018, Chief Judge Orlando Garcia ruled on cross motions for summary judgment in *Stringer I*, finding, *inter alia*,

> The NVRA's requirement that DPS, a voter registration agency, provide a simultaneous application for both driver's license and voter registration purposes is plain and unambiguous and the facts in the record confirm that Texans are being deprived of this statutory right.

*Stringer v. Pablos*, 320 F. Supp. 3d 862, 891 (W.D. Tex. 2018), *rev'd and remanded sub nom*.

3.     In accordance with this finding, the Court entered judgment enjoining the State's ongoing NVRA violations. The State appealed and, in November of 2019, the Fifth Circuit Court of Appeals reversed Judge Garcia's decision, finding that the plaintiffs failed to satisfy standing requirements. Notably, the Fifth Circuit did not disturb the merits of the lower court's decision. Indeed, Judge James Ho wrote in his concurrence:

> . . . Plaintiffs have indeed endured an injury . . . they were unable to exercise their right to vote in past election cycles. And it is a right they will never be able to recover. As citizens, we can hope it is a deprivation they will not experience again . . .

*Stringer v. Whitley*, 942 F.3d 715, 726 (5th Cir. 2019) (Ho, J., concurring).

4.     And yet, it *has* happened again to Mr. Stringer, and to countless other Texas voters. The State still is not compliant with its obligations under 52 U.S.C. § 20504, meaning that millions of Texans are still denied their right to register to vote when they use DPS's online system.  As a result, large numbers of eligible Texas voters either did not appear on the voter rolls or appeared with incorrect address information when they attempted to exercise their franchise in 2018—and

---

[1] 52 U.S.C. § 20503(a)(1).

were disenfranchised as a result. Countless more stand to be similarly impacted during the primary and general elections in 2020.

5.     The Individual and Organizational Plaintiffs here now file this lawsuit, demonstrating the ongoing nature of the State's violation of the NVRA and the United States Constitution, as well as Plaintiffs' current and ongoing injuries due to those violations.

### *NVRA Background*

6.     In 1993, after finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation," and that state governments have a "duty" to promote voting and voter registration, Congress enacted the NVRA to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501. Through its so-called "Motor Voter" provisions, 52 U.S.C. § 20504, the NVRA imposes voter registration obligations on state motor vehicle bureaus. Specifically, each time an eligible resident obtains, renews, or updates his or her driver's license with DPS, Texas's motor vehicle bureau, the State must ensure that the driver's license application simultaneously serves as an application to register to vote or to update the voter's registration record. 52 U.S.C. § 20504(a)(1).

7.     The Motor Voter provisions require DPS to simultaneously treat: (a) "each . . . driver's license application (including any renewal application)" as an "application for voter registration," 52 U.S.C. § 20504(a)(1); and (b) "any change of address form" as a "notification of change of address for voter registration." 52 U.S.C. § 20504(d). Defendants have a legal duty to ensure that every eligible voter who submits a driver's license application or renewal, or updates his or her address with DPS not less than 30 days before an election, is registered to vote. 52 U.S.C. § 20507(a)(1)(A).

8.      The Motor Voter provisions apply to "each" renewal application and "any" change of address form submitted to DPS, unless the applicant "fails to sign the voter registration application" or "states on the form that the change of address is not for voter registration purposes." 52 U.S.C. § 20504(a)(1). Accordingly, outside of those two narrow exceptions, ***all*** driver's license transactions are covered by the Motor Voter law, regardless of the method by which an applicant applies, renews, or updates his or her driver's license—the NVRA does not discriminate against applicants who choose one transaction method over another. Online renewals and change-of-address transactions are thus expressly covered by the NVRA's plain text.

### *Texas's System*

9.      The State of Texas permits certain Texas driver's license holders to renew their license and/or update the address on their license online on DPS's website at https://txapps.texas.gov/tolapp/txdl/. When these individuals wish to register to vote or update their voter registration through the same application, they are unable to do so. Rather, at the end of the online driver's license transaction, the applicant is sent to a page on the Secretary of State's website (https://webservices.sos.state.tx.us/vrapp/index.asp)—which is altogether separate and distinct from the DPS online system—and is there required to fill out a new form with duplicate information, print that form, and then sign and mail it to the proper authority, all before becoming registered to vote. Defendants fail to offer any means for simultaneous voter registration application and fail to update the voter registration records of individuals who change their driver's license address through DPS's online system.

10.     In addition to violating the NVRA, Defendants' current practices treat similarly situated driver's license applicants differently based solely on how those applicants choose to transact with DPS. The NVRA makes no distinction between transaction methods and cannot be

used to justify such arbitrary discrimination, which offends basic notions of equal protection under law.

11. It is particularly important that state officials in Texas adhere to the address update requirements of 52 U.S.C. § 20504. The U.S. Census Bureau estimates that between 2013 and 2017, more than 2.5 million Texans moved within the same county, and more than 1 million Texans moved from one Texas county to another Texas county. United States Census Bureau, *County-to-County Migration Flows: 2013-2017 ACS*, Census.gov (last revised Aug. 22, 2019), https://www.census.gov/data/tables/2017/demo/geographic-mobility/county-to-county-migration-2013-2017.html.

12. The failure to update an applicant's voter registration address has devastating consequences on their right to cast a ballot. Each year, almost 1.5 million Texans use DPS's online driver's license system. Exhibit A contains a document produced by DPS as Ex. 3-Y to the Mar. 7, 2017 30(b)(6) Deposition of DPS taken in *Stringer I*, showing 1,448,941 customers transacted with DPS online in 2016. Would-be voters who show up to vote in their new precinct or county but whose registration has not been updated due to Defendants' failure to treat their online driver's license transaction as a registration application will either be completely disenfranchised or forced to cast a limited ballot.

**JURISDICTION AND VENUE**

13. This case arises under the U.S. Constitution and the NVRA, a law of the United States. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

14. Defendants have received detailed notice of these violations of federal law and have failed to correct the violations alleged herein within 20 days. Plaintiffs therefore have a private right of action under 52 U.S.C. § 20510(b) to enforce the NVRA and may file suit after 20 days'

notice pursuant to 52 U.S.C. § 20510(b)(2)(1). <u>Exhibit B</u> contains the original notice provided to Defendants on December 19, 2019.

15.     This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     This Court has personal jurisdiction over Defendants because each is a citizen of the State of Texas.

17.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this district, and each Defendant conducts business in this district. 28 U.S.C. § 1391(b).

## PARTIES

### *Plaintiffs*

18.     Plaintiff Jarrod Stringer is an eligible Texas voter who is directly and individually harmed by Defendants' conduct.  As a result of Defendants' failure to comply with the NVRA, Mr. Stringer is being denied his federal right to register to vote through an online transaction with DPS. He is thus denied the right to voter registration that is guaranteed by the NVRA and denied an equal opportunity to participate in a federal election—for no reason other than the method through which he transacted with DPS.

19.     Plaintiff Nayeli Gomez is an eligible Texas voter who is directly and individually harmed by Defendants' conduct.  As a result of Defendants' failure to comply with the NVRA, Ms. Gomez is being denied her federal right to register to vote through an online transaction with DPS. She is thus denied the right to voter registration that is guaranteed by the NVRA and denied an equal opportunity to participate in a federal election—for no reason other than the method through which she transacted with DPS.

6

20.     Plaintiff John Harms is an eligible Texas voter who is directly and individually harmed by Defendants' conduct.  As a result of Defendants' failure to comply with the NVRA, Mr. Harms is being denied his federal right to register to vote through an online transaction with DPS. He is thus denied the right to voter registration that is guaranteed by the NVRA and denied an equal opportunity to participate in a federal election—for no reason other than the method through which he transacted with DPS.

21.     Plaintiff MOVE Texas Civic Fund ("MOVE Texas") is a non-profit organization, tax exempt under section 501(c)(3) of the Internal Review Code, with its principal place of business in San Antonio, Texas.  MOVE Texas is a grassroots nonpartisan, nonprofit organization building power in underrepresented youth communities through civic education, leadership development, and issue advocacy.  MOVE Texas conducts voter registration in multiple counties in Texas, including on college campuses, where MOVE Texas employees and volunteers offer college students and other would-be voters the opportunity to register to vote.  During and in the lead up to federal, state and local elections MOVE Texas also conducts get-out-the-vote efforts.

22.     Plaintiff the League of Women Voters of Texas ("LWVTX") is a non-profit organization, tax exempt under section 501(c)(3) of the Internal Revenue Code, with its principal place of business in Austin, Texas. LWVTX's mission includes empowering voters, defending democracy, and envisioning a democracy where every person has the desire, the right, the knowledge, and the confidence to participate. LWVTX registers eligible individuals to vote across Texas.  LWVTX has members and chapters across the state.  During and in the lead up to federal, state and local elections LWVTX also conducts voter education and get-out-the-vote efforts.

*Defendants*

23.     Defendants are state officials charged with ensuring Texas's compliance with 52 U.S.C. § 20504.

24.     Defendant Ruth Hughs is the Texas Secretary of State and is sued in her official capacity. As Secretary of State, Hughs serves as Texas's Chief Election Officer. Tex. Elec. Code § 31.001(a). Each state's chief election official is responsible for coordinating that state's compliance with the NVRA. 52 U.S.C. § 20509.

25.     Defendant Steven C. McCraw is the Director of DPS and is sued in his official capacity. DPS is Texas's motor vehicle bureau. DPS operates offices around the state, issues driver's licenses and other state identification cards, and is responsible under state and federal law for providing voter registration services and transmitting voter registration information to the Texas Secretary of State. *See* 52 U.S.C. §§ 20503-20504; Tex. Elec. Code §§ 20.063, 20.066.

## APPLICABLE LAW

### *The First and Fourteenth Amendments to the United States Constitution*

26.     The First and Fourteenth Amendments of the U.S. Constitution are implicated anytime a state law, policy, or practice burdens the fundamental right to vote. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)) ("A court considering a state election law challenge 'must weigh the character and magnitude of the asserted injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the precise interests put forward by the State as justification for the burden imposed by its rule.'").

27.     There is no "litmus test for measuring the severity of a burden that a state law imposes on . . . an individual voter, or a discrete class of voters. However slight that burden may

appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion County Election Board*, 553 U.S. 181, 191 (2008) (Stevens, J., announcing judgment of Court); *accord Obama for America v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012) ("When a plaintiff alleges that a state has burdened voting rights through the disparate treatment of voters, we review the claim using the flexible standard outlined in *Anderson v. Celebrezze* . . . courts must weigh the burden on voters against the state's asserted justifications and make the hard judgment that our adversary system demands." (internal quotation marks and citations omitted)).

28.     Further, as referenced by Judge Garcia in *Stringer I*, "[w]hile the State can impose reasonable restrictions, those restrictions must be justified by specific interests that outweigh the burden on voters. The undisputed facts show that Defendants permit simultaneous voter applications for motor voters that renew or change their driver's license in person or by mail, but refuse simultaneous voter applications for motor voters that renew or change their driver's license online." *Stringer I*, 320 F. Supp. 3d at 899 (W.D. Tex. 2018).

### National Voter Registration Act of 1993

29.     A principal purpose of the NVRA is to "increase the number of eligible citizens who register to vote." 52 U.S.C. § 20501(b)(1); *Ferrand v. Schedler*, No. 11-926, 2012 WL 1570094 at *10 (E.D. La. May 3, 2012) (citing H.R. Rep. No. 103–66, at 19 (1993) (Conf. Rep.), *reprinted in* 1993 U.S.C.C.A.N. 140, 144); *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 354 (5th Cir. 1999). A Senate Report on the law "makes clear that, in implementing the NVRA, the '[g]overnment should do all it can to make registration widely and easily available.'" *Ferrand v. Schedler*, No. 11-926, 2012 WL 1570094 at *11 (E.D. La. May 3, 2012) (citing S. Rep. No. 103–6, at 14 (1993)).

30.    The NVRA's "Motor Voter" provisions were meant to streamline the federal voter registration process and increase voter registration accessibility:

> [I]ncorporating voter registration into the drivers licensing process provides a secure and convenient method for registering voters; an effective means of reaching groups of individuals generally considered hard-to-reach for voting purposes . . .; and a procedure for keeping rolls current through contact with licensees who change addresses.

S. Rep. 103-6, at 5 (1993).

31.    Indeed, under the Motor Voter provisions, each time an eligible Texas applicant obtains, renews, or updates his or her driver's license with DPS, the State must provide simultaneous voter registration application or update that applicant's voter registration records, unless the person fails to sign the registration form or attests that the change-of-address information is not for voter registration purposes. 52 U.S.C. §§ 20503, 20504, 20507.

32.    In relevant part, 52 U.S.C § 20504 provides that:

> Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application . . . any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes.

33.    The State may not "require any information that duplicates information required in the driver's license portion of the form," other than extra information expressly enumerated by statute. *Id*. at § 20504(c)(2)(A). Instead, the NVRA demands that eligible applicants shall be registered to vote "simultaneously" with the submission of any driver's license application, renewal or change-of-address form. *See id*. at § 20503(a)(1)(1).

10

34.     DPS must promptly transmit completed voter registration applications and change-of-address information to election officials. Generally, transmission must occur no later than 10 days after receipt. *See id*. at § 20504(e).

### Texas Election Code

35.     Shortly after the NVRA was enacted in 1993, the State of Texas updated the Texas Election Code to reinforce the NVRA's Motor Voter mandates. *See generally* Tex. Elec. Code §§ 20.061-66.

36.     For instance, state law specifies that DPS must use "a form and procedure that combines the department's application form for a license or card with an officially prescribed voter registration application form." *Id*. at § 20.062(a).

37.     DPS must also provide a "change of address form and procedure that combines department and voter registration functions," so that when a voter submits a change of address, that "serves as a change of address for voter registration" as well, unless the individual indicates otherwise. *Id*. at § 20.063(c); *id*. at § 20.062(a).

38.     In addition, if a "correct driver's license number or personal identification card number" or if "correct residence address or mailing address" information is missing from a registration application, DPS employees have a duty to correct the applicant's application by "enter[ing] the information on the application." *Id*. at § 20.063(d).

39.     Finally, voter registration applications and change-of-address forms must be promptly delivered to election officials. Specifically, "[n]ot later than the fifth day after the date a person completes a voter registration application and provides an electronic signature to the department, [DPS] shall electronically transfer the applicant's voter registration data, including the applicant's signature, to the [Texas Secretary of State]." *Id*. at § 20.066; *see also id*. at § 20.065.

## FACTUAL ALLEGATIONS

40.    Exhibit B contains the original notice provided to Defendants on December 19,
2019. The factual allegations set forth in those letters are incorporated by reference in this
Complaint.

### *DPS Does Not Provide Simultaneous Voter Registration with Online Transactions*

41.    DPS encourages Texans to use its online services to renew and change the address
on their driver's licenses. *Stringer I*, 320 F. Supp. 3d at 900 (W.D. Tex. 2018).

42.    DPS's Driver License Renewal and Change of Address website page provides a
single, combined online interface for qualified holders of a Texas driver's license to renew their
driver's licenses, update the address listed on their driver's licenses, or both. *Stringer I*, 320 F.
Supp. 3d at n.10 (W.D. Tex. 2018).

43.    The online process involves eight "Steps to Complete," including the following
steps: Welcome, Login, Select Services, Enter Address, Select Options, Review Order, Submit
Payment, and Receipt. *See* Exhibit C, which contain screen shots from the online DPS system.

44.    Applicants are never given the opportunity to tell the State whether they want to
register to vote. *See* Exhibit C at 5. Rather, when they reach Step 5 of this online process, the
website prompts the applicants to answer whether they want to download a separate voter
registration application. *Id*. If an eligible applicant checks "yes" to this question, Defendants
merely provide a link to a website maintained by SOS, a wholly different and distinct website from
DPS's online driver's license application. *See* Exhibit C at 10. The SOS website prompts the
applicant to fill out an entirely new form with duplicative information, print, sign, and mail the
form to the proper voter registration authority. *See* Exhibit C at 11-17; *see also Stringer I*, 320 F.

Supp. 3d at 876-77 (W.D. Tex. 2018). This process is anything but a simultaneous voter registration application process.

45.    Additionally, this process stands in stark contrast to DPS's procedures for registering eligible Texas residents who renew a driver's license and/or update address information through non-online processes. "DPS's in-person driver's license applications…in-person renewal/replacement/change of address forms . . ., and mail-in change of address forms . . . currently serve as simultaneous voter registration applications as required under the NVRA." *Stringer I*, 320 F. Supp. 3d at 871 (W.D. Tex. 2018) (internal citations omitted).

46.    Between April 2013 and February 26, 2016, Step 5 of the online renewal and change of address interface prompted the applicant to select "yes" or "no" beneath the statement "I want to register to vote. Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page." (emphasis original) *Stringer I*, 320 F. Supp. 3d at 869 (W.D. Tex. 2018).

47.    Between September 2013 and May 26, 2015, the State recorded complaints from more than 1,800 voters who completed an online transaction with DPS and mistakenly believed that their registration records were updated too. Exhibit D, Response to Public Information Act Request from Lindsey E. Wolf to Mimi Marziani (March 02, 2015) (providing record of complaints made to the State about confusion over dual driver's license/voter registration transactions).

48.    Even after 2016, when the state changed the language regarding voter registration on the online driver's license application, many individuals were and are confused by the online driver's license portal system and mistakenly believed or believe they registered to vote when completing their DPS transaction.

*Defendants' Conduct Injures Each Individual Plaintiff*

49.    The State's violations of the NVRA have harmed Plaintiff Jarrod Stringer multiple times. Mr. Stringer initially filed a lawsuit against the State in 2016. After moving from Arlington to San Antonio, Mr. Stringer updated the address on his driver's license online using the DPS website on August 1, 2014. The State failed to simultaneously update his voter registration, as required by the NVRA, during Mr. Stringer's transaction. Due to the confusing setup of the online driver's license portal, Mr. Stringer, as do countless Texans, mistakenly believed that he had updated his voter registration. As a result of Defendants' failure to simultaneously register him to vote, Mr. Stringer was unable to cast a full ballot in the 2014 General Election.

50.    Mr. Stringer is now, again, being harmed by Defendants' violations. On or around November 23, 2019, the State again refused to simultaneously update his voter registration when, after moving from San Antonio to Houston, the address on his driver's license was updated online using the DPS website. Mr. Stringer remains unregistered to vote in Harris County, his current county of residence. Further, Mr. Stringer plans to move residences again in 2020. Specifically, Mr. Stringer and his wife plan to move out of their rental apartment into a new residence by August 25, 2020 at the latest. When he moves to his new address, Mr. Stringer intends to use the online DPS system to update his driver's license address.

51.    Nayeli Gomez is aggrieved by the State's violations of the NVRA because her voter registration was not simultaneously updated when she updated her driver's license. On December 09, 2019, Ms. Gomez updated her driver's license address online after moving to a new address within Bexar County. Because it was impossible for her to simultaneously update her voter registration during this transaction, she did not do so. Ms. Gomez remains registered to vote at the incorrect address and wishes for her online driver's license application to serve as a simultaneous

14

voter registration application. Next time she changes addresses or needs to renew her driver's license and is eligible, Ms. Gomez intends to do so through the DPS online system.

52.     John Harms is aggrieved by the State's violations of the NVRA because he was not offered the opportunity to simultaneously update his voter registration to his new county of residence when he updated his driver's license through DPS's website on or around October 08, 2019. Mr. Harms updated his driver's license because he moved from Bastrop County to Travis County. Because it was impossible for him to simultaneously update his voter registration during this transaction, he did not do so. Mr. Harms remains unregistered to vote in Travis County, his current county of residence, and wishes for his online driver's license application to serve as a simultaneous voter registration application. Next time he changes addresses or needs to renew her driver's license and is eligible, Mr. Harms intends to do so through the DPS online system.

53.     The conduct that harmed Individual Plaintiffs is ongoing. All are being denied, on a continual basis, their NVRA-protected right to simultaneous voter registration with an online driver's license transition. Moreover, with just weeks remaining until the voter registration deadline for the March primary elections, none are currently registered to vote at their current address. Defendants have repeatedly maintained that they are unwilling to change the policies and practices that caused the injuries described herein. *Stringer I*, 320 F. Supp. 3d at 884 (W.D. Tex. 2018); *see also* Exhibit E, Press Release from Texas Attorney General Ken Paxton (Nov. 14, 2019). Since Defendants refuse to correct the violations at issue in this lawsuit for future transactions, Individual Plaintiffs also face the additional harm of being denied their NVRA-protected right to simultaneous voter registration again when each Individual Plaintiff changes the address on or renews their driver's license online in the future.

*Defendants' Conduct Injures Each Organizational Plaintiff*

54.     Each Organizational Plaintiff is harmed by the State's failure to comply with the NVRA and the Constitution in at least three distinct ways:

55.     Organizational Plaintiffs must expend additional resources to register people to vote who would have otherwise been able to register to vote or to update their voter registrations through the DPS's online driver's license system,

56.     Organizational Plaintiffs must expend additional resources to educate DPS customers who update the address on and/or renew their driver's license through the DPS website and mistakenly believe their online DPS transaction simultaneously registered them to vote that they are not in fact registered to vote.

57.     Organizational Plaintiffs' get-out-the-vote efforts are thwarted when a voter whom they convinced to show up to the polls is denied the chance to cast a ballot that counts because they were not registered to vote after an online driver's license transaction due to the State's failure to comply with the NVRA.

58.     MOVE Texas is a grassroots nonpartisan, nonprofit organization building power in underrepresented youth communities through civic education, leadership development, and issue advocacy.  MOVE Texas conducts voter registration in multiple counties in Texas, including on college campuses, where MOVE Texas employees and volunteers offer college students and other would-be voters the opportunity to register to vote.  During and in the lead up to federal, state and local elections, MOVE Texas also conducts get-out-the-vote efforts.

59.     MOVE Texas is forced to divert resources to register people to vote who should have been registered or had their voter registration address updated through DPS's online driver's license system. MOVE Texas must divert resources to educate voters who use the online DPS system and mistakenly believe they are registered to vote by informing those voters that the DPS

transaction does not register them to vote. MOVE Texas provides training which includes cautioning voters about the fact that online voter registration does not exist in Texas and the DPS online driver's license system does not register customers to vote. MOVE Texas's get-out-the-vote efforts are thwarted when a voter whom they convinced to show up to the polls is denied the chance to cast a ballot that counts because they were not registered to vote during their online driver's license renewal or change-of-address transactions due to the State's failure to comply with the NVRA. The State's violations, outlined in this Complaint, frustrate MOVE Texas's mission.

60.     The time and resources that MOVE Texas spends registering voters who were not able to register or update their registrations during online transactions with DPS would otherwise be spent on MOVE Texas activities including registering more voters, building leadership in underrepresented youth communities, issues advocacy,  and getting out the vote.

61.     LWVTX's mission includes empowering voters, defending democracy and envisioning a democracy where every person has the desire, the right, the knowledge and the confidence to participate.  LWVTX registers eligible individuals to vote across Texas and during and in the lead up to federal, state, and local elections, LWVTX also conducts get-out-the-vote efforts.

62.     LWVTX is forced to divert resources to register people to vote who should have been registered or had their voter registration address updated through DPS's online driver's license system. LWVTX must divert resources to educate voters who use the online DPS system and mistakenly believe they are registered to vote by informing those voters that the DPS transaction does not register them to vote. LWVTX then must check those voters' registration status with the voters and register those voters anew when they are either unregistered or

improperly registered. LWVTX provides public trainings that include cautioning voters about the fact that the DPS online driver's license system does not register customers to vote.

63.     The time and resources that LWVTX spends registering voters who were not able to register or update their registrations during online transactions with DPS would otherwise be spent on LWVTX activities including registering other voters, educating voters on issues and candidates, and getting out the vote.

64.     LWVTX's get-out-the-vote efforts are thwarted when a voter whom they convinced to show up to the polls is denied the chance to cast a ballot that counts because they were not properly registered to vote by their online driver's license renewal or change-of-address transactions due to the State's failure to comply with the NVRA. The State's violations, outlined in this Complaint, frustrate LWVTX's mission of empowering voters, defending democracy and envisioning a democracy where every person has the desire, the right, the knowledge and the confidence to participate.

65.     LWVTX has members across the state and is harmed when those members seek to simultaneously register to vote or update their voter registration while renewing and/or updating the address on their driver's license during an online DPS transaction.

66.     Further, LWVTX, as a membership organization, has individual members who are harmed by Defendants' violations because they transact with DPS's online driver's license system and are not provided a simultaneous voter registration application, nor a simultaneous update to their voter registration address when they change their driver's license address through the system.

## CLAIMS FOR RELIEF

### *Count I*

### *Failure to Treat Driver's License Renewal Transactions as Voter Registration Applications*

18

67.     Plaintiffs have a private right of action pursuant to 52 U.S.C. § 20510(b). Plaintiffs must "provide written notice of… violation[s] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1).  Defendants received notice of these violations and failed to correct them within 20 days of receiving that notice. 52 U.S.C. § 20510; *see* Ex. B. Therefore, Plaintiffs may bring this suit.

68.     Defendants have violated and continue to violate 52 U.S.C.§ 20503(a)(1) by failing to establish procedures "to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504."

69.     Defendants have violated and continue to violate 52 U.S.C.§ 20504(a)(1) by failing to operate a system in which online applications to renew a Texas driver's license also serve as simultaneous applications for voter registration.

70.     Defendants have violated and continue to violate 52 U.S.C. § 20504(a)(2) by failing to treat online driver's license renewal applications "as updating any previous voter registration by the applicant."

71.     Defendants have violated and continue to violate 52 U.S.C.§ 20504(c) by requiring eligible applicants who use the DPS website to renew a driver's license and who wish to register to vote to separately submit "information that duplicates information required in the driver's license portion of the form."

72.     Defendants have violated and continue to violate 52 U.S.C. § 20504(e) by failing to transmit voter registration information submitted online to "the appropriate State election official" within the statutory period.

73.     Defendants have violated and continue to violate 52 U.S.C. § 20507(a)(1)(A) by failing to "ensure that any eligible applicant is registered to vote" if the "valid voter registration

19

form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election."

### Count II

### Failure to Treat Driver's License Change-of-Address Transactions as Updates for Voter Registration Purposes

74. Plaintiffs have a private right of action pursuant to 52 U.S.C. § 20510(b). Plaintiffs must "provide written notice of… violation[s] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). Defendants received notice of these violations and failed to correct them within 20 days of receiving that notice. 52 U.S.C. § 20510; *see* Ex. B. Therefore, Plaintiffs may bring this suit.

75. Defendants have violated and continue to violate 52 U.S.C.§ 20503(a)(1) by failing to establish procedures "to register to vote in elections for Federal office . . . by application made simultaneously with an application for a motor vehicle driver's license pursuant to section 20504."

76. Defendants have violated and continue to violate 52 U.S.C.§ 20504(c) by requiring eligible applicants who use the DPS website to update a driver's license and who wish to register to vote to separately submit "information that duplicates information required in the driver's license portion of the form."

77. Defendants have violated and continue to violate 52 U.S.C.§ 20504(d) by failing to operate a system in which "[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license" serves "as notification of change of address for voter registration."

78. Defendants have violated and continue to violate 52 U.S.C. § 20504(e) by failing to transmit voter registration information submitted online to "the appropriate State election official" within the statutory period.

79.     Defendants have violated and continue to violate 52 U.S.C. § 20507(a)(1)(A) by failing to "ensure that any eligible applicant is registered to vote" if the "valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election."

### Count III

### Arbitrary and Undue Burden on their Right to Vote, in Violation of the First and Fourteenth Amendments

80.     By arbitrarily subjecting Plaintiffs to disparate voter registration standards, Defendants have denied Plaintiffs an equal opportunity to participate in federal and state elections in violation of the First and Fourteenth Amendments. As a result of this disparate and arbitrary treatment, Plaintiffs have been denied the right to register to vote in accordance with the law and will continue to have voter registration rights burdened by Defendants' actions until the current process is reformed.

### REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court to enter an Order:

i.    Declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that Defendants have violated the NVRA by failing to provide for simultaneous voter registration with online driver's license renewal;

ii.   Declaring, pursuant to 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that Defendants have violated the NVRA by failing to provide for simultaneous voter registration with online change-of-address forms;

iii.  Declaring that Defendants have violated the First and Fourteenth Amendments to the U.S. Constitution by failing to provide for simultaneous voter registration with online change-of-address and renewal forms;

iv.   Permanently enjoining Defendants, their agents and successors in office, and all persons working in concert with them, from implementing practices and procedures that likewise violate the NVRA as described in the preceding paragraphs;

v.    Directing Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their noncompliance, including, but not limited to providing for the electronic transfer of voter registration information collected through online driver's license transactions to the Secretary of State, similar to the existing system to transfer voter registration information collected through in-person transactions;

vi.   Awarding Plaintiffs their reasonable attorney fees, including litigation expenses, and costs, pursuant to 52 U.S.C. § 20510(c);

vii.  Retaining jurisdiction over this action to ensure that Defendants continue to comply with their obligations under the NVRA; and

viii. Ordering such other equitable and further relief as the Court deems just and proper.


Dated: January 14, 2020                              Respectfully submitted,


                                                     /s/ Mimi Marziani
                                                     Mimi Marziani
                                                     Texas Bar No. 24091906
                                                     mimi@texascivilrightsproject.org
                                                     Rebecca Harrison Stevens
                                                     Texas Bar No. 24065381
                                                     wayne@texascivilrightsproject.org
                                                     Hani Mirza
                                                     Texas Bar No. 24083512
                                                     hani@texascivilrightsproject.org
                                                     Ryan Cox
                                                     Texas Bar No. 24074087
                                                     ryan@texascivilrightsproject.org
                                                     Joaquin Gonzalez*

Texas Bar No. 24109935
Joaquin@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
Tel. (512) 474-5073
Fax (512) 474-0726

*Joaquin Gonzalez's Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*


Peter A. Kraus*
Texas State Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas State Bar No. 18341875
siegel@waterskraus.com
Caitlyn E. Silhan
Texas State Bar No. 24072879
csilhan@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood St., #700
Dallas, Texas  75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

*Peter A. Kraus's Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*

ATTORNEYS FOR PLAINTIFFS