**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 5:20-cv-46-OLG |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY OF | § | |
| STATE and STEVEN C. McCRAW, IN HIS | § | |
| OFFICIAL CAPACITY AS THE DIRECTOR OF | § | |
| THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' EMERGENCY APPLICATION
FOR PRELIMINARY INJUNCTION AND REQUEST FOR HEARING**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 6

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 6

SUMMARY OF ISSUES .................................................................................... 7

SUMMARY OF ARGUMENT ............................................................................. 7

BACKGROUND ................................................................................................ 8

I.      DPS seamlessly integrates voter registration into its mail-in change-of-address and in-person driver's license applications. ................................................................... 12

II.     Defendants do not provide simultaneous voter registration applications with online transactions, but instead require additional steps and duplicative information before an applicant can register or update their voter registration information. .......................................... 14

III.    Plaintiffs moved, transacted with DPS online to update their driver's license information, and yet Defendants failed to update their voter registration information. ....................... 18

    A.      Defendants' Conduct Injures Each Individual Plaintiff ................................. 18

        i.    Jarrod Stringer ................................................................................... 18

        ii.   Nayeli Gomez ..................................................................................... 18

        iii.  John Harms ........................................................................................ 19

    B.      Defendants' Conduct Injures Each Organizational Plaintiff .......................... 20

        i.    MOVE Texas Civic Fund ..................................................................... 21

        ii.   League of Women Voters of Texas ....................................................... 22

IV.     DPS is technologically capable of collecting and transmitting voter-registration information from online transactions to SOS and doing so would not be cost prohibitive. ......... 24

ARGUMENT .................................................................................................... 25

I.      Plaintiffs are likely to succeed on the merits of their claims that Defendants are violating the NVRA and the U.S. Constitution by failing to provide simultaneous voter registration applications during online driver's license change-of-address and renewal transactions ........... 25

    A.      Texas's failure to treat online DPS transactions as simultaneous voter registration applications violates the NVRA ....................................................................... 26

        i.    The plain language of the NVRA controls ............................................. 26

        ii.   Defendants fail to treat online driver's license renewal applications as "simultaneous" voter registration applications in violation of 52 U.S.C. §§ 20503(a)(1), 20504(a)(1), and 20504(a)(2). ...................................................................................... 27

        iii.  Defendants fail to treat online driver's license change-of-address applications as notifications for voter registration in violation of 52 U.S.C. § 20504(d). ................. 28

iv.     Defendants' requirement that applicants submit a separate voter registration application upon completion of online driver's license transactions violates the NVRA's prohibition against requiring duplicative information, 52 U.S.C. § 20504(c)(2). ............... 28

v.      Defendants' failure to transmit voter registration information submitted during online driver's license transactions violates 52 U.S.C. § 20504(e). ................................................. 29

vi.     SOS's failure to ensure that eligible applicants are registered to vote upon completion of the voter registration portion of online driver's license change-of-address and renewal applications violates 52 U.S.C. § 20507(a)(1)(A). .............................................................. 29

B.      Texas's failure to treat online DPS transactions as voter registration applications violates the First and Fourteenth Amendments to the U.S. Constitution................................. 30

i.      The First and Fourteenth Amendments protect against restrictions that place unreasonable burdens on the right to vote. ...................................................................... 30

ii.     Defendants' refusal to treat online driver's license transactions as voter registration applications unduly burdens Plaintiffs' right to vote. ........................................................... 31

iii.    Defendants' previously asserted interest in requiring handwritten signatures is insufficient to justify the burdens created by their treatment of online DPS transactions.... 32

iv.     DPS's handwritten signature requirement as to online transactions is unreasonable. 33

II.     Plaintiffs will suffer irreparable injury absent a preliminary injunction and have no adequate remedy at law. .................................................................................................................... 34

A.      Defendants' failure to simultaneously register Individual Plaintiffs constitutes an irreparable injury and must be remedied by February 3, 2020 in order to be effective for the March 3, 2020 Presidential Primary Election. .................................................................. 35

B.      Defendants' legal violations cause irreparable harm to Organizational Plaintiffs by causing them to divert resources, undermining their core missions, and impeding their individual members' voting rights. ........................................................................................ 36

i.      Organizational Plaintiffs are irreparably harmed by being forced to divert their limited resources to register voters who were denied the opportunity to register when transacting with DPS online. .............................................................................................................. 37

ii.     Defendants' legal violations cause confusion and disenfranchisement at the polls, thus irreparably harming Organizational Plaintiffs by undermining their voter engagement efforts. ........................................................................................................................ 39

iii.    Plaintiff LWVTX has individual members who are irreparably injured by Defendants' violations by being unable to register to vote or update their registrations when transacting with DPS online ............................................................................................... 41

III.    The threatened injury to Plaintiffs far outweighs any potential harm to Defendants ........ 42

IV.     The injunction will not disserve the public interest. .......................................................... 44

CONCLUSION AND PRAYER FOR RELIEF .................................................................. 45

CERTIFICATE OF CONFERENCE.................................................................................... 48

CERTIFICATE OF SERVICE ............................................................................................. 48

TABLE OF AUTHORITIES

**Cases**

*Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D. N.C. 2016) ..................................................... 26

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ............................................................................. 30

*Arcia v. Florida Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014)................................................. 25

*Burdick v. Takushi*, 504 U.S. 428 (1992)............................................................................... 30, 31

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) ........................................................................ 7

*Charles H. Wesley Educ. Found. Inc. v. Cox*, 324 F. Supp. 2d 1358 (N.D. Ga. 2004), aff'd, 408 F.3d 1349 (11th Cir. 2005) ................................................................................................ 35, 42

*Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005)..................... 25, 44

Crawford v. Marion County Election Bd. 553 U.S. 181 (2008)............................................... 31, 33

*De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015) ........................................................................ 44

*De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014), aff'd *sub nom*................................. 44

*DFW Metro Line Servs. v. Sw. Bell*, 901 F.2d 1267 (5th Cir.1990) ............................................ 34

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................................... 36

*Ferrand v. Schedler*, 2012 WL 1570094 *6 (E.D. La. May 3, 2012)......................................... 25

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) .................................................................... 26, 36

*Georgia State Conference of NAACP. v. Kemp*, 841 F. Supp. 2d 1320 (N.D. Ga. 2012) ...... 25, 26

*Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329 (5th Cir. 2013) ............................................... 34

*In re Dale*, 582 F.3d 568 (5th Cir. 2009)................................................................................... 26

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5ᵗʰ Cir. 2014) ................................... 44

*Kusper v. Pontikes*, 414 U.S. 51 (1973)..................................................................................... 33

*League of Women Voters of Florida v. Browning*, 863 F. Supp. 2d 1155 (N.D. Fla. 2012) ........ 37

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .............. 35, 44

*Norman v. Reed*, 502 U.S. 279 (1992)....................................................................................... 31

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012)...................................................... 43, 44

*OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017).................................................. 25

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) .................. 34

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016).......................................... 37

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .................................. 26

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .................................................................................... 44

*Reynolds v. Simms*, 377 U.S. 533 (1964) .................................................................................. 44

*Stringer v. Pablos*, 274 F. Supp. 3d 588 (W.D. Tex. 2017)....................................................... 28

*Stringer v. Pablos*, 320 F. Supp. 3d 862 (W.D. Tex. 2018), *rev'd and remanded sub nom.*. passim

*Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) ...................................................................... 9

*Taylor v. Louisiana*, 419 U.S. 522 (1975) ................................................................................. 43

*Wesberry v. Sanders*, 376 U.S. 1 (1964).................................................................................... 44

*Williams v. Salerno*, 792 F.2d 323 (2d Cir. 1986) .................................................................... 35

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ................................................................................. 34

**Statutes**

52 U.S.C. § 20503(a)(1)................................................................................................................. 9

52 U.S.C. § 20504 ......................................................................................................... 9, 12
52 U.S.C. § 20504(a)(2) ..................................................................................................... 27
52 U.S.C. § 20504(c) .......................................................................................................... 29
52 U.S.C. § 20504(c)(2) ..................................................................................................... 28
52 U.S.C. § 20504(d) .......................................................................................................... 28
52 U.S.C. § 20504(d); ......................................................................................................... 28
52 U.S.C. § 20504(e) .......................................................................................................... 29
52 U.S.C. § 20507(a)(1)(A) ............................................................................................... 30
52 U.S.C. § 20507(a)(1)(A). .............................................................................................. 29
52 U.S.C. § 20509 ............................................................................................................... 12
52 U.S.C. §§ 20501-20511 ................................................................................................... 6
52 U.S.C. §§ 20503(a)(1), 20504(a)(1), 20504(c)(1); ...................................................... 27
52 U.S.C. §§ 20503(a)(1), 20504(a)(1), and 20504(a)(2) ................................................. 27
52 U.S.C. §§ 20504(e)(1)-(2) ............................................................................................. 29
52 U.S.C.§ 20504(c)(2) ...................................................................................................... 28
Tex. Elec. Code § 13.143(e) ............................................................................................... 36
Tex. Elec. Code § 31.001 .................................................................................................... 12
Tex. Gov't Code § 2054.252 ............................................................................................... 15
Tex. Gov't Code § 2054.271 ............................................................................................... 15

**Other Authorities**

11A Federal Practice and Procedure § 2948.1 (2d ed. 1995) .............................................. 34
National Conference of State Legislatures, *Provisional Ballots*, NCSL.Org (Oct. 15, 2018),
    https://www.ncsl.org/research/elections-and-campaigns/provisional-ballots.aspx. ................ 41

**Rules**

Fed. R. Civ. P. 65 .................................................................................................................. 6

## INTRODUCTION

For far too long, Defendants have thwarted the National Voter Registration Act ("NVRA")'s Motor Voter provisions, in addition to flouting Constitutional protections. Instead of complying with the NVRA's mandates by providing voter registration applications to almost 1.5 million Texans every year, the State continues to thumb its nose at the law and its own voters. Now, within 120 days of the March 3, 2020 Presidential Primary Election, a federal election[1], the State is still violating the voting rights of the Plaintiffs in this case and, unless this Court acts swiftly, will continue to violate those rights to the detriment of the Plaintiffs and the public at large.

Individual Plaintiffs and affected members of Associational Plaintiff in this case must have their voter registrations acknowledged no later than February 3, 2020 in order to be effective to vote in the March 3, 2020 Primary Election. Each day that passes, thousands of Texans are deprived of their right to register to vote, and Organizational Plaintiffs are deprived of time and resources they will never be able to recuperate trying to remedy the harm created by the State's violations. Therefore, Plaintiffs respectfully submit this Emergency Application for Preliminary Injunction, pursuant to Fed. R. Civ. P. 65, to prevent Defendants from further violating the NVRA, 52 U.S.C. §§ 20501-20511.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their Complaint in this action on January 14, 2020 (Dkt. 1). Through this motion, Plaintiffs now seek a preliminary injunction against Defendants.

---

[1] App'x 9 (Ex. 5, Texas Secretary of State, Important 2020 Election Dates.); *see also*, https://www.sos.state.tx.us/elections/voter/2020-important-election-dates.shtml (last visited Jan. 16, 2020).

## SUMMARY OF ISSUES

To obtain a preliminary injunction the movant must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

## SUMMARY OF ARGUMENT

Plaintiffs are entitled to a preliminary injunction. First, Plaintiffs are virtually certain to succeed on the merits. Although overturned on standing grounds, this Court previously recognized the merits of Plaintiffs' argument, *Stringer v. Pablos*, 320 F. Supp. 3d 862 (W.D. Tex. 2018), *rev'd and remanded sub nom.* **Error! Bookmark not defined.**, and even State officials have not seriously disputed that the NVRA's plain text requires *all* driver's license transactions to serve as simultaneous voter registration opportunities. Individual Plaintiffs and affected members of Associational Plaintiff will suffer irreparable injury if they are not granted a preliminary injunction ordering Defendants to register them to vote by February 3, 2020—the registration deadline for the March 3, 2020 Primary Election. Individual Plaintiffs and affected members of Associational Plaintiff will also suffer an irreparable injury if Defendants do not treat their future online driver's license transactions as voter registration applications. Organizational Plaintiffs will suffer an irreparable injury absent an injunction ordering Defendants to treat all online DPS transactions as voter registration applications for eligible Texans who wish to simultaneously register to vote. This injury accrues with each day that they must compensate for Defendants' failure to register voters in compliance with the NVRA, and with each voter who is eventually disenfranchised due to this failure. The time and resources these organizations expend can never be recouped nor are

they fully compensable by monetary damages. The serious and irreparable harm that Plaintiffs face absent injunctive relief greatly outweighs the non-existent harm that Defendants face by complying with federal law. Defendants have no viable interest in maintaining their current illegal scheme and have previously acknowledged the technological ease with which they can comply with the NVRA's Motor Voter provisions. Defendants already use electronic signatures for voter registration purposes when it comes to in-person and mail-in driver's license transactions, and nothing prevents them from doing so for online driver's license transactions. Finally, as Congress recognized by passing the NVRA in the first place, the public interest is served by greater civic participation.

## BACKGROUND[2]

**Case Background**

In 2015, the State of Texas was put on notice that it was violating the voting rights of hundreds of thousands of Texans by willfully ignoring its obligations under the NVRA, a decades-old federal law. After the State still refused to comply, several Texas voters, including Jarrod Stringer, a Plaintiff in the instant action, filed suit ("*Stringer I*"). After years of litigation and untold amounts of wasted taxpayer dollars, the State remains steadfast in its refusal to correct these failures—despite having the funds and technologic ability to do so. To this day, the NVRA rights of nearly 1.5 million Texans are violated yearly, each time one of those individuals interacts online with the Department of Public Safety ("DPS") driver's license system to renew or update their license. *See* Dkt. 1, Ex. A (2016 DPS transaction totals).

Under the NVRA, *each time* an eligible resident obtains, renews, or updates his or her driver's license with DPS, the State must ensure that the driver's license application

---

[2] Plaintiffs filed this lawsuit on January 14, 2020, and incorporate herein all allegations contained within their Original Complaint (Dkt. 1).

simultaneously serves as a voter registration application. 52 U.S.C. § 20503(a)(1).  In 2018, Chief

Judge Orlando Garcia ruled on cross motions for summary judgment in *Stringer I*, finding, *inter*

*alia*,

> The NVRA's requirement that DPS, a voter registration agency, provide a simultaneous application for both driver's license and voter registration purposes is plain and unambiguous and the facts in the record confirm that Texans are being deprived of this statutory right.

*Stringer v. Pablos*, 320 F. Supp. 3d 862, 891 (W.D. Tex. 2018), *rev'd and remanded sub nom*.

In accordance with this finding, the Court entered judgment enjoining the State's ongoing

NVRA violations. The State appealed and, in November of 2019, the Fifth Circuit Court of

Appeals reversed this Court's decision, finding that the plaintiffs failed to satisfy standing

requirements. Notably, the Fifth Circuit did not disturb the merits of the lower court's decision.

Indeed, without deciding the merits, Judge James Ho observed that, "[o]n the plain text of the

statute, the rule seems simple enough: If it's good enough for motorist licensing, then it ought to

be good enough for voter registration." Judge Ho went on, lamenting:

> . . . Plaintiffs have indeed endured an injury . . . they were unable to exercise their right to vote in past election cycles. And it is a right they will never be able to recover. As citizens, we can hope it is a deprivation they will not experience again . . .

*Stringer v. Whitley*, 942 F.3d 715, 726 (5th Cir. 2019) (Ho, J., concurring).

And yet, Mr. Stringer and countless other Texas voters have again been injured by

Defendants' legal violations. The State continues to flout its obligations under 52 U.S.C. § 20504,

meaning that millions of Texans are still denied their right to register to vote when they use DPS's

online system. As a result, eligible Texas voters either did not appear on the voter rolls or appeared

with incorrect address information when they attempted to exercise their franchise in 2018—and

were disenfranchised as a result. Countless more stand to be similarly impacted during the Primary

and General Elections in 2020. Even more Texans will simply not show up to vote in the first place after realizing they remain unregistered because they were never provided their legal right to register to vote when transacting with DPS online.

**Factual Background**

The central fact of this case has never been disputed: When eligible Texans update their driver's licenses online with DPS they are not offered a simultaneous application to register to vote or update their voter registration information.[3] As this Court has already held, the NVRA requires that each driver's license application, including any renewal application, simultaneously serve as an application for voter registration, and that each change-of-address form be used to update the voter's registration records. *See Stringer v. Pablos*, 320 F. Supp. 3d 862, 891 (W.D. Tex. 2018), *rev'd and remanded sub nom.*

Texas's refusal to integrate voter registration into its online driver's license renewal and change-of-address process affects nearly 1.5 million Texans annually, Dkt. 1 Ex. A, including the Plaintiffs in this case. Each Individual Plaintiff is an eligible Texas voter who transacted with DPS's online system to change their driver's license address and was denied the right to register or update their voter registration. Each Individual Plaintiff remains unregistered as of now and is directly and individually harmed by Defendants' conduct. As a result of Defendants' failure to comply with the NVRA, each Individual Plaintiff is being denied their federal right to register to vote through an online transaction with DPS. They are also denied an equal opportunity to participate in a federal election—for no reason other than the method through which they

---

[3] As Defendants put it in *Stringer I*, "[t]he key facts of this case are not disputed." Defs.' Reply in Supp. of Mot. to Dismiss at 6, *Stringer I*, No. 5:16-cv-00257-OLG (Jun. 06, 2016); *see also* Joint Report on Alternative Dispute Resolution at 2, *Stringer I*, No. 5:16-cv-00257-OLG (Sep. 9, 2016) (stating that the parties agree "that their primary dispute is legal, rather than factual").

transacted with DPS. Impacted members of the Plaintiff League of Women Voters of Texas ("LWVTX") have been, are, and/or will be denied these same rights.

Each Organizational Plaintiff is forced to expend resources to counteract Defendants' failure to comply with the NVRA in a myriad of ways and is further harmed by the frustration of their mission that occurs because of Defendants' failure to comply.

Texas has known for years that its online driver's license practices disenfranchise large numbers of voters. Between September 2013 and February 2015, for instance, more than 1,800 Texans complained about Texas's failure to register individuals to vote through the DPS online driver's license application, according to the State's own records. Dkt. 1 Ex. D. Yet Texas took no meaningful steps to fix its process. Instead, adding insult to injury, DPS *encourages* the use of the online system over in-person transactions, resulting—predictably—in a dramatic uptick in online transactions and, by extension, injured prospective voters. Organizational Plaintiffs, through their Get-Out-The-Vote ("GOTV") efforts, encounter disenfranchised voters who attempt to vote mistakenly believing they had registered to vote when submitting their online driver's license application.

DPS operates offices around the state and issues driver's licenses and other state identification cards. DPS's in-person application forms and mail-in change-of-address forms currently serve as simultaneous voter registration applications as required under the NVRA.[4] DPS's online renewal and change-of-address form does not, however, serve as a simultaneous voter registration application.[5]

---

[4] App'x 48-50 (Ex. 12, Texas Department of Public Safety Implementation Plan, D_00021063 at D_00021065); *Stringer I*, 320 F. Supp. 3d at 872.

[5] App'x 100 (Ex. 16, Excerpts of Mar. 7, 2017 30(b)(6) Deposition of Sheri Gipson, DPS's designee ("Gipson 30(b)(6) Dep.") at 78:1-9; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 64); *Stringer I*, 320 F. Supp. 3d at 871.

Defendant Ruth Hughs is the Secretary of State ("SOS") and serves as Texas's Chief Election Officer, responsible for coordinating Texas's compliance with the NVRA. 52 U.S.C. § 20509, Tex. Elec. Code § 31.001. SOS agrees that the NVRA applies to *all* driver's license application transactions, including online transactions.[6] DPS is responsible under state and federal law for providing voter registration services to applicants and transmitting voter registration information to the SOS. 52 U.S.C. § 20504, TEX. ELEC. CODE §§ 20.001(b), 20.061-66.[7]

## I.   DPS seamlessly integrates voter registration into its mail-in change-of-address and in-person driver's license applications.

DPS's protocol for providing voter registration to applicants who interact with DPS in person (for a new driver's license application, a renewal, or a change-of-address), and for applicants who utilize DPS's mail-in change-of-address form, is in line with NVRA requirements. A DPS applicant who decides to or is required to transact with DPS in person must fill out the relevant driver's license form with personal information in order to obtain, update, or renew his driver's license.[8] DPS uses different forms depending on the type of transaction: form DL-14A for an original (in-person) Application for Texas Driver License or Identification Card,[9] form DL-43 for an in-person Application for Renewal/Replacement/Change of a Texas Driver License or

---

[6] App'x 60 (Ex. 14, Excerpts of Mar. 22, 2017 30(b)(6) Deposition of Keith Ingram, SOS's designee ("Ingram 30(b)(6) Dep.") at 62:04-17; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 40) ("whenever a person has a driver's license transaction . . . they should be simultaneously offered the right—the ability to update their voter registration or register to vote for the first time. That's why the NVRA is called the Motor Voter law.")).

[7] *See also* App'x 145 (Ex. 20, DPS's Suppl. Resps. to Jarrod Stringer's First Requests for Admission ("RFAs"), No. 4; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 113).

[8] DPS customers are required to renew their driver's license in-person every 16 years. TEX. TRANSP. CODE ANN. § 521.271(a)(1); 37 TEX. ADMIN. CODE § 15.59(c) (2018).

[9] App'x 28-29 (Ex. 7, DL-14A (Rev. 1-18)), *see also* Texas Department of Public Safety, Application for Texas Driver License or Identification Card, https://www.dps.texas.gov/internetforms/Forms/DL-14A.pdf (last visited January 14, 2020).

Identification Card,[10] and form DL-64 for a mail-in Application for Change-of-address on Valid Texas Driver (DL) & Identification Card (ID).[11] For each, the driver's license and voter registration process has been combined into one simultaneous transaction so that in order to register or update voter registration information the applicant need only take one additional step related to voter registration—check a single box *on these same forms*:

**DL-14A and DL-43, in-person driver's license forms**

**DL-64, mail-in change-of-address form**

Except for this simple, integrated step of checking a box, the in-person and mail-in change-of-address applicant does not have to take any further action to ensure he is registered to vote. The applicant is not required to retrieve, complete, print, and mail a separate voter registration application; instead, DPS transmits the voter's file to SOS upon receipt of a completed mail-in change-of-address form or in-person driver's license applications.[12]

---

[10] App'x 31-33 (Ex. 8, DL-43 (Rev. 1-18)), Texas Department of Public Safety, Application for Renewal/Replacement/Change of Texas Driver License or Identification Card, http://www.dps.texas.gov/Internetforms/Forms/DL-43.pdf (last visited January 14, 2020).

[11] App'x 34-35 (Ex. 9, DL-64 (Rev. 2-17)), *see also* Texas Department of Public Safety, Application for Change-of-address on Valid Texas Driver License (DL) & Identification Card (ID), http://www.dps.texas.gov/Internetforms/Forms/DL-64.pdf (last visited January 14, 2020).

[12] App'x 102-103 (Ex. 16, Excerpts of Mar. 7, 2017 30(b)(6) Deposition of Sheri Gipson, DPS's designee at 101:24-102:09; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 66-67).

Upon receipt of DPS applicants' voter registration information, SOS then transmits the data to local voter registrars who are responsible for completing the voter registration process.[13] Ultimately, within thirty days after checking "yes" on the relevant in-person or mail-in change-of-address form, the DPS applicant should receive his new or updated voter registration card in the mail.[14] *Notably*, for all mail-in change-of-address transactions, it is the applicant's previously-provided electronic signature—the one provided during the applicant's last *in*-person transaction—that is used for voter registration purposes.[15] In fact, an applicant's electronic signature is used for voter registration purposes for *all* voter registration applications originating at DPS.[16]

## II.   Defendants do not provide simultaneous voter registration applications with online transactions, but instead require additional steps and duplicative information before an applicant can register or update their voter registration information.

---

[13] App'x 134 (Ex. 19, SOS's Suppl. Resps. to Jarrod Stringer's First RFAs, No. 13; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 98); *see also* App'x 134 (Ex. 14, Ingram 30(b)(6) Dep. at 173:9-10; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 43)

[14] *See Id.* at 173:16-174:09.

[15] App'x 125 (Ex. 18, Excerpts of Feb. 17, 2017 30(b)(6) Deposition of John Crawford ("Crawford 30(b)(6) Dep.") 139:10-21; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 89) (Q: [T]he mail-in change of address, the current one ... [w]ith regard to the batch that's sent to the Secretary of State at night for the voter registration, if the person answers "yes" on their change of address that's mailed in and that's input into DLS, it's the electronic signature that was previously provided the last time that person went in person. That's the signature that goes to the Secretary of State. Is that right? A: Yes, that's correct); *see also* App'x 28-29 (Ex. 7, DL-14A (Rev. 1-18)); App'x 31-33 (Ex. 8, DL-43 (Rev. 1-18)); *Stringer I*, 320 F. Supp. 3d at 872 (W.D. Tex. 2018).

[16] App'x 105 (Ex. 16, Gipson 30(b)(6) Dep. at 203:19-204:-7; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 69); App'x 62 (Ex. 14, Ingram 30(b)(6) Dep. at 97:04-14; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 42); Notably, although DPS obtains a handwritten signature on the in-person and mail change-of-address forms, those signatures are not transmitted to SOS for voter registration purposes, nor are they compared for identity-verification purposes except in the rare case of suspected fraud or theft. App'x 115, 116 (Ex. 17, Excerpts of Jan. 31, 2017 Deposition of Sheri Gipson ("Gipson Dep.") at 234:11-237:15, 254:04-07; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 79, 80); *see also* App'x 123-24 (Ex. 18, Crawford 30(b)(6) Dep. at 73:22-74:14; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 87-89), App'x 59 (Ex. 14 Ingram 30(b)(6) Dep. 50:01-11; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 39).

In stark contrast to the ease with which an applicant may simultaneously register to vote or update his voter registration information via in-person or mail-in change-of-address driver's license forms, an applicant transacting with DPS online must retrieve, complete, print, and mail an entirely *separate* voter registration application—which requires that he again provide information already collected by DPS—in order to register or update his voter registration information.

DPS's Driver License Renewal and Change-of-Address website page provides a single online portal for qualified holders of a Texas driver's license to renew their driver's license, update the address listed on their driver's license, or both.[17] For DPS purposes, updating or renewing a driver's license online comports with state law, and does not require a new signature.[18]

An applicant wishing to renew or update his driver's license online must first provide his driver's license number, date of birth, driver's license audit number, and the last four digits of his social security number, which DPS's vendor uses to check against DPS's system in real time to verify the applicant's eligibility to transact online with DPS.[19] If eligible, the applicant must then enter additional personal information.[20]

---

[17] App'x 149 (Ex. 20, DPS's Suppl. Resps. to Benjamin Hernandez's First RFAs, No. 5 ("the [Texas.gov] website provides a single online process for qualified applicants to renew their driver's license, update the address listed on their driver's license, or complete both processes in a single online transaction"; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 117); *Stringer I*, 320 F. Supp. 3d at n.10 (W.D. Tex. 2018).

[18] App'x 106 (Ex. 16, Gipson 30(b)(6) Dep. at 215:21-216:7; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 70).

[19] *Id.* at 217:21-219:16, 223:17-224:05. These four data points required for online transactions with DPS are also required by the Texas Online Authentication System (TOAS), which is used by various state agencies to authenticate customers' identity, and "may be used by the state agency or local government as an alternative to requiring a notarized document, a document signed by a third party, or an original signature on a document." TEX. GOV'T CODE § 2054.271; *see also* Tex. Gov't Code § 2054.252; *see also Stringer I*, 320 F. Supp. 3d at n.7 and n.8.

[20] App'x 2 (Ex. 1, Texas Department of Public Safety Driver License Renewal and Change-of-address webpage, D_00021840. Only United States citizens are allowed to renew or update their

From 2010 to February 2016, when users reached Step 5 of the online process, DPS prompted the applicant to choose "yes" or "no" in response to the statement, "I want to register to vote."[21] After February 27, 2016, Step 5 of the online process was changed to prompt the applicant to select "yes" or "no" to answer the question "Do you want to request a voter application?"[22]

From 2010 to the present, checking "yes" to the voter registration question at Step 5 does one thing only—it prompts the system to provide a link on the applicant's receipt to an entirely different website, where applicants must download or request a physical voter registration form.[23] To complete the voter registration process following an online DPS transaction, the applicant must download a voter registration form, print the form, fill out the form, and mail it in.[24]

Much of the information on the voter registration form is duplicative of information the applicant already provided during the online transaction with DPS. In fact, just as voter registration

---

driver's licenses online. *See also* Texas Department of Public Safety, Online Services Eligibility, https://txapps.texas.gov/tolapp/txdl/eligibility.dl?locale=en_US (last visited January 15, 2020); *Stringer I*, 320 F. Supp. 3d at n.6 (W.D. Tex. 2018).

[21] App'x 150 (Ex. 20, DPS's Suppl. Resps. to Benjamin Hernandez's First RFAs, Nos. 7-8; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 118); *see also* App'x 155-56 (Ex. 20, DPS's Suppl. Resps. to Totysa Watkins' First RFAs, Nos. 26-28; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 123-24). Shockingly, until September 2016, the "yes"/"no" radio buttons from which a customer had to choose automatically defaulted to "no." SOS knew of this problem as early as 2012 but allowed four years to pass before it was corrected. App'x 61 (Ex. 14, Ingram 30(b)(6) Dep. at 84:24-85:3; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 41); *see also Stringer I*, 320 F. Supp. 3d at 875 (W.D. Tex. 2018).

[22] App'x 150 (Ex. 20, DPS's Suppl. Resps. to Hernandez's First RFAs. Nos. 10-11; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 118).

[23] App'x 99-100, 101 (Ex. 16, Gipson 30(b)(6) Dep. 77:23-78:9 and 94:1-4; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 63-64, 65); Dkt. 1, Ex. C at 10 (Screenshot of "Driver License Renewal Receipt and Temporary License"); *see also Stringer I*, 320 F. Supp. 3d at 876 (W.D. Tex. 2018).

[24] App'x 79-80 (Ex. 15, Deposition of B. Schonhoff (SOS), at 157:19-158:18; *Stringer I*, No. 16-CA-257-OG, Dkt. 94-7 C-4 (they would have to fill the same information out twice)); App'x 6 (Ex. 3, Screenshot of Voter Registration Application from https://webservices.sos.state.tx.us/vrapp/index.asp (last visited January 15, 2020)); App'x 52-53 (Ex. 13, Texas Voter Registration Application, Produced as Ex. 3-L to Gipson 30(b)(6) Dep. in *Stringer I*, No. 16-CA-257-OG). The customer may also request to receive a blank application in the mail; *see also* Dkt. 1 Ex. C (Driver License Renewal and Change of Address screen shots).

forms do, DPS's online change-of-address or combined change-of-address and renewal forms require the following: date of birth, Texas driver's license number, residence address, residence city, residence zip code, residence county and, if it differs from residence, mailing address, mailing city, and mailing zip code.[25] Although DPS requires *this exact same information* from applicants during their online driver's license transaction, DPS fails to transfer this voter registration data to the Secretary of State.[26] What is more, DPS does not even record the answer to the online voter registration question.[27] This means, in order for a Texan who renews or changes his address online with DPS to become registered to vote, he must, in addition to providing or confirming at least six data points to DPS during the online transaction, *also* fill out a separate voter registration form and provide six of those *same* data points.

It is undisputed, then, that under Texas's current online driver's license renewal and change-of-address system, Defendants do not treat online driver's license renewals and change-of-address submissions as simultaneous voter registration applications.[28] Instead, eligible applicants who indicate they wish to register to vote or update their voter registration during an online transaction must take several additional steps after submitting their information online, including completing and mailing an entirely separate form; otherwise, Texas does not register them to vote.

---

[25] Compare *Id.* to App'x 108 (Ex. 16, Gipson 30(b)(6) Dep. at 223:17-224:05; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 72) and App'x 2 (Ex. 1, Texas Department of Public Safety Driver License Renewal and Change-of-address).

[26] App'x 105 (Ex. 16, Gipson 30(b)(6) Dep. at 204:17-21; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 69).

[27] App'x 114 (Ex. 17, Gipson Dep. at 136:10-19; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 78).

[28] App'x 150 (Ex. 20, DPS's Suppl. Resps. to Hernandez's First RFAs. Nos. 10-11; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 118); App'x 155-56 (Ex. 20, DPS's Suppl. Resps. to Watkins' First RFAs. Nos. 20-25; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 123-24).

**III.   Plaintiffs moved, transacted with DPS online to update their driver's license information, and yet Defendants failed to update their voter registration information.**

    **A.  Defendants' Conduct Injures Each Individual Plaintiff**

        **i.   Jarrod Stringer**

The State's violations of the NVRA and the U.S. Constitution have harmed Plaintiff Jarrod Stringer multiple times. App'x 178 (Ex. 24, Declaration of Jarrod Stringer ("Stringer Dep.") at ¶ 2). Mr. Stringer initially filed a lawsuit against the State in 2016. After moving from Arlington to San Antonio, Mr. Stringer updated the address on his driver's license online using the DPS website on August 1, 2014. *Id*. at ¶ 3. The State failed to simultaneously update his voter registration, as required by the NVRA, during Mr. Stringer's transaction. *Id*. Due to the confusing setup of the online driver's license portal, Mr. Stringer, like countless other Texans, mistakenly believed that he had updated his voter registration. *Id*. As a result of Defendants' failure to simultaneously register him to vote, Mr. Stringer was unable to cast a full ballot in the 2014 General Election. *Id*.

Mr. Stringer is now, again, being harmed by Defendants' violations. On or around November 23, 2019, the State again refused to provide a simultaneous voter registration application when, after moving from San Antonio to Houston, his driver's license address was updated online using the DPS website. App'x 179 (Stringer Dep. at ¶¶ 4-8). Mr. Stringer remains unregistered to vote in Harris County, his current county of residence. *Id*. at ¶ 8. Further, Mr. Stringer plans to move residences again in 2020. *Id*. at ¶ 11. Specifically, Mr. Stringer and his wife plan to move out of their rental apartment and into a new residence by August 25, 2020 at the latest. *Id*. at ¶ 11. When he moves to his new address, Mr. Stringer intends to use the online DPS system to update his driver's license address. *Id*. at ¶ 12.

        **ii.   Nayeli Gomez**

Nayeli Gomez is aggrieved by the State's violations of the NVRA because the State failed to provide a simultaneous voter registration application when she updated her driver's license. On December 09, 2019, Ms. Gomez updated her driver's license address online after moving to a new address within Bexar County. App'x 185 (Ex. 26, Declaration of Nayeli Gomez ("Gomez Dep.) at ¶ 4). Because it was impossible for her to make a simultaneous application for voter registration during this transaction, she did not do so. *Id.* at ¶ 5. Ms. Gomez remains registered to vote at the incorrect address and wishes for her online driver's license application to serve as a simultaneous voter registration application. App'x 186 (Gomez Dep. *at* ¶¶ 7-9). Ms. Gomez does not own a home printer to print off the Secretary of State's online voter application. *Id.* at ¶5. Next time she changes addresses or needs to renew her driver's license and is eligible, Ms. Gomez intends to do so through the DPS online system. *Id.* at 10.

### iii.  John Harms

John Harms is aggrieved by the State's violations of the NVRA because he was not offered a simultaneous application to update his voter registration to his new county of residence when he updated his driver's license through DPS's website on or around October 08, 2019. App'x 182 (Ex. 25, Declaration of John Harms ("Harms Dep.") at ¶¶ 6,7). Mr. Harms updated his driver's license because he moved from Bastrop County to Travis County. *Id.* at ¶ 5. Because it was impossible for him to make a simultaneous application to update his voter registration during this transaction, he did not do so. App'x 183 (Ex. 25, Harms Dep. at ¶ 9). Mr. Harms remains unregistered to vote in Travis County, his current county of residence, and wishes for his online driver's license application to serve as a simultaneous voter registration application. *Id.* at ¶¶ 10-13. Next time he changes addresses or needs to renew her driver's license and is eligible, Mr. Harms intends to do so through the DPS online system. *Id.* at ¶ 14.

19

The conduct that harmed Individual Plaintiffs is ongoing. All are being denied, on a continual basis, their NVRA-protected right to simultaneous voter registration with an online driver's license transition. Moreover, with just weeks remaining until the voter registration deadline for the March primary elections, none are currently registered to vote at their current address. Defendants have repeatedly maintained that they are unwilling to change the policies and practices that caused the injuries described herein.[29] Since Defendants refuse to correct the violations at issue in this lawsuit for future transactions, Individual Plaintiffs also face the additional harm of being denied their NVRA-protected right to simultaneously submit a voter registration application when each Individual Plaintiff changes the address on or renews their driver's license online in the future.

**B.  Defendants' Conduct Injures Each Organizational Plaintiff**

Each Organizational Plaintiff is harmed by the State's failure to comply with the NVRA and the Constitution in at least three distinct ways: first, Organizational Plaintiffs must expend additional resources to register people to vote who would have otherwise been able to register to vote or to update their voter registrations through the DPS's online driver's license system. Second, Organizational Plaintiffs must expend additional resources to educate DPS applicants who update the address on and/or renew their driver's license through the DPS website and mistakenly believe their online DPS transaction also registered them to vote that they are not in fact registered to vote. Third, Organizational Plaintiffs' GOTV efforts are thwarted when a voter whom they convinced to show up to the polls is denied the chance to cast a ballot that counts because they were not

---

[29] *Stringer I*, 320 F. Supp. 3d at 884; *see also* Dkt. 1 Ex. E, Press Release from Texas Attorney General Ken Paxton (Nov. 14, 2019).

registered to vote after an online driver's license transaction due to the State's failure to comply with the NVRA.

### i. MOVE Texas Civic Fund

MOVE Texas is a grassroots nonpartisan, nonprofit organization building power in underrepresented youth communities through civic education, leadership development, and issue advocacy. App'x 162 (Ex. 21 Declaration of Hilliard Drew Galloway ("Galloway Dep.") at ¶¶ 3-4). MOVE Texas conducts voter registration in multiple counties in Texas, including on college campuses, where MOVE Texas employees and volunteers offer college students and other would-be voters the opportunity to register to vote. *Id*. at ¶ 5; App'x 167-68 (Ex. 22, Declaration of Erica Elliott ("Elliott Dep.") at ¶¶ 1,3. During and in the lead up to federal, state and local elections, MOVE Texas also conducts GOTV efforts. App'x 162, Galloway Dep. at ¶ 4; App'x 168-69, Elliott Dep. at ¶ 7.

MOVE Texas is forced to divert resources to register people to vote who should have been registered or had their voter registration address updated through DPS's online driver's license system. App'x 163-64, Galloway Dep. at ¶¶ 10-12, 15; App'x 168-90, Elliott Dep. at ¶¶ 5, 8-10, 12. MOVE Texas must divert resources to educate voters who use the online DPS system and mistakenly believe they are registered to vote by informing those voters that the DPS transaction does not register them to vote. App'x 163-64, Galloway Dep. at ¶¶ 11-12, 15; App'x 168-69, Elliott Dep. at ¶¶ 4-5, 10, 12. MOVE Texas provides training which includes cautioning voters about the fact that online voter registration does not exist in Texas and the DPS online driver's license system does not register applicants to vote. App'x 163-64, Galloway Dep. at ¶¶ 12; App'x 169, Elliott Dep. at ¶ 10. MOVE Texas's GOTV efforts are thwarted when a voter whom they convinced to show up to the polls is denied the chance to cast a ballot that counts because they were not

registered to vote during their online driver's license renewal or change-of-address transactions due to the State's failure to comply with the NVRA. App'x 164-65, Galloway Dep. at ¶¶ 13, 15; App'x 168-70, Elliott Dep. at ¶¶ 7, 12. The State's violations, outlined in this Complaint, frustrate MOVE Texas's mission.

The time and resources that MOVE Texas spends registering voters who were not able to register or update their registrations during online transactions with DPS would otherwise be spent on MOVE Texas activities including registering more voters, building leadership in underrepresented youth communities, issues advocacy,  and getting out the vote. App'x 165, Galloway Dep. at ¶¶ 15; App'x 170, Elliott Dep. at ¶¶ 12.

### ii.  League of Women Voters of Texas

LWVTX's mission includes empowering voters, defending democracy and envisioning a democracy where every person has the desire, the right, the knowledge and the confidence to participate. App'x 172 (Ex. 23, Declaration of Grace Chimene ("Chimene Dep.") at ¶ 3). LWVTX registers eligible individuals to vote across Texas and during and in the lead up to federal, state, and local elections, LWVTX also conducts GOTV efforts. *Id.* at ¶¶ 4-9.

LWVTX is forced to divert resources to register people to vote who should have been registered or had their voter registration address updated through DPS's online driver's license system. *Id.* at ¶¶ 10, 11; App'x 188-92 (Ex. 27, Declaration of Phyllis Finnemore ("Finnemore Dep.") at ¶¶ 4-9, 18-19); App'x 196-98 (Ex. 28, Declaration of Sharon E. Walther ("Walther Dep.") at ¶¶ 5-7, 9-11). LWVTX must divert resources to educate voters who use the online DPS system and mistakenly believe they are registered to vote by informing those voters that the DPS transaction does not register them to vote. App'x 189-91 (Finnemore Dep. at ¶¶ 4, 8, 12, 18); App'x 196-98 (Walther Dep. at ¶¶ 5, 9, 10). LWVTX then must check those voters' registration

status with the voters and register those voters anew when they are either unregistered or improperly registered. App'x 189-90 (Finnemore Dep. at ¶¶ 5, 9, 10); App'x 196-98 (Walther Dep. at ¶¶5-7, 10). LWVTX provides public trainings that include cautioning voters about the fact that the DPS online driver's license system does not register applicants to vote. App'x 174 (Chimene Dep. at ¶ 12); App'x 192 (Finnemore Dep. at ¶¶ 20-23).

The time and resources that LWVTX spends registering voters who were not able to register or update their registrations during online transactions with DPS would otherwise be spent on LWVTX activities including registering other voters, educating voters on issues and candidates, and getting out the vote. App'x 172-75 (Chimene Dep. at ¶¶ 6, 8, 13, 14, 18); App'x 190-92 (Finnemore Dep. at ¶¶ 11-24); App'x 198 (Walther Dep. at ¶ 11).

LWVTX's GOTV efforts are thwarted when a voter whom they convinced to show up to the polls is denied the chance to cast a ballot that counts because they were not properly registered to vote by their online driver's license renewal or change-of-address transactions due to the State's failure to comply with the NVRA. App'x 174-75, (Chimene Dep. at ¶ 13, 14, 18); App'x 190 (Finnemore Dep. at ¶¶ 12-13). The State's violations, outlined in this Complaint, frustrate LWVTX's mission of empowering voters, defending democracy and envisioning a democracy where every person has the desire, the right, the knowledge and the confidence to participate. App'x 172-74 (Chimene Dep. at ¶¶ 3, 14).

LWVTX has members across the state and is harmed when those members seek to simultaneously register to vote or update their voter registration while renewing and/or updating the address on their driver's license during an online DPS transaction. *Id* at ¶¶ 4, 15.

**IV.    DPS is technologically capable of collecting and transmitting voter-registration information from online transactions to SOS and doing so would not be cost prohibitive.**

The change Plaintiffs call for—requiring DPS to record and transfer the registration information it already collects and confirms during online driver's license renewal or change-of-address to the SOS, along with the applicant's previously-obtained electronic signature, and requiring SOS to transfer the voter registration information to local voter registrars—is possible and would not be overly burdensome.[30] As Director of Elections Keith Ingram, SOS's 30(b)(6) designee in the previous litigation, testified, "This is a very possible thing to do. . . ."[31] In his testimony, Mr. Ingram went on to express a doubt about the legality under state law of doing so; however, as described below, *see infra* 29-32, and as this Court previously observed, *Stringer I*, 320 F. Supp. 3d at 895-97, the State's supposed concerns are unavailing, as state procedures are superseded to the extent they conflict with the NVRA. In fact, DPS and SOS already do for in-person and mail-in change-of-address transactions exactly that which Plaintiffs request this Court to order for online transactions. Moreover, implementing Plaintiffs' request would be even easier than the current process for in-person and mail-in change-of-address transactions because DPS *applicants* would be entering their data into the system instead of DPS applicant service representatives.

Nor have Defendants claimed that the cost of Plaintiffs' requested remedy would be prohibitive. Mr. Ingram opined that it would not cost a lot of money for DPS to send the previously

---

[30] App'x 104 (Ex. 16, Gipson 30(b)(6) Dep. at 175:24-176:8; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 68); App'x 126 (Ex. 18, Crawford Dep. 143:25-144:21; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 90).

[31] App'x 66 (Ex. 14, Ingram 30(b)(6) Dep. 186:5-13; *Stringer I*, No. 16-CA-257-OG, Dkt. 77-1 at 46).

obtained electronic signature to SOS, and further estimated that the cost of a fully online voter

registration program, which goes beyond what Plaintiffs seek, would be $182,000.[32]

## ARGUMENT

Individual Plaintiffs, Organizational Plaintiffs, and Associational Plaintiff are all entitled to a

preliminary injunction.

**I.    Plaintiffs are likely to succeed on the merits of their claims that Defendants are violating the NVRA and the U.S. Constitution by failing to provide simultaneous voter registration applications during online driver's license change-of-address and renewal transactions**

The right to vote is fundamental, and Texas's violations of that right injures, have injured,

and will continue to injure Plaintiffs. *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341 (11th

Cir. 2014) (finding that individual voters removed from rolls in violation of Section 8 of NVRA

had standing to sue for prospective relief even after they were reinstated, because of a "realistic

probability" that ongoing violations could again affect their registration status); *Charles H. Wesley*

*Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the

franchise wholly denied to suffer injury… [State resident's] alleged injuries flow directly from the

denial of her registration form."); *Ferrand v. Schedler*, 2012 WL 1570094 *6 (E.D. La. May 3,

2012); *Georgia State Conference of NAACP. v. Kemp*, 841 F. Supp. 2d 1320, 1331 (N.D. Ga.

2012); *OCA-Greater Houston v. Texas*, 867 F.3d at 604, 612 (5th Cir. 2017).

The facts establish that Defendants unequivocally violate the NVRA and the U.S.

Constitution by failing to treat online driver's license renewals or change-of-address applications

as simultaneous applications to register to vote or update voter registration, in glaring contrast to

---

[32] *Id.*184:12-185:5, 186:21-187:24.

the way that in-person and mail transactions are treated. Individual Plaintiffs and impacted members of Associational Plaintiff LWVTX are Texans eligible to register to vote who changed the address on and/or renewed their driver's license online, but whose transaction Defendants refused to treat as a simultaneous voter registration application. Organizational Plaintiffs LWVTX and MOVE Texas instruct, educate, and register to vote eligible Texans who have been injured by Defendants' legal violations. For these reasons, Plaintiffs are likely to succeed on the merits of their claims.

**A.  Texas's failure to treat online DPS transactions as simultaneous voter registration applications violates the NVRA**

  **i.   The plain language of the NVRA controls**

"Statutory construction, of course, begins with the plain language of statute." *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009). Where the plain language of the statute is clear, federal courts are compelled to apply the statute's mandate. Multiple courts—including this one—have struck down state policies in violation of the plain language mandates of the NVRA. *Stringer v. Pablos*, 320 F. Supp. 3d 862 (W.D. Tex. 2018) *rev'd on other grounds sub nom.*; *Action NC v. Strach*, 216 F. Supp. 3d 597, 633-634 (M.D. N.C. 2016) (finding that a plain language interpretation of Section 5 of the NVRA includes remote driver's license transactions);  *Fish v. Kobach*, 840 F.3d 710, 732-740 (10th Cir. 2016) (upholding plain language interpretation of Section 5 of the NVRA to preempt state law requiring more than "minimum amount of information necessary" for voter registration); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012) (upholding plain language interpretation of Section 8 of the NVRA to allow for disclosure of voter registration applications); *Ga. State Conference of N.A.A.C.P.*, 841 F. Supp. 2d at 1329, 1330, 1335 (finding, in part, that plain language interpretation of Section 7 of the NVRA requires an

assistance office supplying an application for assistance to distribute voter registration and voter preference forms regardless of whether the application was made in person).

> **ii. Defendants fail to treat online driver's license renewal applications as "simultaneous" voter registration applications in violation of 52 U.S.C. §§ 20503(a)(1), 20504(a)(1), and 20504(a)(2).**

The NVRA requires that "each" driver's license application, including "any" renewal application, serve as a simultaneous application for voter registration. 52 U.S.C. §§ 20503(a)(1), 20504(a)(1), 20504(c)(1); *Stringer v. Pablos*, 320 F. Supp. 3d 862, 890 (W.D. Tex. 2018) *rev'd on other grounds sub nom*. Moreover, the NVRA mandates that each voter registration application submitted to the state motor vehicle authority as part of a driver's license application, including any renewal application, update any previous registration by the applicant. 52 U.S.C. § 20504(a)(2); *Stringer I*, 320 F. Supp. 3d at 890.

As set out above, Defendants cannot dispute that the NVRA applies to all driver's license application transactions, including online transactions. *Stringer I*, 320 F. Supp. 3d at 889; *Action NC*, 216 F. Supp. 3d at 622-23 (holding that "the words "each" and "any" in Section 5 require voter registration services to be provided with all covered transactions[,]" including remote application, renewal, and change-of-address transactions). Nor can they dispute that in Texas, driver's license renewal applications submitted to DPS online do not serve as simultaneous applications for voter registration, or that Defendants do not treat driver's license change-of-address applications submitted to DPS online as updates to an applicant's previous voter registration.

While a voter's registration need not be "effected simultaneously with their NVRA-covered driver's license transaction," the NVRA requires that the actual application for voter registration be simultaneous with the NVRA-covered driver's license application in "a single

transaction." *Stringer I*, 274 F. Supp. 3d at 595. Accordingly, "[w]here, as here, Defendants have

chosen to offer an online forum for NVRA-covered driver's license transactions, the NVRA thus

requires them to accept voter registration applications through that forum simultaneously with the

NVRA-covered driver's license submissions that forum supports." *Id*. at 601; *see also Stringer I*,

320 F. Supp. 3d at 889.

> iii. **Defendants fail to treat online driver's license change-of-address applications as notifications for voter registration in violation of 52 U.S.C. § 20504(d).**

Under the NVRA, all change-of-address forms submitted "in accordance with State law

for purposes of a State motor vehicle driver's license" must also serve as a notifications of change-

of-address for voter registration purposes "unless the registrant states on the form that the change-

of-address is not for voter registration purposes." 52 U.S.C. § 20504(d); *Stringer I*, 320 F. Supp.

3d at 890. Driver's license "change-of-address forms must have equal effect as voter registration

change-of-address forms[.]" *Stringer I*, 274 F. Supp. 3d at 597. An applicant who has changed his

driver's license address online has done so in accordance with state law, which does not impose a

signature requirement on changes of address. It is undisputed that Defendants do not treat these

online submissions to DPS as notifications of change-of-address for voter registration purposes.

As this Court found, this "is inconsistent with the plain language of the NVRA." *Id*.; *see also*

*Stringer I*, 320 F. Supp. 3d at 889.

> iv. **Defendants' requirement that applicants submit a separate voter registration application upon completion of online driver's license transactions violates the NVRA's prohibition against requiring duplicative information, 52 U.S.C. § 20504(c)(2).**

The NVRA states that the voter-registration section of driver's license application forms

"may not require any information that duplicates information required in the driver's license

portion of the form[.]" 52 U.S.C.§ 20504(c)(2); *Stringer I*, 320 F. Supp. 3d at 892.This Court held

that Defendants' procedures violate the NVRA's limits on duplicative information because the separate voter registration form that DPS directs its applicants to complete after an online transaction duplicates almost entirely the information required by DPS' online change-of-address form and combined change-of-address and renewal form. *See Stringer I*, 320 F. Supp. 3d at 892-93. As this Court noted,

> [r]equiring motor voters to go to a different agency (SOS) to obtain and fill out a separate application that requires the same information violates the prohibition against duplicate information set forth in 52 U.S.C. § 20504(c).

*Id*. at 893. To comply with the NVRA, then, Defendants must allow applicants who complete online change-of-address and license renewal forms to apply to register to vote as part of the *same application*. *Id*. at 892-93.

### v. Defendants' failure to transmit voter registration information submitted during online driver's license transactions violates 52 U.S.C. § 20504(e).

The NVRA mandates that states transmit completed voter-registration portions of driver's license applications "to the appropriate State election official not later than 10 days after the date of acceptance[,]" or, if the application is completed within 5 days before the last day of a registration period, "not later than 5 days after the date of acceptance." 52 U.S.C. §§ 20504(e)(1)-(2). DPS does not even *record*—and therefore cannot *transmit*—applicants' responses to the voter registration question on the online driver's license renewal and change-of-address application. Further, despite collecting from each online applicant the personal information necessary for voter registration, DPS does not transmit this information to SOS for those applicants who wish to register or update their voter registration. Defendants' failure to do so violates the clear mandate of the NVRA.

### vi. SOS's failure to ensure that eligible applicants are registered to vote upon completion of the voter registration portion of online driver's license change-of-address and renewal applications violates 52 U.S.C. § 20507(a)(1)(A).

Being responsible for Texas's compliance with the NVRA, SOS must ensure that eligible applicants are registered to vote in an election "if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election." 52 U.S.C. § 20507(a)(1)(A). As set out above and in this Court's previous rulings, under the NVRA, online driver license renewal and change-of-address forms are valid voter registration applications. Thus, individuals who indicate that they want to register to vote during an online driver's license transaction are required to be registered to vote. However, SOS does not ensure that eligible applicants who indicate they wish to register to vote or update their voter registration during an online driver's license renewal or change-of-address transaction are registered to vote.  This constitutes a plain violation of the NVRA.

**B. Texas's failure to treat online DPS transactions as voter registration applications violates the First and Fourteenth Amendments to the U.S. Constitution**

>**i.  The First and Fourteenth Amendments protect against restrictions that place unreasonable burdens on the right to vote.**

When assessing a challenge to a state restriction on the right to vote, courts use the standard laid out in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under the *Anderson-Burdick* standard, a court

> must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the [s]tate as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

In *Crawford v. Marion County Election Bd.*, the Supreme Court, applying the *Anderson-Burdick* standard, noted that

rather than applying any 'litmus test' that would neatly separate valid from invalid restrictions, . . . a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands.

553 U.S. 181, 190 (2008). The Supreme Court further explained that, however slight of a burden a state restriction on an individual voter may appear, "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. at 191 (citing *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)). A sufficiently weighty justification is the difference between a reasonable and an unreasonable restriction. *Crawford* at 190 (citing *Burdick*, 504 U.S. at 434).

Defendants cannot provide any rational reason—much less a "sufficiently weighty" justification—for the burden they impose on the right to vote in Texas. Therefore, Defendants' treatment of online DPS transactions violates the U.S. Constitution.

> **ii.  Defendants' refusal to treat online driver's license transactions as voter registration applications unduly burdens Plaintiffs' right to vote.**

Texas treats some driver's license applications as applications to register to vote, and also *does not* treat other driver's license applications as applications to register to vote. And there is no dispute that Texas refuses to provide a simultaneous voter registration application for people who are similarly situated to in-person or mail-in applicants in every way but one—they completed their transactions online.

Instead of using the information applicants already provide to DPS to register them to vote or update their voter registration information, Texas burdens applicants who transact with DPS online with a requirement that they retrieve, complete, print, and mail an entirely separate voter registration form in order to register or update their voter registration information. This burden is borne exclusively by online applicants; DPS applicants who apply for or change their license

information in person, or change their address by mail, are not required to complete a separate, additional voter registration application in order to register or update their voter registration information. This burden is a restriction on the fundamental right to vote that warrants "the demonstration of a corresponding interest sufficiently weighty to justify the limitation." Defendants have no such justification. *Crawford*, 553 U.S. at 191 (citing Norman v. Reed, 502 U.S. 279, 288–89 (1992)).

### iii. Defendants' previously asserted interest in requiring handwritten signatures is insufficient to justify the burdens created by their treatment of online DPS transactions.

In *Stringer I*, Defendants' justification for this burden was that DPS's online applicants cannot sign the online driver's license form by hand, and that handwritten signatures are necessary to later check against the signature on the poll book. 320 F. Supp. 3d at 899. The record in *Stringer I*, however, demonstrates that the state *does not even use* handwritten signatures for voter registration or voter verification purposes. *Id*. at 899 n.54. Instead, DPS collects and SOS and counties use *electronic signatures* of voters. *Id*. 899-900. Indeed, even though a DPS applicant who indicates he wishes to register to vote on a mail-in change-of-address form provides DPS with a handwritten signature on that mail-in form, the signature DPS sends to SOS for voter registration purposes—and the signature SOS transmits to county election officials for voter registration—is the *previously-provided electronic signature* collected during the applicantr's most recent in-person transaction.

Although the state has an interest in verifying voter identity *at the polls*, this interest has nothing to do with the handwritten signatures collected by DPS during driver's license transactions, since the State only collects and uses *electronic* signatures on DPS applicants' voter registration applications. This interest is therefore irrelevant to and insufficient to justify

32

Defendants restriction on eligible Texans registering to vote during an online driver's license transaction.

In *Stringer I*, Defendants also claimed that they treat everyone equally because the signature requirement applies to everyone, and that everyone who fails to sign a change-of-address or renewal application is not registered to vote. Defendants fundamentally misunderstood the *Anderson-Burdick* application to state-imposed burdens on the right to vote. *Crawford*, 553 U.S. at 190, 191. The standard requires states to justify the burden they impose on the right to vote. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Defendants' handwritten signature argument is insufficient to justify the burden that the state applies to online DPS applicants.

### iv. DPS's handwritten signature requirement as to online transactions is unreasonable.

As pointed out by the Court previously in *Stringer I*, Defendants have not explained, and cannot explain, how the handwritten signature requirement is necessary. 320 F. Supp. 3d at 899-900. As the Court observed, because DPS collects electronic signatures during every in-person driver's license transaction—including applicants' first applications for a Texas driver's license—DPS already has a signature on file for every person who subsequently renews or changes their driver's license address. *Id.* For both driver's license purposes and voter registration purposes, Defendants simply use and store the signature that was electronically captured in the most recent previous in-person DPS transaction. *Id.* at 899 n.52. Defendants cannot show why handwritten signatures are necessary to confirm voter identity at the polls when collected, stored, and easily-accessible electronically-captured signatures do the same thing just as well, if not more efficiently, and when Texas already uses these electronic signature for this purpose for in-person and mail-in DPS applications. *Anderson*, 460 U.S. at 806 (quoting *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973)

33

("If the [s]tate has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties.").

Moreover, DPS's online system utilizes a data verification process, which, as Defendants have admitted, allows an online applicant to verify their identity at login, instead of using a handwritten signature. *Stringer I*, 320 F. Supp. 3d at 878 ("Defendants admit that the personal information required for authenticating online transactions is equal to or even more rigorous than the identifying information used for in-person and mail-in transactions"). This verification process ensures that the individual transacting online is the person who previously provided an electronic signature during his last in-person transaction with DPS and would likewise ensure that the electronic signature used for voter registration and voter verification belongs to the proper individual. With no sufficient justification for the State's restrictions on online transactions, the burden on Plaintiffs is unreasonable.

## II.  Plaintiffs will suffer irreparable injury absent a preliminary injunction and have no adequate remedy at law.

"An irreparable injury is one that cannot be undone by monetary damages." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (citing *DFW Metro Line Servs. v. Sw. Bell*, 901 F.2d 1267, 1269 (5th Cir.1990). Defendants' arbitrary discrimination against individuals who use Texas's online driver's license system irreparably injures Plaintiffs by burdening their voting rights, including their right to register to vote under the NVRA. The right to vote, and be properly registered to vote, is one of the most important constitutionally protected rights because it is "preservative of all rights," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886), and, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citing 11A Federal Practice and Procedure § 2948.1 (2d ed. 1995)). *See*

*also League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding that the challenged electoral practices "unquestionably" made it "more difficult" for plaintiff organizations "to accomplish their primary mission of registering voters" and therefore "provide injury for purposes both of standing and irreparable harm"); *Charles H. Wesley Educ. Found. Inc. v. Cox*, 324 F. Supp. 2d 1358, 1368 (N.D. Ga. 2004), aff'd, 408 F.3d 1349 (11th Cir. 2005) ("[N]o monetary award can remedy the fact that [a voter] will not be permitted to vote in the precinct of her new residence."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) ("The registration applicants in this case would certainly suffer irreparable harm if their right to vote were impinged upon."). Defendants' violations of the U.S. Constitution and the NVRA impinge on individual and organizational Plaintiffs' right to vote and register to vote in numerous distinct ways, each of which constitutes an irreparable injury.

### A. Defendants' failure to simultaneously register Individual Plaintiffs constitutes an irreparable injury and must be remedied by February 3, 2020 in order to be effective for the March 3, 2020 Presidential Primary Election.

Individual Plaintiffs injury-in-fact will become irreparable on February 3, 2020, when they will either be forced to forego their legal right to register to vote under the NVRA or will be totally or partially disenfranchised -- in the case of Plaintiff Stringer, for a second time. The NVRA grants Plaintiffs a clear right to have their online driver's license transactions serve to update their voter registrations. Plaintiffs' successful update of their Texas driver's license address information using the DPS website should have resulted in a simultaneous application to update their voter registration information. Since Defendants have still not updated Plaintiffs' registration, Defendants continue to violate their legal rights. The violation of Plaintiffs' rights under the NVRA and U.S. Constitution is quintessentially non-compensable— being forced to jump through extraneous hoops in order to exercise a fundamental right has no price tag. The burden is

particularly pronounced for Plaintiff Gomez, who owns no home printer to print the off-site voter registration form that DPS links online users to. App'x 185 (Gomez Dep. at ¶ 5). Defendants' violations disenfranchised Plaintiff Stringer in a previous election and will continue to harm individual Plaintiffs in future election cycles. App'x 179-80 (Stringer Dep. at ¶¶ 11-13); App'x 186 (Gomez Dep. at ¶ 10); App'x 183 (Harms at ¶ 14).

In order for Plaintiffs' voter registrations to be effective in time to participate in the March 3, 2020 Primary Election, they must be considered submitted no later than February 3, 2020. Tex. Elec. Code § 13.143(e). If Plaintiffs' updated registration applications are not submitted by the requisite deadline, they will be unable to vote in the March primary elections in which they are entitled to vote. Countless Texans just like Plaintiff Stringer in *Stringer I* are also disenfranchised each election because of Defendants' actions. App'x 190-91 (Finnemore Dep. at ¶¶ 12-15); App'x 197-98 (Walther Dep. at ¶ 10); App'x 164 (Galloway Dep. at ¶ 14); App'x 168-69 (Elliot Dep. at ¶ 7); Dkt. 1 Ex. D (Complaints about confusion over online DPS/voter registration system). Because "there can be no 'do-over' or redress of a denial of the right to vote after an election," an NVRA violation that inhibits voting "weighs heavily in determining" irreparable harm absent an injunction. *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (election case noting that the loss of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury"). Based on the evidence presented with this Motion, Defendants' refusal to change the policies and procedures that caused Plaintiffs injury also harmed and will continue to harm similarly situated persons in future elections.

**B. Defendants' legal violations cause irreparable harm to Organizational Plaintiffs by causing them to divert resources, undermining their core missions, and impeding their individual members' voting rights.**

i. **Organizational Plaintiffs are irreparably harmed by being forced to divert their limited resources to register voters who were denied the opportunity to register when transacting with DPS online.**

Defendants' NVRA violations result in a distinct irreparable harm because they force Organizational Plaintiffs to divert their resources to ensure individuals who should otherwise be properly registered to vote through DPS online are in fact properly registered. *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding that the challenged electoral practices "unquestionably" made it "more difficult" for Organizational Plaintiffs "to accomplish their primary mission of registering voters" and therefore "provide injury for purposes both of standing and irreparable harm"). The present case is similar to *Action NC vs. Strach*, which held that organizational plaintiffs' diversion of resources away from "voter mobilization and voter education efforts" before Election Day was sufficient to show irreparable harm at the preliminary injunction stage. 216 F. Supp. 3d 597, 642–43 (M.D.N.C 2016). Monetary relief cannot compensate for the harm to Plaintiffs' organizational missions of increasing voter engagement and participation. Indeed, courts have found that conduct limiting "an organization's ability to conduct voter registration activities constitutes an irreparable injury," *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1350 (N.D. Ga. 2016), "because when a plaintiff loses an opportunity to register a voter, the opportunity is gone forever." *League of Women Voters of Florida v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012)*; see also Newby*, 838 F.3d at 12-13 (reversing denial of preliminary injunction). Each week that Defendants continue to violate the law results in tens of thousands of individuals failing to be properly registered to vote[33], and each minute that

---

[33] Based on roughly 1.5 million Texans renewing their driver's licenses online or changing their driver's license addresses online each year, Dkt. 1 Ex. A, which equates to an average of 28,846 individuals a week. The vast majority of these individuals will be eligible voters because anyone who uses the online driver's license system must be 18 years old and a United States citizen. Texas

Organizational Plaintiffs spend helping a person who should have been registered through DPS is one less minute spent helping other unregistered eligible voters or accomplishing other core organizational activities. The fact that Plaintiff LWVTX is purely a volunteer organization underscores that the harm caused by Defendants is not monetarily compensable and is hence irreparable. App'x 172, 175 (Chimene Dep. at ¶¶ 5, 18).

Specifically, LWVTX spends considerable time and resources assisting voters who have interacted with DPS online but who either remain unregistered or do not have their voter registration address updated automatically as NVRA Section 5 requires. App'x 173-74 (Chimene Dep. at ¶ 10, 11); App'x 190-92 (Finnemore Dep. at ¶¶ 4-9, 18-19); App'x 196-98 (Walther Dep. at ¶¶ 5-7, 9-11). Voter registration efforts by LWVTX require significant volunteer member hours. App'x 173, 175 (Chimene Dep. at ¶¶ 7-9, 18); App'x 188, 189 (Finnemore Dep. at ¶¶ 3, 6); App'x 196 (Walther Dep. at ¶ 5). LWVTX members frequently register students on college and university campuses and find these populations particularly vulnerable to harm from Defendants' violations because they lack access to printers and are accustomed to transacting all of their business online. App'x 189-90 (Finnemore Dep. at ¶¶ 3-5, 12); App'x 196, 197 (Walther Dep. at ¶¶ 4, 8). LWVTX members are also active in communities, such as the Texas Hill Country, where many individuals frequently move from other Texas counties and need to be registered to vote because they were unable to do so when updating their driver's licenses. App'x 189 (Finnemore Dep. at ¶¶ 6-8). If the Defendants ceased violating the law, LWVTX would be able to expend less time and money ensuring that Texas residents who renew or update their address with DPS online are properly registered at the correct address, and would instead be able to spend this time registering more

---

Department of Public Safety, *Change Your Address Online*, DPS.Texas.gov (last visited Jan. 12, 2020), http://www.dps.texas.gov/DriverLicense/dlfork.aspx?action=change.

voters. App'x 175 (Chimene Dep. at ¶ 18); App'x 192 (Finnemore Dep. at ¶ 24); App'x 198 (Walther Dep. at ¶ 11). Further, LWVTX would be able to dedicate more resources on its other activities, including educating and informing voters about ballot measures, issues and candidates, and pursuing policy and advocacy goals in other issue areas. *See, e.g.*, App'x 172-75 (Chimene Dep. at ¶¶ 6, 8, 13, 14, 18); App'x 190-92 (Finnemore Dep. at ¶¶ 11-24).

Similarly, Plaintiff MOVE Texas must divert their resources to fill the gap caused by Defendants' violations, particularly because MOVE Texas assists voters who move frequently—namely young voters. App'x 162-64 (Galloway Dep. at ¶¶ 3, 6-9, 11-12); App'x 167-68 (Elliot Dep. at ¶ 3). MOVE Texas has expended time and resources working with numerous individuals who have moved and updated their address with DPS online, but whose voter registration address was not automatically updated by the SOS. App'x 163-65 (Galloway Dep. at ¶¶ 9-13, 15); App'x 168-70 (Elliott Dep. at ¶¶ 4-5, 7-10, 12). The time and resources MOVE Texas expends on address updates acutely reduces the work it can do in other areas, such as engaging in GOTV activities, educating voters about important issue areas and candidates, leadership-building in young voter communities, and advocating for workers' rights. App'x 165 (Galloway Dep. at ¶ 15); App'x 170 (Elliott Dep. at ¶ 12). And it greatly reduces the time that MOVE Texas can spend registering new voters who are not already registered to vote. Because Defendants continue to violate the law, MOVE Texas's diversion of resources to compensate for this harm will be ongoing, and the harm to MOVE Texas's GOTV and voter-education activities will be highest as the March 2020 Primary Election gets closer.

ii. **Defendants' legal violations cause confusion and disenfranchisement at the polls, thus irreparably harming Organizational Plaintiffs by undermining their voter engagement efforts.**

Due to Defendants' illegal online driver's license application process, countless individuals each election are disenfranchised when they show up to vote mistakenly believing they registered through DPS online. App'x 190-91 (Finnemore Dep. at ¶¶ 12-15); App'x 164 (Galloway Dep. at ¶ 13); App'x 168-69 (Elliot Dep. at ¶ 7); App'x 197-98 (Walther Dep. at ¶ 10); Dkt. 1 Ex. D (Complaints about confusion over online DPS/voter registration system). This directly and irreparably harms Organizational Plaintiffs by undermining their core missions and undoing the work they put into voter education, GOTV, and election protection efforts.

It is commonplace for Organizational Plaintiffs to encounter individuals who mistakenly believe they registered to vote or updated their registrations through DPS online. App'x 189-91 (Finnemore Dep. at ¶¶ 4, 8, 12, 18); App'x 196, 197-98 (Walther Dep. at ¶¶ 5, 9, 10); App'x 163-64 (Galloway Dep. at ¶¶ 11,13); App'x 168-69 (Elliot Dep. at ¶¶ 4-5, 7-8). So much so that Organizational Plaintiffs have developed training protocols and produced educational materials aimed at informing the public that DPS does not— contrary to how it may seem— offer online voter registration services, and actively spend time training their members and disseminating this information to the public. App'x 164 (Galloway Dep. at ¶ 12); App'x 169 (Elliot Dep. at ¶ 10); App'x 174 (Chimene ¶ 12); App'x 190-91 (Finnemore Dep. at ¶ 12). Organizational Plaintiffs often come across individuals who have been disenfranchised in the past as a result of mistakenly believing they registered through DPS online. App'x 190-91 (Finnemore Dep. at ¶¶ 12-15); App'x 197-98 (Walther Dep. at ¶ 10); App'x 164 (Galloway Dep. at ¶ 12); App'x 168-69 (Elliot Dep. at ¶ 7). Many of the individuals who mistakenly believe they registered or updated their registrations end up casting provisional ballots. App'x 190-91 (Finnemore Dep. at ¶ 12). The harm is compounded in Texas, because—unlike other states such as Arizona, Ohio, California, and New York—Texas does not allow provisional ballots to be partially counted if they were submitted

outside the correct voting jurisdiction. National Conference of State Legislatures, *Provisional Ballots*, NCSL.Org (Oct. 15, 2018), https://www.ncsl.org/research/elections-and-campaigns/provisional-ballots.aspx. Organizational Plaintiffs contact many individuals through a variety of direct and indirect means and are not able to verify the registration status of each would-be voter they contact. App'x 164 (Galloway Dep. at ¶ 13); App'x 168 (Elliott Dep. at ¶ 6); App'x 172-74 (Chimene ¶¶ 6-9, 13). Organizational Plaintiffs' missions of mobilizing the electorate, and the resources they expend on voter education, GOTV efforts, and election protection efforts are irreparably injured when voters that they have contacted show up to vote only to be disenfranchised. App'x 164-65 (Galloway Dep. at ¶ 13, 15); App'x 168-70 (Elliott Dep. at ¶¶ 7, 12); App'x 174-75 (Chimene ¶¶ 13, 14, 18); App'x 190-91 (Finnemore Dep. at ¶ 12-13).

### iii. Plaintiff LWVTX has individual members who are irreparably injured by Defendants' violations by being unable to register to vote or update their registrations when transacting with DPS online.

Finally, individual members of Plaintiff LWVTX are among the approximately 1.5 million Texans harmed each and every year by Defendants' ongoing NVRA violations. Dkt. 1 Ex. A. With approximately 3,000 members statewide, App'x 172, 175 (Chimene Dep. at ¶¶ 4, 15), numerous members every year move or renew their driver's license. As the State continues to push people to use its online driver's license services, it is inevitable that more and more LWV members will continuously have their rights violated by Defendants' failures to comply with the law. For example, one individual member of LWV who has moved from one Texas county to another, updated their driver's license address online, and has yet to have their voter registration updated. App'x 175 (Chimene Dep. ¶ 17). Moreover, they also have members with Texas driver's licenses who are likely to move in the future, or will need to renew their driver's licenses, and will be

harmed by Defendants' failure to ensure that their voter registration address is updated anytime they report a move or renew their licenses online. App'x 175 (Chimene Dep. at ¶¶ 15, 16).

The harm caused by Defendants' failure to comply with the NVRA is very real to Individual Plaintiffs, Organizational Plaintiffs, individual members of Associational Plaintiff and to countless other Texas voters. It not only imposes a heavy burden on these voters and organizations, but also presents a threat of disenfranchisement. In the absence of preliminary relief, Plaintiffs and other Texans, therefore, face irreparable harm. Every election is important. The inability to participate in an election cannot be compensated for after the fact or assuaged by the ability to participate in the next election. Irreparable harm will inevitably result without the preliminary injunctive relief Plaintiffs seek. Defendants' failure to remedy ongoing violations of the NVRA, despite Plaintiffs' notice, demonstrates that the SOS will not take action to protect the right to vote in the 2020 Primary or General Election absent injunctive relief from this Court. Further, without injunctive relief, Defendants' violations of the NVRA will indelibly impact the 2020 Primary and General Election—denying certain voters the ability to participate in the political process and unwarrantedly consuming precious resources.

## III.   The threatened injury to Plaintiffs far outweighs any potential harm to Defendants

The balance of hardships weighs heavily in favor of Plaintiffs' requested preliminary injunction. Defendants are actively engaging in the violation of federal law. Defendants are violating Plaintiffs' and countless eligible Texas voters' statutory and constitutional rights. *Charles H. Wesley Educ. Foundation, Inc.*, 408 F.3d at 1355 (protection of Plaintiffs' franchise-related rights is "significant"). The harm resulting from these violations and the potential denial of an injunction is severe and irreparable, while any hardship to Defendants should the injunction be granted amounts to, at most, administrative inconvenience.

The sheer number of voters negatively impacted because of Defendants' actions could mar the integrity of the election process as a whole. Absent a preliminary injunction, potentially 50,000 or more eligible Texans who completed online DPS transactions and could have been registered to vote before the Primary Election and at least 1 million eligible Texans who could have been registered to vote before the Presidential Election will not receive this federally-mandated option from Defendants.[34] Additionally, because the online DPS driver's license system continues to confuse eligible Texans into mistakenly thinking that they have registered to vote after using the system, a segment of the voters who use the DPS online driver's license system before the Primary Election or the Presidential Election will ultimately suffer disenfranchisement. App'x 190-91 (Finnemore Dep. at ¶¶ 12-15); App'x 197-98 (Walther Dep. at ¶ 10); App'x 164 (Galloway Dep. at ¶ 13); App'x 168-69 (Elliott Dep. at ¶ 7); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (potential disenfranchisement "outweighs any corresponding burden on the State, which has not shown that [it] will be unable to cope" with plaintiffs' requested relief).

Allowing an online driver's license change-of-address or renewal application to also serve as a voter registration application—whenever a DPS applicant requests that option—will not require additional safeguards because use of these online applications is already restricted to U.S. Citizens who are at least 18 years of age, two factors that track with the core requirements for voting. The only harm Defendants would suffer—specifically the administrative inconvenience of implementing a simple, quick, and inexpensive fix—pales in comparison to the harm imposed by their legal violations. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) ("administrative convenience" cannot justify the deprivation of a constitutional right). In *Stringer I*, Defendants acknowledged "that permitting simultaneous voter applications for motor voters that renew or

---

[34] Based on 1.5 million individuals renewing or updating their driver's license online each year.

change their driver's license online would be technologically very feasible and the cost would be minimal." 320 F. Supp. 3d at 900 n.55 ("from an IT perspective, DPS is currently capable of sending the voter data and electronic signature to SOS"). In the unlikely event that Defendants later prevail, it will be an easy matter for them to restart the implementation of their current policy, which can be switched back as simply, quickly, and inexpensively as it can be brought into compliance with the NVRA.

## IV.  The injunction will not disserve the public interest.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Simms*, 377 U.S. 533, 544 (1964). Requiring Defendant to follow Federal law and uphold Plaintiffs' "franchise-related rights is without question in the public interest."  *Charles H. Wesley Educ. Foundation, Inc.*, 408 F.3d at 1355; *see also Obama for America.*, 697 F.3d 423, 436 ("[T]he public has a strong interest in exercising the fundamental political right to vote.") (internal quotation marks and citations omitted). There is extraordinary public interest in protecting the fundamental right to vote. *See, e.g., Wesberry v. Sanders*, 376 U.S. 1, 17 (1964), 376 U.S. at 17; *League of Women Voters U.S. v. Newb*y, 838 F.3d 1, 12 (2016) ("The public has a 'strong interest in exercising the fundamental political right to vote . . . .'") (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *see also Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (district court did not abuse its discretion in finding injunction would not disserve public interest because it will prevent constitutional deprivations); *De Leon v. Perr*y, 975 F. Supp. 2d 632, 665 (W.D. Tex. 2014), aff'd *sub nom. De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015). A preliminary injunction would further that interest by preventing voter disenfranchisement and permitting participation of eligible voters in the upcoming elections. *See, e.g.*, *Newby*, 838 F.3d at 12 (concluding that public interest favors preliminary relief where, absent such relief "there is a

substantial risk that citizens will be disenfranchised" in upcoming elections); *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247–48 (4th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012)) ("By definition, '[t]he public interest ... favors permitting as many qualified voters to vote as possible.'"). Using online driver's license applications for voter registration purposes will protect the voting rights of countless individuals, limit voter disenfranchisement, make voter registration more accessible, and foster a more democratic elections process. Complaints to DPS from Plaintiffs and many similarly situated persons about this issue will also end. Therefore, a preliminary injunction would best serve the public interest.

## CONCLUSION AND PRAYER FOR RELIEF

For all the foregoing reasons, Plaintiffs respectfully request a hearing on this matter and for this Court to issue a preliminary injunction directing Defendants to take all appropriate measures necessary to remedy the harm caused by their noncompliance with the National Voter Registration Act and the U.S. Constitution by providing and accepting simultaneous voter registration applications in elections for Federal office from driver's license applicants who wish to register to vote while renewing or changing the address on their driver's license through the Department of Public Safety website.

Plaintiffs further respectfully request this Court to issue a preliminary injunction preventing Defendants, and all those associated with them, from discriminating against, harassing, or interfering with the right of each Individual Plaintiff, affected members of Associational Plaintiff, and other eligible Texans to simultaneously apply to register to vote when submitting a renewal or change-of-address driver's license application through the Department of Public Safety website.

Plaintiffs further respectfully request this Court to issue a preliminary injunction directing Defendants to register to vote or update voter registration information for each Individual Plaintiff using their most recent online driver's license transaction and deem each Individual Plaintiff's voter registration through their most recent online driver's license transaction as submitted on the date each Individual Plaintiff completed said transaction, and as effective 30 days thereafter.

Plaintiffs also pray that this Court grant all additional relief to which he may be entitled, at law or equity.

Dated: January 17, 2020                                 Respectfully submitted,


                                                         /s/ Mimi Marziani
                                                        Mimi Marziani
                                                        Texas Bar No. 24091906
                                                        mimi@texascivilrightsproject.org
                                                        Rebecca Harrison Stevens
                                                        Texas Bar No. 24065381
                                                        beth@texascivilrightsproject.org
                                                        Hani Mirza
                                                        Texas Bar No. 24083512
                                                        hani@texascivilrightsproject.org
                                                        Ryan Cox
                                                        Texas Bar No. 24074087
                                                        ryan@texascivilrightsproject.org
                                                        Joaquin Gonzalez
                                                        Texas Bar No. 24109935
                                                        Joaquin@texascivilrightsproject.org

                                                        TEXAS CIVIL RIGHTS PROJECT
                                                        1405 Montopolis Drive
                                                        Austin, Texas 78741
                                                        Tel. (512) 474-5073
                                                        Fax (512) 474-0726

                                                        * *Joaquin Gonzalez's Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*

Caitlyn E. Silhan
Texas State Bar No. 24072879
csilhan@waterskraus.com
Peter A. Kraus*
Texas State Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas State Bar No. 18341875
siegel@waterskraus.com

*Peter A. Kraus' Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*

WATERS & KRAUS, LLP
3141 Hood St., #700
Dallas, Texas  75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I certify that on January 16 and 17, 2020, I conferred via email with Anna Mackin, counsel for Defendants, who indicated that she will confer with her clients and advise whether they oppose the instant motion next week.

/s/   *Caitlyn Silhan*

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record on January 17, 2020 via email and on January 18, 2020 via certified mail, return receipt requested.

/s/ Rebecca Harrison Stevenson