**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, | § | |
| JOHN HARMS, MOVE TEXAS CIVIC FUND, | § | |
| and LEAGUE OF WOMEN VOTERS OF TEXAS | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No 5:20-cv-00046-OLG |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY OF | § | |
| STATE and STEVEN C. McCRAW, IN HIS | § | |
| OFFICIAL CAPACITY AS THE DIRECTOR OF | § | |
| THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| Defendants. | § | |

**APPENDIX TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

1. Exh. 1 - Texas Department of Public Safety, Driver License Renewal and Change of Address Web Page ........................................................................ 1
2. Exh. 2 - Texas Department of Public Safety, Online Services Eligibility ........................ 3
3. Exh. 3 - Texas Secretary of State, Voter Registration Application ................................. 5
4. Exh. 4 - Texas Secretary of State, Request for Voter Registration Application .............. 7
5. Exh. 5 - Texas Secretary of State, Important Election Dates ......................................... 9
6. Exh. 6 - Texas.gov, The Official Website of the State of Texas ................................... 14
7. Exh. 7 - Application for Texas Driver License or Identification Card .......................... 27
8. Exh. 8 - Application for Renewal/Replacement/Change of a Texas Driver License or Identification Card .................................................................. 30
9. Exh. 9 - Application for Change of Address on Valid Texas Driver License (DL) & Identification Card (ID) ................................................................. 33
10. Exh. 10 - Texas Department of Public Safety, Driver License Renewal and Change of Address Eligibility and About Webpage ....................................... 36
11. Exh. 11 - United States Census Bureau, County-to-County Migration Flows: 2013-2017 ACS, Census.gov ................................................................... 44
12. Exh. 12 - Texas Department of Public Safety Implementation Plan, D_00021063 at D_00021065 ..................................................................... 47
13. Exh. 13 - Texas Voter Registration Application, Produced as Exh. 3-L to

Gipson 30(b)(6) Deposition .................................................................................51
14. Exh. 14 - Excerpts of Mar. 22, 2017 30(b)(6) Deposition of Keith Ingram .................54
15. Exh. 15 - Excerpts of February, 27, 2017 Deposition of Betsy Schonhoff .................69
16. Exh. 16 - Excerpts of Mar. 7, 2017(b)(6) Deposition of Sheri Gipson.........................94
17. Exh. 17 - Excerpts of Jan. 31, 2017 Deposition of Sheri Gipson ...............................110
18. Exh. 18 - Excerpts of Feb. 17, 2017 30(b)(6) Deposition of John Crawford ..............119
19. Exh. 19 - Secretary of State's Supplemental Responses to First RFAs......................129
20. Exh. 20 - Texas DPS Supplemental Responses to First RFAs ...................................143
21. Exh. 21 - Declaration of Drew Galloway .....................................................................161
22. Exh. 22 - Declaration of Erica Elliott .........................................................................166
23. Exh. 23 - Declaration of Grace Chimene.....................................................................171
24. Exh. 24 - Declaration of Jarrod Stringer.....................................................................177
25. Exh. 25 - Declaration of John Harms...........................................................................181
26. Exh. 26 - Declaration of Nayeli Gomez.......................................................................184
27. Exh. 27 - Declaration of Phyllis Finnemore .................................................................187
28. Exh. 28 - Declaration of Sharon E. Walther ................................................................194

Dated: January 17, 2020                    Respectfully submitted,


 /s/  Rebecca Harrison Stevens

Mimi Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Joaquin Gonzalez*
Texas Bar No. 24109935
joaquin@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
Tel. (512) 474-5073
Fax (512) 474-0726

*Joaquin Gonzalez's Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*

Peter A. Kraus*
Texas State Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas State Bar No. 18341875
siegel@waterskraus.com
Caitlyn E. Silhan
Texas State Bar No. 24072879
csilhan@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood St., #700
Dallas, Texas  75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

*Peter A. Kraus's Motion for Admission Pro Hac Vice into the U.S. District Court of the Western District of Texas is currently pending.*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January, 2020, a true and correct copy of the foregoing was served upon counsel of record via the Court's ECF system.

/s/ Rebecca Harrison Stevens

3

# Exhibit 1



THE OFFICIAL WEBSITE OF THE STATE OF TEXAS

**Texas Department of Public Safety**
Driver License Division

**Driver License Renewal, Replacement, Change of Address or Change of Emergency Contacts**

## Welcome

Welcome to the Texas Driver License Renewal, Replacement, Change of Address or Change of Emergency Contacts system.

## Services

- Renew your driver license and/or identification (ID) card
- Change the address on your driver license and/or ID card
- Replace a lost or stolen card
- View and change your emergency contacts

**Effective October 2020, the U.S. Department of Homeland Security will require that all persons who plan to travel by air have a REAL ID compliant card. This includes a valid U.S. Passport or a Driver License or Identification Card with a REAL ID compliant indicator of a star in the upper right hand corner of the card. If you do not have a REAL ID compliant indicator on your card and want one, please check your eligibility to renew online or request a duplicate online.**

## What You Need

A printer to print your temporary driver license or ID, which is valid for 60 days. If you do not have a printer, you can renew by phone: 1-866-DL-RENEW (1-866-357-3639). You may also choose to receive the temporary driver license or ID by email, but you must print it in order for it to be a valid document.

- A valid credit card (Visa, MasterCard, Discover, or American Express)
- The last four digits of your Social Security number
- Your current Texas driver license or ID card. If you do not have audit number, you will be required to complete additional authentication with an additional fee*

## Fees

- Renewal of driver license (with or without changing address): $25
- Renewal of ID (with or without changing address): $16
- Renewal of driver license with motorcycle (with or without changing address): $33
- Replacement or change of address for driver license, commercial license or ID: $11
- View and change emergency contacts: $0
- *Additional authentication fee in lieu of providing audit number: $1.75

This online service is provided by Texas.gov, the official website of Texas. The price of this service includes funds that support the ongoing operations and enhancements of Texas.gov, which is provided by a third party in partnership with the State.

**Continue**

### Information

**Steps to Complete**

1. Welcome
2. Login
3. Select Services
4. Enter Address
5. Select Options
6. Review Order
7. Submit Payment
8. Emergency Contacts
9. Receipt

Frequently Asked Questions
Eligibility
Where's My License or ID?
En Español

## Help

For technical assistance with this application, please call 1-877-452-9060 or send an email to Texas.gov Help.

## Resources

- Texas Department of Public Safety

## Texas.gov

Texas.gov Policies
© 2012 Texas.gov
Version:6.9.2

**texas.gov**
Take it online, Texas.

# Exhibit 2



THE OFFICIAL WEBSITE OF THE STATE OF TEXAS

**Texas Department of Public Safety**
**Driver License Division**
**Driver License Renewal, Replacement, Change of Address or Change of Emergency Contacts**

## Online Services Eligibility

### Renewal Requirements for IDs and Driver Licenses

- If you have a Driver License AND Identification Card, you must visit a Driver License Office to surrender one of the cards before you are eligible for online transactions.
- Your last renewal was completed in person at a driver license office.
- Your driver license or ID card either expires in less than two years or has been expired for less than two years.
- You are at least 18 years of age and your driver license is not a provisional or learner license.
- Your browser supports 128 bit encryption.
- You are a U.S. citizen.
- Your Social Security number is on file with DPS.

### Renewal Requirements for Driver Licenses Only

- You are 78 or younger. (People 79 or older must renew driver licenses in person.)
- You are renewing a Class C, M or CM license. (Class A and B licenses and commercial driver licenses cannot be renewed online.)
- There is no change in your vision or physical or mental condition since your last renewal that would affect your ability to operate a motor vehicle.
- You have no outstanding traffic tickets or warrants, and your license is not suspended or revoked.

### Replacement or Change of Address Requirements for IDs and Driver Licenses

- Your driver license, commercial license or ID card is not expired. If your card is expired, you can only change your address if you also renew at the same time. You cannot replace an expired card.
- You are at least 18 years of age and your driver license is not a provisional or learner license.
- Your browser supports 128 bit encryption.
- You are a U.S. citizen.
- Your Social Security number is on file with DPS.

### Replacement or Change of Address Requirements for Driver Licenses Only

- You can replace or change an address for a driver license or commercial license online.
- Your license is not suspended or revoked.

### Real ID Requirements for IDs and Driver Licenses

- If you do not have a REAL ID compliant indicator on your Driver License or Identification Card, you may be eligible to renew online or request a replacement online.
- If your card expires before October 2020, don't worry. You will get a REAL ID the next time you renew. Check your eligibility to renew online here: www.texas.gov/dlrenewal
- If your card expires after October 2020, you have multiple options:
  - Do you have a passport? If so, you may choose to use that as your REAL ID credential.
  - Does your card expire between October 2020 and October 2022? You can renew up to two years ahead of your expiration date. Go to Texas.gov to see if you can renew online.
  - If your card expires between October 2020 and October 2022, you can request a duplicate at Texas.gov. You will be provided a REAL ID compliant duplicate, which will remain valid until it's time for you to renew.
- If your card expires after October 2022, you have multiple options:
  - Do you have a passport? If so, you may choose to use that as your REAL ID credential.
  - You can mail in a form to request a duplicate DL or ID card, or
  - You can visit Texas.gov to request a duplicate DL or ID card.

For additional questions about eligibility, please visit DPS Customer Service online.

**Help**
For technical assistance with this application, please call 1-877-452-9060 or send an email to Texas.gov Help (→).

**Resources**
- Texas Department of Public Safety

**Texas.gov**
Texas.gov Policies
© 2012 Texas.gov
Version:6.9.2

texas.gov
Take it online, Texas.

# Exhibit 3



Exhibit 4

APPENDIX 007



# Exhibit 5



File  Edit  View  History  Bookmarks  Tools  Help

Important 2020 Election Dates  ×  +

https://www.sos.state.t:    60%

**Election Outlook:** More about Identification Requirements for Voting | Last Day to Register to Vote for the March 3, 2020 Primary Election is Monday, February 3, 2020 | What's on the Ballot? | Am I Registered to Vote? | Election Results | Voter Information | Voting Issues for Texas Harvey Evacuees | 2018 Texas Election Security Update

Home | About the Office | Press Releases | Site Index | Help | Contacts | En Español

# Texas Secretary of State
## Ruth R. Hughs

Search  |  Go

Elections   Business Services   Notary, Apostilles & Authentications   Rules & Open Meetings   International Relations   Forms & Other Services

**VOTETEXAS.GOV**

Current Election Information

Voter Registration Agencies

Conducting Elections

Candidate Information

Officials and Officeholders

Election Results

Voter Education &
Seminar Information

Help America Vote Act
(HAVA) Funding

Election Funds Management

Forms, Resources and
Legal Library

Voting Systems

Frequently Asked Questions
(FAQs)

Contact Us

## Important 2020 Election Dates

| Tuesday, March 3, 2020 - Primary Election | |
|---|---|
| First day to file for a place on the Primary ballot for precinct chair candidates. | Tuesday, September 10, 2019 |
| First day to file for all other candidates for offices that are regularly scheduled to be on the Primary ballot; first day for independent candidates to file declaration of intent. | Saturday, November 9, 2019 |
| Filing deadline for candidates; filing deadline for independent candidates to file declaration of intent. | Monday, December 9, 2019 at 6:00 PM |
| First day to apply for a ballot by mail using Application for a Ballot by Mail (ABBM) or Federal Postcard Application (FPCA). | Wednesday, January 1, 2020*<br><br>*First day to file does not move because of New Year's Day holiday. An "Annual ABBM" or FPCA for a January or February 2020 election may be filed earlier, but not earlier than the 60th day before the date of the January or February election. |
| Last Day to Register to Vote | Monday, February 3, 2020 |
| First Day of Early Voting | Tuesday, February 18, 2020*<br><br>*First business day after Presidents' Day |
| Last Day to Apply for Ballot by Mail (Received, not Postmarked) | Friday, February 21, 2020 |
| Last Day of Early Voting | Friday, February 28, 2020 |
| Last day to Receive Ballot by Mail | Tuesday, March 3, 2020 (Election Day) at 7:00 p.m. if carrier envelope is not postmarked, OR Wednesday, March 4, 2020 (next business day after Election Day) at 5:00 p.m. if carrier envelope is postmarked by 7:00 p.m. at the location of the election on Election Day (unless overseas or military voter deadlines apply)[4] |

| Saturday, May 2, 2020 – Uniform Election Date (Limited) | |
|---|---|
| Authority Conducting Elections | Local Political Subdivisions<br><br>(County-ordered elections may not be held on this date. County Election Official may, but is not required to, contract to provide election services to political subdivisions holding elections on this date.) |
| Deadline to post NEW HB 305 notice.[1] | September 1, 2019*<br><br>*NEW LAW: Effective Sunday, September 1, 2019 (HB 305 affects political subdivisions with taxing authority) [1] |
| Deadline to Post Notice of Candidate Filing Deadline (Local Political Subdivisions Only)[1] | Monday, December 16, 2019 for local political subdivisions that have a first day to file for their candidates[1] |
| First Day to Apply for Ballot by Mail | Wednesday, January 1, 2020*<br><br>*First day to file does not move because of New |

| | |
|---|---|
| Deadline to Post Notice of Candidate Filing Deadline (Local Political Subdivisions Only)[1] | Monday, December 16, 2019 for local political subdivisions that have a first day to file for their candidates.[1] |
| First Day to Apply for Ballot by Mail | Wednesday, January 1, 2020*<br><br>*First day to file does not move because of New Year's Day holiday. An "Annual ABBM" or FPCA for a January or February 2020 election may be filed earlier, but not earlier than the 60th day before the date of the January or February election. |
| First Day to File for a Place on the General Election Ballot (Local Political Subdivisions Only)[1] | Wednesday, January 15, 2020 |
| Last Day to Order General Election or Special Election on a Measure | Friday, February 14, 2020 |
| Last Day to File for a Place on the General Election Ballot (Local Political Subdivisions Only)[2] | Friday, February 14, 2020 at 5:00 p.m.<br><br>See note below relating to four-year terms[3] |
| Last Day to File a Declaration of Write-in Candidacy (Local Political Subdivisions Only) | Tuesday, February 18, 2020 |
| Last Day to Register to Vote | Thursday, April 2, 2020 |
| First Day of Early Voting by Personal Appearance | Monday, April 20, 2020 |
| Last Day to Apply for Ballot by Mail (**Received, not** Postmarked) | Monday, April 20, 2020 (deadline falls on San Jacinto Day, moves to **preceding** business day) |
| Last Day of Early Voting by Personal Appearance | Tuesday, April 28, 2020 |
| Last day to Receive Ballot by Mail | Saturday, May 2, 2020 (Election Day) at 7:00 p.m. if carrier envelope is not postmarked, OR Monday, May 4, 2020 (next business day after Election Day) at 5:00 p.m. if carrier envelope is postmarked by 7:00 p.m. at the location of the election on Election Day (unless overseas or military voter deadlines apply)[4] |
| **Tuesday, May 26, 2020 – Primary Runoff Election** | |
| First day to apply for a ballot by mail using Application for a Ballot by Mail (ABBM) or Federal Postcard Application (FPCA) | Wednesday, January 1, 2020*<br><br>*First day to file does not move because of New Year's Day holiday. An "Annual ABBM" or FPCA for a January or February 2020 election may be filed earlier, but not earlier than the 60th day before the date of the January or February election. |
| Last Day to Register to Vote | Monday, April 27, 2020 |
| First Day of Early Voting | Monday, May 18, 2020 |
| Last Day to Apply by Mail (**Received, not** Postmarked) | Friday, May 15, 2020 |
| Last Day of Early Voting | Friday, May 22, 2020 |
| Last Day to Receive Ballot by Mail | Tuesday, May 26, 2020 (Election Day) at 7:00 p.m. if carrier envelope is **not** postmarked, OR Wednesday, May 27, 2020 (next business day after Election Day) at 5:00 p.m. if carrier envelope is postmarked by 7:00 p.m. at the location of the election on Election Day (unless overseas or military voter deadlines apply)[4] |
| **Tuesday, November 3, 2020 - Uniform Election Date** | |
| Deadline to post NEW HB 305 notice.[1] | November 3, 2019*<br><br>*NEW LAW: Effective Sunday, September 1, 2019 (HB 305 affects political subdivisions with taxing authority) [1] |
| Deadline to Post Notice of Candidate Filing Deadline (Local Political Subdivisions Only)[1] | Thursday, June 18, 2020 for local political subdivisions that have a first day to file for their |

APPENDIX 011



| Tuesday, November 3, 2020 - Uniform Election Date | |
|---|---|
| Deadline to post NEW HB 305 notice.[1] | November 3, 2019*<br><br>*NEW LAW: Effective Sunday, September 1, 2019 (HB 305 affects political subdivisions with taxing authority) [1] |
| Deadline to Post Notice of Candidate Filing Deadline (Local Political Subdivisions Only)[1] | Thursday, June 18, 2020 for local political subdivisions that have a first day to file for their candidates[1] |
| First Day to Apply for Ballot by Mail | Wednesday, January 1, 2020*<br><br>*First day to file does not move because of New Year's Day holiday. An "Annual ABBM" or FPCA for a January or February 2020 election may be filed earlier, but not earlier than the 60th day before the date of the January or February election. |
| First Day to File for a Place on the General Election Ballot (Local Political Subdivisions Only)[1] | Saturday, July 18, 2020 |
| First Day to File a Declaration of Write-in Candidacy (General Election for State and County Officers) | Saturday, July 18, 2020 |
| Last Day to Order General Election or Special Election on a Measure | Monday, August 17, 2020 |
| Last Day to File for a Place on the General Election Ballot (Local Political Subdivisions Only)[2] | Monday, August 17, 2020 at 5:00 p.m. |
| Last Day to File a Declaration of Write-in Candidacy (General Election for State and County Officers) | Monday, August 17, 2020 |
| Last Day to File a Declaration of Write-in Candidacy (Local Political Subdivisions Only) | Friday, August 21, 2020 |
| Last Day to Register to Vote | Monday, October 5, 2020* |
| First Day of Early Voting by Personal Appearance | Monday, October 19, 2020* |
| Last Day to Apply for Ballot by Mail (Received, not Postmarked) | Friday, October 23, 2020 |
| Last Day of Early Voting by Personal Appearance | Friday, October 30, 2020 |
| Last day to Receive Ballot by Mail | Tuesday, November 3, 2020 (Election Day) at 7:00 p.m. if carrier envelope is not postmarked, OR Wednesday, November 4, 2020 (next business day after Election Day) at 5:00 p.m. if carrier envelope is postmarked by 7:00 p.m. at the location of the election on Election Day (unless overseas or military voter deadlines apply)[4] |

[1] **Under new law, most local entities now have a "first day" to file.**

For the few entities who do not have a first day to file: For the May 2, 2020 election, Wednesday, January 15, 2020 is the deadline to post notice of candidate filing deadline for entities that do not have a first day to file for their candidates. **However, pursuant to NEW LAW, for local (taxing) political subdivisions, the deadline is September 1, 2019 (the effective date of HB 305, 2019).** For the November 3, 2020 election, Monday, July 20, 2020 is the deadline to post notice of candidate filing deadline for local political subdivisions that do not have a first day to file for their candidates. (If the 30th day before last day on which candidate may file falls on a Saturday, deadline moves to next business day). **However, pursuant to NEW LAW, for local (taxing) political subdivisions, the deadline is November 3, 2019 (one year before election day).**

Local political subdivisions include: cities, school districts, water districts, hospital districts, and any other local government entity that conducts elections. Many of these elections are conducted on the May uniform election date. Note: Counties may also be holding local proposition (measure) elections on May 2, 2020.

[2] Filing deadlines: generally, the filing deadline is the 78th day prior to Election Day. The Code may provide a different special election filing deadline. See Section 201.054 of the Texas Election Code (the "Code"). Write-in deadlines for general and special elections vary; the deadline for most local (city, school, other) special elections is now the same day as the filing deadline for application for a place on the ballot in a May election or November election.



| | |
|---|---|
| First Day to File a Declaration of Write-in Candidacy (General Election for State and County Officers) | Saturday, July 18, 2020 |
| Last Day to Order General Election or Special Election on a Measure | Monday, August 17, 2020 |
| Last Day to File for a Place on the General Election Ballot (Local Political Subdivisions Only)[2] | Monday, August 17, 2020 at 5:00 p.m. |
| Last Day to File a Declaration of Write-in Candidacy (General Election for State and County Officers) | Monday, August 17, 2020 |
| Last Day to File a Declaration of Write-in Candidacy (Local Political Subdivisions Only) | Friday, August 21, 2020 |
| Last Day to Register to Vote | Monday, October 5, 2020* |
| First Day of Early Voting by Personal Appearance | Monday, October 19, 2020* |
| Last Day to Apply for Ballot by Mail (Received, not Postmarked) | Friday, October 23, 2020 |
| Last Day of Early Voting by Personal Appearance | Friday, October 30, 2020 |
| Last day to Receive Ballot by Mail | Tuesday, November 3, 2020 (Election Day) at 7:00 p.m. if carrier envelope is **not** postmarked, OR Wednesday, November 4, 2020 (next business day after Election Day) at 5:00 p.m. if carrier envelope is postmarked by 7:00 p.m. at the location of the election on Election Day (unless overseas or military voter deadlines apply)[4] |

[1] **Under new law, most local entities now have a "first day" to file.**

For the few entities who do not have a first day to file: For the May 2, 2020 election, Wednesday, January 15, 2020 is the deadline to post notice of candidate filing deadline for entities that do not have a first day to file for their candidates. **However, pursuant to NEW LAW, for local (taxing) political subdivisions, the deadline is September 1, 2019 (the effective date of HB 305, 2019).** For the November 3, 2020 election, Monday, July 20, 2020 is the deadline to post notice of candidate filing deadline for local political subdivisions that do not have a first day to file for their candidates. (If the 30th day before last day on which candidate may file falls on a Saturday, deadline moves to next business day.  **However, pursuant to NEW LAW, for local (taxing) political subdivisions, the deadline is November 3, 2019 (one year before election day).**

Local political subdivisions include: cities, school districts, water districts, hospital districts, and any other local government entity that conducts elections. Many of these elections are conducted on the May uniform election date. Note: Counties may also be holding local proposition (measure) elections on May 2, 2020.

[2] Filing deadlines: generally, the filing deadline is the 78th day prior to Election Day. The Code may provide a different special election filing deadline. See Section 201.054 of the Texas Election Code (the "Code"). Write-in deadlines for general and special elections vary; the deadline for most local (city, school, other) special elections is now the same day as the filing deadline for application for a place on the ballot in a May election or November election.

[3] If no candidate for a **four-year term** has filed an application for a place on the ballot for a **city office**, the filing deadline for that office is extended to 5 p.m. of the 57th day before the election. For the May 2, 2020 election, this is Friday, March 6, 2020. See Section 143.008 of the Code.

[4] Please note that pursuant to House Bills 1151 and 929 (2017), different deadlines apply to the last day to receive ballots sent by the following: 1) non-military and military voters who mailed ballots from overseas and submitted a regular state Application for Ballot By Mail ("ABBM"), 2) non-military voters who mailed ballots from overseas and who submitted a Federal Postcard Application ("FPCA"), and (3) military voters who mailed ballots domestically or from overseas and who submitted an FPCA. See Secs. 86.007, 101.001 and 101.057 of the Code. Please contact the Elections Division of the Office of the Texas Secretary of State at 1-800-252-VOTE (8683) for additional information.

- SOSDirect -Business Filings
- Business Copies and Certificates
- Uniform Commercial Code
- Texas Businesses Against Trafficking
- Texas.gov

- VoteTexas.gov - Voter Information
- Register to Vote & Voter I.D.
- Website Policies
- Open Records
- Contacts

- Statewide Search
- Texas Homeland Security
- Where the Money Goes
- Fraud Reporting
- Texas Veterans Portal

APPENDIX 013

# Exhibit 6







# Are you compliant with federal REAL ID requirements?

Starting October 1, 2020, you'll need a valid passport, a U.S. military ID, or a REAL ID-compliant driver license with a gold star to travel in the U.S.

**Got a valid passport or a gold star?**
You're compliant and good to go!

**No gold star? You have options!**
If your license or ID expires before October 2020, you'll get the gold star on your next renewal. If your card expires before October 2022, you can renew up to two years ahead of time to get the gold star.

**Can I renew online?**
Visit www.texas.gov/dlrenewal to check your eligibility and renew your driver license or ID online, or you can visit a DPS office.

**Need more info on REAL ID ?**
Use the REAL ID Document Check for a customized checklist of the documents you'll need to bring to your Driver License Office visit. Get m̶ information on REAL ID compliance at



License Office visit. Get more detailed information on REAL ID compliance at the DPS REAL ID website.

# Drivers

Save your driving to see the more scenic attractions across Texas. Skip the office lines and take care of all your driving business online.

DL/ID Renew/Replace/Change Address

Vehicle Registration Renewal

REAL ID FAQs

Vehicle Registration Address Change

Driver License Reinstatement & Status

Driver Education

Driver Records

Requirements for New Texans

More Driver Services

Chat with us







**Ready to go to work? Need to start a business?**

**WorkinTexas.com**

**Looking for a job?** WorkinTexas.com is an online job search and matching system maintained by the Texas Workforce Commission and Texas Workforce Solutions.

**Texas Business Advisor**

**Starting a business in Texas?** Visit Texas Business Advisor, offered by the Texas Comptroller, to learn how to start a business in Texas.

Photo Credits

# In your neighborhood

Dern it! Need to go to a government office? Let us help you find one. We can also help you locate fun stuff like parks and libraries.

## What are you looking for?

☐ **County Clerk**    ☐ **Courthouse**    ☐ **Driver License**

☐ **Job Center**    ☐ **Library**    ☐ **Park**

☐ **Rest Area**    ☐ **State Agency**    ☐ **Vehicle Registration**

**Activate Map**

💬 **Chat with us**











Contractor Driver Records ☆

## More Records

**Department of Public Safety**

(They handle driver records)

Customer Service

**Department of State Health Services**

(They handle vital records)

Customer Service

Find It

| Help | FAQ | Policies | About | Extras |

Open Data

# Thanks for taking it online!

*Please come see us again sometime.*

texas.gov
Take it online, Texas.

Chat with us

Exhibit 7

# APPLICATION FOR TEXAS DRIVER LICENSE OR IDENTIFICATION CARD

**NOTICE:** All information on this application must be in INK.   **Applications held only 90 days.**

**DPS CANNOT REFUND PAYMENT ONCE APPLICATION IS SUBMITTED.**

**FOR DEPARTMENT USE ONLY**
RESTRICTIONS/ENDORSEMENTS

ASSIGNED # _____

**APPLICATION for:**   ☐ DRIVER LICENSE     ☐ COMMERCIAL DRIVER LICENSE (CDL)     ☐ LEARNER LICENSE

☐ IDENTIFICATION CARD     ☐ NON-RESIDENT COMMERCIAL DRIVER LICENSE     Class (Circle)   A   B   C   M

---

**APPLICANT INFORMATION**

LAST NAME: _____

FIRST NAME: _____

MIDDLE NAME: _____

SUFFIX: _____

MAIDEN NAME: _____

DATE OF BIRTH (mm/dd/yyyy): _____ – ___ – ___

SSN: _____

SEX: (Circle One)   MALE     FEMALE

EYE COLOR: _____ HAIR COLOR: _____

RACE/ETHNICITY: _____   (I) American Indian/Alaska Native
(A) Asian/Pacific Islander  (B) Black  (H) Hispanic  (O) Other  (W) White

HEIGHT: ____ ft. _____ in.     WEIGHT: ____ lbs. _____

PLACE OF BIRTH: CITY: _____ COUNTY: _____

FATHER'S LAST NAME: _____

**CONTACT INFORMATION**

HOME PHONE: _____

OTHER PHONE: _____

EMAIL: _____

**ADDRESS INFORMATION**

RESIDENCE ADDRESS: _____

CITY: _____ STATE: _____

ZIP CODE: _____ COUNTY: _____

MAILING ADDRESS: _____

CITY: _____ STATE: _____

ZIP CODE: _____ COUNTY: _____

STATE: _____ COUNTRY: _____

MOTHER'S MAIDEN NAME: _____

---

## REQUIRED INFORMATION FROM ALL APPLICANTS

YES   NO

1.  ☐ ☐  Are you a citizen of the United States?
2.  ☐ ☐  If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?
    By providing my electronic signature, I understand the personal information on my application form and my electronic signature will be used for submitting my voter's registration application to the Texas Secretary of State's office. Wanting to register to vote, I authorize the Department of Public Safety to transfer this information to the Texas Secretary of State.
3.  ☐ ☐  Do you wish to donate $1.00 to the Blindness Education Screening and Treatment Program?
4.  ☐ ☐  Do you want to support the Glenda Dawson Donate Life Texas donor registry? If yes, please indicate a donation amount of $1 or more $_____.00
5.  ☐ ☐  Would you like to register as an organ donor?
6.  ☐ ☐  Do you want to support survivors of sexual assault? If yes, please indicate a donation amount of $1 or more $_____.00 to help fund the testing of sexual assault evidence collection kits (rape kits).
7.  ☐ ☐  Do you want to support Texas Veterans?  If yes, please indicate your donation amount $_____.00
8.  ☐ ☐  Do you have a health condition that may impede communication with a peace officer?  If yes, please list _____ (physician must complete form DL-101 prior to the issuance of a DL/ID).
9.  ☐ ☐  **a)** Do you want a Veteran designator on your driver license or identification card?  (proof of Honorable discharge required; acceptable documents are DD214/5, NGB22, VA disability letter, proof of service/verification of honorable service card)
    ☐ ☐  **b)** Are you a 60% disabled Veteran receiving compensation and want to waive the application fee? (see 9a for documents required)
10. ☐ ☐  In the event of injury or death would you like to provide two (2) emergency contacts?  If yes, please list:
    **a)** Name _____ Telephone Number _____ Address _____
    **b)** Name _____ Telephone Number _____ Address _____
11. ☐ ☐  Have you ever had a Texas identification card?  Number _____ When? _____
12. ☐ ☐  Have you ever had a driver license or instruction permit in Texas?     Number _____ When? _____
13. ☐ ☐  Have you ever had a license or instruction permit in any other state? List state(s) _____
    Number(s) _____ When? _____

## REQUIRED INFORMATION FROM DRIVER LICENSE APPLICANTS

YES   NO                         **DRIVING HISTORY INFORMATION**

14. ☐ ☐  Are you enrolled in or have you completed an approved driver education course?
15. ☐ ☐  Is your driver license or driver privilege **CURRENTLY** or **EVER** been suspended, revoked, canceled, denied or disqualified in **ANY** state?
    Where? _____ When? _____ Why? _____

**VEHICLE REGISTRATION AND INSURANCE INFORMATION**

16. ☐ ☐  Do you own a motor vehicle which is required to be registered (Texas Transportation Code Section 502.040)?
17. ☐ ☐  Do you own a motor vehicle which is required to have liability insurance OR other proof of financial responsibility in compliance with the Motor Vehicle Safety Responsibility Act (Texas Transportation Code Section 601.051)?

**UNITED STATES SELECTIVE SERVICE**

Any male United States citizen or immigrant who is at least 18 years of age but less than 26 years of age submitting this application consents to registration with the United States Selective Service System. You must be registered to qualify for federal student aid ( to include Pell grant), job training, federal employment, and citizenship if an immigrant. In Texas, you must be registered to qualify for state college student aid or state employment. If convicted, failure to register with the Selective Service is a felony punishable by up to five years in prison and/or a $250,000 fine. If not registered by age 26, you can no longer register and could permanently lose those benefits associated with registration. For alternative options for applicants who object to conventional military service for religious or other conscientious reasons information is available at: http://www.sss.gov/FactSheets/FSaltsvc.pdf.

DL-14A (Rev. 1/18)                         **APPLICATION CONTINUED ON BACK**

**DRIVER LICENSE APPLICANTS: Answers to 1 through 7 below are for the confidential use of the Department.**

**MEDICAL HISTORY QUESTIONS**

YES   NO

1. ☐ ☐ Do you currently have or have you ever been diagnosed with or treated for any medical condition that may affect your ability to safely operate a motor vehicle?

**EXAMPLES, including but not limited to: Diagnosis or treatment for heart trouble, stroke, hemorrhage or clots, high blood pressure, emphysema (within past two years) • progressive eye disorder or injury (i.e., glaucoma, macular degeneration, etc.) • loss of normal use of hand, arm, foot or leg • blackouts, seizures, loss of consciousness or body control (within the past two years) • difficulty turning head from side to side • loss of muscular control • stiff joints or neck • inadequate hand/eye coordination • medical condition that affects your judgment • dizziness or balance problems • missing limbs**
Please explain and identify medical condition: _____

2. ☐ ☐ Do you have a mental condition that may affect your ability to safely operate a motor vehicle?  If yes, please explain: _____
_____

3. ☐ ☐ Have you ever had an epileptic seizure, convulsion, loss of consciousness, or other seizure?

4. ☐ ☐ Do you have diabetes requiring treatment by insulin?

5. ☐ ☐ Do you have any alcohol or drug dependencies that may affect your ability to safely operate a motor vehicle or have you had any episodes of alcohol or drug abuse within the past two years?

6. ☐ ☐ Within the past two years have you been treated for any other serious medical conditions? Please explain: _____
_____

7. ☐ ☐ Have you **EVER** been referred to the Texas Medical Advisory Board for Driver Licensing?

**NOTICE:** The information on this application is required by the Texas Driver License Act, Texas Transportation Code Chapter 521. Failure to provide the information is cause for refusal to issue a driver license or identification card, and in some cases, cancellation or withdrawal of driving privileges. False information could also lead to criminal charges with penalties of a fine up to $4,000.00 and/or jail.

**Do NOT SIGN BELOW UNTIL INSTRUCTED TO DO SO BY NOTARY PUBLIC OR DRIVER LICENSE EMPLOYEE.**

**CERTIFICATION**
I do solemnly swear, affirm, or certify that I am the person named herein and that the statements on this application are true and correct. I further certify my residence address is a (check one):  (   ) single family dwelling, (   ) apartment, (   ) motel, (   ) temporary shelter. I agree to immediately report to the Texas Department of Public Safety any changes in my medical condition which may affect my ability to safely operate a motor vehicle. I further understand that I am required by law to report any change of name or address to the Department of Public Safety within thirty days.

X _____        _____
   Signature of Applicant                                         Date

Texas law requires the Texas Department of Public Safety must provide every minor applicant (under age 18), and cosigner, for a driver license in Texas, educational information concerning state laws relating to driving while intoxicated, driving by a minor with alcohol in the minor's system, and the implied consent law. The minor applicant and the cosigner must acknowledge receipt of that information prior to issuance of any driver license or permit.

I hereby acknowledge receipt of the information concerning DWI, the Zero Tolerance Law and the Implied Consent Law.

_____        _____        _____
Minor Applicant                         Parent/Legal Guardian                    Date of Receipt

**PARENTAL AUTHORIZATION**

**Required for all driver license applicants under the age of 18**

I do solemnly swear, affirm, or certify that I am the person named herein, that the statements on this application are true and correct, that the above named applicant is my (   ) child (   ) stepchild (   ) ward, and that I have legal custody of the applicant. I authorize the Department of Public Safety to issue a Class (   ) A, (   ) B, (   ) C, or (   ) M license to said minor. The Department can access the said minor's school enrollment records from the Texas Education Agency, and a school administrator or law enforcement officer is authorized to notify the Department if the said minor is absent from school for at least 20 consecutive instructional days.

_____        _____        _____
Usual Written Signature of Parent or Guardian      Driver License Number              Date

**WAIVER OF PARENTAL AUTHORIZATION**

Parental Authorization waived. _____        _____        _____
                                                Signature of Applicant                DL Employee                        ACID

**VERIFICATION**

Sworn to and subscribed before me this _____ day of _____, _____

_____
Notary Public in and for the State of Texas/Authorized Officer

**SOCIAL SECURITY NUMBER COLLECTION DISCLOSURE**

Disclosure of your social security account number is mandatory for identification card and driver license applicants. This information is solicited pursuant to 42 U.S.C. 405(c)(2)(C)(i), 42 U.S.C. 666(a)(13)(A); 49 C.F.R. 383.153, Texas Family Code Section 231.302(c)(1) and Texas Transportation Code Sections 522.021 and 521.142. The Department will use social security number information for identification purposes and will only release the number to the Child Support Enforcement Division of the Attorney General's Office, the U.S. Selective Service Administration, the Texas Secretary of State and the Health and Human Services Commission for statutorily authorized purposes pursuant to Texas Transportation Code Section 521.044.

APPENDIX 029

# Exhibit 8

## APPLICATION FOR RENEWAL/REPLACEMENT/CHANGE
## OF A TEXAS DRIVER LICENSE OR IDENTIFICATION CARD

(Replacement also called Duplicate)

DL or ID NUMBER _____

**APPLICANT INFORMATION**

LAST NAME: _____

FIRST NAME: _____

MIDDLE NAME: _____

SUFFIX: _____

MAIDEN NAME: _____

DATE OF BIRTH (mm/dd/yyyy): _____ – _____ – _____

SSN: _____ – _____ – _____

SEX: (Mark One) ☐ MALE   ☐ FEMALE   WEIGHT: lbs. _____

EYE COLOR: _____   HEIGHT: ft. _____ in. _____

RACE/ETHNICITY: _____   (I) American Indian/Alaska Native
(A) Asian/Pacific Islander   (B) Black   (H) Hispanic   (O) Other   (W) White

**CONTACT INFORMATION**

HOME PHONE: _____

OTHER PHONE: _____

EMAIL: _____

**ADDRESS INFORMATION**

RESIDENCE ADDRESS: _____

CITY: _____ STATE: _____

ZIP CODE: _____ COUNTY: _____

MAILING ADDRESS: _____

CITY: _____ STATE: _____

ZIP CODE: _____ COUNTY: _____

**INFORMATION FORM  (ALL APPLICANTS please answer questions 1 through 10)**

YES  NO

1. ☐ ☐ Are you a citizen of the United States?
2. ☐ ☐ If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?
   By providing my electronic signature, I understand the personal information on my application form and my electronic signature will be used for submitting my voter's registration application to the Texas Secretary of State's office. Wanting to register to vote, I authorize the Department of Public Safety to transfer this information to the Texas Secretary of State.
3. ☐ ☐ Do you wish to donate $1.00 to the Blindness Education Screening and Treatment Program?
4. ☐ ☐ Do you want to support the Glenda Dawson Donate Life Texas donor registry? If yes, please indicate a donation amount of $1 or more $_____.00
5. ☐ ☐ Would you like to register as an organ donor?
6. ☐ ☐ Do you want to support survivors of sexual assault? If yes, please indicate a donation amount of $1 or more $_____.00 to help fund the testing of sexual assault evidence collection kits (rape kits).
7. ☐ ☐ Do you want to support Texas Veterans?  If yes, please indicate your donation amount $_____.00
8. ☐ ☐ Do you have a health condition that may impede communication with a peace officer? If yes, please list _____
   _____ (physician must complete form DL-101 prior to the issuance of a DL/ID).
9. ☐ ☐ a) Do you want a Veteran designator on your driver license or identification card? (proof of Honorable discharge required; acceptable documents are DD214/5, NGB22, VA disability letter, proof of service/verification of honorable service card)
   ☐ ☐ b) Are you a 60% disabled Veteran receiving compensation and want to waive the application fee? (see 9a for documents required)
10. ☐ ☐ In the event of injury or death would you like to provide two (2) emergency contacts? If yes, please list:
   a) Name _____ Telephone Number _____ Address _____
   b) Name _____ Telephone Number _____ Address _____

**For all Driver License Renewals complete MEDICAL questions 11 to 17.** Answers to the questions below are for the confidential use of the Department.

11. ☐ ☐ Do you currently have or have you ever been diagnosed with or treated for any medical condition that may affect your ability to safely operate a motor vehicle?

**Examples, including but not limited to:** Diagnosis or treatment for heart trouble, stroke, hemorrhage or clots, high blood pressure, emphysema (within past two years) • progressive eye disorder or injury (i.e., glaucoma, macular degeneration, etc.) • loss of normal use of hand, arm, foot or leg • blackouts, seizures, loss of consciousness or body control (within the past two years) • difficulty turning head from side to side • loss of muscular control • stiff joints or neck • inadequate hand/eye coordination • medical condition that affects your judgment • dizziness or balance problems • missing limbs

If you answered **YES** above, has your condition ☐ **IMPROVED** or ☐ **DETERIORATED** since your last application for an original/renewal remake of your driver license?

12. ☐ ☐ Do you have a mental condition that may affect your ability to safely operate a motor vehicle? If yes, please explain: _____
   _____
13. ☐ ☐ Have you ever had an epileptic seizure, convulsion, loss of consciousness, or other seizure?
14. ☐ ☐ Do you have diabetes requiring treatment by insulin?
15. ☐ ☐ Do you have any alcohol or drug dependencies that may affect your ability to safely operate a motor vehicle or have you had any episodes of alcohol or drug abuse within the past two years?
16. ☐ ☐ Within the past two years, have you been treated for any other serious medical conditions?
   Explain: _____
17. ☐ ☐ Have you **EVER** been referred to the Texas Medical Advisory Board for Driver Licensing?

Any male United States citizen or immigrant who is at least 18 years of age but less than 26 years of age **submitting this application consents to registration with the United States Selective Service System.** You must be registered to qualify for federal student aid (to include Pell grant), job training, federal employment, and citizenship if an immigrant. In Texas, you must be registered to qualify for state college student aid or state employment. If convicted, failure to register with the Selective Service is a felony punishable by up to five years in prison and/or a $250,000 fine. If not registered by age 26, you can no longer register and could permanently lose those benefits associated with registration. For alternative options for applicants who object to conventional military service for religious or other conscientious reasons information is available at: http://www.sss.gov/FactSheets/FSaltsvc.pdf.

I do solemnly swear, affirm, or certify that I am the person named herein and that the statements on this information form are true and correct. I further certify my residence address is a (check one):  (  ) single family dwelling, (  ) apartment, (  ) motel, (  ) temporary shelter. I agree to immediately report to the Texas Department of Public Safety any changes in my medical condition which may affect my ability to safely operate a motor vehicle.

DL-43 (Rev. 1/18)        SIGNATURE OF APPLICANT _____        DATE _____

APPENDIX 031

# SOLICITUD PARA RENOVAR, REEMPLAZAR, Ó HACER CAMBIOS EN LA LICENCIA DE CONDUCIR O TARJETA DE IDENTIFICACIÓN DEL ESTADO DE TEXAS

**(El reemplazo también es llamado duplicado)**

NUMERO DE LICENCIA O DE TARJETA DE IDENTIFICACIÓN: _____

**INFORMACIÓN DEL SOLICITANTE**

APELLIDO: _____
PRIMER NOMBRE: _____
SEGUNDO NOMBRE: _____
SUFIJO: _____
APELLIDO DE SOLTERA: _____
FECHA DE NACIMIENTO (mm/dd/aaaa): _____
NÚMERO DE SEGURO SOCIAL: _____ - _____ - _____
SEXO: (Marque uno) ☐ HOMBRE ☐ MUJER   PESO: en libres. _____
COLOR DE LOS OJOS: _____  ESTATURA: pies ____ pulg. ____
RAZA/ETNIA: _____ (I) Amerindio/Nativo de Alaska  (A) Asiático/nativo
de las Islas del Pacífico  (B) Negro (H) Hispano (O) Otro (W) Blanco

**INFORMACIÓN DE CONTACTO**

NÚMERO DE TELÉFONO: _____
TELÉFONO SECUNDARIO: _____
CORREO ELECTRÓNICO: _____
**SU DOMICILIO**
DOMICILIO DONDE RESIDE: _____
CIUDAD: _____ ESTADO: _____
CÓDIGO POSTAL: _____ CONDADO: _____
DOMICILIO POSTAL (Lugar donde recibe su correspondencia):
_____
CIUDAD: _____ ESTADO: _____
CÓDIGO POSTAL: _____ CONDADO: _____

**INFORMACIÓN SOBRE EL SOLICITANTE  (TODOS LOS SOLICITANTES favor de contestar las preguntas 1 a 10)**

|  | SI | NO |  |
|---|---|---|---|
| 1. | ☐ | ☐ | ¿Es usted ciudadano de los Estados Unidos? |
| 2. | ☐ | ☐ | Si usted es ciudadano de los Estados Unidos, ¿le gustaría registrarse para votar? Si ya está registrado, ¿le gustaría actualizar su información de votante? |

Al proporcionar mi firma electrónica, comprendo que la información personal en mi solicitud, junto con mi firma electrónica, se usará para enviar mi solicitud de registro electoral a la oficina de la Secretaría del Estado de Texas. Deseo registrarme para votar; por lo tanto, autorizo al Departamento de Seguridad Pública para transferir esta información a la Secretaría del Estado de Texas.

| 3. | ☐ | ☐ | ¿Desea usted donar $1.00 al Programa de Educación, Evaluación y Tratamiento de la Ceguera? |
|---|---|---|---|
| 4. | ☐ | ☐ | ¿Desea apoyar el Programa de Registro de Texas-Glenda Dawson Donar Vida? En caso afirmativo, indicar una cantidad de la donación de $1 o más $_____.00 |
| 5. | ☐ | ☐ | ¿Desea registrarse como donador de órganos? |
| 6. | ☐ | ☐ | ¿Quieres apoyar a los sobrevivientes de asalto sexual? Si es así, porfavor indique la cantidad de donación de $1 o más $_____.00 para ayudar a financiar la recopilación de evidencia de asalto sexual (kit de violación) |
| 7. | ☐ | ☐ | ¿Desea apoyar los Veteranos de Texas? Si la respuesta es sí, por favor, indique la cantidad de su donación $_____.00 |
| 8. | ☐ | ☐ | ¿Tiene usted alguna afección médica que le pueda impedir la comunicación con un oficial de la policía? En caso afirmativo, por favor indique _____ (el médico debe llenar el formulario DL-101 antes de emitir una licencia de conducir o tarjeta de identificación). |
| 9. | ☐ | ☐ | **a)** Desea una insignia de Veterano en su licencia de conducir o su tarjeta de identificación? (Se requiere comprobante de baja honorable; los documentos aceptables son DD214/5, NGB22, carta de discapacidad del VA, prueba de servicio/verificación de la tarjeta de servicio honorable) |
|  | ☐ | ☐ | **b)** ¿Es usted un Veterano que recibe 60% de compensación por discapacidad y desea quedar exento de los derechos de solicitud? (vea el punto 9a para conocer qué documentos se requieren) |
| 10. | ☐ | ☐ | En caso de sufrir lesiones o la muerte, ¿le gustaría proporcionar dos (2) contactos para emergencias?  En caso afirmativo, por favor indique: |
|  |  |  | **a)** Nombre _____ Número telefónico _____ Domicilio _____ |
|  |  |  | **b)** Nombre _____ Número telefónico _____ Domicilio _____ |

**Para todas las Renovaciones de Licencia de Conducir, complete las preguntas MÉDICAS 11 a 17.**
Las respuestas a las siguientes preguntas son para uso confidencial del Departamento.

| 11. | ☐ | ☐ | ¿Tiene actualmente o alguna vez ha sido diagnosticado con o tratado por alguna enfermedad que pueda afectar su capacidad de operar un vehículo motorizado de manera segura? |
|---|---|---|---|

**Ejemplos, incluyendo pero no limitado a:** Diagnóstico o tratamiento por problemas cardíacos, derrame cerebral, hemorragia o coágulos, presión arterial alta, enfisema (en los últimos dos años) • enfermedad progresiva o lesión de la vista (como glaucoma, degeneración macular, etc.) • pérdida del uso normal de la mano, brazo, pie o pierna • desvanecimientos, ataques, pérdida de la consciencia o control del cuerpo (en los últimos dos años) • dificultad para voltear la cabeza de un lado a otro • pérdida de control muscular • articulaciones o cuello rígidos • coordinación inadecuada de mano/ojo • afección médica que altere su juicio • mareos o problemas de equilibrio • pérdida de algún miembro

Si respondió **SÍ** a la pregunta anterior, ¿su afección ha ☐ **MEJORADO** o ☐ **EMPEORADO** desde su última solicitud de original/renovación de licencia de conducir?

| 12. | ☐ | ☐ | ¿Tiene usted una condición mental que puede afectar su capacidad para operar con seguridad un vehículo motorizado?  Si su respuesta es si, por favor lo explicar: _____ |
|---|---|---|---|
| 13. | ☐ | ☐ | ¿Alguna vez ha tenido un ataque epiléptico, convulsión, pérdida de la consciencia u otro ataque? |
| 14. | ☐ | ☐ | ¿Tiene diabetes que requiera tratamiento con insulina? |
| 15. | ☐ | ☐ | ¿Tiene alguna dependencia del alcohol o de drogas que pudiera afectar su capacidad de operar un vehículo motorizado de manera segura o ha tenido algún episodio de abuso de drogas o alcohol en los últimos dos años? |
| 16. | ☐ | ☐ | En los últimos dos años, ¿ha recibido tratamiento por alguna otra afección médica grave? Explique: _____ |
| 17. | ☐ | ☐ | ¿Alguna vez ha sido remitido al Comité Asesor Médico de Licencias de Conducir de Texas? |

Cualquier hombre ciudadano o inmigrante de los Estados Unidos entre 18 y 26 años de edad **que presente esta solicitud otorga su consentimiento para ser registrado en el Sistema de Servicio Militar Selectivo de los Estados Unidos.** Usted debe estar registrado para tener derecho a recibir ayuda federal estudiantil (incluso la beca Pell Grant), capacitación laboral, empleo federal y la ciudadanía si es inmigrante,. En Texas, usted debe estar registrado para tener derecho a recibir ayuda estudiantil universitaria o empleo con el Estado. No registrarse en el Servicio Militar Selectivo es un delito mayor. Si es declarado culpable de ello, podría ser castigado hasta con cinco años de prisión y/o una multa de 250,000 dólares. Si no se ha registrado antes de cumplir 26 años, ya no se podrá registrar y podría perder permanentemente los beneficios asociados con el registro. Para conocer otras opciones alternativas para solicitantes que se oponen al servicio militar convencional por motivos religiosos u otros motivos de conciencia, podrá encontrar información disponible en: http://www.sss.gov/FactSheets/FSaltsvc.pdf.

Juro solemnemente, afirmo o certifico que soy la persona que se indica en el presente documento y que las declaraciones en esta solicitud son verdaderas y correctas. Además certifico que mi domicilio de residencia es (marque una opción): (  ) casa residencial, (  ) apartamento, (  ) hotel, (  ) sitio de refugio temporal. Estoy de acuerdo en informar inmediatamente al Departamento de Seguridad Pública de Texas cualquier cambio en mi condición médica que pueda afectar mi capacidad para conducir de manera segura un vehículo motorizado.

DL-43 (Rev. 1/18)               _____               _____
                                FIRMA DEL ASPIRANTE                           FECHA

APPENDIX 032

# Exhibit 9

# APPLICATION FOR CHANGE OF ADDRESS ON VALID TEXAS DRIVER LICENSE (DL) & IDENTIFICATION CARD (ID)
## Not For Commercial Driver License



DL-64 (Rev. 2/17)

**DO NOT MAIL CASH.**
Mail check or money order payable to:
Texas Department of Public Safety

**MAIL COMPLETED FORM AND $10 FEE TO:**
Texas Department of Public Safety, PO Box 149008, Austin, Texas, 78714-9008

Driver License Number

Expiration Date
M M / D D / Y Y Y Y

Social Security Number

I.D. Card Number

Date of Birth
M M / D D / Y Y Y Y

Suffix (SR., JR., etc.)

Last Name

First Name

Middle / Maiden

**Residence** - Street Address (Address cannot be a post office box)

City

County            State      Zip Code

Do you want to support the Glenda Dawson Donate Life Texas donor registry? If yes, please indicate a donation amount of $1 or more $_____.00

Yes ☐  No ☐

Would you like to register as an organ donor?

Yes ☐  No ☐

**Mailing** - Street Address

City

County            State      Zip Code

If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?

Yes ☐  No ☐

Date_____  Signature _____

**See Important Instructions on Back**

APPENDIX 034

## No Waiting in Line! – Change your address online
## Visit our Web site at www.texas.gov/driver

I do solemnly swear, affirm, or certify that I am the person named herein and that the statements on this application are true and correct. I further certify my residence address is a: (check one) (   ) single family dwelling, (   ) apartment, (   ) motel, (   ) temporary shelter.

_____          _____
Signature of Applicant                                               Date

In the event of injury or death would you like to provide two (2) emergency contacts?  If yes, please list:

**a)** Name _____ Address _____ Telephone Number _____

**b)** Name _____ Address _____ Telephone Number _____

If you currently hold a valid Texas non-commercial driver license or identification card and have not reported your change of address as required by TRC 521.054, you may do so by mail or on the Internet. To report a change of address by mail, complete the reverse side of this form and mail along with the required fee(s) to the Texas Department of Public Safety. To report a change of address online, go to www.texas.gov/driver. A driver license or identification card validating your reported address change will be mailed to you. This form may **ONLY** be used to change your address.

Should you desire a new photo or need to change information other than your address, you must apply at the local driver license office.

**If you are not a US citizen you must apply at the local driver license office to change your address.**

### United States Selective Service

Any male United States citizen or immigrant who is at least 18 years of age but less than 26 years of age submitting this application consents to registration with the United States Selective Service System. You must be registered to qualify for federal student aid (to include Pell grant), job training, federal employment, and citizenship if an immigrant. In Texas, you must be registered to qualify for state college student aid or state employment. If convicted, failure to register with the Selective Service is a felony punishable by up to five years in prison and/or a $250,000 fine. If not registered by age 26, you can no longer register and could permanently lose those benefits associated with registration. For alternative options for applicants who object to conventional military service for religious or other conscientious reasons information is available at: http://www.sss.gov/FactSheets/FSaltsvc.pdf.

**Below is an example of how numbers and letters should be written on front of this form:**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 |

| A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X | Y | Z |

APPENDIX 035

# Exhibit 10



THE OFFICIAL WEBSITE OF THE STATE OF TEXAS

**Texas Department of Public Safety**
Driver License Division

**Driver License Renewal, Replacement, Change of Address or Change of Emergency Contacts**

## Eligibility

Read the full eligibility requirements for using the online renewal, replacement or address change application.

If you have unpaid reinstatement fees, you are not eligible to renew online until you pay them.

1. Who is eligible to renew, replace or change the address on their driver license or ID card online?
2. Is there an age limit to renew my driver license or ID card online?

## About Renewing Your Driver License or ID

3. How does online renewal work?
4. Will I get my driver license or ID faster if I renew online?
5. Where is my license or ID?
6. Can I renew, replace or change my address online any time?
7. Can I replace a lost or stolen license or ID online?
8. Can I change my name online?
9. If I renew my driver license or ID card online, will the picture on my card stay the same?
10. Can I get a temporary driver license with this service?
11. How often do I have to renew my driver license or ID card?

## About Replacing or Changing Your Address

12. How does the online replacement or change of address work?
13. Can I replace or change my address at the same time as my renewal?
14. Can I replace or change my address even if it is not time for me to renew?
15. If I replace or change my address online will my expiration date change?
16. What should I do with the driver license or ID card that has my old address?

## About Updating Emergency Contacts

17. How does the change of emergency contacts work?
18. What are the emergency contacts used for?
19. Can I view and change my emergency contacts when completing a renewal, replacement, or change of address on my driver license or ID?
20. Can I view and change my emergency contacts even if I am not eligible to renew, replace, or change the address on my driver license or ID?
21. Is there a limit on how many times I can view and change my emergency contacts?
22. Is there a fee to view and change my emergency contacts?
23. If I am a disabled veteran, do I have to pay to view and change my emergency contacts?

## Real ID Compliance

24. Do I need a REAL ID?
25. Do I have to get a REAL ID in person?
26. Why did I receive a notice asking me to renew early?
27. I am not eligible to renew early. Do I have any other options?
28. Is there additional information about REAL ID I should know?

## Fees and Payments

29. How much does an online renewal cost?
30. How much does an online replacement or address change cost?
31. Are the fees different for online, in-person, telephone, and mail-in renewals?

## Troubleshooting

31. Are the fees different for online, in-person, telephone, and mail-in renewals?

## Troubleshooting

32. What do the options Renew Only, Replacement or Change Address Only and Do Both mean?
33. What does it mean if I choose to become an organ donor?

## Who is eligible to renew, replace or change the address on their driver license or ID card online?

Read the full eligibility requirements for using the online renewal, replacement or address change application.

Return to the Top of Document

## Is there an age limit to renew my driver license or ID card online?

Applicants who are 79 or older must renew driver licenses in person at a driver license office, but can still renew ID cards online. This includes military personnel and people who reside out of state.

Return to the Top of Document

## How does online renewal work?

### Step 1: Log In

Log in by entering your

1. Driver license or ID card number,
2. Date of birth,
3. Last four digits of Social Security number, and
4. Audit number (see driver license samples for location of audit number). In lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75.

### Step 2: Select Your Services

You may be eligible to

1. Renew,
2. Change your address, or
3. Renew **and** change your address.

### Step 3: Select Optional Items and Complete Affirmations

Optional Items

1. Donations to:
   - Blindness, Education, Screening and Treatment (BEST)
   - Glenda Dawson - Donate Life Texas Registry
   - Fund for Veterans' Assistance
   - Fund for the testing of sexual assault evidence collection kits (rape kits)

2. Register to vote

Affirmations

1. U.S. citizenship. You must be a U.S. citizen to renew, replace or change your address online.
2. Vision and physical/mental condition. You must not have had any changes to your vision or health that affect your ability to drive safely (if renewing a driver license).
3. Residence Address. Your residence address must be a single family dwelling, apartment, motel or temporary shelter.

### Step 4: Review Order and Make Payment

Review order information, make changes if necessary, and submit payment information.

Your new driver license or ID card will be mailed to you in two to three weeks. If you renewed, replaced or changed the address for a driver license, you need to print your temporary driver license (valid for 60 days) from the receipt page. You may also choose to receive the temporary driver license or ID by email, but you must print it in order for it to be a valid document.

### Step 5: View and Change Emergency Contacts

**Step 5: View and Change Emergency Contacts**

At the end of a successful transaction, you will be able to view and change your emergency contacts for no additional fee.

**Step 6: Invalidate Old Driver License/ID**

Texas law says you cannot have more than one valid driver license or ID card. After receiving your new driver license or ID, invalidate your old card by cutting it up.

Return to the Top of Document

## Will I get my driver license or ID faster if I renew online?

Renewing online is faster than filling out and submitting paperwork via mail or waiting in line at a driver license office. After you request a new license or ID, you will receive it in the mail in two to three weeks, no matter what method you used to request it.

Return to the Top of Document

## Where is my license or ID?

You can track whether your license or ID card has been produced or mailed on the DPS website. Please wait 72 hours after payment to track the status of your license/ID card.

Return to the Top of Document

## Can I renew, replace or change my address online any time?

Yes. The system is available 7 days per week, 24 hours per day except for routine maintenance down time.

Return to the Top of Document

## Can I replace a lost or stolen license or ID online?

Yes, if you have recorded the audit number from your last card. In lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75 or you must visit a driver license office to get a new card.

Return to the Top of Document

## Can I change my name online?

No. Name changes must be done in person at a driver license office.

Return to the Top of Document

## If I renew my driver license or ID card online, will the picture on my card stay the same?

Yes. The picture on your new driver license or ID card will stay the same. If you want a new picture, you must go to a driver license office to renew.

Return to the Top of Document

## Can I get a temporary driver license with this service?

Yes. When you complete a driver license renewal, replacement or address change, you will print the receipt and use it as a temporary driver license (valid for 60 days). You may also choose to receive the temporary driver license or ID by email, but you must print it in order for it to be a valid document. You should keep the temporary license with your old card until the new one arrives.

Return to the Top of Document

## How often do I have to renew my driver license or ID card?

## How often do I have to renew my driver license or ID card?

You must renew every six years.

Return to the Top of Document

## How does the online replacement or change of address work?

### Step 1: Log In

Log in by entering your

1. Driver license or ID card number,
2. Date of birth,
3. Last four digits of Social Security number, and
4. Audit number (see driver license samples for location of audit number). In lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75.

### Step 2: Select Your Services

You may be eligible to

1. Renew,
2. Replace or change your address, or
3. Renew **and** change your address.

### Step 3: Select Optional Items and Complete Affirmations

Optional Items

1. Donations to:
   - Blindness Education, Screening, and Treatment (BEST)
   - Glenda Dawson - Donate Life Texas Registry
   - Fund for Veterans' Assistance
   - Fund for the testing of sexual assault evidence collection kits (rape kits)

2. Register to vote

Affirmations

1. U.S. citizenship. You must be a U.S. citizen to renew, replace or change your address online.
2. Vision and physical/mental condition. You must not have had any changes to your vision or health that affect your ability to drive safely (if renewing a driver license).
3. Residence Address. Your residence address must be a single family dwelling, apartment, motel or temporary shelter.

### Step 4: Review Order and Make Payment

Review order information, make changes if necessary, and submit payment information.

Your new driver license or ID card will be mailed to you in two to three weeks. If you renewed, replaced or changed the address for a driver license, you need to print your temporary driver license (valid for 60 days) from the receipt page. You may also choose to receive the temporary driver license or ID by email, but you must print it in order for it to be a valid document.

### Step 5: View and Change Emergency Contacts

At the end of a successful transaction, you will be able to view and change your emergency contacts for no additional fee.

### Step 6: Invalidate Old Driver License/ID

Texas law says you cannot have more than one valid driver license or ID card. After receiving your new driver license or ID, invalidate your old card by cutting it up.

Return to the Top of Document

## Can I replace or change my address at the same time as my renewal?

Yes. You can change your home and mailing address when you renew.

Return to the Top of Document

## Can I replace or change my address even if it is not time for me to renew?

APPENDIX 040

### Can I replace or change my address even if it is not time for me to renew?

Yes.

Return to the Top of Document

### If I replace or change my address online will my expiration date change?

No. Your new driver license or ID card will retain the expiration date that is on your current driver license or ID card, unless you renew it.

Return to the Top of Document

### What should I do with the driver license or ID card that has my old address?

Texas law says you cannot have more than one valid driver license or ID card. After receiving your new driver license or ID, invalidate your old card by cutting it up.

Return to the Top of Document

### How does the change of emergency contacts work?

The change of emergency contacts system is a simple process. After logging into the website, all customers will be able to view and change the emergency contacts DPS has on file for no fee*. Once on the emergency contacts page, you can view and change the primary and secondary contacts DPS has on file. If you are eligible and you choose to renew, replace, or change the address of your driver license or ID card, you will be able to view and change your emergency contacts at the end of the transaction. You will have the ability to change contact information such as name, phone numbers, and address, and add or delete contacts. When adding or changing a contact, the following fields are required:

- Last Name
- 1st Phone Number
- Country

*When logging into the website, in lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75. This fee applies regardless of what service you select.

Return to the Top of Document

### What are the emergency contacts used for?

If you are injured or die during a vehicle accident or another emergency situation, law enforcement officers will attempt to reach your emergency contacts to inform them.

Return to the Top of Document

### Can I view and change my emergency contacts when completing a renewal, replacement, or change of address on my driver license or ID?

Yes. At the end of a successful transaction, you will be able to view and change the emergency contacts DPS has on file for no fee.

Return to the Top of Document

### Can I view and change my emergency contacts even if I am not eligible to renew, replace, or change the address on my driver license or ID?

Yes. After logging into the website, all customers will be able to view and change the emergency contacts DPS has on file for no fee*.

*When logging into the website, in lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75. This fee applies regardless of what service you select.



"When logging into the website, in lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75. This fee applies regardless of what service you select.

Return to the Top of Document

### Is there a limit on how many times I can view and change my emergency contacts?

No. You are able to view and change your emergency contacts as many times as you want.

Return to the Top of Document

### Is there a fee to view and change my emergency contacts?

No. There is no fee to view and change your emergency contacts. However, when logging into the website, in lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75.

Return to the Top of Document

### If I am a disabled veteran, do I have to pay to view and change my emergency contacts?

No. There is no fee to view and change your emergency contacts. However, when logging into the website, in lieu of providing your audit number, you may select the checkbox on the login page stating "I do not know my audit number" to complete additional authentication for an additional fee of $1.75.

Return to the Top of Document

### Do I need a REAL ID?

It depends. If your driver license is still valid, you may continue to use it for non-federal purposes, such as operating a motor vehicle, voting, or banking. You will not be able to use it for federal identification purposes, such as boarding domestic flights or entering secure federal facilities, after October 1, 2020. However, if you have another REAL ID compliant card, like a valid U.S. passport, you can use that as your REAL ID.

Return to the Top of Document

### Do I have to get a REAL ID in person?

No! You can check your eligibility to conduct an online transaction here: www.texas.gov/dlrenewal.

Return to the Top of Document

### Why did I receive a notice asking me to renew early?

Notices are being sent out reminding customers that they can renew their DL or ID card up to two years in advance of expiration to provide customers with plenty of notice to receive a REAL ID compliant card by the October 1, 2020 deadline if they want one. However, if you have another REAL ID compliant card, like a valid U.S. passport, that can be used for air travel and entering federal facilities.

Return to the Top of Document

### I am not eligible to renew early. Do I have any other options?

Yes! You are welcome to request a replacement DL or ID card on Texas.gov here: www.texas.gov/dlrenewal.

Return to the Top of Document

### Is there additional information about REAL ID I should know?

### I am not eligible to renew early. Do I have any other options?

Yes! You are welcome to request a replacement DL or ID card on Texas.gov here: www.texas.gov/dlrenewal.

Return to the Top of Document

### Is there additional information about REAL ID I should know?

Maybe. Please feel free to view additional information on the Texas Department of Public Safety website here: http://www.dps.texas.gov/DriverLicense/federalRealIdAct.htm.

Return to the Top of Document

### How much does an online renewal cost?

The Texas.gov price is:

- Driver License Renewal: $25.00
- Driver License with Motorcycle Class Renewal: $33.00
- ID Renewal: $16.00
- Additional authentication fee in lieu of providing your audit number from your current license or ID card: $1.75

There is no extra cost to change your address if you change your address with a renewal.

Return to the Top of Document

### How much does an online replacement or address change cost?

If you replace or change your address without renewing your card, the Texas.gov price is $11.00.

There is no extra cost to change your address if you change your address at the same time as renewing. In lieu of providing your audit number, there is an additional fee of $1.75

Return to the Top of Document

### Are the fees different for online, in-person, telephone, and mail-in renewals?

If you have your audit number, the renewal fee is the same for online, in-person and via telephone renewals. In lieu of providing your audit number, there is an additional fee of $1.75.

There is no additional fee for mail-in renewals (but you have to pay for postage).

Return to the Top of Document

### What do the options Renew Only, Replacement or Change Address Only and Do Both mean?

- **Do Both Renew & Change Address:** There is no extra cost to change your address if you change your address with your renewal.
- **Renew Only:** You will not be able to change the address on your card if you select this option.
- **Replace or Change Address Only:** You will only replace or change your address and the expiration date on your card remains the same.

Return to the Top of Document

### What does it mean if I choose to become an organ donor?

Learn more about organ donation at the Donate Life Texas website.

Return to the Top of Document

---

**Help**
For technical assistance with this application, please call
1-877-452-9060 or send an email to Texas.gov Help✉.

**Resources**
- Texas Department of
  Public Safety

**Texas.gov**
Texas.gov Policies
© 2012 Texas.gov
Version:6.9.2

# Exhibit 11





Sample size and data quality measures (including coverage rates, allocation rates, and response rates) can be found on the American Community Survey website in the Methodology section.

Data are based on a sample and are subject to sampling variability. The degree of uncertainty for an estimate arising from sampling variability is represented through the use of a margin of error. The value shown here is the 90 percent margin of error. The margin of error can be interpreted roughly as providing a 90 percent probability that the interval defined by the estimate minus the margin of error and the estimate plus the margin of error (the lower and upper confidence bounds) contains the true value. In addition to sampling variability, the ACS estimates are subject to nonsampling error (for a discussion of nonsampling variability, see Accuracy of the Data). The effect of nonsampling error is not represented in these tables.

Hurricanes caused a disruption of data collection activities from September through December of 2017 in Puerto Rico. All 2017 1-year estimates for Puerto Rico are based on data collected prior to this disruption. For more information, see https://www.census.gov/programs-surveys/acs/technical-documentation/user-notes/2018-02.html.

### Methodology

Discover how the ACS produces reliable statistics for communities, how the quality is measured, and what the quality measures mean.

### Code Lists, Definitions, and Accuracy

View the detailed codes and definitions for variables, statistical testing, and an explanation of sample design, methodology, and accuracy for the ACS.

*Last Revised: August 22, 2019*

**Sign Up for Email Updates**
To sign up for updates please enter your contact information below.

Enter your email address    SUBSCRIBE

**Stay Current**
Newsroom
America Counts
Blogs
Stats for Stories

**Stay Connected**

Census Jobs | Information Quality | Data Linkage Infrastructure | Data Protection and Privacy Policy | Accessibility | FOIA
| U.S. Department of Commerce | USA.gov

Measuring America's People, Places, and Economy

Is this page helpful?
Yes    No

# Exhibit 12





# TEXAS DEPARTMENT OF PUBLIC SAFETY

### 5805 N. LAMAR BLVD • BOX 4087 • AUSTIN, TEXAS 78773-0001
### 512/424-2000
www.dps.texas.gov

STEVEN C. McCRAW
DIRECTOR
DAVID G. BAKER
ROBERT J. BODISCH, SR.
DEPUTY DIRECTORS

COMMISSION
A. CYNTHIA LEON, CHAIR
MANNY FLORES
FAITH JOHNSON
STEVEN P. MACH
RANDY WATSON

September 9, 2015

Keith Ingram
Director of Elections
Texas Secretary of State
P.O. Box 12060
Austin, Texas 78711

Dear Director Ingram:

This is to update you on the voter registration program at the Department of Public Safety.
Enclosed you will find the Department's current National Voter Registration Act Implementation
Plan regarding the implementation of voter registration procedures under Chapter 20 of the Texas
Elections Code. This plan is being provided in accordance with Texas Election Code §20.004(c).
The Department will continue to review this plan following each legislative session and make
appropriate modifications as necessary.

For the past several years the Department's voter registration program has been overseen by Sheri
Gipson, Senior Manager, Driver License Division and other staff members. As Ms. Gipson has
retired, the Department has appointed new agency coordinators.   Effective immediately, Tony
Rodriguez, Senior Manager, Customer Operations and Bob Myers, Training Specialist, Customer
Support will be the persons responsible for the coordination of the Department's voter registration
program.   Mr. Myers is responsible for the training of agency employees in voter registration
procedures and policy and Mr. Rodriguez oversees the program in our driver license offices
statewide. The contact information for the coordinators can be found in the Implementation Plan.

Please feel free to contact me if you are in need of additional information or have any questions.

Sincerely,

Joe Peters
Assistant Director
Driver License Division

JP:ktmd

Enclosure

EQUAL OPPORTUNITY EMPLOYER
COURTESY • SERVICE • PROTECTION

APPENDIX 048

D_00021063

# Texas Department of Public Safety
## National Voter Registration Act Implementation Plan

1. The National Voter Registration Act (NVRA) coordinators are:

   Tony Rodriguez
   Senior Manager, Customer Operations
   DPS Driver License Division
   5805 North Lamar Blvd.
   Austin Texas 78752
   (512) 424-5657

   Bob Myers
   Training Specialist, Customer Support
   DPS Driver License Division
   5805 North Lamar Blvd.
   Austin Texas 78752
   (512) 424-5538

2. The Texas Department of Public Safety (DPS) will be required to provide voter registration services.  This will be accomplished through the driver licensing program managed by the Driver License Division.

3. Basic overview of procedures:

   a. The Department of Public Safety will provide to each person who applies in person at the Department's driver license offices for an original or renewal of a driver license, a personal identification card, a duplicate or corrected license or card or an election identification certificate (EIC) an opportunity to complete a voter registration application form.

   b. The Department will use a form and procedure that combines the department's application form for a license, identification card or EIC with an officially prescribed voter registration application form. The form includes the opportunity for the applicant to indicate whether they desire to register to vote, or if registered, to update their voter information.  The form will also  inform the applicant that the applicant's electronic signature provided to the department will be used for submitting the applicant's voter registration application

   c. The department will use a change of address form and procedure that combines department and voter registration functions.  The change of address form submitted in person will allow a licensee or cardholder to

APPENDIX 049

D_00021064

indicate whether the change of address is also to be used for voter registration purposes.

d. Each weekday the Department is regularly open for business, the Department will electronically transfer to the Secretary of State (SOS) the name and relevant data regarding each applicant who is of voting age and a United States citizen who affirmatively answered the voter registration question. The scope of the information provided and method of data transfer will be established by the Department and SOS.

e. When the Department mails current license or identification card holders notice advising the applicant they are eligible to renew their driver license or identification card by mail the mailing will include an officially prescribed voter registration application form.

f. For applications submitted at driver license offices the customer service representatives:
   i. provide each applicant for an original or renewal of a driver license, a personal identification card, a duplicate or corrected license or card or an EIC the required application form which includes the opportunity for the applicant to indicate whether they desire to register to vote, or if registered, to update their voter information;
   ii. follow Department instructions and training regarding entering applicant data into the Driver License System (DLS) database;
   iii. provide a receipt to the applicant prior to the conclusion of the transaction and have the applicant verify all information, including the applicant's response to the voter registration question.
   iv. Issue a receipt which includes a photographic image to the applicant.

g. Online renewal of driver license or identification card or change of address.
   i. The online renewal and online address change process through Texas.gov will include a link to websites providing information regarding how to register to vote in Texas.

4. Basic overview of training: The DLD NVRA Coordinator from the DLD Training Unit or the DLD training specialists will provide NVRA training during new employee orientation. The DLD will provide additional training as needed during regional and divisional meetings and during regular in-service training provided to DLD employees.

5. Voter registration services are available at all driver license offices during regular business hours. Office hours vary based on location. The hours of operation for each office are available online. The majority of driver license offices are open between 8:00 a.m. to 5:00 p.m., Monday through Friday.

APPENDIX 050

D_00021065

# Exhibit 13

## Qualifications

- You must register to vote in the county in which you reside.
- You must be a citizen of the United States.
- You must be at least 17 years and 10 months old to register, and you must be 18 years of age by Election Day.
- You must not be finally convicted of a felony, or if you are a felon, you must have completed all of your punishment, including any term of incarceration, parole, supervision, period of probation, or you must have received a pardon.
- You must not have been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

## Filling out the Application

- Review the application carefully, fill it out, sign and date it and mail it to the voter registrar in your county or drop it by the Voter Registrar's office.

All voters who register to vote in Texas must provide a Texas driver's license number or personal identification number issued by the Texas Department of Public Safety. If you don't have such a number, simply provide the last four digits of your social security number. If you don't have a social security number, you need to state that fact.

Your voter registration will become effective 30 days after it is received or on your 18th birthday, whichever is later. Your registration must be effective on or before an election day in order to vote in that election.

If you move to another county, you must re-register in the county of your new residence.

Please visit the Texas Secretary of State website, www.sos.state.tx.us, and for additional election information visit www.votetexas.gov.

Este formulario está disponible en español. Favor de llamar a su registrador de votantes local para conseguir una versión en español.

*Fold on line and seal before mailing*

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

## BUSINESS REPLY MAIL
FIRST-CLASS MAIL   PERMIT NO. 4511   AUSTIN, TX

POSTAGE WILL BE PAID BY ADDRESSEE

SECRETARY OF STATE
ELECTIONS DIVISION
PO BOX 12887
AUSTIN TX 78711-9972



EXHIBIT
3L

APPENDIX 052

REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPOSE ADHESIVE ... RE
REMOVE TO EXPOSE ... REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPOSE ... RE
REMOVE TO EXPOSE ... REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPOSE ADHESIVE ... REMOVE T
REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPO
REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPOSE ADHESIVE ... REMOVE TO EXPOS

## Texas Voter Registration Application

| | For Official Use Only |
|---|---|

Prescribed by the Office of the Secretary of State     VR64.2016E.J3

Please complete sections by printing LEGIBLY. If you have any questions about how to fill out this application, please call your local voter registrar.

**1 These Questions Must Be Completed Before Proceeding. Check One.**

☐ New Application ☐ Change of Address, Name, or Other Information ☐ Request for a Replacement Card

Are you a United States Citizen? ☐ Yes ☐ No

Will you be 18 years of age on or before election day? ☐ Yes ☐ No

**If you checked 'No' in response to either of the above, do not complete this form.**

Are you interested in serving as an election worker? ☐ Yes ☐ No

**2** | **Last Name** Include Suffix if any (Jr, Sr, III) | **First Name** | **Middle Name** (If any) | **Former Name** (if any) |

**3** **Residence Address:** Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address)
| City | **TEXAS** |
| County | Zip Code |

**4** **Mailing Address:** Street Address and Apartment Number. (If mail cannot be delivered to your residence address.)
| City | State |
| | Zip Code |

**5 City and County of Former Residence in Texas**

**6** Date of Birth: (mm/dd/yyyy)
☐☐ / ☐☐☐ / ☐☐☐☐

**7** Gender (Optional)
☐ Male
☐ Female

**8** Telephone Number (Optional) Include Area Code
(☐☐☐)☐☐☐—☐☐☐☐

**9** **Texas Driver's License No. or Texas Personal I.D. No.** (Issued by the Department of Public Safety)

If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number

XXX-XX- ☐☐☐☐

☐ I have not been issued a Texas Driver's License/Personal Identification Number or Social Security Number.

**10** I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both. Please read all **three** statements to affirm before signing.

- I am a resident of this county and a U.S. citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

**X** _____ Date ___ / ___ / ___

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.

Exhibit 14

STRINGER: BRIAN KEITH INGRAM

Page 1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF TEXAS
 2                        SAN ANTONIO DIVISION

 3      JARROD STRINGER, et al.,         §
                                         §
 4              Plaintiffs,              §
                                         §
 5      v.                               §    Civil Action
                                         §    No. 5:16-cv-00257-OLG
 6      ROLANDO B. PABLOS, IN HIS        §
        OFFICIAL CAPACITY AS THE         §
 7      SECRETARY OF STATE and STEVEN    §
        C. McCRAW, IN HIS OFFICIAL       §
 8      CAPACITY AS THE DIRECTOR OF      §
        THE TEXAS DEPARTMENT OF PUBLIC   §
 9      SAFETY,                          §
                                         §
10              Defendants.             §

11      *************************************************
                ORAL AND VIDEOTAPED DEPOSITION OF
12                     BRIAN KEITH INGRAM
                         MARCH 22, 2017
13                         VOLUME 1
        *************************************************

14

15          ORAL AND VIDEOTAPED DEPOSITION OF BRIAN KEITH

16      INGRAM, produced as a witness at the instance of the

17      Plaintiffs, and duly sworn, was taken in the

18      above-styled and numbered cause on the 22nd day of

19      March, 2017, from 9:33 a.m. to 5:19 p.m., before STEVEN

20      STOGEL, CSR in and for the State of Texas, reported by

21      machine shorthand, at the office of the Attorney

22      General, 300 West 15th Street, Suite 1100, Austin,

23      Texas, pursuant to the Federal Rules of Civil Procedure

24      and the provisions stated on the record or attached

25      hereto.
```

**CERTIFIED TRANSCRIPT**

STRINGER: BRIAN KEITH INGRAM

## Page 2

```
 1              A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFFS:
 4      MS. BETH STEVENS
        MR. HANI MIRZA
 5      TEXAS CIVIL RIGHTS PROJECT
        1405 Montopolis Drive
 6      Austin, Texas 78741
        Phone:  512.474.5073
 7            - and -
        MS. CAITLYN SILHAN
 8      WATERS & KRAUS, LLP
        3141 Hood Street, Suite 700
 9      Dallas, Texas 75219
        Phone:  214.357.6244
10
11   FOR THE DEFENDANTS:
12      MS. ANNE MARIE MACKIN
        OFFICE OF THE ATTORNEY GENERAL
13      General Litigation Division
        P.O. Box 12548, Capitol Station
14      Austin, Texas 78711-2548
        Phone:  512.463.2120
15
16   ALSO PRESENT:
17      MS. LINDSEY ASTON:  General Counsel, Texas
                            Secretary of State
18      MR. JUSTIN TALBOT:  Videographer
19
20
21
22
23
24
25
```

## Page 3

```
 1                I N D E X
 2                                             PAGE
 3   Appearances...................................   2
 4   WITNESS: BRIAN KEITH INGRAM
 5   Examination by Ms. Stevens....................   6
 6   Examination by Ms. Mackin.................... 211
 7   Reporter's Certificate....................... 216
 8
 9               EXHIBITS
10   EXHIBIT NAME    DESCRIPTION                   PAGE
11   Exhibit 1.      Notice of Deposition          14
12   Exhibit 2.      7/22/16 Letter from Joe Peters  33
                     to Keith Ingram with Attachment
13
     Exhibit 3.      Form DL-64 (Rev. 9/13)        40
14
     Exhibit 4.      Form DL-64 (Rev. 3/16)        40
15
     Exhibit 5.      Form DL-14A (Rev. 6/14)       43
16
     Exhibit 6.      Form DL-43 (Rev. 6/14)        43
17
     Exhibit 7.      Texas Voter Registration      48
18                   Application
19   Exhibit 8.      2/8/17 Email String with Attachment  80
20   Exhibit 9.      11/5/12 Email String          83
21   Exhibit 10.     11/15/12 Email from Betsy Schonhoff  86
                     to Beva Kellison with Attachment
22
     Exhibit 11.     DLS Use Case Specification:  Create  115
23                   Voter Registration Extract File
                     Texas DPS - 12/19/14 - Version 6.9
24
25
```

## Page 4

```
 1                EXHIBITS
 2   EXHIBIT NAME    DESCRIPTION                   PAGE
 3   Exhibit 12.     PowerPoint Presentation Entitled  163
                     "34th Annual Election Law Seminar
 4                   Offline County Presentation"
 5   Exhibit 13.     PowerPoint Presentation Entitled  167
                     "TEAM For Online Counties"
 6
     Exhibit 14.     DL Applications - Generate Two    181
 7                   Output Flat Files - Version 8.2
                     Prepared for DPS
 8                   Submission Date:  8/29/07
                     Revision Date:  4/30/14
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 5

```
 1             P R O C E E D I N G S
 2           THE VIDEOGRAPHER:  Today is Wednesday
 3   March 22nd, 2017.  The time is approximately
 4   8:34 a.m. [sic].  We are located at the Office of the
 5   Attorney General, 300 West 15th Street, Austin, Texas,
 6   78701.  My name is Justin Talbot, video specialist of
 7   Legal Eyes, Incorporated, out of Aubrey, Texas.
 8           This case is Cause No. 5:16-cv-00257-OLG
 9   entitled Jarrod Stringer, et al., versus Rolando B.
10   Pablos, et al., and the deponent is Keith Ingram.  The
11   video deposition was requested by plaintiffs' counsel at
12   Waters Kraus & Paul.
13           Counsel and all present, please identify
14   yourselves for the record.
15           MS. STEVENS:  Beth Stevens on behalf of
16   Jarrod Stringer.
17           MS. SILHAN:  Caitlyn Silhan from Waters &
18   Kraus on behalf of Benjamin Hernandez.
19           MR. MIRZA:  Hani Mirza from the Texas
20   Civil Rights Project on behalf of Totysa Watkins.
21           MS. ASTON:  Lindsey Aston.  I'm with the
22   Secretary of State's Office.  I'm the General Counsel.
23           MS. MACKIN:  Anna Mackin with the
24   Attorney General's Office on behalf of all defendants.
25           And we'd like to request a read and sign
```

**hg**

STRINGER: BRIAN KEITH INGRAM

Page 6

1  of this deposition on the record, please.
2          BRIAN KEITH INGRAM,
3  having been first duly sworn, testified as follows:
4          EXAMINATION
5  BY MS. STEVENS:
6      Q.  Good morning, Mr. Ingram.
7      A.  Howdy.
8      Q.  Would you please state and spell your full
9  name?
10     A.  My name is Brian Keith Ingram.  B-R-I-A-N,
11  K-E-I-T-H, I-N-G-R-A-M.
12     Q.  Thank you.  And you go by Keith Ingram.  Is
13  that correct?
14     A.  I do.
15     Q.  Okay.  My name is Beth Stevens.  I'm from the
16  Texas Civil Rights Project.  And we have not met before
17  this morning.  Is that correct?
18     A.  That's correct.
19     Q.  Okay.  You've had your deposition taken
20  before, have you not?
21     A.  I have.
22     Q.  How many times?
23     A.  I was trying to think of that on the way over
24  here.  At least three that I can think of, but maybe one
25  more.

Page 7

1      Q.  Okay.  And the three that you recall, what
2  cases were those in?
3      A.  Twice in voter ID, and once in a redistricting
4  case involving the Edwards Aquifer.  Oh, there was
5  another deposition.  Yes.  A forth one was in a case
6  that Buck Wood filed about our Death Master File
7  process.  I don't remember the name of that case.
8      Q.  You're an attorney.  Is that correct?
9      A.  I am.
10     Q.  So you're pretty familiar with the deposition
11  rules?
12     A.  I am.
13     Q.  Okay.  I'm going to go over just a couple just
14  so we can have it on the record.  I'll ask you to let me
15  finish answer -- excuse me -- asking my question before
16  you start answering, and I'll try to do the same for
17  you.  Is that okay?
18     A.  Sure.
19     Q.  And if you'll answer out loud instead of a nod
20  or a shake of the head, that will make it easier for our
21  court reporter.  Okay?
22     A.  Okay.
23     Q.  And if you need a break, let me know.  I'll
24  just ask you to answer the last question that we've got
25  on -- that I've stated before we take the break.  Okay?

Page 8

1      A.  Sure.
2      Q.  And --
3          THE VIDEOGRAPHER:  Counsel, forgive the
4  interruption, but can we go off the record for a minute?
5          MS. STEVENS:  Sure.
6          (Discussion off the record)
7          (Recess from 9:36 a.m. to 9:37 a.m.)
8          THE VIDEOGRAPHER:  We are back on the
9  record at 9:37 a.m.  I incorrectly announced the start
10  time of the deposition as 8:34, and the camera time was
11  incorrectly set.  It's now correctly set at 9:37 a.m.
12  Thank you.
13     Q.  (By Ms. Stevens)  The last deposition rule I
14  was going to go over is if I phrase a question that is
15  confusing in any way to you, will you please let me know
16  that you don't understand or you'd like me to rephrase?
17  Can you agree to that?
18     A.  I can.
19     Q.  Okay.  Will you agree to that?  Do you agree
20  to that?
21     A.  Certainly.
22     Q.  Okay.  Thank you.  If you -- if you go ahead
23  and answer the question as I posed it, I'm going to
24  assume that you understood the question.  Is that fair?
25     A.  That's fair.

Page 9

1      Q.  Thank you.
2      A.  If I don't understand the question, I'll let
3  you know.
4      Q.  Thank you.  All right.  Mr. Ingram, in the --
5  well, you understand that you're here today to testify
6  in a 30(b)(6) capacity, do you not?
7      A.  Yes.
8      Q.  And have you testified on behalf of the
9  Secretary of State in a 30(b)(6) capacity before?
10     A.  I have.
11     Q.  Would you please indicate which of those
12  depositions you referenced were in a 30(b)(6) capacity?
13     A.  All of them.
14     Q.  Okay.  And you understand that this
15  deposition -- the 30(b)(6) deposition -- is --
16     A.  I take it back.  The two -- the Edwards
17  Aquifer and the Death Master File was whatever the state
18  equivalent of that is.
19     Q.  Those were state court cases?
20     A.  They were.
21     Q.  You understand that a 30(b)(6) deposition is
22  different from an individual deposition.  Is that
23  correct?
24     A.  I do.
25     Q.  Okay.  And you're here today as a



STRINGER: BRIAN KEITH INGRAM

Page 10

1 representative of the Secretary of State of the State of
2 Texas?
3      A.   I'm -- yes, ma'am.
4      Q.   Okay.  You've been offered by the Secretary of
5 State to appear on the Secretary of State's behalf and
6 give testimony for the Secretary of State?
7      A.   Right.
8      Q.   Do you understand that the Secretary of State
9 is bound by the testimony that you give at this
10 deposition?
11      A.   I'm aware.
12      Q.   And do you understand that unless I say
13 otherwise, I'm not asking for your personal opinion;
14 rather, I'm asking for an answer that reflects the
15 position of the Secretary of State's Office?
16      A.   Yes, ma'am.  And if I give my opinion, I'll
17 try to mark it as so.
18      Q.   Thank you.  You've provided verified responses
19 to interrogatories in this case.  Is that correct?
20      A.   That is correct.
21      Q.   Have you provided verified responses to
22 interrogatories in any other cases?
23      A.   I have.
24      Q.   Any besides -- well, did you provide them in
25 the cases that you provided deposition testimony on?

Page 11

1      A.   I don't know if we actually did written
2 interrogatories in the two state cases.  I know we did
3 in the federal cases.  If we gave written interrogatory
4 answers in the two state cases, then I'm the one that
5 verified them.  I just don't know for sure if we did
6 written 'rogs.
7      Q.   And the two federal cases that you referenced,
8 you did provide the verification for those
9 interrogatories?
10      A.   Yes, and I might have in another case, but I
11 don't know if we did interrogatories in not that case
12 either.  It was a Project Vote case on our volunteer
13 deputy registrar program back in 2012.  I just don't
14 know if we did interrogatories in that.  I think we did,
15 but I'm not sure.  It was a preliminary injunction
16 hearing as far as the case went.
17      Q.   And if anyone provided verified
18 interrogatories on behalf of the Secretary of State, it
19 would have been you.  Is that correct?
20      A.   That's correct.
21      Q.   Okay.  And lastly on this sort of preliminary
22 30(b)(6) issue, you understand that even though you may
23 not have personal knowledge of a question that I ask,
24 you can still provide the knowledge relevant to the
25 Secretary of State's Office?

Page 12

1      A.   I will endeavor to do so.
2      Q.   All right.  In preparing for this deposition,
3 did you speak to anyone?
4      A.   Yes.
5      Q.   To whom did you speak?
6      A.   I spoke to my counsel and my general counsel
7 last Friday.
8      Q.   Did you speak to anyone else in preparation
9 for this deposition?
10      A.   I did.
11      Q.   Who did you speak to?
12      A.   I spoke to Ann McGeehan, who was in my job
13 before me, and I spoke to Melanie Best, who is a lawyer
14 in my office.
15      Q.   And Ann McGeehan, she was the former Director
16 of Elections.  Is that right?
17      A.   She was.
18      Q.   And that's your current title.  Is that
19 correct?
20      A.   It is.
21      Q.   Do you know how long Ms. McGeehan was the
22 Director of Elections?
23      A.   I'm not sure exactly when she started.  I
24 think she started in '92 or '93.  She was the legal
25 director before she was the elections director, so I'm

Page 13

1 not sure when that transition occurred.  And she retired
2 in November of 2011 and went to work for the County
3 Retirement System.
4      Q.   Was there a Director of Elections prior to
5 Ms. McGeehan?
6      A.   There was.
7      Q.   And who was that?
8      A.   What's his name?  He's the general counsel of
9 the County Retirement System that Ann McGeehan works for
10 now.  I can't think of his name.
11      Q.   Okay.  Did you -- did you talk to anyone else
12 other than the individuals you've identified in
13 preparation for this deposition?
14      A.   No.
15      Q.   Did you review --
16      A.   Not specifically in preparation for this
17 deposition.  Betsy and I talk all the time.
18      Q.   And the --
19      A.   So we've talked about this case.  We talked
20 about her deposition.  We talked about the fact that my
21 deposition was coming, but I don't think that we talked
22 about anything specifically to prepare for this
23 deposition.
24      Q.   And Betsy is Betsy Schonhoff.  Is that
25 correct?



STRINGER: BRIAN KEITH INGRAM

Page 50

1      Q.   So you identified for me or explained to me
2 why -- what the electronic signature or the keypad
3 signature at DPS is used for. It's used for the
4 signature that's required in the Texas Election Code.
5 You read me the section. Is that right?
6      A.   That's right.
7      Q.   What's the ink signature on the DPS's physical
8 forms used for as far as voter registration?
9      A.   I don't know. I don't know if it's used for
10 anything. Once they've applied in person at the office,
11 they've signed it electronically. I guess if there ever
12 was a question, that we'd have to go through the web
13 portal or the 701 email address about whether or not the
14 voter signed it. If for some reason the electronic
15 version didn't have the signature, they would have to go
16 back and look at the physical application form from DPS
17 to get the signature.
18      Q.   Would the -- in the scenario you just
19 described, would the voter have to provide their
20 signature again so it would be on the actual voter
21 registration form?
22      A.   No. No. They've already signed. They signed
23 the physical form and they signed electronically, and
24 for some reason if we don't get that signature with the
25 application, we'll go back to DPS and get the physical

Page 51

1 application.
2      Q.   And the --
3      A.   The county will.
4      Q.   Sorry. The physical application you're
5 referencing is the driver's license application.
6 Correct?
7      A.   Right, or the renewal application.
8      Q.   But a DPS form not a -- not a voter
9 registration form?
10      A.   That's right.
11      Q.   And when you say the county will get it, do
12 they actually somehow extract the ink signature or copy
13 the ink signature onto a voter registration form at that
14 point?
15      A.   No. They get the -- they get the DPS
16 application.
17      Q.   But the DPS application form doesn't have all
18 of the -- all of the fields that are on the voter
19 registration application. Correct?
20      A.   That's right. I mean, we can go through and
21 see. I don't know what it wouldn't have.
22      Q.   Well, we'll get there in a little bit. That's
23 okay.
24      A.   Okay. I mean, it's not in the same form, but
25 it's got the same information.

Page 52

1      Q.   Well, on the --
2      A.   Except for maybe city and county of former
3 residence, but I bet whenever they generate one of these
4 from DPS, that's blank, and that's an optional blank, so
5 it doesn't have to be filled in.
6      Q.   The optional field you're referencing is the
7 city and county of former residence, No. 5 on the voter
8 registration application?
9      A.   That's right.
10      Q.   Look for me, if you will, at No. 10 where the
11 person signing confirms that they understand -- well, it
12 says, "I understand that giving false information to
13 procure a voter registration is perjury, and a crime
14 under state and federal law. Conviction of this crime
15 may result in imprisonment up to 180 days, a fine up to
16 $2,000, or both. Please read all three" -- three is
17 underlined -- "statements to affirm before signing."
18      And then in bullet points, the first one
19 is, "I am a resident of this county and a U.S. citizen."
20 The second bullet is, "I have not been finally convicted
21 of a felony, or if a felon, I have completed all of my
22 punishment including any term of incarceration, parole,
23 supervision, period of probation, or I have been
24 pardoned." And third bullet point, "I have not been
25 determined by a final judgment of a court exercising

Page 53

1 probate jurisdiction to be totally mentally
2 incapacitated or partially mentally incapacitated
3 without the right to vote."
4      Did I read all that correctly?
5      A.   You did.
6      Q.   And just below that section that I read is
7 the -- where the signature is required. Is that
8 correct?
9      A.   That's right.
10      Q.   That section, Section 10, is not on the
11 driver's license application. Correct?
12      A.   I agree with that.
13      Q.   When your office is asked to provide advice as
14 far as voter registration questions go to the Department
15 of Public Safety, who is your contact at the Department
16 of Public Safety for those issues?
17      A.   Generally if I have a question about anything
18 at DPS I would call Joe Peters, and I guess henceforth
19 it will be Skylor Hearn.
20      Q.   What about DPS contacting your office for
21 voter registration questions? Are those the only
22 individuals who would contact you about those questions?
23      A.   Well, it depends on the question. If they had
24 a question, you know, of a more general global sense
25 they would definitely call me. If they had a question

STRINGER: BRIAN KEITH INGRAM

Page 62

1  of the question on the online DPS application?
2       MS. MACKIN:  Objection; form.
3       A.   I don't know what you mean.
4       Q.   (By Ms. Stevens)  Why is there a voter
5  registration question on the online DPS transaction --
6  application?  Excuse me.
7       A.   Well, I imagine it's because of Section 5 of
8  the National Voter Registration Act of 1993.
9       Q.   Could you elaborate on that a little bit?
10      A.   Sure.  The National Voter Registration Act of
11 1993 required that motor vehicle agencies, in our case
12 the DPS, whenever a person has a driver's license
13 transaction -- driver license transaction, that they
14 should be simultaneously offered the right -- the
15 ability to update their voter registration or register
16 to vote for the first time.  That's why the NVRA is
17 called the Motor Voter law.
18      Q.   And DPS's compliance with that law for
19 in-person transactions is the question that we've looked
20 at on the -- on the DPS forms, "Do you want to register
21 to vote?  I've agreed to provide my electronic
22 signature, and it can be sent to the Secretary of
23 State's Office."
24           Is that right?
25      MS. MACKIN:  Objection; form.

Page 64

1  between the two.
2       A.   Well, the NVRA doesn't require equivalent
3  opportunities to register to vote.  It requires
4  simultaneous opportunities to register to vote.  The
5  automated process didn't come along until 2010.  The
6  NVRA has been in place since 1993.  So there used to be
7  a very similar process in person visits to the DPS as
8  well.  They had to fill out a voter registration
9  application, and the difference was that DPS would
10 deliver it to the voter registrar instead of the voter
11 having to mail it, but it was almost the same except for
12 that.  The fact that they've automated the process at
13 the offices doesn't mean that the process has to be
14 automated online.
15      Q.   Why not?
16      A.   The NVRA does not require that.  Now, whether
17 or not it's a good idea and whether or not -- why, you
18 know, should it happen, that's a DPS question.  That's
19 not our question.
20      Q.   Let me unpack that a little bit.  I've got two
21 questions there.  You said that the NVRA requires the
22 opportunity to register to vote at the time that you
23 transact with the driver's license authority?
24      A.   It requires a simultaneous opportunity to
25 register to vote, yes.

Page 63

1       A.   Yes.
2       Q.   (By Ms. Stevens)  Tell me why there's a
3  difference between the DPS in-person transaction where
4  the information is sent on to the Secretary of State's
5  Office to send to the voter registration authorities
6  versus the online transaction where it merely sends
7  you to a link to the Secretary of State's Office --
8  website?  Excuse me.
9       A.   So I don't know -- why is a hard question.
10 Why is probably a DPS question.
11      Q.   Are you saying that the Secretary of State
12 hasn't provided any advice or counsel on whether those
13 two transactions in person versus online should be the
14 same?
15      A.   No, we certainly haven't.  The NVRA requires a
16 simultaneous opportunity to register to vote.  DPS is
17 providing that in both transactions, so I don't see
18 what -- I don't see what you're getting at.
19      Q.   Well, the in-person transaction is a seamless
20 automated transaction after the person checks that they
21 want to register to vote and provide their electronic
22 signature versus the online transaction where there are
23 multiple other steps.  You have to go to the Secretary
24 of State's website, print out the form, fill it out.
25 I'm trying to understand why there's a distinction

Page 65

1       Q.   So if I -- if I told you that the NVRA doesn't
2  use the word "opportunity," what would you say to that?
3       A.   I understand what you're saying, and the judge
4  can -- can tell us what -- you know, what that means.  I
5  understand it's a simultaneous opportunity to register
6  to vote or update your voter registration information.
7       THE REPORTER:  I'm sorry.  Simultaneous
8  opportunity --
9       THE WITNESS:  To register to vote or
10 update your voter registration information.
11      Q.   (By Ms. Stevens)  Rather than simultaneous
12 update -- well, let me -- you're adding the word
13 "opportunity" in there, and I'm trying to understand the
14 online transactions provide the opportunity to register
15 to vote through the Secretary of State's website and
16 form --
17      A.   And so does the in-person transaction.
18      Q.   But the in-person transaction, you'll agree
19 with me, is an automated process after checking the box
20 and providing an electronic signature.  Correct?
21      A.   The way the application gets to us is
22 different, but it's the same -- the opportunity to
23 register to vote or update your voter registration is
24 offered in both places.
25      Q.   Except the customer -- correct me if I'm

hg

STRINGER: BRIAN KEITH INGRAM

Page 82

1  aware that the -- the answer to the question about voter
2  registration used to default to the no answer?
3          MS. MACKIN:  Objection; form.
4      A.  No.  I had no idea.  I saw that in Betsy's
5  deposition, and that was the first that our office, I
6  think, had heard of that.
7      Q.  (By Ms. Stevens)  When the Department of
8  Public Safety decided to make the change to not default
9  to the no, to require the customer actually make the
10 choice themselves, did the Secretary of State's Office
11 have input in that -- or provide any input on that
12 decision?
13     A.  No.
14     Q.  Were there any discussions with the Secretary
15 of State's Office and DPS about the change from -- from
16 a default to no to no default?
17     A.  It's hard to say.  I don't think so.  But we
18 talked a lot -- you know, we had the meeting here after
19 the notice letter, and then we talked after that about
20 the way they treated, you know, both yes and no being
21 checked for an in-person, and then we talked about what
22 to do if both of them were left unchecked.  And so I
23 don't know if any of those discussions, you know, in
24 DPS's mind also encompassed this.
25          It could be that they were talking about

Page 83

1  this as well as the in-person transactions, and in my
2  mind I only heard it as the in-person transactions, so I
3  don't know for sure.  You know, we could have been part
4  of this conversation and just didn't really realize it.
5      Q.  The discussions you are talking about with
6  the -- checking both boxes on an in-person, checking no
7  box in person, those occurred in 2015.  Is that right?
8      A.  Yeah, or early '16.
9      Q.  Prior to the initiation of this lawsuit?
10     A.  After the notice letter, prior to the lawsuit.
11 I don't remember exactly when this got filed.
12          MS. STEVENS:  If you could mark that as
13 9, please.
14          (Exhibit No. 9 marked)
15     Q.  (By Ms. Stevens)  I'm handing you Exhibit 9,
16 Mr. Ingram.  If you'll just look over that and let me
17 know when you're done.
18     A.  Yes, I saw this.
19     Q.  And this one is marked as confidential, so we
20 won't reference the customer's name, but this is an
21 email string from November of 2012.  Is that correct?
22     A.  It is.
23     Q.  And it -- it looks like initially it's from
24 a -- just a member of the public to the "Elections
25 Internet" is what the to line shows.  Is that an email

Page 84

1  address with the Elections Division?
2      A.  It is.
3      Q.  Okay.  The -- well, let's -- the initial email
4  says, "I just renewed my driver's license online and was
5  dismayed that the 'do you want to register to vote'
6  defaults to 'no.'  In my opinion, it should default to
7  'yes' if you want to encourage people to register to
8  vote - which should be a goal of the State and the
9  Elections Division.  I hope that this changes in the
10 future.  After all, it's not automatic - one does have
11 to take additional steps to actually register.  Thanks."
12          And then up above that is the response
13 email from Brenda Hester -- is she in the Elections
14 Division?
15     A.  She is.
16     Q.  Okay -- to the individual customer, and said,
17 "That is something we can discuss with DPS in the
18 future.  Thank you for your input."
19          Did I read that correctly?
20     A.  Sure.
21     Q.  And Betsy Schonhoff in your office is also
22 copied on that email.  Correct?
23     A.  She is.
24     Q.  Okay.  So in -- back in 2012, the Secretary of
25 State's Office was aware that the answer to the "do you

Page 85

1  want to register to vote" question online was defaulting
2  to no.  Is that correct?
3      A.  Right.
4          MS. MACKIN:  Objection; form.
5      Q.  (By Ms. Stevens)  Was there any -- any
6  discussion at that point with the Department of Public
7  Safety to -- to make that change?
8      A.  Not that I recall.
9      Q.  Well, what about that the Secretary of State's
10 Office recalls, since we're here for a 30(b)(6)?
11     A.  That's what I -- I don't -- I don't think that
12 we had that discussion.  Betsy might have.  You know,
13 you saw her testimony on this topic, and we can read
14 that if you want to.
15     Q.  Well, I think, since you're here on behalf of
16 the entity, that you're required to provide the entity's
17 response.  So did the entity -- did the Secretary of
18 State have any discussions with the DPS back in 2012
19 about changing that default from no to what it is now?
20     A.  I don't know.
21     Q.  Are you able to find out?
22     A.  Betsy would be the one that would know, and
23 you read her testimony on this topic.  So I can ask
24 Betsy, but she'll probably give me the same answers.  I
25 do not believe that we had such discussions.  But again,

STRINGER: BRIAN KEITH INGRAM

Page 94

1    Q.   But we've gone over, have we not, that the
2  driver's license application does not have all of the
3  information or questions that a -- hold on -- a voter
4  registration application has on it.  Is that correct?
5    A.   That's right.
6    Q.   Okay.  So the signature as needed under the
7  Texas Election Code that you keep referencing is needed
8  on the voter registration form, not the driver's license
9  form.  Correct?
10           MS. MACKIN:  Objection; form.
11    A.   No, that is not correct.
12    Q.   (By Ms. Stevens)  Explain why it's not
13  correct.
14    A.   The Texas Election Code requires that an
15  application for voter registration be in writing and
16  signed by the applicant.  That is what happens at DPS.
17           And the voter not only signs once.  They
18  sign twice.  They sign the DL application that says "I
19  want to register to vote," and then they -- that also
20  swears they're a citizen and that they're over 18 and
21  all of the stuff that's contained in that application --
22  and they also sign a signature capture device that has
23  the attestations for the voter registration.
24           Now, when we get a voter registration
25  application from DPS, once in a while the data regarding

Page 95

1  the signature doesn't transmit.  So we can use, in lieu
2  of that signature capture device signature, the physical
3  signature, because that -- it might not be exactly the
4  same, but it's saying, "I want to register to vote," and
5  it's a physical signature.  Right?
6           Whenever somebody does an online
7  transaction at DPS, they don't sign anything.  There is
8  no signature electronically captured or otherwise, and
9  that does not comply with the Texas Election Code.
10  There is nothing for them to sign.  There is no
11  signature captured.  There is no signature.  There is
12  nothing.
13    Q.   On the -- let's backtrack just a little bit.
14  On the driver's license forms that we've looked at -- I
15  think they're Exhibits 4 and 5 -- it says, "By providing
16  my electronic signature, I understand the personal
17  information on my application form and my electronic
18  signature will be used for submitting my voter
19  registration application to the Secretary of State's
20  Office."
21           Correct?
22    A.   That's what it says.
23    Q.   Okay.  And so that's indicating to the
24  prospective voter that the electronic signature is
25  what's used as the signature that's compliant with the

Page 96

1  Texas Election Code?
2    A.   The physical signature that's electronically
3  captured, yes.
4    Q.   Okay.  Back to your point about the online
5  transactions not containing a signature, the DPS does
6  use the prior provided electronic signature that -- for
7  the driver's license that they -- the customer used --
8  provided the last time they were in person.  Correct?
9    A.   Presumably, yes.
10    Q.   The same goes for the mail-in change of
11  address transaction -- are you looking at your driver's
12  license there?
13    A.   Yeah.  Because this one was renewed online,
14  and so I guess that I wrote that signature at their
15  signature capture device quite a while ago.
16    Q.   Okay.  And you're aware that you have to
17  transact in person with DPS every other transaction?
18    A.   Yes.
19    Q.   For the mail-in change of address form that --
20  I think that's an exhibit in front of you -- that DPS
21  receives that has the voter registration question, there
22  is not an electronic signature or a -- use your
23  phrase -- the physical signature provided on a keypad
24  provided for that change of address interaction.
25  Correct?

Page 97

1           MS. MACKIN:  Objection; form.
2    A.   No.  There's a physical signature on the -- on
3  the address change application.
4    Q.   (By Ms. Stevens)  Right.  But the information
5  that gets sent on to the voter registrars through the
6  Secretary of State's Office is the data that's pulled
7  from that form and then the electronic signature that
8  was previously provided by the customer in person at a
9  DPS office?
10    A.   That's my understanding, yes.
11    Q.   Well, is that the Secretary of State's
12  understanding?
13    A.   That is the Secretary of State's
14  understanding.  You bet.
15    Q.   So in that same way, the online transaction
16  could utilize the previously provided electronic
17  signature that was provided in person by the customer
18  for the voter registration application form that gets to
19  the voter registrar in the same way that the change of
20  address mail-in occurs?
21    A.   It could if the law allowed it, but the law
22  doesn't allow it, so it can't.
23    Q.   What portion of the law doesn't allow it?
24    A.   13.002(b).
25           THE REPORTER:  As in boy?

STRINGER: BRIAN KEITH INGRAM

Page 170

1  for online counties, and it was presented at our county
2  election seminar on the third day.  I just don't know
3  which year.
4              And it doesn't look like something that
5  Betsy would have done, so probably it's old, but it --
6  you know, this doesn't look like our current VR
7  section's work product, so I would imagine it's from a
8  seminar prior to the 30th Election Law Seminar.
9        Q.   And what year was that?
10       A.   The 30th Election Law Seminar was in 2012.
11       Q.   The -- it looks like the -- I just have a
12  document with the meta data, but it looks like it was
13  from 2013.
14       A.   Okay.  That's conceivable, but -- I mean, I
15  can tell it's old.
16       Q.   Okay.  And can you tell me why entire pages
17  would have been redacted in the production to us?
18       A.   For the same reason as the document
19  Exhibit 12, because it's got technical data information.
20       Q.   In the form of --
21       A.   Screenshots and that sort of thing.
22       Q.   Is there something other than screenshots that
23  would show the technical data information that you're
24  referencing?
25       A.   I don't know.  Sometimes Betsy puts on there

Page 171

1  buttons and, you know, pictures of the buttons and the
2  drop-down menus and stuff.  This would have been old
3  TEAM.
4        Q.   And the buttons you're referencing, though,
5  are within the TEAM system?
6        A.   Yes, in the web interface.
7        Q.   If you would turn to Page 10, I'll ask you
8  some questions about that.  Are you there?
9        A.   Yes.
10       Q.   All right.  At the top, it says, "What if I
11  don't finish all DPS pending tasks?"
12            Did I read that correctly?
13       A.   Yes.
14       Q.   And then there are three bullet points.  The
15  first one says, "Your official list of registered voters
16  will not contain all otherwise eligible voters."
17            The second bullet says, "Voters who would
18  otherwise be eligible may have to cast a provisional
19  ballot."
20            And the third says, "Reimbursement will
21  be delayed for these records until you complete the
22  tasks."
23            What are the DPS pending tasks that this
24  PowerPoint reference -- or excuse me -- this page
25  references?

Page 172

1        A.   So whenever we get the batch file from DPS and
2  send it to the counties, it shows up as a task for them
3  to work.  They've got a new voter registration
4  application from DPS that they need to put through the
5  live check system and get a VUID back.  They've got to
6  finish the process of registering the voter.  The voter
7  is not registered just because they've got an
8  application file out there in the world.  They have to
9  work that file.
10       Q.   And those are the tasks that are referenced
11  here, the -- run it through live check and then --
12       A.   No.
13       Q.   -- what else?
14       A.   No.  The task that's here is you get -- you
15  get -- whenever you turn on your computer for the day
16  and you log onto TEAM, before we had the dashboard, we
17  had tasks to work.  And so you would have 50 DPS
18  application tasks, because that's 50 DPS applications
19  that you need to run through the registration process
20  and get a VUID assigned to them.
21       Q.   Through the new redeveloped TEAM, do they
22  still have to do those tasks even if they're not called
23  that same thing?
24       A.   That's right.  They still show up on their
25  dashboard, and on their dashboard, they've got 50 DPS

Page 173

1  registrations to work.
2        Q.   So it says that "voters who would otherwise be
3  eligible may have to cast a provisional ballot."  Why is
4  that?  What --
5        A.   Because they didn't get registered.  If you
6  don't work your DPS tasks, you're not registering the
7  voter.
8        Q.   Okay.
9        A.   The voter is not registered until the voter
10  registrar registers them.
11       Q.   What's the --
12            THE REPORTER:  I'm sorry.  Until the
13  voter registrar?
14            THE WITNESS:  Registers them.
15            THE REPORTER:  Thank you.
16       Q.   (By Ms. Stevens)  What's the timeframe that
17  the voter registrar has between receipt of the voter
18  registration form and when the voter has to be
19  registered?
20       A.   There's not a specific timeframe for that.
21  The voter needs to have a voter registration certificate
22  within 30 days.
23       Q.   And that's generated by the voter registrar?
24       A.   That's right.  Whenever the voter registration
25  is successfully completed, the system kicks out a VR



STRINGER: BRIAN KEITH INGRAM

Page 174

1  certificate.
2      Q.   And the 30 days starts running from the time
3  that the voter submits the voter registration
4  application.  Is that correct?
5      A.   That's correct.
6      Q.   Does the Secretary of State's Office --
7      A.   That's for all applications, paper or DPS.
8      Q.   That 30-day timeframe?
9      A.   Yes.
10     Q.   Does the Secretary of State ensure that
11 counties finish their DPS pending tasks before elections
12 so that all eligible -- all eligible voters can cast a
13 regular ballot?
14     A.   We don't -- I don't know what you mean by
15 "ensure."  We don't tell counties what to do.  We
16 strongly encourage them to get their work done.
17     Q.   Okay.
18     A.   There's no ensuring anything by a county.  We
19 have on our TEAM system information about how many are
20 unworked, and we will call the counties that have a
21 substantial number of unworked ones and ask them what
22 the deal is and why aren't they finishing.
23     Q.   And what if they said, "We're just not going
24 to do it"?
25     A.   That never happens, but if it did, we would

Page 175

1  have a 31.005 situation on our hands.  We had something
2  close to that in Harrison County in 2014, and I was
3  close to pulling the trigger on a 31.005 at that point.
4  But that is the only county election official that I've
5  ever encountered who exhibited an attitude similar to
6  that.
7           They almost universally are in this
8  business because they care about the election process,
9  they care about the voters, and they want the process to
10 run properly and well.  They're remarkable, and they
11 work hard.
12     Q.   Would you flip to the next page, which is
13 Page 11 of that PowerPoint?  At the top, it says, "What
14 about the unresolved precinct/jurisdiction tasks?"
15          What task is that referring -- or tasks?
16     A.   So in the old TEAM, you would have some voters
17 who were untethered, and so you would have to make
18 them -- you would have to put them into a precinct
19 physically.  Our current redeveloped system doesn't work
20 like this.
21     Q.   How does it work for the precincts now?
22     A.   So now then the redistricting module you
23 can't -- you can't create a precinct without having the
24 voters associated with it.  In the old TEAM, you would
25 have to create the precinct.  Then you would have to

Page 176

1  associate the voters to the precinct.  And it was a
2  time-consuming, laborious, manual process.  The new TEAM
3  is automated.  When you create the precinct, the voters
4  are in it.
5      Q.   So this slide within the PowerPoint is
6  obsolete now?
7      A.   It is.
8      Q.   Okay.  Turn with me, please, to Page 12.  This
9  says at the top, "What about the," in quotes, "'SC 91
10 from FPCA' tasks?"
11          Is that a -- well, what kind of task is
12 that?
13     A.   So the Federal Post Card Application is what
14 the FPCA stands for, and it is a form that is used by
15 military voters and overseas voters to do two things.
16 The FPCA is both a request for a ballot by mail and a
17 voter registration document.
18          And so whenever -- the early voting clerk
19 is the one who receives the FPCAs.  The early voting
20 clerk will input that FPCA into their system to request
21 a -- to generate a ballot to send to the voter, and then
22 they will send this SC 91 to the voter registrar so that
23 the voter registrar will register the voter or update
24 their voter registration if they're already registered.
25          So there's two pieces of this puzzle that

Page 177

1  have to come together, and the early voting clerk is the
2  one who receives this one.  Normally voter registrations
3  go directly to the voter registrar, but this voter
4  registration goes to the early voting clerk, which can
5  be different in about 130 counties, 140 counties.
6      Q.   And is this still the -- needs to be processed
7  in the same way in new TEAM as in old TEAM?
8      A.   It is still the case that the early voting
9  clerk gets -- the FPCA does what they do with it and
10 sends the SC 91 to the voter registrar, yes.
11     Q.   And the voter registrar works it in the same
12 way that they would work any other voter registration --
13     A.   Yes.
14     Q.   -- application?
15     A.   I -- it is my understanding that the
16 difference now is what the early voting clerk does is a
17 temporary voter registration sufficient to keep that --
18 you know, to keep that ballot request active.  And so
19 it's not as essential that the voter registrar work the
20 91 as fast.  They need to before the next election that
21 the FPCA would be good for, but they don't have to
22 necessarily for this election.  So I don't know for sure
23 if it's exactly the same now as it -- as it was then.
24     Q.   And the temporary voter registration that
25 you've talked about that the early voting clerk creates,

STRINGER: BRIAN KEITH INGRAM

Page 182

1   voter registration field:  'Voter registration was never
2   included in the file due to conversations during DLR
3   requirements.  Since they are not actually registering
4   to vote when they select yes, the DLS application was
5   not to receive this field.  When they select yes to
6   voter reg online, they are merely presented with a link
7   and has no indication of whether or not they actually
8   registered to vote.'"
9        Did I read all that correctly?
10   A.   You did.
11   Q.   The DLR requirements that it's talking about,
12   that's referencing the conversations you were able to
13   confirm with your predecessor and Betsy Schonhoff's
14   predecessor.  Is that right?
15   A.   I -- I don't think so, no.
16   Q.   What do you think it is?
17   A.   I think that's what the driver's license
18   division required from Texas.gov.  Now, I assume the
19   business requirements for this were discussed with our
20   office, and based upon my conversations with Karen and
21   Ann, I believe those conversations occurred, but I do
22   not understand what this means when it says it was
23   "never included in the file due to conversations during
24   DLR requirements."
25        What I think it means is that the actual

Page 183

1   process of taking this information and shipping it
2   through DLS to Secretary of State was never included.
3   Q.   And --
4   A.   And that would be consistent with my
5   conversations with Ann and Karen.
6   Q.   And that -- that's true as far as the
7   Secretary of State is concerned.  That information has
8   never been sent from Texas.gov DPS application to DLS
9   and then on to Secretary of State?
10   A.   That's right.
11   Q.   Okay.  I think you referenced this earlier --
12   or stated this earlier, but the technical requirements
13   for transferring the answer to the voter registration
14   question on a DPS online transaction to DLS on to the
15   Secretary of State's Office, it's technic- --
16   technically feasible?
17   A.   Yeah.  It's my understanding that there would
18   be some cost associated with it, and there would be
19   an -- an issue with making sure you retrieved the proper
20   signature to send with the file, that technically
21   would be a challenge that would have to be overcome
22   and -- so I don't know.  I mean, it's feasible.  It
23   would just cost money.
24   Q.   What's the -- you identified the cost
25   implications but also it might be difficult or --

Page 184

1   A.   The --
2   Q.   -- the signature issue might --
3   A.   Since there's --
4   Q.   -- take some working out?
5   A.   -- not a signature captured contemporaneously
6   with the transaction, retrieving the proper signature
7   from the proper file is a technical thing that Texas.gov
8   or DPS or somebody would have to overcome.
9   Q.   But that signature file is housed within DLS.
10   Right?
11   A.   Presumably.
12   Q.   Well, for the -- going back to the mail-in
13   change of address with DPS, that information goes on to
14   the Secretary of State.  If someone chooses to register
15   to vote, that signature is retrieved from DLS and sent
16   on to the Secretary of State.  Right?
17   A.   It's retrieved from wherever they keep it,
18   yes.
19   Q.   Okay.  And, presumably, that same signature
20   could be sent on if the person answered yes to the voter
21   registration question online?
22   A.   If it was legal to do so.  I've already told
23   you I think that's technically possible.  You bet.
24   Q.   Okay.  And --
25   A.   And I don't think it would cost a lot of

Page 185

1   money.  It would cost something to make that change.
2   Q.   Okay.
3   A.   And I've been told that the technical
4   procedure -- the technical hurdle to overcome is making
5   sure you pull the right signature.
6   Q.   And who told you that?
7   A.   DPS.
8   Q.   Who at DPS?
9   A.   It was in a conversation about online voter
10   registration with many stakeholders in the room.
11   Q.   And when you say it would be an issue to
12   determine which signature to pull, how many signatures
13   are attached to an individual record?
14   A.   Well, that's the issue.  Which individual
15   record are you pulling from, and then which signature?
16   So if somebody has a driver in Texas, they could
17   have a lot of signatures on file with the DPS.  I don't
18   know how many they keep, and I don't know what form they
19   keep them.
20        But I don't -- I don't know.  This is not
21   our process that I'm talking about.  This is DPS's
22   process.  DPS has expressed that the technical hurdle to
23   doing something like this in a similar situation is
24   retrieving the correct signature.  I don't know why
25   that's difficult.  I don't know anything about the



STRINGER: BRIAN KEITH INGRAM

Page 186

1   details of the difficulty.  That is not my issue.  It is
2   not the Secretary of State's issue.  I just know what
3   they've expressed in an open meeting about online voter
4   registration.
5       Q.   But the Secretary of State does know that DPS
6   is able to pull the proper signature to send on for
7   voter registration purposes to the Secretary of State
8   for mail-in change of address forms?
9       A.   I'm not arguing with you that this is not
10  possible.  That is not my argument at all.  My argument
11  is exactly to the contrary.  This is a very possible
12  thing to do what you're saying if it was legal, and it's
13  not legal.
14      Q.   Okay.  And --
15      A.   So I'm not contesting the logistics of it.  We
16  can agree that it's a possible thing to do.
17      Q.   Okay.  And I'm -- I'm trying to understand,
18  from the Secretary of State's perspective, how possible.
19  Is it --
20      A.   That I don't know.  That's a DPS question.
21      Q.   Okay.  The -- so you've told me about the
22  signature potential issue with DPS.  Tell me about the
23  costs that you are referencing.
24      A.   That's a DPS question.
25      Q.   So the costs are only on the DPS side of this?

Page 187

1       A.   We have put a fiscal note on online voter
2   registration of about $182,000 --
3       Q.   What does that --
4       A.   -- for Secretary of State.
5       Q.   What does that mean?
6       A.   For changes that we would have to make to TEAM
7   if there was an online voter registration option in
8   Texas.
9       Q.   And -- and let's make the distinction very
10  clear.  You're talking about a process that is not the
11  DPS online application that we're talking about.  That
12  is a -- a voter registration application that would run
13  through the Secretary of State's Office.
14      A.   The versions of --
15      Q.   Is that --
16      A.   -- online voter registration that have been
17  proposed in the legislature would be a very similar
18  process to what you're describing from Texas Online,
19  where you would be able to go online, request to
20  register to vote, and DPS would supply the signature
21  from their file.  And those are the only people who
22  would be eligible to register online, are people who
23  have a signature on file with the DPS.  It is a very
24  similar process.
25              This -- this what you're discussing might

Page 188

1   not as comprehensive as any voter.  It would be just
2   the voters who -- or the customers who are doing a
3   transaction with DPS already, but still it's the same
4   process.
5       Q.   So the $182,000 that you've identified,
6   what -- what does that cost entail?
7       A.   Hours of developer work that it would require
8   to make TEAM able to do this interface.
9       Q.   TEAM already does this interface for DPS
10  applications.  Correct?
11      A.   No.  It does a similar one, and it might not
12  be much of a hurdle to do a different one, but it
13  doesn't do this one yet.
14      Q.   What information would come -- in our
15  scenario -- I'm not talking about online voter
16  registration.
17      A.   Really, I -- do we have to talk about this?
18  This -- I am not arguing the point about whether it's
19  possible.  It is possible and I don't think very
20  difficult.  So why do we need to keep talking about it?
21      Q.   I'm just trying to make sure that it's clear
22  for the Judge in our case --
23      A.   How -- how clear can I make it for the Judge?
24      Q.   Well, I'm trying -- you've -- you've said that
25  it -- when I asked you about cost, you referenced the

Page 189

1   $182,000.  I'm just trying to get at what that money
2   covers.
3       A.   The fiscal note on online voter
4   registration bills is available on the Texas legislature
5   online website.  You can go read it at your leisure.
6       Q.   Well, unfortunately, I'm not at my leisure,
7   and I'm here for a deposition.  And so could you please
8   answer my question?
9       A.   I have answered your question.  It is for
10  hours of development work to make TEAM be configured to
11  accept this new interface.
12      Q.   So that's all $182,000 represents?
13      A.   That's right.  Developer hours.
14      Q.   The Secretary of State's Office is not a part
15  of the legislature.  Correct?
16      A.   That is correct.
17      Q.   And thus you are not a legislator.  Is that
18  correct?
19      A.   I am not.
20      Q.   And you're also not a legislative aide.  Is
21  that correct?
22      A.   I am not.
23      Q.   Okay.  And -- and no one in the Department of
24  Elections within the Secretary of State's Office is --
25  is a legislator.  Correct?

STRINGER: BRIAN KEITH INGRAM

## Page 214

```
1              CHANGES AND SIGNATURE
2  PAGE   LINE      CHANGE              REASON
3  _____
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
```

## Page 215

```
1       I, BRIAN KEITH INGRAM, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5                          BRIAN KEITH INGRAM
6
7  THE STATE OF _____)
8  COUNTY OF _____)
9
10      Before me, _____, on this day
11 personally appeared BRIAN KEITH INGRAM, known to me (or
12 proved to me under oath or through _____)
13 (description of identity card or other document) to be
14 the person whose name is subscribed to the foregoing
15 instrument and acknowledged to me that they executed the
16 same for the purposes and consideration therein
17 expressed.
18      Given under my hand and seal of office this the
19 _____ day of _____, 2017.
20
21
22                          NOTARY PUBLIC IN AND FOR
                            THE STATE OF _____
23
24
25
```

## Page 216

```
1             IN THE UNITED STATES DISTRICT COURT
2                WESTERN DISTRICT OF TEXAS
                   SAN ANTONIO DIVISION
3  JARROD STRINGER, et al.,      §
                                 §
4       Plaintiffs,              §
                                 §
5  v.                            §  Civil Action
                                 §  No. 5:16-cv-00257-OLG
6  ROLANDO B. PABLOS, IN HIS     §
   OFFICIAL CAPACITY AS THE      §
7  SECRETARY OF STATE and STEVEN §
   C. McCRAW, IN HIS OFFICIAL    §
8  CAPACITY AS THE DIRECTOR OF   §
   THE TEXAS DEPARTMENT OF PUBLIC §
9  SAFETY,                       §
                                 §
10      Defendants.              §
11
             REPORTER'S CERTIFICATION
12       DEPOSITION OF BRIAN KEITH INGRAM
               March 22, 2017
13
14      I, Steven Stogel, Certified Shorthand Reporter in
15 and for the State of Texas, hereby certify to the
16 following:
17      That the witness, BRIAN KEITH INGRAM, was duly
18 sworn by the officer and that the transcript of the oral
19 deposition is a true record of the testimony given by
20 the witness;
21      That the original deposition was delivered to MS.
22 BETH STEVENS.
23      That a copy of this certificate was served on all
24 parties and/or the witness shown herein on
25 _____, 2017.
```

## Page 217

```
1       I further certify pursuant to FRCP Rule 30(f)(1)
2  that the signature of the deponent:
3       _X_ was requested by the deponent or a party
4  before the completion of the deposition and that the
5  signature is to be before any notary public and returned
6  within 30 days (or _____ days per agreement of counsel)
7  from date of receipt of the transcript.  If returned,
8  the attached Changes and Signature Page contains any
9  changes and the reasons therefore:
10      ____ was not requested by the deponent or a
11 party before the completion of the deposition.
12      That the amount of time used by each party at the
13 deposition is as follows:
14         MS. BETH STEVENS....................4:48
15         MS. ANNE MARIE MACKIN................0:02
16      That pursuant to information given to the
17 deposition officer at the time said testimony was taken,
18 the following includes counsel for all parties of
19 record:
20      FOR THE PLAINTIFFS:  MS. BETH STEVENS
21      FOR THE DEFENDANTS:  MS. ANNE MARIE MACKIN
22      That $_____ is the deposition officer's charges
23 to the Plaintiffs for preparing the original deposition
24 transcript and any copies of exhibits;
25      I further certify that I am neither counsel for,
```

STRINGER: BRIAN KEITH INGRAM

Page 218

1  related to, nor employed by any of the parties or
2  attorneys to the action in which this testimony was
3  taken, and further that I am not financially or
4  otherwise interested in the outcome of this action.
5      Certified to by me this the ___5th___ day of
6  ___April_____, 2017.
7
8
9      _____
       Steven Stogel
10     CSR 6174
       Expiration Date:  December 31, 2018
11     HG Litigation Services
       Firm No. 69
12     2777 N. Stemmons Freeway, Suite 1025
       Dallas, Texas 75207
13     1-888-656-DEPO
14
15
16
17
18
19
20
21
22
23
24
25

# Exhibit 15

Page 1

1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION

3

4    JARROD STRINGER, et al.,   )
                                )          Plaintiffs' Designations
5         Plaintiffs,           )
                                )
6    vs.                        )   C.A. 5:16-cv-00257-OLG
                                )
7    ROLANDO PABLOS, IN HIS     )
     OFFICIAL CAPACITY AS THE   )
8    TEXAS SECRETARY OF STATE   )
     AND STEVEN C. MCCRAW, IN   )
9    HIS OFFICIAL CAPACITY AS   )
     THE DIRECTOR OF THE TEXAS  )
10   DEPARTMENT OF PUBLIC       )       **CERTIFIED**
     SAFETY,                    )       **TRANSCRIPT**
11                              )
          Defendants.          )
12

13

14              ******************************

15               ORAL VIDEOTAPED DEPOSITION

16                    BETSY SCHONHOFF

17                   February 27, 2017

18              ******************************

19

20      ORAL VIDEOTAPED DEPOSITION OF BETSY SCHONHOFF,

21   produced as a witness at the instance of the Plaintiffs

22   and duly sworn, was taken in the above-styled and

23   numbered cause on the 27th day of February, 2017, from

24   9:37 a.m. to 6:13 p.m., before April Balcombe, Certified

25   Shorthand Reporter in and for the State of Texas,



STRINGER: BETSY SCHONHOFF

Page 2

1   reported by computerized stenotype machine at the

2   offices of Office of the Attorney General, 300 West 15th

3   Street, Suite 1100, Austin, Texas 78701, pursuant to the

4   Federal Rules of Civil Procedure and the provisions

5   stated on the record or attached hereto.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



hglitigation.com

STRINGER: BETSY SCHONHOFF

Page 3

```
 1                      APPEARANCES

 2

 3   FOR PLAINTIFFS:

 4       MR. HANI MIRZA
         TEXAS CIVIL RIGHTS PROJECT
 5       501 Elm Street, Suite 450
         Dallas, TX 75202
 6
     - and -
 7
         MS. RACHEL A. GROSS
 8       Waters & Kraus LLP
         3141 Hood Street, Suite 700
 9       Dallas, Texas 75219
         Telephone: 214.357.6244
10       Fax:  214.357.7252

11   - and -

12       MS. REBECCA ELIZABETH HARRISON
         'BETH STEVENS' STEVENS
13       Texas Civil Rights Project
         1405 Montopolis Drive
14       Austin, Texas 78741

15

16   FOR DEFENDANTS:

17       MS. ANNA MACKIN
         Office of Attorney General
18       Post Office Box 12548
         Austin, TX 78711
19
     - and -
20
         Ms. Lindsey Aston
21       Ms. Jillian Bliss
         Secretary of State
22       Executive Division
         Post Office Box 12697
23       Austin, Texas 78711-2697

24

25
```

hglitigation.com

**hg**

STRINGER: BETSY SCHONHOFF

Page 4

1                          INDEX

2                                              PAGE

3   BETSY SCHONHOFF

4   Examination by Mr. Mirza .........................7
    Examination by Ms. Stevens ....................182
5   Examination by Ms. Stevens ....................232
    Examination by Ms. Mackin .....................259
6   Signature Page  ...............................268

7

8                         EXHIBITS

9

10  EXHIBIT              DESCRIPTION              PAGE

11  1            Department of Public Safety,       56
                 Voter Registration Act
12               Implementation Plan D00009875
                 and ends at D00009883
13
    Defendant 1  Email Chain duplicate in color    265
14               of Plaintiff's Exhibit 9

15  2            Email Bates D00018719 through       71
                 D00018720
16
    3            Email thread Bates D00018893        78
17               through D00018900

18  4            Email chain Bates D00019638        105
                 through D00019639
19
    5            Email chain Bates D00010039        115
20               through D00010041

21  6            Email chain Bates D00006749 and    138
                 ends at D00006751
22
    7            Department of Public Safety        164
23               Response to Public Information
                 act request Bates D00000667
24               through D00000705

25



STRINGER: BETSY SCHONHOFF

Page 5

```
 1                      EXHIBITS (cont.)

 2    EXHIBIT              DESCRIPTION              PAGE

 3    8              Complaint                      174

 4    9              Email chain Bates D00006528.   175

 5    10             Use Case Specification to      211
                     Create Voter Registration
 6                   Extract File" document

 7    11             Email chain                    214

 8    12             PowerPoint titled "Voter       223
                     Registration 102"
 9
      13             Confidential document          227
10
      14             Email chain                    247
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

hglitigation.com

STRINGER: BETSY SCHONHOFF

Page 15

```
1        A.    Aside from my legal counsel?
2        Q.    Uh-huh.
3        A.    No.
4              Although, I mean, I do talk to my developers
5   and other people on a regular basis, so --
6        Q.    But in preparation of this?
7        A.    No.
8        Q.    I might -- okay.  So where do you currently
9   work?
10       A.    The Secretary of State --
11       Q.    Okay.
12       A.    -- for Texas.
13       Q.    Okay.  And how long have you worked there?
14       A.    Almost five years.
15       Q.    Okay.  And what is your current position?
16       A.    I am the voter registration manager.
17       Q.    Okay.  And have you always been voter
18  registration manager?
19       A.    Since I started working there, yes.
20       Q.    Okay.  And what are your duties as voter
21  registration manager?
22       A.    There are a lot.  We primarily assist counties
23  with how to register voters.  I have a staff of five
24  individuals.  We manage the voter registration database
25  for the entire state of Texas.
```



STRINGER: BETSY SCHONHOFF

Page 16

1    We assist voters with understanding how to be
2  registered and any issues that may arise.  We coordinate
3  with our legal department on issues surrounding -- or
4  that may impact the voter registration system for
5  election-day activity.  So we have a lot of roles and
6  responsibilities.
7    In addition, our office reconstitutes the jury
8  wheels for all 254 counties in the state of Texas every
9  year.  So we -- we do a lot.
10    Q.    Okay.  And so on a day-to-day basis, what does
11  your average day look like at -- working as --
12    A.    I don't know how to give you like a typical day
13  because it depends on the season.  Obviously, elections,
14  while they are constantly occurring, they also are
15  seasonal in nature.  Things happen on an annual basis, a
16  biannual basis and things like that.
17    I spend a lot of time answering emails, a lot
18  of time helping my staff, a lot of time working on
19  making sure our system is up to date and any -- any
20  concerns that the counties may have are addressed,
21  workflows, other agency interactions for various things.
22    So my day-to-day is a little hard to -- to give
23  you an exact because it's different every day.
24    Q.    And you work within the election division?
25    A.    Yes, I do.

hglitigation.com



STRINGER: BETSY SCHONHOFF

Page 28

1    Q.    What are your duties in relation to DPS?

2    A.    Well, we deal with the Department of Public

3    Safety on a number of fronts.  We get application files

4    from them on a daily basis for voter registration.  We

5    get felon information from them on -- I say "daily

6    basis," but it's -- the day after a business day, we get

7    information from them; I mean, if their offices are

8    closed or not working, then we don't -- we don't get

9    information -- felon information from them on a daily

10   basis.  We get driver updates information from them, and

11   then we get jury wheel on an annual basis.

12            So my primary role is the coordination of the

13   exchange of data, make sure that we are getting

14   information appropriately, and then if there are any

15   concerns that arise or any issues, try to address them.

16   Q.    So you are overseeing the transfer of all of

17   this information from DPS?

18            MS. MACKIN:  Objection.  Form.

19            You can answer.

20   A.    Do I personally oversee it?  No.

21   Q.    (BY MR. MIRZA) Or your -- so how are you

22   involved in this process?

23   A.    Primarily, my role is to make sure that it is

24   occurring on a regular basis -- you know, on the time

25   schedule that it's supposed to, and if there is an issue



STRINGER: BETSY SCHONHOFF

Page 68

1    Q.   So DLS is the driver's license system; correct?

2    A.   That's what I understand, right.

3    Q.   And how does that system function within that

4    process, the transfer process?

5    A.   It's my understanding that when the operator

6    enters an application into the DLS system and indicates

7    that a person wants to be a registered voter, that

8    information is then warehoused, if you will, at the

9    State, and every night the State groups up those

10   applications and sends them -- well, we get them as a

11   single file.

12        So depending on -- for the DPS applications, I

13   think we actually go pull -- they produce the file, and

14   then we go pull it and process it through our system on

15   a daily basis.

16   Q.   What do you mean by "our system"?

17   A.   I'm sorry, the voter registration system, the

18   team database system where we actually part the

19   addresses and give that information out to the voter

20   registrars of the county.

21   Q.   So TEAM does that?

22   A.   Correct.  That's part of the batching process

23   that gets run.

24   Q.   Okay.  Okay.  Wait.  What do you mean by that,

25   "that's part of the batching process that gets done"?



STRINGER: BETSY SCHONHOFF

Page 157

```
 1   license applications, like in your -- as -- as voter
 2   registration manager, have you, like, received
 3   applications that you've had to review?  You know, have
 4   you had that happen?
 5               MS. MACKIN:  Objection.  Form.
 6       A.   We have received applications that we've
 7   forwarded to the counties, but I don't know how those
 8   applications compare to the DPS online.
 9       Q.   (BY MR. MIRZA) Okay.  So if the online form
10   application requires like a name, date of birth,
11   address, that would be something -- and then this
12   person -- so say a person fills out the online
13   application and then clicks "yes" to register to vote
14   and then print -- prints out the voter registration
15   form, fills it out and sends it to SOS, they would --
16   they would be sending -- they would be filling out
17   information when it comes to -- let me rephrase it.
18       A.   Sure.
19       Q.   Have you seen a change of address
20   application -- like an in-person change of address
21   application from DPS?
22       A.   I believe so, yes.
23       Q.   Okay.  Does it -- does it ask for the person's
24   name?
25       A.   Yes.
```



STRINGER: BETSY SCHONHOFF

Page 158

1    Q.   Does it ask for the person's address?

2    A.   Yes.

3    Q.   Does it ask for the person's date of birth?

4    A.   Yes.

5    Q.   Okay.  So -- and the voter registration form

6  also asks for the person's name, correct?

7    A.   Correct.

8    Q.   And date of birth?

9    A.   Yes.

10   Q.   And address?

11   A.   Yes.

12   Q.   Okay.  So if the person -- if the online

13  application looked similar and asked those three things,

14  and a person was asked to print out and fill out a voter

15  registration form as well, they would have to fill this

16  information out twice, correct?

17        MS. MACKIN:  Objection.  Form.

18   A.   That's my understanding.

19   Q.   (BY MR. MIRZA) While working at DPS as voter

20  registration manager, have you ever received any

21  document related to an online application?

22   A.   Probably, yes.

23   Q.   Okay.  So -- and --

24   A.   Do I recall a specific document?  No.

25   Q.   And do you remember what that document -- like

STRINGER: BETSY SCHONHOFF

Page 159

1    how that -- why that document was sent to you?

2        A.    No.

3        Q.    Was this document pulled from TEAM?

4        A.    For online registration?

5        Q.    Yes.

6        A.    I don't think I understand, sorry.

7        Q.    So did the document you received, you know,

8    regarding an online transaction, was it pulled from

9    TEAM?  Did you receive this document from like --

10   something from the TEAM database?

11       A.    So an online transaction through the DPS or DLS

12   or whatever their thing is?

13       Q.    Yes.

14       A.    No, it would have -- we don't receive

15   information for voter applications that way.

16       Q.    What do you mean?  I don't understand.

17       A.    If somebody went and made a change through the

18   DPS online application, then we wouldn't get that

19   voter -- it wouldn't come as a voter application or

20   anything that I could see.

21       Q.    Okay.  Well, I am not talking about -- okay.

22   Okay.

23             Does SOS track information about whether a

24   DPS customer clicks "yes" to the voter registration

25   question on the online application?



STRINGER: BETSY SCHONHOFF

Page 160

1     A.   For the DPS application?

**2     Q.   Yes.**

3     A.   No, not to my knowledge.

**4     Q.   Okay.  Does SOS track information about whether**

**5  a DPS customer using an online driver's license -- or**

**6  filling out an online driver's license application,**

**7  whether that person clicks through to the SOS website?**

8     A.   Not to my knowledge.

**9     Q.   And why not?**

10    A.   It's not our application.  It's not our

11  software.  It's not our website.

**12    Q.   But if they click to the SOS website, does SOS**

**13  retrieve any of that information or --**

14    A.   Well, there are -- we don't -- there are

15  multiple ways to get to that website, so I am sure we

16  probably have statistics on how many people visit that

17  website.  But where they came from?  I don't know that

18  you could track that.

**19    Q.   And why wasn't that tracked by SOS?**

20    A.   It's not our website.

**21    Q.   I mean, why aren't they tracking how many**

**22  people are clicking onto the SOS website after**

**23  completing a DPS online driver's license application?**

24          MS. MACKIN:  Objection.  Form.

25    A.   We don't have -- it's not our website.



STRINGER: BETSY SCHONHOFF

Page 195

1    little bit earlier about the fact that DPS does not

2    transfer to the Secretary of State via the voter

3    registration batch file any information that comes from

4    an online transaction with DPS.  Do I have that right?

5        A.   It does not end up in the voter application

6    file, correct.

7        Q.   And why not?

8             MS. MACKIN:  Objection.  Form.

9        A.   I would defer to our legal minds that be.  It

10    is my understanding that it's not current law.

11        Q.   (BY MS. STEVENS) I refer you to what you said

12    earlier, which is that it is your understanding that the

13    law is that Chapter 13 of the Texas Election Code only

14    allows for voter registration for in-person and mail-in

15    because it needs a signature.

16             Do you remember seeing that?

17        A.   Yes.

18        Q.   The signature that Secretary of State is

19    currently using for voter registration applications is

20    an electronic signature that is provided when a person

21    goes in person to a DPS office; is that right?

22        A.   When they are -- when they are in the

23    application file, you mean?

24        Q.   Yes, the voter registration application.

25        A.   Yes.  It's what they have signed on that



STRINGER: BETSY SCHONHOFF

Page 196

1    signature pad.   That's my understanding.

2        Q.   Turning your attention to the mail-in change of

3    address.   You acknowledge that the Secretary of State

4    does receive voter registration applications from change

5    of address mail-ins that DPS processes; is that correct?

6        A.   That's correct.

7        Q.   Yes.

8        A.   It is my understanding they treat in-person

9    just like -- mail just the same as in person.

10       Q.   But the mail-in -- correct me if I am wrong --

11   the mail-in address to the application for update with

12   DPS, the signature that's on that form is not extracted

13   and somehow the Secretary of State gets access to it; is

14   that correct?

15       A.   That's my understanding.

16       Q.   Bear with me, I am going to try to figure out

17   what exactly the signature is on this.

18            It is your understanding that the current

19   law requires a signature for the voter registration

20   application.   Do I have that right?

21       A.   Yes.

22       Q.   The mail-in forms that you all are getting

23   information from, from DPS, uses the prior provided

24   electronic signature from that customer; is that right?

25       A.   That's my understanding.

STRINGER: BETSY SCHONHOFF

Page 220

1  different.

2      Q.    Which would be, hey, we think this person may

3  not be alive anymore?

4      A.    Well, for the driver's information, it would be

5  that driver's number has a last name of this and you

6  entered a last name of that.  Sometimes it is a typo,

7  like Gonzales spelled with a G -- a Z versus an S.  Or

8  that driver's license has a date of birth of this and

9  you've entered that.

10         So in an instance where we are not able to

11  validate the actual individual using last name, driver's

12  license number and date of birth, they get the -- what

13  DPS has, information, they can see it then.  That's the

14  only time that they have access to it.

15      Q.    Okay.  Go with me on this one and see where we

16  can get, okay.

17      A.    Okay.

18      Q.    According to the current use case for the voter

19  registration batch file that's from DPS to the Secretary

20  of State, you currently do not receive information about

21  a DPS customer updating their information online,

22  correct?

23      A.    That's correct.  We don't receive information

24  as to how an update occurred or how an application was

25  completed.



STRINGER: BETSY SCHONHOFF

Page 221

1    Q.   But you know that the voter registration batch
2  file doesn't have any information about individuals who
3  update their -- with DPS online and then check the box
4  that say, yes, they want to register to vote.
5          Y'all don't get that information, correct?
6    A.   Correct.  We don't get those applications.
7  They aren't full applications.  We don't get that
8  information.
9    Q.   So if DPS set their online system such that
10  they track the answer to that question, the yes, the
11  voter wants to -- excuse me, the customer wants to
12  register to vote or update their registration, and they
13  sent that data to you all through the voter registration
14  batch file, TEAM could process that information, could
15  it not?
16          MS. MACKIN:  Objection.  Form.
17    A.   I don't think I understand.
18    Q.   (BY MS. STEVENS) Okay.  If the -- if DPS told
19  whoever controls Texas.gov for the DPS online
20  application to track the information, the "yes, I want
21  to register to vote" button online, and they sent that
22  to you all through this same batch file that you already
23  get the voter registration applications, TEAM is capable
24  of processing that information?
25          MS. MACKIN:  Objection.  Form.



STRINGER: BETSY SCHONHOFF

Page 222

1    A.   I am having a hard time responding to that

2  because the information that is completed online is not

3  a complete application.  So if they were to set -- try

4  to track that "yes" question, I don't see how that

5  information could be transmitted to us and then I -- I

6  am not following.

7    Q.   (BY MS. STEVENS) Okay.  Not just a yes or no

8  question, then.

9           If they send -- DPS collects and sends to

10  you, the Secretary of State's office, all of the

11  information they currently send to you for in-person

12  transactions where the individual checks "yes," I want

13  to register to vote, they send you all of that same

14  information, the same data points, the same electronic

15  signature, the TEAM system on your end could process it

16  in the same way that it currently processes the

17  information that comes for in-person transactions at

18  DPS?

19           MS. MACKIN:  Objection.  Form.

20    A.   From a technical standpoint?

21    Q.   (BY MS. STEVENS) Yes.

22    A.   That's correct.

23    Q.   If under the scenario we just described that

24  you said was technically feasible for TEAM to process,

25  TEAM could then, like it does right now for in-person



STRINGER: BETSY SCHONHOFF

Page 223

1   transactions with DPS, send that information out to the

2   local county registrars?

3                MS. MACKIN:   Objection.  Form.

4       Q.   (BY MS. STEVENS) Do you need me --

5       A.   If the -- as long as the application file is

6   complete, it would process through the system and go to

7   the county voter registrars.

8       Q.   The application -- well --

9       A.   As long as the application in the application

10  file is complete.

11      Q.   The application you are referring to is the

12  voter registration application?

13      A.   Yes, those are the data points that are

14  contained.

15      Q.   I am going to hand you -- first let's mark it

16  first, Exhibit 12.

17                (Exhibit 12 marked).

18      Q.   (BY MS. STEVENS) Exhibit 12 is a voter

19  registration PowerPoint titled, "Voter Registration

20  102."  And on the bottom it has the date of February 14,

21  2017.  And it says Secretary of State Elections

22  Division.  Does this PowerPoint look familiar at all?

23      A.   Yes.

24      Q.   Is this a PowerPoint that you put together?

25      A.   Yes.



STRINGER: BETSY SCHONHOFF

Page 253

1  these discussions?

2       A.   No.

3       Q.   So the other option is Keith; is that right?

4       A.   Yes.

5       Q.   Okay.  We touched on earlier issues that

6  individual voters were having going in to vote and then

7  thinking they had updated their information via the DPS

8  online application but weren't, in fact, updated at the

9  local voter registrar's office.  Do you remember I was

10 talking about that?

11      A.   Yes.

12      Q.   And I think what you said was that you don't

13 recall any complaints about that from -- from voters

14 or -- voter registrars at the county level; is that

15 right?

16      A.   I think we are talking about 2012 specifically

17 and -- at the time.  I mean, it's five years ago almost.

18      Q.   Do you recall any between that time span, since

19 2012 and today, complaints by voters or voter registrars

20 about the DPS online application not actually updating

21 voter's information?

22      A.   I don't have a specific instance, but I know

23 that we have received voters wanting to understand, and

24 they are not happy with the fact that it has not updated

25 their information.



STRINGER: BETSY SCHONHOFF

Page 268

```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION

3

4   JARROD STRINGER, et al.,  )
                              )
5        Plaintiffs,          )
                              )
6   vs.                       )  C.A. 5:16-cv-00257-OLG
                              )
7   ROLANDO PABLOS, IN HIS    )
    OFFICIAL CAPACITY AS THE  )
8   TEXAS SECRETARY OF STATE  )
    AND STEVEN C. MCCRAW, IN  )
9   HIS OFFICIAL CAPACITY AS  )
    THE DIRECTOR OF THE TEXAS )
10  DEPARTMENT OF PUBLIC      )
    SAFETY,                   )
11                            )
         Defendants.          )
12

13          ********************************

14              REPORTER'S CERTIFICATE

15    ORAL VIDEOTAPED DEPOSITION OF BETSY SCHONHOFF

16               February 27, 2017

17          ********************************

18       I, April Balcombe, Certified Shorthand Reporter in

19   and for the State of Texas, hereby certify to the

20   following:

21       That the witness, BETSY SCHONHOFF, was duly sworn

22   and that the transcript of the deposition is a true

23   record of the testimony given by the witness;

24       That the original deposition was delivered to Mr.

25   Mirza.
```



STRINGER: BETSY SCHONHOFF

Page 269

1     That a copy of this certificate was served on all

2  parties and/or the witness shown herein on

3  _____ , 2016.

4     I further certify pursuant to FRCP Rule 30(f)(1)

5  that the signature of the deponent:

6     ___ was requested by the deponent or a party before

7  the completion of the deposition and that the signature

8  is to be before any notary public and returned within 30

9  days (or ___ days per agreement of counsel) from the

10  date of receipt of the transcript.

11     If returned, the attached Changes and Signature Page

12  contains any changes and the reasons therefore:

13

14     X was not requested by the deponent or a party

15  before the completion of the deposition.

16

17     That the amount of time used by each party at the

18  time of the deposition is as follows:

19

20     Mr. Mizra (4h18m)
            Attorney for Plaintiffs
21     Ms. Stevens (1h42m)
            Attorney for Plaintiffs
22     Ms. Mackin (0h11m)
            Attorney for Defendants
23

24     That pursuant to information given to the deposition

25  officer at the time said testimony was taken, the



STRINGER: BETSY SCHONHOFF

Page 270

1    following includes counsel for all parties of record:

2

     FOR PLAINTIFFS:
3
          MR. HANI MIRZA
4         TEXAS CIVIL RIGHTS PROJECT
          501 Elm Street, Suite 450
5         Dallas, TX 75202

6    – and –

7         MS. RACHEL A. GROSS
          Waters & Kraus LLP
8         3141 Hood Street, Suite 700
          Dallas, Texas 75219
9         Telephone: 214.357.6244
          Fax:  214.357.7252
10
     – and –
11
          MS. REBECCA ELIZABETH HARRISON
12        'BETH STEVENS' STEVENS
          Texas Civil Rights Project
13        1405 Montopolis Drive
          Austin, Texas 78741
14

15
     FOR DEFENDANTS:
16
          MS. ANNA MACKIN
17        Office of Attorney General
          Post Office Box 12548
18        Austin, TX 78711

19   – and –

20        Ms. Lindsey Aston
          Ms. Jillian Bliss
21        Secretary of State
          Executive Division
22        Post Office Box 12697
          Austin, Texas 78711-2697
23

24        That $_____ is the deposition officer's charges

25   to the Plaintiffs for preparing the original deposition



Page 271

1   and any copies of exhibits;

2       I further certify that I am neither counsel for,

3   related to, nor employed by any of the parties in the

4   action in which this proceeding was taken, and further

5   that I am not financially or otherwise interested in the

6   outcome of this action.

7       Certified to by me on this _____ day of

8   _____, _____.

9

10

11   _____

12   April Balcombe, CSR, CRR, CRC
     Texas CSR 5752
13   Expiration:  12/31/2017
     HG Litigation Services
14   Firm Registration No. 69
     2777 North Stemmons Freeway
15   Suite 1025
     Dallas, Texas 75207
16   888.656.3376

17

18

19

20

21

22

23

24

25



# Exhibit 16

STRINGER: SHERI GIPSON

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                  SAN ANTONIO DIVISION

 3    JARROD STRINGER, ET AL.,    *
                                  *
 4        Plaintiffs,             *
                                  *
 5    VS.                         * CIVIL ACTION
                                  *
 6    ROLANDO PABLOS, IN HIS      * NO.: 5:16-cv-00257-OLG
      OFFICIAL CAPACITY AS THE    *
 7    TEXAS SECRETARY OF STATE    *
      and STEVEN C. MCCRAW, IN    *
 8    HIS OFFICIAL CAPACITY AS    *
      THE DIRECTOR OF THE TEXAS   *
 9    DEPARTMENT OF PUBLIC        *
      SAFETY,                     *
10                                *
          Defendants.            *
11

12    *********************************************************

13             ORAL AND VIDEOTAPED DEPOSITION OF

14                      SHERI GIPSON

15        DEPARTMENT OF PUBLIC SAFETY'S 30(b)(6)

16                   MARCH 7TH, 2017

17    *********************************************************

18            ORAL AND VIDEOTAPED DEPOSITION OF SHERI

19    GIPSON, produced as a witness at the instance of the

20    PLAINTIFFS, and duly sworn, was taken in the

21    above-styled and numbered cause on the 7th of March,

22    2017, from 9:36 a.m. to 6:15 p.m., before Tammy Staggs,

23    CSR in and for the State of Texas, reported by machine

24    shorthand, at the offices of Texas Attorney General's

25    Office, 300 West 15th Street, 11th Floor, Austin, Texas,
```

CERTIFIED
TRANSCRIPT

**hglitigation.com**



APPENDIX 095

STRINGER: SHERI GIPSON

Page 2

1  pursuant to the Federal Rules of Civil Procedure and the
2  provisions stated on the record or attached hereto.
3  That the deposition shall be read and signed under
4  penalties of perjury.  That the deposition shall be read
5  and signed before any notary public.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1              A P P E A R A N C E S
2  FOR THE PLAINTIFF, JARROD STRINGER:
3       Cassandra Champion, Esq.
        TEXAS CIVIL RIGHTS PROJECT
4       1405 Montopolis Drive
        Austin, Texas  78741
5       512.474.5073
        champion@texascivilrighsproject.org
6
7  FOR THE PLAINTIFF, JOHN FRITZ:
8       Beth Stevens, Esq.
        TEXAS CIVIL RIGHTS PROJECT
9       1405 Montopolis Drive
        Austin, Texas  78741
10      512.474.5073
        stevens@texascivilrighsproject.org
11
12  FOR THE PLAINTIFF, BENJAMIN HERNANDEZ:
13       Caitlyn Elizabeth Silhan, Esq.
         WATERS & KRAUS, L.L.P.
14       3141 Hood Street
         Suite 700
15       Dallas, Texas  75219
         214.357.6244
16       csilhan@waterskraus.com
17
18  FOR THE DEFENDANTS:
         Anna M. Mackin, Esq.
19       Esteban Soto, Esq.
         ATTORNEY GENERAL'S OFFICE
20       300 West 15th Street
         Floor 11
21       Austin, Texas  78711
         512.463.2120
22       anna.mackin@oag.texas.gov
         esteban.soto@oag.texas.gov
23       Kathleen T. Murphy, Esq.
         TEXAS DEPARTMENT OF PUBLIC SAFETY
24       5805 North Lamar
         Austin, Texas  78752
25       512.424.2890
              Kathleen.murphy@dps.texas.gov

Page 4

1              A P P E A R A N C E S
2  ALSO PRESENT:
3       Justin Talbot - Videographer
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1                    INDEX
                                             PAGE
2  Appearances....................................   3
3  Exhibit List...................................   6
4  Stipulations...................................  --
5  SHERI GIPSON:
6      EXAMINATION BY MS. CHAMPION...............  11
7      EXAMINATION BY MS. STEVENS................ 199
8      EXAMINATION BY MS. SILHAN................. 215
9      EXAMINATION BY MS. MACKIN................. 216
10     FURTHER EXAMINATION BY MS. SILHAN......... 222
11
12  Signature and Changes.......................... 234
13
14  Reporter's Certificate......................... 237
15
16
17           REQUESTED DOCUMENTS/INFORMATION
18                  (None)
19
20              CERTIFIED QUESTIONS
21                  (None)
22
23
24
25



STRINGER: SHERI GIPSON

Page 6

EXHIBITS

NO.    DESCRIPTION                                          PAGE

1      Plaintiffs' Fourth Amended Notice of
       Deposition of Defendant Stephen C.
       McCraw, in his official capacity as the
       Director of Texas Department of Public
       Safety, pursuant to Federal Rule of Civil
       Procedure 30(b)(6).......................    14

2      Defendants' Deposition Topic Designations
       and Objection to Corporate Representative
       Topics Under Federal Rule of Civil
       Procedure 3il(b)(6).....................     15

3A     List of projects scheduled to occur
       through 2019...........................      16

3B     List of the changes that have been made
       to the driver license system since 2012..   19

3C     Use Case Specification:  Process
       Authentication Request.................      34

3D     Use Case Specification: Process DL
       Duplicates/Renewals Application File.....    40

3E     Use Case Specification: Create Daily
       Update File For SOS....................      41

3F     Use Case Specification: Create Voter
       Registration Extract File...............     43

Page 7

3G     Module 10A: Class C and M Renewal Age 18
       and Above, Customer Operations Handbook..    44

3H     Screenshots.............................      45

3I     Module 6: Driver License Forms,
       Introduction to Common Non-CDL Forms,
       Customer Operations Handbook............     45

3J     DL-64 Manual Address Change Processing...    46

3K     Texas Secretary of State Voter Inquiry
       Portal..................................     48

3L     Voter registration paper application
       postcard...............................      49

3M     Texas Driver License and ID Card Renewal
       Notice.................................      53

3N     Texas Commercial Driver License
       Application............................      56

3O     Application for Renewal/Replacement of a
       Texas Driver License or Identification
       Card...................................      58

3P     Application for Texas Driver License or
       Identification Card as Exhibit..........     59

3Q     Application for Change of Address on
       Valid Texas Driver License and
       Identification Card....................      59

Page 8

3R     Application for Change of Address on
       Valid Texas Driver License and
       Identification Card....................      59

3S     Screenshots............................      60

3T     Screenshots............................      61

3U     Texas Department of Public Safety
       Driver's License/ID Card Renewal IVR
       Script, confidential...................      61

3V     Driver's License Renewal Receipt and
       Temporary License......................      62

3W     Document titled: Texas Department of
       Public Safety Temporary Identification
       Card...................................      62

3X     Letter dated July 22nd, 2016..........       62

3Y     2016 Original, Renewal, Duplicate and
       Modification Issuances for Driver License
       and IDs................................       63

4      Organizational chart...................      65

5      Application Requirements................      82

6      Letter dated September 9th, 2015.........   113

7      E-mails between Brenda Hester and Kelly
       Walton, dated 11/5/12.  Subject: Voting..   129

8      Voter inquiry checklist.................     134

9      DR-64 forms processed in fiscal year 2014
       and 2015...............................      148

Page 9

10     E-mail string between Sara Sandeen and
       Shea Burch, among others, dated October
       2013.  Subject: Other DL.  Confidential..   151

11     E-mail strong between Rebekah Hibbs and
       Sheri Gipson, among others, dated 8/3/16.
       Subject: DL/ID Renewal - Voter
       Registration INC 2397..................     154

12     E-mail from Beva Kellison to Betsy
       Schonhoff, dated 11/27/13.  Subject: DPS
       - Online Registration Attempt, with
       attachment, Confidential...............     156

13     DPS Module 17C Customer, Operations
       Handbook...............................      169

D1     Plaintiffs' Third Amended Notice of
       Deposition of Defendant Steven C. McCraw
       in his Official Capacity as the Director
       of the Texas Department of Public Safety
       Pursuant to Fed. R. CIV. P 30(b)(6)......   216



Page 10

1           P R O C E E D I N G S
2           THE VIDEOGRAPHER:  Today is Tuesday March
3    7th, 2017.  It is approximately 9:36 a.m.  I am -- we
4    are at the Texas Attorney's General Office at 300 West
5    15th Street, Austin, Texas 78701.
6           My name is Justin Talbot, video
7    specialist of Legal Eyes, Incorporated out of Aubrey,
8    Texas.  This case, Cause No. 5:16-CV-00257-OLG entitled
9    Jarrod Stringer, et al. vs. Rolando B. Pablos, et al.
10   And this is Volume 2 of the deposition of Sheri Gipson.
11   Video -- this video deposition was requested by the
12   Plaintiffs' counsel at Waters Kraus & Paul.
13           Will counsel and all present please
14   identify yourselves for the record.
15           MS. CHAMPION:  Cassandra Champion with
16   the Texas Civil Rights Project appearing on behalf of
17   Plaintiff Jarrod Stringer.
18           MS. SILHAN:  Caitlyn Silhan on behalf of
19   the Plaintiffs from Waters & Kraus, appearing on behalf
20   of Benjamin Hernandez.
21           MS. STEVENS:  Beth Stevens from the Texas
22   Civil Rights Project appearing on behalf of John Fritz.
23           MR. SOTO:  Esteban Soto with the Attorney
24   General's Office on behalf of Defendants.
25           MS. MURPHY:  Kathleen Murphy, Texas

Page 11

1    Department of Pubic Safety's Office of General Counsel.
2           MS. MACKIN:  Anna Mackin, Texas Office of
3    Attorney General, on behalf of the Defendants.
4           I would also like to ask a question on
5    the record.  Are we in Volume 2 of Sheri Gipson's
6    deposition or are we in the 30(b)(6) deposition of the
7    Department of Public Safety?
8           MS. CHAMPION:  30(b)(6) of the Department
9    of Public Safety.
10           MS. MACKIN:  Okay.  That's what I
11   thought.
12           THE VIDEOGRAPHER:  I'm sorry.
13           MS. MACKIN:  That's okay.
14           THE VIDEOGRAPHER:  I had the wrong
15   information.
16           MS. MACKIN:  That's okay.  I just wanted
17   to make it clear on the record.
18           MS. CHAMPION:  Thank you.
19           SHERI GIPSON,
20   Having been first duly sworn, testified as follows:
21           EXAMINATION
22   BY MS. CHAMPION:
23      Q.   Thank you.
24           Would you please state and spell your
25   full name for the record?

Page 12

1      A.   Sheri Gipson, S-H-E-R-I, G-I-P-S-O-N.
2      Q.   Thank you.
3           I know you have been deposed before in
4    this case in your individual capacity, but I would just
5    like to review the rules of depositions with you, if
6    that's okay.
7      A.   Okay.
8      Q.   Remember, one of the most important things is
9    that only one of us talk at a time.  I will try to let
10   you completely finish answering a question before asking
11   a new one.  And if you'll let me completely finish the
12   question, that really helps the court reporter.  Is that
13   okay?
14      A.   Yes.
15      Q.   And remember to give verbal answers, "yes" and
16   "no" rather than "uh-huh" and "uh-uh."
17           If you don't understand a question,
18   please let me know; otherwise, if you don't tell me that
19   you haven't understood something, I will assume that you
20   have understood and that the answer you gave was the
21   answer you intended to give.  Does that all make sense?
22      A.   Yes.
23      Q.   Okay.  Do you understand that you're under
24   oath here today?
25      A.   Yes.

Page 13

1      Q.   And are you aware how this deposition is
2    slightly different from the one you gave in your
3    individual capacity?
4      A.   Yes.
5      Q.   So you are here today as a representative of
6    the Department of Public Safety; is that correct?
7      A.   Correct.
8      Q.   And you've been authorized by the republic of
9    partment -- Department of Public Safety to appear on
10   their behalf and give testimony for the Department
11   today; is that right?
12      A.   Correct.
13      Q.   Do you understand that the Department of
14   Public Safety, or DPS, is bound by the testimony that
15   you give as a representative in this matter?
16      A.   Yes.
17      Q.   And do you understand that, unless I say
18   otherwise, I'm not asking for your personal opinions;
19   but instead, I'm asking for the answer that reflects the
20   position of DPS and their subjective beliefs and
21   opinions.
22      A.   Correct.
23      Q.   Is that clear?
24           Have you ever testified as a DPS
25   representative before?



STRINGER: SHERI GIPSON

Page 74

1  within those discussions?
2      A.   It is -- it's my understanding, based on
3  discussions, that those were considered -- would be
4  considered online transactions or online voter
5  registration application, and Texas statute does not
6  provide for that.
7      Q.   Mail transactions for driver license renewal
8  were considered the same as online; is that correct?
9              MS. MACKIN:  Objection, form.
10     A.   Correct.
11     Q.   (BY MS. CHAMPION)  Please restate if -- if
12 I've described that inaccurately.
13     A.   Repeat.
14     Q.   Oh, I think I said the wrong thing.  Thank
15 you.  Telephone.
16              Why -- I'm just -- I'm trying to clarify
17 that mail transactions are considered -- no.  Telephone
18 transactions are considered the same as online
19 transactions.
20              MS. MACKIN:  Objection, form.
21              You can answer.
22              THE WITNESS:  I'm sorry.  I didn't hear
23 you.
24              MS. MACKIN:  I said objection, form.
25              You can answer.

Page 75

1              THE WITNESS:  Okay.
2      A.   They use the same process.  So Texas NIC, when
3  they -- the IVR actually inputs the information into our
4  online application file that comes from Texas NIC to
5  DPS.
6      Q.   (BY MS. CHAMPION)  Texas NIC takes the
7  information from IVR.  It collects it; is that right?
8      A.   That's correct.
9      Q.   Do they -- does Texas NIC send the information
10 to DPS?
11     A.   Yes.
12     Q.   And how often do they send it?
13     A.   Nightly.  It comes with all of the
14 transaction -- the transaction information from the IVR
15 comes in the same file as the transaction information
16 from the Web.
17     Q.   Okay.  Are they sent -- is the information
18 from NIC for both telephone and online transactions sent
19 all together?
20     A.   In a single file?
21     Q.   Yes.
22     A.   Yes.
23     Q.   When DPS receives that information from Texas
24 NIC, does it get put into the DLS?
25     A.   Yes.  All transactions that come in from NIC

Page 76

1  for DL or ID renewal or change of address are input into
2  DLS.
3      Q.   Does that require any manual input by a DPS
4  employee or is it automatic?
5      A.   It's automatic.
6      Q.   Can you tell then -- can DPS tell by looking
7  at DLS whether a transaction was completed by phone or
8  online?
9      A.   Yes.
10     Q.   How can they tell?
11     A.   Because the -- and I can't remember the title
12 of the - the field, but it's -- it's designated as
13 TOL.web or TOL.IVR.
14     Q.   Okay.  So what are -- how does DPS carry out
15 its duties related to voter registration when a customer
16 sends in a mail renewal form?  We kind of covered this,
17 but can you tell me generally again.
18     A.   So when a mail renewal application is sent
19 out, it is sent with a voter registration application
20 form prescribed by Secretary of State.  And the
21 individual, if they complete that card, it is mailed
22 directly back to the Secretary of State.  It does not
23 come back to the Department.
24     Q.   How about mail-in change of address forms, how
25 does DPS carry out its voter registration duties when a

Page 77

1  customer sends in a change of address form via the mail?
2      A.   So as of March 16th, the form was revised to
3  allow the customer to indicate that they want to do a
4  change -- a voter registration application.  And when
5  that form is processed, that information is input into
6  the driver license system.  And the voter registration
7  information is updated if they say yes.
8      Q.   I think I skipped an item, via telephone.  We
9  were speaking about renewals.  Is the process any
10 different when a change of address is requested via
11 telephone?
12     A.   You cannot do a change of address application.
13 And just to clarify, so when you do a renewal, you can
14 change your address, but there's a separate transaction
15 that you're not renewing.  You're just changing your
16 address, and that's not allowed on the IVR.  It's not
17 provided for.
18     Q.   Why not?
19     A.   It's just the volume of those is extremely
20 low, and they have -- we've just never increased that
21 opportunity.  They can do it online, through the mail,
22 or in the office.
23     Q.   How does DPS carry out its voter registration
24 duties when a customer goes online to renew a driver
25 license?



STRINGER: SHERI GIPSON

Page 78

1    A.   So as they go through the process, the
2  screens, they're given the opportunity to say -- state
3  that they would like to register or submit a voter
4  registration application.  And then on the receipt page,
5  they're provided a link to the Secretary of State where
6  the packet is downloaded, completed, and mailed.
7    Q.   Is this process the same when a customer goes
8  online to change their driver license address?
9    A.   Yes, it is.
10    Q.   What steps has DPS taken to ensure that
11  customers are aware of voter registration opportunities
12  through DPS?
13    A.   So -- I mean, the information is on the form.
14  The question is on each form.  As far as the online, it
15  -- it provides the question and then also on the receipt
16  page, calls attention to the fact that they need to
17  download that application.
18    Q.   Other than having the questions about voter
19  registration on the form or online, has DPS done
20  anything else to increase customer awareness that they
21  can register to vote while completing driver license
22  transactions?
23         MS. MACKIN:  Objection, form.
24         You can answer.
25    A.   As far as like designated information that's

Page 79

1  displayed, things like that, no.
2    Q.   (BY MS. CHAMPION)  When did DPS start
3  performing voter registration functions?
4    A.   It would have been mid-'90s.
5    Q.   Can you be any more specific?
6    A.   I believe it was either 1994 or 1995.
7    Q.   Do you know why they started completing voter
8  registration functions at that time?
9    A.   As a part of the Help America Vote Act or the
10  Motor Voter.
11    Q.   When you say "Motor Voter," is that also
12  referred to as the NVRA?
13    A.   Yes.
14    Q.   Have DPS's voter registration functions
15  changed/evolved since 1995?
16         MS. MACKIN:  Objection, form.
17         You can answer.
18    A.   So they have evolved.  In 1995 the only thing
19  that was available was in-office transaction.  So all
20  individuals went through there.  When the mail-in
21  process was established in, I believe, 1998 -- I might
22  have to confirm that date -- when that was established,
23  the Department worked with the Secretary of State to
24  determine the process and -- that would be followed as
25  far as providing the application -- the registration

Page 80

1  application form.
2         When the online processes were developed
3  in 2000, 2001, again, the Department worked with the
4  depart- -- Secretary of State to determine how those
5  services would be offered.  The most recent change was
6  in 2009/'10 when we went from our previous distributed
7  driver license system to the current driver license
8  system.  The change made there is those applications
9  that were processed in person, instead of them filling
10  out the hardcopy form that was delivered to the local
11  registrar, the Department sent a file daily to the
12  Secretary of State with all of those customer infor- --
13  or with all the customer information indicating that
14  they had requested a registration application in the
15  office.
16    Q.   (BY MS. CHAMPION)  And when was that last
17  change?
18    A.   That change, the going to the electronic file,
19  it began in 2009, but there was a conversion period from
20  two thou- -- May of 2009 to May 2010.  So during that
21  time period there was still some offices who were
22  providing the hardcopy to the local registrar.
23    Q.   Okay.  We -- we talked about -- we -- I'm
24  sorry.  We mentioned Motor Voter and the NVRA, which
25  stands for the National Voter Registration Act.  What is

Page 81

1  the National Voter Registration Act?  Can you explain
2  it?
3         MS. MACKIN:  Objection, form.
4         You can answer.
5    A.   To -- to my -- to my limited ability to
6  describe it, it is basically things that are put into
7  place to help ensure that individuals are given the
8  opportunity to register and then -- not only to
9  register, but then to actually vote in -- in elections.
10    Q.   (BY MS. CHAMPION)  What -- so we talked about
11  some of the ways DPS carries out its voter registration
12  duties.  What would you describe as the functions that
13  DPS has under the NVRA?
14         MS. MACKIN:  Objection, form.
15         What topic is this responsive to?
16         MS. CHAMPION:  The...
17         MS. MACKIN:  I mean, we can talk about
18  the policies, practices, and procedures.  But just kind
19  of the broad question about, like, functions --
20         MS. CHAMPION:  Yeah.
21         MS. MACKIN:  -- might be outside.
22         MS. CHAMPION:  Number 1, I suppose, the
23  duties and responsibilities of employees, agents, et
24  cetera, et cetera, and compliance with the NVRA and
25  State laws or regulations.



STRINGER: SHERI GIPSON

Page 94

1    Both the online renewal and change of
2    address processes have the question related to voter
3    registration, and then that process provides a link
4    which takes them to Texas Secretary of State.
5        Q.   Why does DPS include a voter registration
6    question during the online renewal and change of address
7    portion?
8        A.   So it is part of the plan between the
9    Secretary of State and Department of Public Safety in
10   compliance with the voter registration question being
11   combined as part of the application process for a driver
12   license or ID.
13       Q.   You said it's part -- part of a plan.  We
14   touched on this earlier also, but who developed that
15   plan?
16       A.   That plan was developed between the Department
17   of Public Safety and Secretary of State.
18       Q.   And who at DPS and the Secretary of State was
19   involved in deciding the way that the online question
20   would -- would function?
21       A.   I would have to go back and see who the --
22   because the -- the original plan was developed in '94
23   for the office transactions and then modified when the
24   mail renewal and online portions were added.  I do not
25   have the exact names of who was in that process.  It

Page 95

1    would have been -- back then they were -- would have
2    been referred to as the Chief of Driver License
3    Division, but I don't have the names of the people at
4    the Secretary of State.
5        Q.   For the online process, when DPS and the
6    Secretary of State decided that a voter registration
7    question should be included online, why did they decide
8    that?
9        A.   Because we are required to include the voter
10   registration opportunity within the driver license and
11   identification card application.
12       Q.   What requires you to do that?
13       A.   The -- and I -- I can't remember the names of
14   all the -- but basically the NVRA and Chapter 20 of the
15   Election Code and Texas Statute.
16       Q.   I'm going to refer back to Exhibit 3M, the
17   mail-in renewal form.  And it's recently been revised,
18   but when did DPS start using mail renewal notice forms?
19       A.   I believe it was in 1998 or '99.
20       Q.   And this version in -- in Exhibit 3M was --
21   was renewed February two -- 2017.  Before that, what was
22   the revision date?  Sorry.  When was it last revised
23   before 2017?
24       A.   I would have to go back and find that
25   information.

Page 96

1        Q.   Is there a voter registration question on the
2    DR-32?
3        A.   No.
4        Q.   Has there ever been a voter registration
5    question on any version of the DR-32?
6             MS. MACKIN:  I'm going to just object to
7    the extent that this is prior to January 1st, 2012, the
8    topics that she's designated on here.
9             But besides that, you can answer.
10       A.   To my knowledge, no, it's always -- we have
11   always included a voter registration application form
12   provided by the Secretary of State within the mail
13   renewal packet.
14       Q.   (BY MS. CHAMPION)  If you look at the back of
15   the form, at the top it says Registration Renewal Guide,
16   Read Carefully.  And there's a box that says, (as read):
17   No waiting in line.  Three easy ways to renew.
18             The first of those is Internet renewal.
19       A.   Uh-huh.
20       Q.   Does DPS want people to renew online rather
21   than by mail?
22       A.   If they're eligible, yes.
23       Q.   Why?
24       A.   It reduces the traffic within the office and
25   reduces overall wait times.

Page 97

1        Q.   Did DPS consult the Secretary of State about
2    this form, about the creation of this form?
3             MS. MACKIN:  I'm going to object to the
4    extent it's before January 1st, 2012.
5             But other than that, you can answer.
6        A.   To my knowledge, not on the actual DR-32 form.
7    They were consulted regarding the process and the
8    information that would be included on the voter
9    registration application card.
10       Q.   (BY MS. CHAMPION)  Did DPS discuss with the
11   Secretary of State the fact that a voter registration
12   application card would accompany this form separately?
13             MS. MACKIN:  And, again, I'm going to
14   object to the extent it's before January 1st, 2012 as
15   designated in this 30(b)(6) notice.
16             But beyond that, you can answer.
17             THE WITNESS:  Okay.
18       A.   Now, I'm sorry.  Ask the question again.
19       Q.   (BY MS. CHAMPION)  Did DPS discuss with the
20   Secretary of State the fact that a voter registration
21   card would be included separately with this form when it
22   was sent to customers?
23       A.   Yes, there would have been those discussions
24   because they -- they had provided us the approved form
25   that was going to be inserted.

hglitigation.com

**hg**

STRINGER: SHERI GIPSON

Page 98

1    Q.    Does DPS transmit customer information it
2  receives from driver license renewal applications to the
3  Secretary of State for purposes of updating an
4  applicant's voter registration status?
5    A.    They do for applications that occur in an
6  office, and then the mail-in address change.
7    Q.    Those are the only two circumstances?
8    A.    Yes.
9    Q.    So not by mail change of address?
10   A.    No, not by mail renewal.  Mail change of
11 address, they do.
12   Q.    Got it.  Got it.
13         Can DPS track the information that it
14 sends to the Secretary of State regarding customers who
15 wanted to register to vote?
16   A.    Do you mean can -- can we look at the record
17 and determine?
18   Q.    Yes.  Can DPS look at any record to see if
19 they have indeed sent the Secretary of State specific
20 information?
21   A.    Yes.  Now, I quantify that because that
22 information is contained in the audit trail, so just
23 someone looking at the screen could not confirm that the
24 information was sent, other than the fact that the voter
25 registration says yes.  So the assumption is that it

Page 99

1  went.  It would require IT to -- to assist us, but it is
2  placed in the audit trail.
3    Q.    Does DPS treat all valid and complete change
4  of address forms submitted to DPS as notices of change
5  of address for voter registration purposes?
6         MS. MACKIN:  Objection, form.
7         You can answer.
8    A.    Are you talking about the ones that are
9  submitted in office? through the mail?
10   Q.    (BY MS. CHAMPION)  All of them, uh-huh.
11   A.    Okay.  So, again, the -- the ones that are
12 treated -- or that are submitted to Texas Secretary of
13 State as change of address or for voter application
14 would be those that occur in the office or those that do
15 a mail in.
16   Q.    So not all of them then?
17         MS. MACKIN:  Objection, form.
18         You can answer.
19   A.    Again, clarifying for the change of address
20 application --
21   Q.    (BY MS. CHAMPION)  Correct.
22   A.    -- that would be correct.  The online change
23 of address applications are referred to Texas Secretary
24 of State.
25   Q.    Okay.  Does DPS always transmit all valid

Page 100

1  change of address information that it obtains from
2  customers to the Secretary of State?
3    A.    So in addition to the voter registration
4  extract file, there is a daily file that is sent to the
5  Secretary of State that would contain all applications
6  that had a change of name, date of birth, or address.
7  And that is not sent as a voter extract file.  You would
8  have to talk to the Secretary of State to determine --
9  for them to determine and tell you what they do with
10 that information.
11   Q.    You mentioned that happens with in-person
12 applications.  Does it happen for mail change of address
13 information?
14   A.    So the daily update file contains all
15 transactions, whether they occur either in the office,
16 by mail, or online.
17   Q.    And why does DPS send the Secretary of State
18 that information?
19   A.    That is a process that was established prior
20 to the driver license system.  It was an interface file
21 that was developed prior to DLS, and then was just
22 transferred over.  It was at the request or through the
23 discussion between DPS and Secretary of State.  There
24 was no one who could provide me information as to why it
25 originated.

Page 101

1    Q.    So you, as a representative of DPS, cannot --
2  cannot answer why DPS now transmits all daily file
3  updates to the Secretary of State; is that correct?
4    A.    I can't tell you what Secretary of State does
5  with the information, no.  The -- I can't -- I -- I
6  cannot tell you the exact reasons behind the
7  establishment because there was no one available that
8  could provide me that information.
9    Q.    Does DPS send the Secretary of State these
10 update files because the Secretary of State instructed
11 DPS to do so?
12         MS. MACKIN:  Objection, form.
13         And I'll also note that to the extent
14 that this process was developed before 2012, it's
15 outside the scope of the topics the witness is
16 designated on under 30(b)(6).
17   A.    So I mean it's an assumption that there was a
18 discussion and that they wanted the data.  We -- we
19 wouldn't have just randomly decided to start sending
20 them the data.  There would have been discussions, and
21 Secretary of State would have had a reason for wanting
22 that data.  I can't tell you what that reason is.  That
23 would be Secretary of State.
24   Q.    (BY MS. CHAMPION)  So -- okay.  That was the
25 daily update file.  Does DPS then transmit all valid



STRINGER: SHERI GIPSON

Page 102

1  change of address information it obtains from customers
2  to the Secretary of State in the voter registration
3  extract file?
4      A.   The voter registration extract file is only --
5  or the only records obtained in that file are customers
6  who applied in person for any type of transaction or
7  through the mail change of address DL-64 process that
8  indicated that they would like that to serve as a voter
9  registration application.
10     Q.   So you've identified in-person and mail
11 transactions.  So is it true that DPS does not transmit
12 change of address information it obtains from customers
13 to the Secretary of State in the voter -- I'm sorry --
14 in the secr- -- to the Secretary of State that it
15 collects from online transactions?
16     A.   So in the voter registration extract file --
17     Q.   Yeah.
18     A.   -- the online transactions are not included in
19 that process.
20     Q.   And why aren't they included?
21     A.   Again, that was determined by discussions
22 through -- between the Department and Secretary of State
23 when the -- the processes were being established.
24     Q.   You said the process was established when?
25     A.   Online was established in two -- either --

Page 103

1  either late 2000 or early 2001.
2      Q.   But DPS has made the decision to continue
3  undertaking this process; is that right?
4      A.   Undertaking which process?
5      Q.   I mean, you still transfer -- even though it
6  was established in 2000, 2001 DPS still transfers the
7  voter extract file; is that right?
8      A.   Okay.  I think there's confusion.  So we began
9  the online DL renewal and address change application
10 process in early 2000.  The voter registration extract
11 file was not created until 2009 when we implemented
12 driver license system.  So prior -- those -- those plans
13 were put in place prior to that electronic transfer of
14 data.
15     Q.   But the -- yes, I understand.  Thank you.
16          But the fact that DPS does not transmit
17 change of address information it obtains from customers
18 to the Secretary of State via the voter registration
19 extract file, the fact that it doesn't do that for
20 online transactions currently, I'm asking you to tell me
21 why it currently doesn't do that, not why the decision
22 was made prior to you holding this position within DPS.
23     A.   Because we have not been advised by the
24 Secretary of State that providing that through the
25 online process is permissible at this point.

Page 104

1      Q.   Has DPS consulted the Secretary of State about
2  whether it should be transmitting --
3      A.   It's my understanding that conversations that
4  occurred when the driver license system was being
5  developed and the -- the voter registration extract file
6  was being discussed, it was determined we would not
7  update online to include -- or to be included in that
8  process.
9      Q.   Has the Secretary of State provided DPS with
10 any instructions with respect to whether it should treat
11 valid, completed change of address forms as
12 notifications of change of address for voter
13 registration purposes?
14     A.   To my --
15          MS. MACKIN:  Objection, form.
16          You can answer.
17     A.   To my knowledge, they have not provided us any
18 instruction on changing the procedures that are
19 currently in place, no.
20     Q.   (BY MS. CHAMPION)  You said to -- to your
21 knowledge.  Is that also in the knowledge of DPS?
22     A.   Yes, it is.
23     Q.   Do DPS's change of address forms allow the
24 customer to state on there -- on the form that the
25 change of address is not to be used for voter

Page 105

1  registration purposes?
2          MS. MACKIN:  Objection, form.
3          You can answer.
4      A.   So if -- I mean, the question is a yes-or-no
5  answer.  So if they select "no," then yes, that would
6  indicate they do not want it used as change of address.
7      Q.   (BY MS. CHAMPION)  Looking at Exhibit 3Q, it's
8  a DL-64, the newest version.  The voter registration
9  question states, (as read):  If you are a U.S. citizen,
10 would you like to register to vote?  If registered,
11 would you like update your voter information?
12          Is that correct?
13     A.   Correct.
14     Q.   But that question does not give a customer an
15 option to state that this change of address is not to be
16 used for voter registration purposes; is that correct?
17          MS. MACKIN:  Objection, form.
18          You can answer.
19     A.   So the assumption is by checking "no," that
20 they are not wishing for it to be served as voter
21 registration.
22     Q.   (BY MS. CHAMPION)  If that's the case, does
23 their information, their new address, still get sent to
24 the Secretary of State?
25     A.   Their information would be included in the

hg

STRINGER: SHERI GIPSON

Page 174

1  obtained signature to any entity for any purpose?
2      A.   No, not outside the agency.  The only thing
3  that previous electronic signature is used for in an
4  online transaction is it's placed on the actual
5  identification card or driver license.  So it's used in
6  the card production, but it's not transmitted outside to
7  any outside entities.
8      THE VIDEOGRAPHER:  Forgive the
9  interruption, but is there any way you can move the blue
10 binder down?
11     Q.   (BY MS. CHAMPION)  Does submitting an
12 electronic signature to the Secretary of State for --
13 for voter registration purposes satisfy the obligations
14 of DPS under the NVRA?
15     MS. MACKIN:  Objection, form.
16     A.   So the electronic signature is transferred
17 from an in-office application, and those decisions were
18 made in conversation with general counsel between
19 departmental -- departmental -- Department of Public
20 Safety and Secretary of State.  So for the purposes of
21 those transactions, yes.
22     Q.   (BY MS. CHAMPION)  I can't remember if I asked
23 this specific question.  Why does DPS not require a
24 signature in rela-- in relation to telephone
25 transactions?

Page 175

1      MS. MACKIN:  Objection, form.
2      A.   Telephone transactions are handled in the same
3  manner as an online transaction.  There is an
4  authentication process they go through.  So you're
5  assuming that you're dealing with the customer
6  themselves.  And the statute requires a signature on an
7  original application, and that's -- the alternative
8  methods of renewal and change of address are only
9  available to established customers who have already
10 provided identity, residency, lawful presence
11 information, as well as a signature on their
12 application.
13     Q.   (BY MS. CHAMPION)  When a customer changes
14 their address over the telephone, does the signature
15 that DPS already have on file stay on the physical face
16 of the driver license?
17     A.   Again, the only transaction type that can be
18 done through IVR is a renewal.
19     Q.   Sorry.  So when a customer renews a driver's
20 license on -- over the telephone, does DPS use the
21 signature that was previously on file to -- to put on
22 the customer's renewed driver's license?
23     A.   Yes.
24     Q.   If DPS were directed to do so, does it have
25 the ability to send the Secretary of State the

Page 176

1  electronic signatures of customers who renew or change
2  their address online?
3      A.   So if the Secretary of State determined that
4  that was acceptable under the statutes and everything
5  that they process under and they directed us, yes, it
6  could be accomplished.  But it would take conversation
7  between Secretary of State and Department of Public
8  Safety and Texas NIC.
9      Q.   Has DPS ever considered taking that action?
10     A.   At this point we have not been -- we have not
11 considered that action because those -- we have never
12 been directed by Secretary of State or advised that
13 that's acceptable.
14     Q.   Has DPS ever consulted the Secretary of State
15 about whether it should send the electronic signatures
16 of customers who complete renewals or change of
17 addresses online --
18     MS. MACKIN:  Objection, form.
19     Q.   (BY MS. CHAMPION)  -- to the Secretary of
20 State?
21     MS. MACKIN:  Objection, form.
22     A.   Again, the only time I'm aware that that
23 became -- or was a small topic of conversation was
24 during the DL reengineering project when the decision
25 was made to electronically transfer the voter

Page 177

1  registration applications from the field offices.  And
2  it was determined at that time that the online process
3  would remain the same.
4      Q.   (BY MS. CHAMPION)  And who was involved in
5  that conversation?
6      A.   It would have been Secretary of State and
7  Department of Public Safety.
8      Q.   Can you identify any individuals from DPS that
9  were involved in that conversation?
10     MS. MACKIN:  I believe this took place in
11 2008, outside the scope of the testimony that Ms. Gipson
12 is here to provide today.
13     Q.   (BY MS. CHAMPION)  Did the driver's license
14 reengineering project take place -- do you know when it
15 took place?
16     A.   It began in 2005 and culminated with a
17 deployment in 2009/2010.
18     Q.   Looking at Exhibit 2, Topic 6 on page 5.  It's
19 the topic designations -- Defendant's Topic Designations
20 for -- for Sheri Gipson.  Topic No. 6 is not bound by a
21 time period, so that DPS should be able to answer
22 questions about policies, practices, and procedures
23 prior to 2012.
24     MS. MACKIN:  Related to which one of
25 these subparts?



Page 202

1    A.   Uh-huh.
2    Q.   Okay.
3    A.   Yes.  I'm sorry.
4    Q.   Thank you.
5         You -- you indicated that the decision
6  was made to modify the in-office -- the way the
7  in-office process would work for the voter registration
8  question, and that the decision was made not to modify
9  the online version of that.  Is that --
10   A.   Correct.
11   Q.   Okay.  Can you tell me why -- or please tell
12 me why the decision was made not to modify the online
13 transaction.
14   A.   The decision was made based on discussions
15 that were -- that occurred.  I was not provided any
16 documentations that outlined those discussions.  But the
17 creation of the new file was conversations that were
18 held with Secretary of State and what would be included
19 in that file.
20   Q.   You say creation of new file.  You're talking
21 about the voter registration daily file --
22   A.   Extract, correct.
23   Q.   Sitting here today, as the representative of
24 DPS for 30(b)(6) on -- on the policy and procedures
25 surrounding this issue, can you tell me why the decision

Page 203

1  was made not to modify the -- the online voter
2  registration part?
3    A.   It is -- it is my understanding that the
4  decision was made based on requirements for voter
5  registration, and the requirements required -- it makes
6  it sound funny -- the requirements of having a signature
7  at the time of application.
8    Q.   So -- so drilling down from that, you said
9  based on the requirements for voter registration.  And
10 particularly, you're saying based on the requirement for
11 a signature for the voter --
12   A.   Right.
13   Q.   -- registration; is that --
14   A.   Right.  The -- the information provided is
15 that Texas statute does not allow for online voter --
16 voter registration.  It requires a signature with the
17 application.  And for the online process, we are not
18 collecting a new signature as part of that process.
19   Q.   I want to see if I can under- -- understand
20 this fully.  So the -- the signature that is sent for an
21 in-person transaction where someone answers "yes" to the
22 voter registration question and -- and similarly when
23 someone changes their address -- excuse me -- address
24 via the mail, the signature that's sent for both of
25 those voter registration applications, that's the

Page 204

1  electronic signature; is that right?
2    A.   That is correct.
3    Q.   And that's sent to the Secretary of State?
4    A.   That is correct.
5    Q.   Okay.  The ink signature is never sent to the
6  Secretary of State, correct?
7    A.   That is correct.
8    Q.   Okay.  If you'll look over the Use Case there
9  you have in front of you, staying on the same exhibit,
10 would you confirm for me that the information regarding
11 the -- well, let me rephrase that.  The information
12 that's provided by a customer in an online transaction
13 with DPS -- you'll agree with me that there's
14 information provided by the customer in those
15 transactions?
16   A.   Correct.
17   Q.   Okay.  The -- looking through the use space,
18 is the only information that's provided by the customer
19 that's not transferred from Texas.gov to DLS the answer
20 to the voter registration question?
21   A.   That's correct.
22   Q.   Turn to me -- turn with me -- excuse me -- to
23 page 9 where it talks about business rules.
24   A.   Okay.
25   Q.   Do you see that?

Page 205

1    A.   Yes.
2    Q.   Okay.  Under the Business Rule 1.1.10 heading,
3  there's Selective Service and DRP, is that right, as
4  kind of subheadings under there?
5    A.   Yes.
6    Q.   Okay.  I want -- I just want to make sure I
7  understand the Use Case correctly.  Under Selective
8  Service if -- if -- if the field is marked "yes" for
9  selective service, then certain information is sent by
10 DLS to some other entity; is that right?
11   A.   Correct.
12   Q.   Okay.  And who -- who -- to whom is that
13 information sent?
14   A.   So the -- the system creates a file that is
15 sent to Selective Service that includes any males that
16 fall within the age range of registration.  So prior to,
17 when Selective Service first began, the person -- the
18 customer could elect whether or not that was sent.
19 Under current statute, we send any male that meets the
20 criteria to the Selective Service.
21   Q.   Okay.  And that -- that is -- this is -- the DL
22 is programmed to do this once a person is determined to
23 meet the requirements for Selective Service, DLS
24 automatically sends that information in -- in an update
25 file to Selective Service?



Page 214

1   voter registration application process.  But I don't --
2   I'm not completely aware of all of the specifics.
3       Q.   (BY MS. STEVENS)  Well, describe for me the
4   conversations DPS has had about that period.
5       A.   The only conversations that -- nothing was
6   brought to me when I was asking for information.  And
7   the only conversations I've had regarding that is with
8   general counsel.
9       Q.   Okay.  And was a policy developed to determine
10  not to do -- not to implement similar -- similar
11  policies?
12      A.   So -- I'm not sure I follow.
13      Q.   Based on the conversations surrounding this
14  change that Alabama's implementing, did Texas then make
15  the decision not to change policy and do something
16  similar?
17           MS. MACKIN:  Objection, form.
18      A.   That's -- it's not a conversation that we've
19  had with the Secretary of State since that decision by
20  Alabama was made.
21      Q.   (BY MS. STEVENS)  But did it have -- did you
22  have that discussion internally?
23      A.   No.  There was not a discussion related to us
24  starting that process just because Alabama did.
25      Q.   Okay.

Page 215

1           MS. STEVENS:  We're going to take a
2   three-minute break.
3           THE VIDEOGRAPHER:  Going off the record
4   at 5:45 p.m.
5           (Recess held, 5:45 p.m. to 5:52 p.m.)
6           THE VIDEOGRAPHER:  We are back on the
7   record at 5:52 p.m.
8                  EXAMINATION
9   BY MS. SILHAN:
10      Q.   Hi, Ms. Gipson.
11      A.   Hello.
12      Q.   I'm Caitlyn Silhan on behalf of Benjamin
13  Hernandez.  We've met before.  I have just three
14  questions for you now.  So you just testified that DPS
15  decided not to modify the voter registration file with
16  respect to online transactions at one point, at least in
17  part, because Texas law requires a signature at the time
18  of a voter registration application; is that correct?
19           MS. MACKIN:  Objection, form.
20      A.   Correct.
21      Q.   (BY MS. SILHAN)  Does Texas law require that
22  DPS collect a signature for a change of address
23  transaction?
24           MS. MACKIN:  Objection, form.
25      A.   So Texas law does not require it on a change

Page 216

1   of address application processed online because the
2   signature had been previously captured.
3       Q.   (BY MS. SILHAN)  Okay.  So if a customer
4   completes a change of address form online, that is valid
5   for driver license purposes?  It changes their address
6   for driver license purposes; is that correct?
7       A.   Correct.
8           MS. SILHAN:  That is all I have, believe
9   it or not.  So I'll pass the witness.
10           MS. MACKIN:  Thank you.  Before we get
11  started, just on the record, I would like to request a
12  read and sign of this deposition transcript.
13           And I just have one exhibit.
14           (Exhibit D1 marked.)
15                  EXAMINATION
16  BY MS. MACKIN:
17      Q.   Ms. Gipson, I'm handing you what's been marked
18  Defendant's Exhibit 1.  Do you recognize this document?
19      A.   Yes.
20      Q.   What is it?
21      A.   This is the Amended Notice No. 3 requesting
22  the 30(b)(6) deposition.
23      Q.   And that's the deposition that's taking place
24  today, correct?
25      A.   Correct.

Page 217

1       Q.   And what date is on this notice?
2       A.   As far as the date of the deposition?
3       Q.   Yes.
4       A.   Sorry.  March 6th at 9:30 a.m.
5       Q.   Did you appear here at the Attorney General's
6   Office yesterday at 9:30 a.m. to sit for this
7   deposition?
8       A.   Yes, ma'am.
9       Q.   And what time did you arrive?
10      A.   Shortly after 9 a.m.
11      Q.   And how long were you here?
12      A.   Until around 11:00 a.m.
13      Q.   And did the deposition take place?
14      A.   No, it did not.
15      Q.   And was that because no court reporter or
16  videographer was scheduled?
17      A.   That's correct.
18      Q.   Okay.  Thank you.
19           Now, I'm going to just go back to a
20  couple of questions that you were asked earlier today.
21  You were asked in several ways about how individuals who
22  transact with the Department of Public Safety online are
23  given the opportunity to register to vote.  Do you
24  remember those questions?
25      A.   Yes.



Page 218

```
1        Q.   Can you clarify how that works?
2        A.   So when the customer logs into the online
3   system, they're authorized based on four pieces of
4   identity information.  They then go through several
5   screens where they identify if they want to -- if they
6   need to update their address, organ donor, VAF and
7   veteran assistance fund donations, and voter
8   registration.  That's in the services options.  And if
9   they -- as they progress on, if they select "yes" to the
10  voter registration, it appears again on the review page
11  along with the options that they selected for organ
12  donor, Glenda Dawson donation, VAF donation, and
13  veteran's assistance fund donation.
14             And once they get past that screen, they
15  accept all of those -- the changes or the information
16  that was inputted, they're put to a receipt page.  If
17  they selected "yes" to the register to vote, there is a
18  link that's provided that takes them to the Secretary of
19  State website where they can download -- they have the
20  opportunity to download and sign and send in a
21  registration application.  And then they're also given
22  the option to print the receipt page.
23       Q.   And that registration application, is it your
24  understanding that that's the -- that is the application
25  approved by the Secretary of State's office?
```

Page 219

```
1        A.   Yes, it is the -- the one from their website.
2        Q.   Okay.  And the information, just to clarify,
3   that is verified before the customer may begin the
4   transaction -- those four pieces of information that you
5   just talked about -- do those -- does DPS do anything
6   with those pieces of information to verify whether an
7   individual is eligible to register to vote or update
8   voter registration information?
9        A.   No.  Those pieces are not used for that
10  purpose.
11       Q.   The pieces of information are simply used to
12  verify that the individual is eligible to transact with
13  DPS online?
14       A.   Correct.
15       Q.   And to verify their identity?
16       A.   Correct.
17       Q.   Okay.  Thank you.
18             You were asked a couple of questions
19  about how DPS publicizes the availability of certain
20  transactions online, and you testified that DPS wants to
21  reduce wait times and in-office traffic.  Do you recall
22  that testimony?
23       A.   Yes.
24       Q.   Why does DPS want to reduce wait times and
25  in-office traffic in its field offices?
```

Page 220

```
1        A.   Because that is one of the main complaints
2   that we have from customers, both directly and through
3   legislators and -- because many times they're expected
4   to wait several hours in order to conduct their
5   business.
6        Q.   And so what complaint is that specifically?
7        A.   The complaint is the amount of time that they
8   have to spend waiting in line to get their driver
9   license or identification card.
10       Q.   Okay.  Thank you.
11             Ms. Champion, also asked you whether a
12  customer could request in some way that their
13  information not be included in the daily update file.
14  And you testified that a customer could not make that
15  request; is that right?
16       A.   That is correct.
17       Q.   Can a customer request that their information
18  not be included in the voter registration file?
19       A.   If they are conducting an in-office
20  transaction, they're making that designation when they
21  select "no" to the voter registration question.
22       Q.   Okay.  Thank you.
23             And now I'm just going to turn your
24  attention back to Plaintiff's Exhibit 13, which is
25  Module 17C.
```

Page 221

```
1        A.   Okay.
2        Q.   And if you'll turn to page 6, please.
3        A.   Okay.
4        Q.   Ms. Champion also asked you some questions
5   about the purpose of the signature on the in-office
6   driver license application, the DL-14?
7        A.   Correct.
8        Q.   Now, is this certification on page 6, is that
9   where the signature is provided on the DL-14?
10       A.   Yes.
11       Q.   And could you please read into the record what
12  the applicant is certifying when they provide that
13  signature on the DL-14?
14       A.   (As read):  I do solemnly swear, affirm, or
15  certify that I am the person named herein and that the
16  statements on this application are true and correct.  I
17  further certify my residence address is a -- check one
18  -- single family dwelling, apartment, motel, temporary
19  shelter.  I agree to immediately report to the Texas
20  department of public safety any changes in my medical
21  condition, which may affect my ability to safely operate
22  a motor vehicle.  I further understand that I am
23  required by law to report any change of name or address
24  to the Department of Public Safety within 30 days.
25       Q.   Okay.  Thank you.
```



STRINGER: SHERI GIPSON

Page 222

1    MS. MACKIN:  We'll pass the witness.
2    FURTHER EXAMINATION
3    BY MS. SILHAN:
4    Q.   Okay.  I will have just a few follow-up
5    questions.  Let's start with the document you were just
6    looking at.
7    A.   Okay.
8    Q.   So this is where a physical signature is
9    required in person, correct?
10   A.   Correct.
11   Q.   And this would be for DL-14; is that right?
12   A.   Correct.
13   Q.   Okay.  Now, it says that -- that by signing,
14   the applicant certifies that their application is true
15   and correct, but also that their residence address is a
16   -- and then they check one -- single-family dwelling,
17   apartment, motel, temporary shelter.  Is that right?
18   A.   That's correct.
19   Q.   How do applicants certify that online?
20   A.   They -- that certification is not online at
21   this time.
22   Q.   Why is that?
23   A.   It -- it is actually in the works.  It's being
24   discussed now because it was pointed out that it was not
25   in that add a station.  That is in -- on that last page

Page 223

1    of the Web page.
2    Q.   Okay.
3    A.   So they are in the process of adding that
4    language.
5    Q.   Okay.  Ms. Mackin also asked you about the
6    receipt page for online transactions; is that correct?
7    Do you recall discussing the receipt page here today?
8    A.   Right.
9    Q.   Okay.  So I understand there is some
10   information about voter registration with a link to the
11   Secretary of State's website on the receipt page,
12   correct?
13   A.   Correct.
14   Q.   Now, does the receipt page say anything about
15   changing addresses for voter registration purposes?
16   A.   No, it does not.
17   Q.   Okay.  You mentioned there were four pieces of
18   information that DPS verifies online to determine that
19   maybe the person filling out the form is who they say
20   they are; is that right?
21   A.   Correct.
22   Q.   Can you just remind me what those four pieces
23   of information are?
24   A.   Okay.  They're in the process authentication
25   request.

Page 224

1    Q.   Okay.
2    A.   And it is listed on page 1.
3    Q.   Okay.
4    A.   It's the DL/ID number, the audit number, the
5    last four digits of the social, and the date of birth.
6    Q.   Now, in terms of -- of information that's only
7    requested online and maybe not by other forms -- I'm
8    going to go through this.  So for a driver license
9    identification number, that would be requested on a
10   paper form as well; is that correct?
11   A.   Correct.
12   Q.   Okay.  What about an audit number, is that
13   requested on paper forms?
14   A.   No, it's not.
15   Q.   Okay.  What about the last four numbers of a
16   social security number, is that requested by DPS on
17   paper forms?
18   A.   The social security number is requested.
19   Q.   What about the date of birth, is that
20   requested?
21   A.   It is.
22   Q.   So the only bit of information that a customer
23   provides, in addition to information the customer
24   provides on paper forms, for purposes of online
25   transactions, is the audit number on the face of a

Page 225

1    driver license; is that right?
2    A.   That's correct.
3    Q.   You also discussed customer complaints as part
4    of the reason that DPS is -- is promoting its online
5    transaction; is that correct?
6    A.   Correct.
7    Q.   You mentioned complaints about the amount of
8    time that customers spend waiting in line to get their
9    driver license and ID cards; is that right?
10   A.   That is correct.
11   Q.   But customers don't obtain driver license and
12   ID cards online, right?  They just renew or change their
13   address; is that correct?
14   A.   So when you say "obtain," I mean, they are
15   obtaining a new card because that's part of the renewal
16   or the change of the address process.
17   Q.   Okay.  So I just wanted to clarify that when
18   you said the amount of time they're waiting to get a
19   driver license or ID card, it's only the -- the renewals
20   and change of address that are really, kind of, being
21   directed to online where they're eligible, right?
22   A.   That is correct.  If it's an original
23   issuance, they are required to go into the driver
24   license office.
25   Q.   You also touched on the issue of opting out --



STRINGER: SHERI GIPSON

Page 238

1    That pursuant to information given to the
2  deposition officer at the time said testimony was taken,
3  the following includes counsel for all parties of
4  record:
5         FOR THE PLAINTIFF, JARROD STRINGER:
6         Cassandra Champion, Esq.
7
8         FOR THE PLAINTIFF, JOHN FRITZ:
9         Beth Stevens, Esq.
10
11        FOR THE PLAINTIFF, BENJAMIN
12        HERNANDEZ:
13        Caitlyn Elizabeth Silhan, Esq.
14
15        FOR THE DEFENDANTS:
16        Anna M. Mackin, Esq.
17        Esteban Soto, Esq.
18        Kathleen T. Murphy, Esq.
19
20
21
22
23        That $_____ is the deposition officer's
24  charges to the Plaintiffs for preparing the original
25  deposition transcript and any copies of exhibits;

Page 239

1    I further certify that I am neither counsel
2  for, related to, nor employed by any of the parties or
3  attorneys in the action in which this proceeding was
4  taken, and further that I am not financially or
5  otherwise interested in the outcome of the action.
6         Certified to by me this _____ day of
7  _____, 20____.
8
9  _____
10
   Tammy Lea Staggs
11 CSR  7496
   Expiration Date:  12/31/2017
12 Firm No. Dallas: 69
   1.888.656.DEPO
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 240

1  COUNTY OF _____)
2  STATE OF TEXAS)
3         I hereby certify that the witness was notified
4  on _____ that the witness has 30 days
5  or (____ days per agreement of counsel) after being
6  notified by the officer that the transcript is available
7  for review by the witness and if there are changes in
8  the form or substance to be made, then the witness shall
9  sign a statement reciting such changes and the reasons
10 given by the witness for making them;
11        That the witness' signature was/was not
12 returned as of _____, 20____.
13        Subscribed and sworn to on this, the _____ day
14 of _____, 20____.
15
16
17 _____
   Tammy Lea Staggs
18 CSR  7496
   Expiration Date:  12/31/2017
19 Firm No. Dallas: 69
   1.888.656.DEPO
20
21
22
23
24
25



hglitigation.com

APPENDIX 109

# Exhibit 17

Page 1

1          UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF TEXAS
2                SAN ANTONIO DIVISION

3

JARROD STRINGER, et al.,          )
4                                 )
                Plaintiffs,       )
5   vs.                           )  C.A. 5:16-cv-00257-OLG
                                  )
6   ROLANDO B. PABLOS, IN HIS     )
    OFFICIAL CAPACITY AS THE TEXAS)
7   SECRETARY OF STATE; AND STEVEN)
    C. MCCRAW, IN HIS OFFICIAL    )
8   CAPACITY AS THE DIRECTOR OF THE)
    TEXAS DEPARTMENT OF PUBLIC    )
9   SAFETY,                       )
                                  )
10               Defendants.      )

11                                )

12

13      ORAL VIDEOTAPED DEPOSITION OF SHERI GIPSON

14           TUESDAY, JANUARY 31, 2017

15

16          ORAL VIDEOTAPED DEPOSITION OF SHERI GIPSON,

17   produced as a witness at the instance of the Plaintiffs,

18   and duly sworn, was taken in the above-styled and

19   -numbered cause on the 31st day of January, 2017, from

20   9:44 a.m. to 5:59 p.m., before RABIN´ MONROE, Certified

21   Shorthand Reporter in and for the State of Texas,

22   reported by computerized stenotype machine, at the TEXAS

23   ATTORNEY GENERAL'S OFFICE, 300 West 15th Street, 10th

24   Floor, Austin, Texas 78701, pursuant to any provisions

25   stated on the record or attached hereto.

**CERTIFIED TRANSCRIPT**



hglitigation.com

STRINGER: SHERI GIPSON

---

Page 2

```
1                    APPEARANCES
2
3   FOR PLAINTIFFS
4        MS. CAITLYN ELIZABETH SILHAN
         SBOT No. 24072879
5        csilhan@waterskraus.com
         WATERS & KRAUS, LLP
6        3141 Hood Street
         Suite 700
7        Dallas, Texas  75219
         Phone:  (214) 357-6244
8        Fax:    (214) 357-7252
9
         MS. MIMI MURRAY DIGBY MARZIANI
10       SBOT No. 24091906
         mimi@texascivilrightsproject.org
11   MS. CASSANDRA LANG "CASSIE" CHAMPION
         SBOT No. 24082799
12       champion@texascivilrightsproject.org
         TEXAS CIVIL RIGHTS PROJECT
13       1405 Montopolis Drive
         Austin, Texas  78741-3438
14       Phone:  (512) 474-5073
15
16
17   FOR DEFENDANTS
18       MS. ANNE MARIE "ANNA" MACKIN
         SBOT No. 24078898
19       anna.mackin@oag.texas.gov
         OFFICE OF THE ATTORNEY GENERAL
20       300 West 15th Street,
         14th Floor
21       Austin, Texas  78701
         Phone:  (512) 463-2004
22
23
24                  continued
25
```

Page 4

```
1                  I N D E X
2
3   WITNESS                                    PAGE
4   Title Page                                    1
5   Appearances                                   2
6   Index                                         4
7   Proceedings Begun                             6
8   SHERI GIPSON
9        EXAMINATION BY MS. SILHAN                7
         EXAMINATION BY MS. MARZIANI            287
10       EXAMINATION BY MS. MACKIN              294
         FURTHER EXAMINATION BY MS. SILHAN      306
11
    Deposition Suspended                        310
12
    Changes and Signature                       311
13
    Court Reporter's Certificate                313
14
15               *    *    *    *    *
16
17                    EXHIBITS
18   NO.    DESCRIPTION                         PAGE
19   1    Notice of Deposition                     9
20   2    Screenshot -- Driver License Renewal and 65
          Change of Address
21
22   3    DLS Use Case Specification: Create Daily 152
          Update Log for SOS -- December 22, 2014
23   4    Letter from Joe Peters to Keith Ingram Re: 174
          NVRA Implementation Plan -- July 22, 2016
24
25                  continued
```

---

Page 3

```
1             A P P E A R A N C E S
                   continued
2
3
4   FOR DEFENDANT TEXAS DEPARTMENT OF PUBLIC SAFETY
5        MS. KATHLEEN THERESA MURPHY
         SBOT No. 00789507
6        kathleen.murphy@dps.texas.gov
         TEXAS DEPARTMENT OF PUBLIC SAFETY
7        5805 North Lamar Boulevard,
         Suite 4087
8        Austin, Texas  78752
         Phone:  (512) 424-2420
9        Fax:    (512) 424-2251
10
11
12   ALSO PRESENT:
13       JUSTIN TALBOT, Videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1                    EXHIBITS
                     continued
2
3   NO.   DESCRIPTION                          PAGE
4   5    Letter from Joe Peters to Keith Ingram Re: 176
         NVRA Implementation Plan -- August 3, 2016
5
6    6   Texas DPS NVRA Implementation Plan      179
7    7   Email from Susan Stempelmann Re: Customer 192
         Operations Conference Call Notes -- October
8        19, 2012
9    8   Email Chain Re: Elections Follow-up     201
10   9   Email Chain Re: Voters registration     205
11  10   Email from Marguerite Buster Re: Voter  209
         registration verification - 2-4-13.doc --
12       2/4/2013
13  11   Metadata                               211
14  12   D_00011099                             211
15  13   Email Chain Re: Other DL                219
16  14   DPS Government Relations Action Sheet   224
17  15   DPS Overview                           246
18  16   Application for Change of Address on Valid 259
         Texas Driver License (DL) & Identification
19       Card (ID)
20  17   The National Voter Registration Act and 269
         Voter Registration Applications . . . an
21       Overview -- 6/12/13
22  18   Letter from Peter A. Kraus and Mimi M. D. 285
         Marziani to Secretary of State Cascos Re:
23       Failure to Comply with Voter Registration
         Obligations at Texas Department of Public
24       Safety -- May 27, 2015
25               *    *    *    *    *    *
```

---



Page 6

```
 1                      (9:44 a.m.)
 2            THE VIDEOGRAPHER:  Today is Tuesday,
 3  January 31st, 2017.  Time is approximately 9:45 a.m.
 4  We are at the Texas Attorney General's Office, 300 West
 5  15th Street, Austin, Texas 78701.
 6            My name is Justin Talbot, video specialist
 7  at Legal Eyes, Incorporated, out of Aubrey, Texas.
 8            This case, Cause Number
 9  5:16-cv-00257-0- -- OLG.  Excuse me.  Entitled
10  Jarold [sic] Stringer, et al -- Jarrod Stringer, et al,
11  vs. Rolando B. Pablos, et al.  The deponent is Sheri
12  Gipson.  This video deposition was requested by the
13  Plaintiffs' counsel, Waters Kraus & Paul.
14            Counsel and all present please identify
15  yourselves for the record.
16            MS. SILHAN:  Caitlyn Silhan on behalf of
17  the Plaintiff, Jarrod Stringer.
18            MS. MARZIANI:  Mimi Marziani on behalf of
19  Plaintiff Totysa Watkins.
20            MS. CHAMPION:  Cassandra Champion, counsel
21  for the Plaintiff on behalf of Totysa Watkins.
22            MS. MURPHY:  Kathleen Murphy, Senior
23  General Counsel, DPS.
24            MS. MACKIN:  Anne Marie Mackin with the
25  Attorney General's Office on behalf of all Defendants.
```

Page 7

```
 1            THE VIDEOGRAPHER:  Thank you.
 2            Will you please swear the witness.
 3            THE COURT REPORTER:  Will you raise your
 4  right hand?
 5            Do you swear or affirm that the testimony
 6  you're about to give will be the truth, the whole truth,
 7  and nothing but the truth?
 8            THE WITNESS:  I do.
 9            THE COURT REPORTER:  Thank you.
10                      SHERI GIPSON,
11  having been called as a witness herein, having been
12  first duly sworn, was examined and testified as follows:
13                      EXAMINATION
14  BY MS. SILHAN:
15      Q.   Okay.  Good morning.
16      A.   Morning.
17      Q.   Would you please state and spell your full name
18  for the record?
19      A.   Sheri Lynne Gipson.  S-H-E-R-I.  L-Y-N-N-E.
20  Gipson, G-I-P-S-O-N.
21      Q.   Have you ever been deposed before?
22      A.   Yes.
23      Q.   How many times?
24      A.   Once.
25      Q.   When was that?
```

Page 8

```
 1      A.   Oh, goodness.  2014.  '13.
 2      Q.   Was that in connection with your employment at
 3  the Department of --
 4      A.   Y- --
 5      Q.   -- Public Safety?
 6      A.   Yes, ma'am, it was.
 7      Q.   Okay.  Was that -- well, can you tell me the
 8  name of the case in which --
 9      A.   I --
10      Q.   -- you were deposed?
11      A.   -- I -- I can't remember the name of the case,
12  but it was over vy-- -- voter identification.
13      Q.   Okay.  Did you provide any other testimony in
14  that case?  Any trial testimony?
15      A.   No, ma'am.
16      Q.   Okay.  Okay.  So you've already gone through
17  this before, but I'll maybe give you a little refresher
18  on some of the rules.
19            Only one of us can talk at a time.  And so
20  I'll do my best to let you finish your answer, and if
21  you would m- -- wouldn't mind letting me finish my
22  question before you begin responding, that will help the
23  court reporter and our transcript.
24            And if you would please give verbal
25  responses.  Don't shake your head yes or no; no "uh-uh"
```

Page 9

```
 1  or "uh-huh"; so that the record is clear.  That would be
 2  great.
 3            If you don't understand a question, please
 4  just let me know.  If you need me to re-ask it, let me
 5  know.  I'd be happy to.  And if you don't ask me to
 6  rephrase a question or you don't indicate that you don't
 7  understand it, I'll -- I'll go ahead and assume that you
 8  do.
 9            Does that work?
10      A.   Okay.
11      Q.   'Kay.  Okay.  So you are here pursuant to a
12  deposition notice served by the Plaintiffs in this case;
13  is that correct?
14      A.   That is correct.
15      Q.   Have you reviewed a copy of that deposition
16  notice?
17      A.   Yes, ma'am.
18      Q.   'Kay.  I will . . . mark this as Exhibit 1.
19            (Exhibit 1 marked for identification.)
20      Q.   Here you are.
21            Is this the notice of deposition that
22  you've received in this case?
23      A.   Yes, ma'am.
24      Q.   When did you receive this notice of deposition?
25      A.   I don't know the exact day.
```



Page 134

1    A.   Mm-hmm.
2    Q.   Does it have information about any other CSR
3  involved in the transaction?
4    A.   Right now it -- I believe it goes into the
5  audit trails.  But we can't see it . . . on the screens.
6    Q.   How many Driver License records are in DLS now,
7  approximately?
8    A.   There is a total -- not a total.  There's over
9  26 million records, including driver license,
10 identification cards, and unlicensed records.
11   Q.   Are those all associated with individuals?  So
12 there would be 26 million individuals?
13   A.   No.  For the most part it is.  But we still
14 have some records from individuals -- the -- the -- the
15 best way to describe this is before the Driver License
16 System, our system was a card-driven.  So you would
17 have -- like, if you had a driver's license and an ID,
18 you would have two separate records in the system.
19             With Driver License System, we have what's
20 called a person record.
21   Q.   Mm-hmm.
22   A.   So it joins those things together.
23        But we have individuals who either updated
24 a name or an address or somethin' on one card and not
25 the other, so when the d- -- data was migrated, it

Page 135

1  does -- it did not combine those records.  So we have
2  some out there, you know.  A-- and there's -- there's
3  no way for us to know an exact number.  But it's not --
4  you know, it's not, like, millions --
5    Q.   Okay.
6    A.   -- that are duplicate records.
7    Q.   Okay.  But that would be the case if someone --
8    A.   Right.
9    Q.   -- had two different types --
10   A.   Right.
11   Q.   -- of -- of. . . .
12   A.   If they both -- if they had both an ID and a
13 DL.  Right.
14   Q.   Got it.
15   A.   And so when you're lookin' at just those,
16 you're lookin' at about 22 million.  We have about 4
17 million of unlicensed records.  And that's individuals
18 where they didn't have a driver license or an ID and
19 they got a ticket for DWI or somethin' like that, and we
20 created an un- -- unlicensed record for them.
21   Q.   When DLS was rolled out starting in 2009, and
22 going through the field offices through May of 2010, was
23 that the same time that Texas.gov was rolled out?
24   A.   No.  Texas.gov was in existence prior to that.
25   Q.   Was that when DLS started offering online

Page 136

1  change-of-address and driver-license renewals on
2  Texas.gov?
3    A.   That would have been prior to DLS.
4    Q.   Once DLS became operational, how did
5  information collected on the online change-of-address
6  and renewal form . . . get transmitted to DLS?
7    A.   So there is a nightly file that they transmit
8  the data from those application- -- completed
9  applications to DLS.
10   Q.   For those completed applications, we've already
11 discussed that the answer to the voter-registration
12 question, that is not included in that nightly file;
13 correct?
14   A.   That's correct.
15   Q.   Are there any other questions that applicants
16 are required to answer on the online change-of-address
17 or renewal form that is not transferred in the nightly
18 file to DPS?  I'm sorry.  To -- to the DLS?
19   A.   No.
20   Q.   Why does DPS require customers to answer that
21 question if they don't even retain the answer?
22   A.   The -- because we need to offer them the
23 availability of the application.  And so if they f- --
24 in order for us -- for Texas.gov, the way that's
25 programmed, is if they enter "yes," it presents their

Page 137

1  link; if they enter "no," it does not.
2    Q.   Why do they need to -- why does DPS need to
3  offer or make available an application?
4    A.   Because it's part of an application process.
5  So we're giving -- we're making that available to the
6  customer so that they can update or get their
7  voter-registration application submitted.
8    Q.   But -- but pursuant to what is that something
9  that D -- DPS is required to do?
10             MS. MACKIN:  Objection:  Form.
11             THE WITNESS:  Yeah, I'm not sure I
12 understand.  I mean --
13   Q.   (BY MS. SILHAN)  So --
14   A.   -- it's -- it's part of -- i- -- it's
15 considered an application, so we're -- are -- are making
16 that customer -- we're providing that ability for them
17 to submit that regis- -- that voter-registration
18 application as part of that process.
19   Q.   Well, it's a separate -- so it's separate,
20 though; right?  So --
21   A.   It is separate.
22   Q.   Okay.  But for other applications, like
23 in-person applications, it's combined; it's not a
24 separate process.
25             MS. MACKIN:  Objection:  Form.



STRINGER: SHERI GIPSON

Page 234

1  certify that the information is true and correct?
2      A.   They're . . . well, the only thing that they're
3  changing is their address.  But they're -- they're
4  verifying who they are through the authentication
5  process that occurs up front by providing key pieces of
6  data, which is their f- -- their name, the
7  driver-license number, date of birth, the audit number
8  that's on the card they currently hold, and the last
9  four of their Social.
10             (Brief pause.)
11     Q.   Aside from the physical ink signatures and the
12 electronic keypad signatures, are there any other types
13 of signatures DPS collects from customers?
14     A.   No, ma'am.
15     Q.   Does anyone compare the signatures collected by
16 DPS?
17     A.   Compare. . . .
18     Q.   So a customer is going to be submitting to DPS,
19 no matter what, two signatures; correct?
20     A.   Correct.
21     Q.   Even in the first application, they're
22 submitting an ink signature physically on a piece of
23 paper, as well as an electronic signature on a keypad.
24     A.   Correct.
25     Q.   Does anyone go through and compare those two?

Page 235

1      A.   Not typically, no.
2      Q.   Under what circumstance would they compare
3  them?
4      A.   If there was somethin' that identified that
5  there was potential fraud, or an issue that arose that
6  was, you know, for potential fraud or identity theft,
7  then we would have somebody pull and -- and analyze
8  those issues.
9      Q.   How are those issues flagged?
10     A.   What do you mean --
11     Q.   How --
12     A.   -- "how are they flagged"?
13     Q.   How does the system identify potential identity
14 fraud or theft?
15     A.   So the system itself does not identif- -- or
16 done -- identify fraud, per se.  We do have an IVS
17 system which does facial recognition on the original
18 applicants.  And so each morning we have individuals
19 that review those files that come up as potential
20 matches, and then they determine -- if there's potential
21 fraud, if there is, then they refer it to our Criminal
22 Investigations Division.
23             The other way that it would be noted is if
24 the Criminal Investigation Division or Highway Patrol,
25 or another law enforcement agency, determined that there

Page 236

1  was potential fraud, then they would -- they would
2  request that information.
3      Q.   For signatures -- ink signatures on mail-in
4  changes of address, for example, are those ever compared
5  with either the f- -- previous physical signature or the
6  electronic signature on file?
7      A.   Not on a routine basis, no.
8      Q.   Under what circumstance would they be compared?
9      A.   Again, only if somebody came in and said
10 "Fraud."  They wouldn't be as part of the application
11 process.
12     Q.   Okay.  But there wouldn't be another picture to
13 do another facial recognition; right?
14     A.   No.  Not at that point.
15     Q.   'Kay.  So when else -- what other circumstance
16 for a mail-in form would -- would flag that form for
17 signature comparison?
18     A.   There's not any.
19     Q.   Okay.  So then the mail-in signatures are never
20 compared.
21     A.   Typically no.
22     Q.   Okay.  So I'm just . . . I'm just trying to
23 understand.  When you say --
24     A.   Yeah.
25     Q.   -- "typically no" --

Page 237

1      A.   Well --
2      Q.   -- why -- why can't you say "no"?
3      A.   So no.  During the routine process, it would
4  never be compared.
5      Q.   But. . . .
6      A.   When I say "routine process," what I'm talking
7  about is the individual that's processing that mail
8  renewal application, they would never compare that
9  signature.  If after the fact we received a contact from
10 Criminal Investigations Division or another low en- --
11 law-enforcement co- -- office contact CID, they may pull
12 those signatures and look at 'em.  But as a routine part
13 of the function of updating mail and -- 'scuse
14 me [coughed] -- mail-in address changes, we do not
15 review the signatures.
16     Q.   How does DPS go about verifying the information
17 submitted online for the online change of address or
18 renewal form?
19     A.   Again, the only verification that's done there
20 is their log-in credentials.
21     Q.   But those log-in credentials, is that
22 information different than what would be entered on a
23 physical mail-in change-of-address form?
24     A.   The difference is the Social Security Number.
25 The last four digits of the Social Security.  And



STRINGER: SHERI GIPSON

Page 254

1   actually refer to the -- electronic signature captured
2   on the keypad?
3       A.   Yes, it does.
4       Q.   So DPS was never actually scanning physical ink
5   signatures from paper and then transmitting them to
6   SOS . . . during this time.
7       A.   No, we were not.
8            (Brief pause.)
9       Q.   Looking at the next page.  Page three of nine.
10  Under the heading "May 15th, 2009," it says, "A report
11  to categorize the following."
12           Do you see that?
13      A.   Yes.
14           MS. MACKIN:  May 15th, 2009?
15           MS. SILHAN:  Yes.
16      Q.   (BY MS. SILHAN)  And this report would
17  categorize a number of things, including the number of
18  DPS applications received?  Correct?
19      A.   Mm-hmm.
20      Q.   The number of DPS applications approved as new
21  voter.  Number of DPS applications approved as change to
22  existing voter.
23           Are you familiar with whether these
24  reports were created?
25      A.   No, I'm not.

Page 255

1       Q.   Just under that it says, "A second report
2   providing applicant/voter detail of the pending records
3   should be developed.  We have scoped an implementation
4   time frame of January 1st, 2010."
5            Are you familiar with this second report?
6       A.   No, I'm not.
7       Q.   Does it currently exist?
8       A.   I do not believe it does.
9       Q.   And just below that it says "May 27th, 2009,"
10  and in parentheses it says "Email from Karen Richards."
11           Who's Karen Richards?
12      A.   She was with the Secretary of State's Office.
13      Q.   'Kay.  And it says, "The Secretary of State's
14  Office is currently working with DPS on several issues
15  involving the deployment of the new DPS Digital
16  Signature Application."
17           What's that?
18      A.   The DPS Digital Signature Application is the
19  new capture ability of the fingerprint, portrait, and
20  signature.  File.  In the new format.
21      Q.   And that was deployed . . . in 2009?
22      A.   Correct.
23      Q.   And it's still used today?
24      A.   Correct.
25      Q.   The following sentence describes an issue with

Page 256

1   isolated electronic files missing.  Can you review that
2   and -- and help me understand -- understand this?
3       A.   So it -- it -- it appears that there -- they
4   identified an error with the file production; that it
5   was not picking up all of the files.  And so they
6   notified IT, and they were working on the issues.
7            So in other words, it would have been a --
8   a code fix.  Because somethin' was causing it to only
9   pick up those that were identified as new.  Because when
10  they . . . do . . . when they select "yes," then there's
11  a -- a secondary field that they enter whether it's a
12  new or an update to existing.  And it appears here that
13  there was a file issue and it was not picking up the
14  updates.
15      Q.   Okay.
16      A.   In the daily file.
17      Q.   And to be clear, two things.  We're talking
18  about the daily file sent to SOS with voter-registration
19  information.
20      A.   Correct.
21      Q.   And when you say . . . update or new, you're
22  referring to voter-registration applications.
23      A.   Correct.
24      Q.   And so you said that . . . aside from an answer
25  to the voter-registration question, there's a second set

Page 257

1   of information that -- that says whether it's an update
2   or a new?
3       A.   Mm-hmm.
4       Q.   Is that in DLS?
5       A.   It is within DLS.  So it indicates -- when they
6   check -- when you're within DLS, once they check "yes,"
7   then they indicate whether it's a new or an update, and
8   then the election-judge information comes up yes or no.
9   So there's, I guess the best way to describe it, is
10  subfields.  So when you're looking at DLS, it doesn't
11  say anything other than U.S. -- I mean "Photo
12  registration:  Yes or no."  But within the application
13  process, it asks the additional questions.
14           So if the -- if the vote -- if the
15  applicant indicated that they'd never registered to vote
16  and it was an original, it would have been selected as
17  "new."  And then if they say "I'm already registered,
18  but I'm changin' my address," then it would be sent as
19  an update.
20      Q.   And that's something that's on the paper
21  applications?
22      A.   At this point I would have to go back and look
23  at it.  I -- I don't feel comfortable saying yes or no.
24      Q.   Okay.  Irrespective of whether it's something
25  on the applications, that's something that's in DLS?



Page 310

1   concludes the deposi- -- deposition of Sheri Gipson,
2   consisting of four video disks.  We are off the record
3   at 6:00 [sic] p.m.
4           (Deposition suspended at 5:59 p.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 312

1   THE STATE OF _____)
2   COUNTY OF _____)
3
4       Before me, _____, on this day
5   personally appeared SHERI GIPSON, known to me or proved
6   to me on the oath of _____ or through
7   _____ [description of identity
8   card or other document] to be the person whose name is
9   subscribed to the foregoing instrument and acknowledged
10  to me that he/she executed the same for the purpose and
11  consideration therein expressed.
12      Given under my hand and seal of office this
13  _____ day of_____, _____.
14
15
16          _____
17          NOTARY PUBLIC IN AND FOR
17          THE STATE OF _____
18          My Commission Expires:_____
19
20
21
22
23
24
25

Page 311

1                CHANGES AND SIGNATURE
2   PAGE LINE  CHANGE              REASON
3   _____
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21      I, SHERI GIPSON, have read the foregoing
22  deposition and hereby affix my signature that same is
23  true and correct, except as noted above.
24
25          _____
            SHERI GIPSON
            SHERI GIPSON

Page 313

1             UNITED STATES DISTRICT COURT
2             WESTERN DISTRICT OF TEXAS
2                 SAN ANTONIO DIVISION
3   JARROD STRINGER, et al.,      )
                                  )
4           Plaintiffs,           )
    vs.                           ) C.A. 5:16-cv-00257-OLG
5                                 )
    ROLANDO B. PABLOS, IN HIS     )
6   OFFICIAL CAPACITY AS THE TEXAS )
    SECRETARY OF STATE; AND STEVEN )
7   C. MCCRAW, IN HIS OFFICIAL    )
    CAPACITY AS THE DIRECTOR OF THE )
8   TEXAS DEPARTMENT OF PUBLIC    )
    SAFETY,                       )
9                                 )
10          Defendants.           )
                                  )
11  ORAL VIDEOTAPED DEPOSITION OF SHERI GIPSON
12        TUESDAY, JANUARY 31, 2017
13      I, RABIN´ MONROE, Certified Shorthand Reporter
14  in and for the State of Texas, hereby certify to the
15  following:
16      That the witness, SHERI GIPSON, was duly sworn
17  by the officer and that the transcript of the deposition
18  is a true record of the testimony given by the witness;
19      That the deposition transcript was submitted
20  on _____ _____, 2017, to the witness, or
21  to the attorney for the witness, for examination,
22  signature, and return to _____;
23      That $_____ is the deposition
24  officer's charges to the Plaintiffs for preparing the
25  original deposition and any copies of exhibits;



STRINGER: SHERI GIPSON

```
                                                    Page 314
 1          That pursuant to information given to the
 2  deposition officer at the time said testimony was taken,
 3  the following includes all parties of record, along with
 4  the amount of time used by each party at the time of the
 5  deposition:
 6      MS. CAITLYN ELIZABETH SILHAN
        Counsel for Plaintiffs
 7      TIME USED:  6 Hours, 15 Minutes
 8      MS. MIMI MURRAY DIGBY MARZIANI
        Counsel for Plaintiffs
 9      TIME USED:  6 Minutes
10      MS. ANNE MARIE "ANNA" MACKIN
        Counsel for Defendants
11      TIME USED:  17 Minutes
12      MS. KATHLEEN THERESA MURPHY
        Counsel for Defendants
13      TIME USED:  (No time used.)
14          I further certify that I am neither counsel
15  for, related to, nor employed by any of the parties in
16  the action in which this proceeding was taken, and
17  further, that I am not financially or otherwise
18  interested in the outcome of this action.
19          Certified to by me on FEBRUARY 12, 2017.
20
21      _____
        RABIN' MONROE, RDR, CRR, CRC
22      Texas CSR# 9049
        Expiration:  December 31, 2018
23      HG LITIGATION
        Firm Registration No. 69
24      2501 Oak Lawn Avenue, Suite 600
        Dallas, Texas  75219
25      1-888-656-DEPO
        1-888-656-3275 TOLL FREE FAX
        1-888-656-3275 TOLL FREE FAX
```



# Exhibit 18

STRINGER: JOHN CRAWFORD

Page 1

1            IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION

3    JARROD STRINGER, et al.,          §
                                       §
4            Plaintiffs,               §
                                       §
5    v.                                §    Civil Action
                                       §    No. 5:16-cv-00257-OLG
6    ROLANDO B. PABLOS, IN HIS         §
     OFFICIAL CAPACITY AS THE          §
7    SECRETARY OF STATE and STEVEN     §
     C. McCRAW, IN HIS OFFICIAL        §
8    CAPACITY AS THE DIRECTOR OF       §
     THE TEXAS DEPARTMENT OF PUBLIC    §
9    SAFETY,                           §
                                       §
10           Defendants.               §

11

12       ************************************************
                 ORAL AND VIDEOTAPED DEPOSITION OF
13                        JOHN CRAWFORD
                        FEBRUARY 17, 2017
14                          VOLUME 1
         ************************************************

15

16       ORAL AND VIDEOTAPED DEPOSITION OF JOHN CRAWFORD,

17   produced as a witness at the instance of the Plaintiffs,

18   and duly sworn, was taken in the above-styled and

19   numbered cause on the 17th day of February, 2017, from

20   10:06 a.m. to 4:35 p.m., before STEVEN STOGEL, CSR in

21   and for the State of Texas, reported by machine

22   shorthand, at the office of the Attorney General, 300

23   West 15th Street, Suite 1100, Austin, Texas, pursuant to

24   the Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached hereto.

**CERTIFIED TRANSCRIPT**

STRINGER: JOHN CRAWFORD

**Page 2**

```
1            A P P E A R A N C E S
2
3   FOR THE PLAINTIFFS:
4       MS. CASSANDRA CHAMPION
        MS. BETH STEVENS
5       TEXAS CIVIL RIGHTS PROJECT
        1405 Montopolis Drive
6       Austin, Texas 78741
        Phone:  512.474.5073
7
8   FOR THE DEFENDANTS:
9       MS. ANNE MARIE MACKIN
        OFFICE OF THE ATTORNEY GENERAL
10      General Litigation Division
        P.O. Box 12548, Capitol Station
11      Austin, Texas 78711-2548
        Phone:  512.463.2120
12
    FOR THE TEXAS DEPARTMENT OF PUBLIC SAFETY:
13
        MS. KATHLEEN T. MURPHY-DARVEAU
14      TEXAS DEPARTMENT OF PUBLIC SAFETY
        Senior Assistant General Counsel
15      Office of General Counsel
        5805 N. Lamar Boulevard
16      P.O. Box 4087
        Austin, Texas 78752
17      Phone:  512.424.2420
18
    ALSO PRESENT:
19
        MR. ALEX STAMM
20      MR. AARON HAGEL, Videographer
21
22
23
24
25
```

**Page 4**

```
1                       EXHIBITS
2   EXHIBIT NAME   DESCRIPTION                    PAGE
3   Exhibit 8.     Screenshot - Texas DPS - Driver  85
                   License Renewal and Change of
4                  Address Page
5   Exhibit 9.     PowerPoint Entitled "The National 100
                   Voter Registration Act and Voter
6                  Registration Applications ... an
                   Overview"
7
    Exhibit 10.    12/4/15 Email from Lauren Petty  107
8
    Exhibit 11.    6/8/16 Email String              13
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
1               I N D E X
2                                          PAGE
3   Appearances...................................   2
4   WITNESS: JOHN CRAWFORD
5   Examination by Ms. Champion...................   6
6   Examination by Ms. Stevens....................  126
7   Reporter's Certificate........................  152
8
9                   EXHIBITS
10  EXHIBIT NAME   DESCRIPTION                 PAGE
11  Exhibit 1.     Notice of Deposition          24
12  Exhibit 2.     12/22/14 Texas DPS DLS - Use Case 54
                   Specification:  Create Daily Update
13                 File for SOS - Version 1.9
14  Exhibit 3.     12/29/14 Texas DPS DLS - Use Case 54
                   Specification:  Create Voter
15                 Registration Extract File -
                   Version 6.9
16
    Exhibit 4.     DPS Overview                   65
17
    Exhibit 5.     Form DL-14A (Rev. 6/14)        70
18                 Application for Texas Driver
                   License or Identification Card
19
    Exhibit 6.     Form DL-64 (Rev. 3/16)         77
20                 Application for Change of Address
                   on Valid Texas Driver License (DL)
21                 & Identification Card (ID)
22  Exhibit 7.     Form DL-64 (Rev. 9/13)         77
                   Application for Change of Address
23                 on Valid Texas Driver License (DL)
                   & Identification Card (ID)
24
25
```

**Page 5**

```
1            P R O C E E D I N G S
2            THE VIDEOGRAPHER:  All right.  This
3   begins the videotaped deposition of Mr. John Crawford in
4   the matter of Jarrod Stringer, et al., versus Rolando B.
5   Pablos, in his official capacity as the Texas Secretary
6   of State, and Steven C. McCraw, in his official capacity
7   as the Director of the Texas Department of Public
8   Safety, now pending in the United States District Court
9   for the Western District of Texas, San Antonio Division,
10  Civil Action No. 5:16-cv-00257-OLG.
11           This deposition is being held at 300 West
12  15th in Austin, Travis County, Texas.  Today is Friday,
13  February 17th, 2017.  The time is now 10:06 a.m.
14           My name is Aaron Hagel, your
15  videographer, retained by Legal Eyes, Incorporated.  Our
16  court reporter is Steve Stogel.
17           Would counsel and all parties present
18  please introduce yourselves for the record, and then
19  would the court reporter then swear in the witness?
20           MS. CHAMPION:  Yes.  My name is Cassandra
21  Champion.  I'm here on behalf of the plaintiff, Jarrod
22  Stringer.
23           MS. STEVENS:  Beth Stevens on behalf of
24  Benjamin Hernandez.
25           MR. STAMM:  Alex Stamm here on behalf of
```



Page 6

1 the plaintiff, Jarrod Stringer.
2        MS. MURPHY:  Kathleen Murphy, General
3 Counsel's Office, Texas Department of Public Safety.
4        MS. MACKIN:  Anne Marie Mackin, Texas
5 Attorney General's Office, here on behalf of all
6 defendants.
7        THE WITNESS:  John Crawford, Texas
8 Department of Public Safety.
9              JOHN CRAWFORD,
10 having been first duly sworn, testified as follows:
11              EXAMINATION
12 BY MS. CHAMPION:
13     Q.    Thank you.  Mr. Crawford, could you state and
14 spell your full name for the record, please?
15     A.    It's John William Crawford.  J-O-H-N; William,
16 W-I-L-L-I-A-M; and Crawford is C-R-A-W-F-O-R-D.
17     Q.    Thank you.  Have you ever been deposed before?
18     A.    Yes, I have.
19     Q.    We will come back to that to learn a little
20 bit more, but first, even though you've been deposed,
21 I'll just give you a refresher of the rules, if you
22 don't mind.
23        So only one of us can talk at a time.
24 That is for the benefit of the court reporter, to keep
25 our record very clear.  So I'll endeavor to let you

Page 7

1 finish every answer if you will kindly let me finish
2 every question.
3        Can you please give verbal answers, such
4 as "yes" and "no," rather than "uh-huh" or "huh-uh,"
5 because those are harder to read?
6     A.    Yes.
7     Q.    And if you don't understand a question, will
8 you let me know you don't understand, because if you do
9 not let me know, then I will presume that you understood
10 and that the answer was the answer you meant to give.
11 Is that okay?
12     A.    Yes.
13     Q.    Are you currently sick or taking any
14 medication today?
15     A.    No.
16     Q.    Is there any other reason your testimony today
17 might be impaired?
18     A.    No.
19     Q.    Okay.  Let's go back to the depositions you
20 may have been involved with in the past.  How many times
21 have you been deposed?
22     A.    Two.
23     Q.    And for the first one, why -- what case or
24 matter were you deposed for?
25     A.    It -- there were two contractors that were

Page 8

1 employed by the department.  One had a case against the
2 other, and one reported to me, and so I was deposed in
3 that matter.
4     Q.    Do you remember when that was?
5     A.    I believe it was 2010.
6     Q.    Do you happen to know the name of the case?
7     A.    I don't.  I'm sorry.  I don't remember.
8     Q.    That's okay.  How about the second time?
9     A.    The second time was the voter ID case, when I
10 testified for the department.
11     Q.    And when was that?
12     A.    That was in 2014.  I believe it was in the
13 spring.  I don't remember the exact month.
14     Q.    And when you say "department," do you mean the
15 Department --
16     A.    Department of Public Safety, yes.
17     Q.    Did you testify for the Department of Public
18 Safety in the first case as well?
19     A.    No.  That was private -- a private matter.
20     Q.    Thank you.  Are you currently employed by the
21 Texas Department of Public Safety?
22     A.    Yes.
23     Q.    Can we call that DPS today?
24     A.    Yes.
25     Q.    What is your job title?

Page 9

1     A.    I am manager of licensing services
2 applications.
3     Q.    Is that in a particular division?
4     A.    It's in the information technology division.
5     Q.    And what do you do in that position?
6     A.    I'm responsible for a team of software
7 developers who support the applications that are used by
8 the driver license division and the regulatory services
9 division of DPS.
10     Q.    How big is that team?
11     A.    I have 15 people.
12     Q.    And who do you report directly to?
13     A.    I report to Shannon Wallace, who is the
14 interim assistant deputy director in -- for
15 applications.
16     Q.    You said "interim."  Was there someone that
17 had that position before Shannon Wallace?
18     A.    Yes.  The previous holder of the position was
19 Bryan Lane, and he's now the chief information officer
20 for the information technology division.
21     Q.    We'll go over the hierarchy a little bit in
22 one moment, but how long have you held that position?
23     A.    Since December of 2012.
24     Q.    When did you first start working for DPS?
25     A.    In September 2008.



STRINGER: JOHN CRAWFORD

Page 70

```
1   Exhibit 5?
2           (Exhibit No. 5 marked)
3       Q.  (By Ms. Champion)  This form, Exhibit 5, at
4   the top says "Application for Texas Driver License or
5   Identification Card."  Is that correct?
6       A.  Yes.
7       Q.  And it has many fields on the front page of
8   the form.  Would you agree?
9       A.  Yes.
10      Q.  Do each of these fields reflect a
11  corresponding field within the DLS?
12      A.  Yes.
13      Q.  For Question 2, which reads, "If you are a
14  U.S. citizen, would you like to register to vote?  If
15  registered, would you like to update your voter
16  information?"
17          Is there a field for that in DLS?
18      A.  Yes.
19      Q.  And what does it look like on your end?  Does
20  it have that exact language?  Can you explain the field?
21      A.  It would have -- on the screen in the driver
22  license application, it would have a tag that says
23  "voter registration," and an entry would be "yes" or
24  "no."
25          So I don't believe that it has the entire
```

Page 71

```
1   question on the driver license screen.  There are many
2   screens, so I'd have to go look at it specifically, but
3   I don't believe the full question is there.
4       Q.  Can that field be left blank?
5       A.  No.
6       Q.  Can the -- can there be both a "yes" and a
7   "no" entry simultaneously?
8       A.  No.
9       Q.  Are you familiar with the term "hard stop"?
10      A.  Yes.
11      Q.  Does that mean that that field has to be
12  filled out before another field can be filled out?
13      A.  Yes.
14      Q.  Do you know if it was always the case that
15  that field had to be filled out for the No. 2 voter
16  registration question?
17      A.  It was not.
18      Q.  And when did that change?
19      A.  I -- I don't recall the exact date.  I'd have
20  to look at records to find out.  It's -- it was not part
21  of the original driver license application.  The change
22  was made at a later date.
23      Q.  Were you part of making that change?
24      A.  My team would have been, yes.
25      Q.  What was the process -- the technical process
```

Page 72

```
1   that had to occur when the change was made from the
2   field not having to have an answer to the field now
3   having to have an answer?  So how was the hard stop
4   created, I suppose?
5       A.  It would have followed the regular process of
6   a formal request being entered and verified.  But in --
7   within the programming itself, the programmer -- the
8   software developer controls how a cursor flows through
9   fields on the screen.  If you hit return, you can either
10  bypass a field or not, and you make a software change
11  that doesn't allow that cursor to pass a field until you
12  have entered one of the valid values in that field.
13          So if it's -- a valid value's not
14  entered, you can't go any farther.  So that's what "hard
15  stop" means.  It forces you to make a valid entry before
16  you can go to the next piece of information.
17      Q.  And so when the decision was made to implement
18  this hard stop, who would have given that assignment?
19      A.  Who would have given the assignment to
20  actually do the code?
21      Q.  Yes.
22      A.  My lead, Jeff Peschka, would have assigned the
23  person to do the actual coding itself.  The request
24  would have come from the driver license division, then
25  we would have -- we would have assigned the tasks based
```

Page 73

```
1   on their prioritizations.  Ultimately it's my
2   responsibility for work assignment.
3       Q.  Do you know who at the driver's license
4   division would have made the request?
5       A.  I don't know who made that request, no.
6       Q.  Do you look how we can find out?
7       A.  It would be in the JIRA ticket.
8       Q.  We talked about all of the information from
9   Exhibit 5 being input into DLS.  Do you know if every
10  form that a customer fills out in person at a DPS office
11  is the same in that it would have multiple fields that
12  would all go into -- into the DLS?
13      A.  I'm not familiar with every form that would be
14  available in a driver license office, and I can't -- I
15  couldn't confirm for certain that every one would be
16  included.
17      Q.  Does the DLS only store electronic signatures?
18      A.  Yes.
19      Q.  But there --
20      A.  Well, I'm not sure what -- could you -- could
21  you clarify that a little bit, please?
22      Q.  Sure.  Does the DLS only store signatures
23  which are input using the keypad?
24      A.  The DLS database itself, yes, it only stores
25  signatures that are collected on those electronic pads.
```



STRINGER: JOHN CRAWFORD

Page 74

1    Q.   Would there ever be a situation where there's
2  a file within DLS that is an image of a scanned
3  signature?
4    A.   Customer service representatives do scan
5  documents that have physical signatures.  Those are
6  stored by a vendor.  They're not stored in the driver
7  license database.
8    Q.   What vendor is that?
9    A.   It's a company called CBM Archive.
10    Q.   So images of scanned documents, including
11  signatures, are they kept within DLS?  Are they stored
12  within DLS?
13    A.   No.  They're stored by CBM Archive in their
14  environment.
15    Q.   I think you've used the phrase "in their
16  environment" to refer to not only CBM but also DPS.  Can
17  you explain what that means?
18    A.   CBM Archive has their own computer equipment,
19  and that's where this information is stored, on their
20  computer equipment.
21    Q.   Is that what you mean by "the environment"?
22    A.   Yes.
23    Q.   Can a DPS employee look up a scanned document
24  in DLS?
25    A.   They can look up a scanned document through

Page 75

1  the DLS application.  They're looking at it in the
2  CBM Archive database.
3    Q.   So does a CBM system then have to somehow
4  communicate with DLS?
5    A.   Yes.  The DLS application knows for a
6  particular customer that scanned documents are stored,
7  and an authorized driver license person can look at
8  those documents.
9    Q.   Does DPS have any signature recognition
10  software?
11    A.   Not that I'm aware of.
12    Q.   Each time a customer comes into a DPS office
13  to complete a transaction, is a record in DLS updated
14  every time?
15    A.   Yes.  If the customer actually executes a
16  transaction, yes.
17    Q.   Is a new signature file created each time a
18  customer completes a transaction?
19    A.   That's really a business question.  I don't
20  know what their process -- I don't know what the
21  business process is for requiring a signature.
22             THE REPORTER:  Did you say requiring or
23  acquiring?
24             THE WITNESS:  Requiring.
25             THE REPORTER:  Thank you.

Page 76

1    Q.   (By Ms. Champion)  When you look at a file in
2  DLS, can you tell when a signature file has been
3  created?
4    A.   Yes.
5    Q.   How can you tell?
6    A.   It'll have a date and time stamp associated
7  with that record.
8    Q.   Can you see a history for each time a
9  signature file has been changed?
10    A.   Yes.  A signature file is not changed.  A new
11  signature would be captured.  So we would -- we would
12  have the old signature -- the previous signature, but
13  you don't change a signature.  You capture a new
14  signature.
15    Q.   What would happen to the old signature?
16    A.   It remains on file.
17    Q.   So would a person record then have multiple
18  signatures associated with that file?
19    A.   It could, yes.
20    Q.   Are signature files ever removed from DLS?
21    A.   No.
22    Q.   What is the DPS digital signature application?
23    A.   I'm not familiar with that term.
24    Q.   Okay.  So when a customer service
25  representative is using DLS, could that employee compare

Page 77

1  two signatures?  Could they pull them both up on the
2  system at the same time?
3    A.   I don't know if a customer service
4  representative has that level of authority.  That would
5  be a business authorization.
6    Q.   If a person record has more than one signature
7  associated with that record, which signature would be
8  batched and sent to the Secretary of State with the
9  voter extract --
10    A.   The most --
11    Q.   -- file?
12    A.   The most recently captured one.
13    Q.   And the system knows which one to send based
14  on the time and date stamp associated with each
15  signature?
16    A.   Yes.
17    Q.   I'm going to hand over two documents.  One
18  will be Exhibit 6 and one will be Exhibit 7.
19             (Exhibit Nos. 6 and 7 marked)
20    Q.   (By Ms. Champion)  Okay.  Looking at
21  Exhibit 6, the top it says "Application for Change of
22  Address on Valid Texas Driver's License (DL) &
23  Identification Card (ID)."
24             Do each of these fields get filled out
25  when a form like this is mailed in to DPS?



STRINGER: JOHN CRAWFORD

Page 138

1 sent to the Secretary of State that night with the voter
2 registration batch.  Correct?
3      A.   Yes.
4      Q.   And with the renewal and the change of
5 address, the electronic signature's also going to the
6 Secretary of State?
7      A.   Yes.
8      Q.   And I think you answered this with
9 Ms. Champion, but if someone's provided multiple
10 electronic signatures, it's the most recent signature
11 that goes with the batch.  Is that right?
12      A.   Yes, that's correct.
13      Q.   And the second batch -- the kind of catchall
14 batch in my mind -- that doesn't have any signatures.
15 Is that correct?
16      A.   I don't recall.  It does not.
17      Q.   Would you turn to Page 4 on the Batch 2 case
18 use, the non-voter registration one?
19      A.   The daily update?
20      Q.   Yes, sir.  Page 4 at the top that has 1.1.6.2.
21      A.   Yes.
22      Q.   And then in parentheses, it has A-2, and it
23 says, "Purge status."
24      A.   Yes.
25      Q.   Can you explain that a little bit more to me?

Page 139

1 What -- what is purge status?
2      A.   I'm sorry.  I don't know.  I would have to --
3 I'd have to research that.  I don't know what that
4 designator is.
5      Q.   Is it fair to say that somebody on your team,
6 the people that you manage, would be able to answer that
7 question?
8      A.   Either someone from my team or someone from
9 the business would be able to answer that question, yes.
10      Q.   I'm going to turn your attention back to the
11 mail-in change of address, the current one -- so I think
12 that's Exhibit 6.
13           With regard to the batch that's sent to
14 the Secretary of State at night for the voter
15 registration, if the person answers "yes" on their
16 change of address that's mailed in and that's input into
17 DLS, it's the electronic signature that was previously
18 provided the last time that person went in person.
19 That's the signature that goes to the Secretary of
20 State.  Is that right?
21      A.   Yes, that's correct.
22      Q.   There's not -- I've not a scan of the
23 signature that is required on Exhibit 6?
24      A.   It is not.  That's correct.
25      Q.   Okay.  The information -- when someone calls

Page 140

1 in to DPS to update or renew, the information that gets
2 captured in DLS -- if the voter registration question
3 is, in fact, asked and captured in DLS, that information
4 would also go to Secretary of State at the same time
5 during that batch?
6      A.   That's correct.
7      Q.   And if they answered "yes" to that question
8 and it goes to the Secretary of State, their previously
9 provided electronic signature is what would be sent to
10 the Secretary of State as well?
11      A.   Yes.
12      Q.   So I'll turn your attention to the online
13 transaction with Texas.gov and the interaction with DLS.
14 Okay?
15      A.   Okay.
16      Q.   When DLS receives the information from
17 Texas.gov, the DLS system can tell, can it not, whether
18 it is a renewal or a change of address?
19      A.   Yes.
20      Q.   Thank you.  And do I have it right that you
21 can't go get a new driver's license online?  Is that
22 correct?
23      A.   An initial driver license, that is correct.
24      Q.   Right.  So if I just turned -- how old do you
25 have to be to drive -- 16, 17 -- I can't have my first

Page 141

1 interaction with DPS be online.  I have to go in person?
2      A.   That is correct.  You must go into an office.
3      Q.   Okay.  And, likewise, I can't do it via the
4 mail for the first time either?
5      A.   That's also correct, right.  Mail is only
6 renewals or change of address.
7      Q.   Okay.  I think you addressed this with
8 Ms. Champion, but I just want to make sure I understand.
9 The information that is transferred from Texas.gov to
10 DLS, the sort of fields that come out of Texas.gov, the
11 website, and get projected out to DLS or whatever the
12 mechanism is, that would be a case use -- a use case
13 from Texas.gov.  Is that correct?
14      A.   Yes.
15      Q.   That would dictate what gets sent to DLS?
16      A.   What -- yes, that's correct.
17      Q.   Okay.  And currently we know at the very least
18 the updated address information does get sent to DLS.
19 Is that correct?
20      A.   Yes.
21      Q.   And we know that the two -- well, first of
22 all, the question about "Do you want to donate a dollar
23 to this charity?" that question and answer gets sent to
24 you.  Correct?
25      A.   Yes, it does.



STRINGER: JOHN CRAWFORD

Page 142

1    Q.   To DLS?
2    A.   Yes.
3    Q.   And the answer to the question "Do you want to
4  be an organ donor?" that question gets sent to DLS?
5    A.   Yes, that's correct.
6    Q.   Okay.  And DLS is fully capable of receiving
7  the answer to the question do you want to register to
8  vote -- capable of receiving it from Texas.gov.  Is that
9  correct?
10   A.   Not currently.
11   Q.   It's programmable such that DLS could receive
12 the answer to the question do you want to register to
13 vote from Texas.gov?
14   A.   Yes.
15   Q.   And like you pointed out with Ms. Champion,
16 that data field already exists, do you want to register
17 to vote.  Is that correct?
18   A.   There is a data field that exists, yes.
19   Q.   So the program would need to be rewritten such
20 that the information from Texas.gov changes the answer
21 to that question within DLS.  Is that right?
22   A.   I can't tell you exactly how the process would
23 work without analysis.
24   Q.   Okay.
25   A.   That would require analysis in a use case to

Page 143

1  determine if that was the right process.
2    Q.   Have you ever done that analysis?
3    A.   No.
4    Q.   Would you have to get that request from
5  someone with DLD to do that analysis?
6    Q.   And DLD is the driver's license department.
7  Correct?
8
9    A.   Driver license division.
10   Q.   Division.
11   A.   Yes.
12   Q.   Excuse me.  Thank you.  Just to clarify, the
13 system, DLS itself, is capable of having the
14 information -- of obtaining the information should
15 Texas.gov send it to you.  Is that fair?
16   A.   Yes.
17   Q.   Do I have it right that if someone goes online
18 to either change their address or, within a renewal,
19 they do something to change -- change their address,
20 change their name, something like that -- that
21 information all is going from DLS, once they receive
22 it -- once it receives it -- to the Secretary of State
23 in that second batch we've been talking about?
24   A.   Yes.
25   Q.   Okay.  So, hypothetically, if DLS did what you

Page 144

1  said -- you needed to do the analysis and see how
2  exactly it would need to communicate with Texas.gov to
3  start tracking the answer "yes" or "no," "Do you want to
4  register to vote?" -- hypothetically, they've done that
5  and the answer is "yes."  Okay?
6    A.   Okay.
7    Q.   Okay?  Are you with me so far?
8    A.   Okay.
9    Q.   Okay.  DLS is also capable of sending that
10 information on to the Secretary of State's Office.
11 Correct?
12        MS. MACKIN:  Objection; form.  You can
13 answer.
14   A.   Technically, yes.
15   Q.   (By Ms. Stevens)  It's capable of doing it?
16   A.   From an IT perspective, yes.
17   Q.   Okay.  And if it were to do that, it could
18 also send the previously provided electronic signature
19 from that customer, just like it does with a mail-in
20 change of address.
21   A.   Yes.
22   Q.   Okay.  And I just want to go back to -- you
23 said technically it can do what I just asked you two
24 questions ago.  Are you hesitating because someone needs
25 to actually have you put that in place in the system?

Page 145

1    A.   Someone has to -- yeah, the driver license
2  division would have to request it, and there's a process
3  to go through.  It has to be legal, for example.
4  Their -- their request must come from the driver license
5  division, and we're -- we don't work on things unless
6  that request comes from the driver license division.
7    Q.   Sure.  That makes -- someone needs to put a
8  ticket into JIRA and then do the whole analysis, like
9  you explained earlier?
10   A.   That's right.
11   Q.   Okay.
12   A.   That's right.
13   Q.   If Texas.gov implemented a system by which it
14 captured an electronic signature -- aside from the
15 electronic pad signature that someone gives in person.
16 Okay?  Does this make sense --
17   A.   Okay.
18   Q.   -- so far?
19   A.   Okay.
20   Q.   Okay.  So Texas.gov in this hypothetical
21 captures an electronic signature that someone provides
22 to it online.  Is DLS capable of holding that
23 information should Texas.gov send it?
24   A.   It would depend on how it's captured and what
25 the format is, so not necessarily.



STRINGER: JOHN CRAWFORD

## Page 150

                    CHANGES AND SIGNATURE

1

2  PAGE  LINE      CHANGE                      REASON

3  _____

4  _____

5  _____

6  _____

7  _____

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 _____

23 _____

24 _____

25 _____

## Page 151

1       I, JOHN CRAWFORD, have read the foregoing

2  deposition and hereby affix my signature that same is

3  true and correct, except as noted above.

4

5                          _____
                           JOHN CRAWFORD

6

7  THE STATE OF _____)

8  COUNTY OF _____)

9

10      Before me, _____, on this day

11 personally appeared JOHN CRAWFORD, known to me (or

12 proved to me under oath or through _____)

13 (description of identity card or other document) to be

14 the person whose name is subscribed to the foregoing

15 instrument and acknowledged to me that they executed the

16 same for the purposes and consideration therein

17 expressed.

18      Given under my hand and seal of office this the

19 _____ day of _____, 2017.

20

21

22                          _____
                           NOTARY PUBLIC IN AND FOR
                           THE STATE OF _____

23

24

25

## Page 152

1            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS

2                  SAN ANTONIO DIVISION

3  JARROD STRINGER, et al.,         §
                                    §

4       Plaintiffs,                 §
                                    §

5  v.                               §  Civil Action
                                    §  No. 5:16-cv-00257-OLG

6  ROLANDO B. PABLOS, IN HIS        §
   OFFICIAL CAPACITY AS THE         §

7  SECRETARY OF STATE and STEVEN    §
   C. McCRAW, IN HIS OFFICIAL       §

8  CAPACITY AS THE DIRECTOR OF      §
   THE TEXAS DEPARTMENT OF PUBLIC   §

9  SAFETY,                          §
                                    §

10      Defendants.                 §

11

                 REPORTER'S CERTIFICATION

12           DEPOSITION OF JOHN CRAWFORD
                  February 17, 2017

13

14      I, Steven Stogel, Certified Shorthand Reporter in

15 and for the State of Texas, hereby certify to the

16 following:

17      That the witness, JOHN CRAWFORD, was duly sworn by

18 the officer and that the transcript of the oral

19 deposition is a true record of the testimony given by

20 the witness;

21      That the original deposition was delivered to

22 MR. PETER A. KRAUS.

23      That a copy of this certificate was served on all

24 parties and/or the witness shown herein on

25 _____, 2017.

## Page 153

1       I further certify pursuant to FRCP Rule 30(f)(1)

2  that the signature of the deponent:

3       _X_ was requested by the deponent or a party

4  before the completion of the deposition and that the

5  signature is to be before any notary public and returned

6  within 30 days (or ____ days per agreement of counsel)

7  from date of receipt of the transcript.  If returned,

8  the attached Changes and Signature Page contains any

9  changes and the reasons therefore:

10      ___ was not requested by the deponent or a

11 party before the completion of the deposition.

12      That the amount of time used by each party at the

13 deposition is as follows:

14      MS. CASSANDRA CHAMPION...............4:09

15      MS. BETH STEVENS.....................0:31

16      That pursuant to information given to the

17 deposition officer at the time said testimony was taken,

18 the following includes counsel for all parties of

19 record:

20      FOR THE PLAINTIFFS:  MS. CASSANDRA CHAMPION

21      FOR THE DEFENDANTS:  MS. ANNE MARIE MACKIN

22      FOR TEXAS DPS:  MS. KATHLEEN T. MURPHY-DARVEAU

23      That $_____ is the deposition officer's charges

24 to the Plaintiffs for preparing the original deposition

25 transcript and any copies of exhibits;



STRINGER: JOHN CRAWFORD

Page 154

```
1        I further certify that I am neither counsel for,
2   related to, nor employed by any of the parties or
3   attorneys to the action in which this testimony was
4   taken, and further that I am not financially or
5   otherwise interested in the outcome of this action.
6        Certified to by me this the  23rd   day of
7    February     , 2017.
8
9
10                  _____
                    Steven Stogel
11                  CSR 6174
                    Expiration Date:  December 31, 2018
12                  HG Litigation Services
                    Firm No. 69
13                  2777 N. Stemmons Freeway, Suite 1025
                    Dallas, Texas 75207
14                  1-888-656-DEPO
15
16
17
18
19
20
21
22
23
24
25
```



# Exhibit 19

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, ET AL, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| V. | § | NO. 5:16-CV-00257 |
| | § | |
| CARLOS H. CASCOS, IN HIS OFFICIAL CAPACITY | § | |
| AS THE TEXAS SECRETARY OF STATE AND | § | |
| STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY | § | |
| AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY, | § | |
|     *Defendants.* | § | |

---

### DEFENDANT CARLOS H. CASCOS' FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS

---

TO:    Plaintiffs Jarrod Stringer, Benjamin Hernandez, Totysa Watkins, and John Woods

through their attorney of record, by and through their attorney of record, Caitlyn Silhan, WATERS

& KRAUS, LLP, 3141 Hood Street, Suite 700, Dallas, Texas 75219.

**Dated: January 20, 2017.**

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

1

/s/Anne Marie Mackin
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4074
(512) 320-0667 FAX
anna.mackin@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

## RESPONSES TO JARROD STRINGER'S REQUESTS FOR ADMISSIONS

Request No. 1:  Admit that as Secretary of State, Defendant Carlos H. Cascos serves as Texas' Chief Election Officer.

Response: Admits that, under Texas Election Code §31.001(a), the Secretary of State serves as the State's Chief Election Officer, but note that Rolando B. Pablos has succeeded Carlos H. Cascos as Texas's Secretary of State.

Request No. 2:  Admit that Mr. Cascos is responsible for ensuring Texas' compliance with the National Voter Registration Act ("NVRA").

Response: Denies.

Request No. 3: Admit that during a transaction on the DPS website in August or September 2014, Mr. Stringer updated his driver's license address online.

Response: Denies that this transaction took place on the DPS website. In all other respects, admits.

Request No. 4:Admit that when Mr. Stringer updated his driver's license address online in August or September 2014, he checked "yes" in response to the statement, "I want to register to vote."

Response: After making a reasonable inquiry into this request, defendant lacks sufficient information to truthfully admit or deny it, because defendant does not maintain records of this information.

Request No. 5:  Admit that when Mr. Stringer attempted to vote early in the 2014 general election, his name was not on the rolls in Bexar County.

Response: After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny, because Defendant does not have access to Bexar County's 2014 rolls.  Defendant maintains a statewide voter registration list.

2

Request No. 6:  Admit that Mr. Stringer called Bexar County elections officials in 2014 to inquire about his voter registration status.

Response:  After making a reasonable inquiry into this request, defendant lacks sufficient information to truthfully admit or deny, because Defendant does maintain records of calls to Bexar County election officials inquiring about voter registration status.

Request No. 7:  Admit that in the 2014 general election, Mr. Stringer could only vote a limited ballot with state-wide candidates because he was still registered at his address in Tarrant County.

Response:  After making a reasonable inquiry into this request, Defendant states that Mr. Stringer has two addresses in the statewide voter registration system in Tarrant County (1) one with a start date of May 28, 2014, and an end date of May 12, 2015; and (2) one with a start date of October 22, 2009 and an end date of May 28, 2014.  Mr. Stringer's voting history in the statewide voter registration database as to 2014 only indicates that he cast a regular ballot in Tarrant County on May 22, 2014; there is no voting history for him for the November 2014 election.  Mr. Stringer has an address in Bexar County for his registration in Bexar County with an effective date of May 23, 2015 in the statewide voter registration database.  Accordingly Defendant cannot admit or deny what type of ballot Mr. Stringer cast, if any, in November 2014; and, to the extent the request asks hypothetically what type of ballot he could cast, Defendant objects to the request as hypothetical and calling for a legal conclusion.

Request No. 8:  Admit that, in order for an eligible voter who completes a valid driver's license transaction on the DPS website to register to vote or update voter registration information, , he or she must separately visit the Secretary of State's website and either: (a) print out the physical voter registration form, fill out the form, and mail or personally deliver the form to the appropriate county registrar before the voter registration deadline, or (b) request that a form be mailed, receive the form, fill out the form, and mail or personally deliver it to the appropriate county registrar before the voter registration deadline.

Response:  Admits that an eligible voter who changes the address on her non-commercial Texas driver license online must submit a signed voter registration application in person or by mail in order for his voter registration information to be updated. The DPS and Texas.gov online interface links such voters to an application they may print out, sign, and mail, and also gives such voters the option to request that a voter registration application be mailed to them, postage paid, and contains language indicating that the separate form must be filled out in order to complete the voter's registration.. Denies to the extent the request indicates that the voter registration application must be mailed or personally delivered to the "appropriate county registrar" by the voter, and denies in all other respects.

Request No. 9:  Admit that if a registered voter moves to a new address within the same county where he or she is already registered to vote, he or she can update the address on his or her driver's license online through the DPS website without a hard application or wet signature.

Response: Defendant objects that this request is hypothetical and calls for speculation.

<u>Request No. 10:</u>   Admit that an eligible voter who moves within a Texas county can update his or her voter registration record on the Secretary of State's website.

<u>Response:</u>  Admits that there is a link on VoteTexas.gov, under http://www.votetexas.gov/faq/, to a page where a voter can update his or her voter registration address within a county, https://txapps.texas.gov/tolapp/sos/SOSACManager.[1]   Denies that any such update itself occurs on the SOS's web domains (i.e., www.sos.state.tx.us or www.votetexas.gov). Admits that on the Texas.gov website, https://txapps.texas.gov/tolapp/sos/SOSACManager, subject to the requirements listed on that page, an eligible voter who moves within a Texas county is able to update their address.[2]

<u>Request No. 11:</u>   Admit that if a registered voter is moving to a new address within the same county where he or she is already registered to vote and changes his or her address online through the DPS website, the eligible voter cannot subsequently use the Secretary of State's website to update his or her address for voter registration purposes.

<u>Response:</u> Admits to the extent that it is not the Secretary of State's website on which an eligible voter updates his or her address for voter registration purposes within a county. In all other respects, denies.

---

[1] The specific FAQ accessed via this link provides, among other things:

<u>I am registered to vote, but I moved this past year. Is there anything I need to do to make sure that I won't have a problem voting in November?</u>

If you moved within the same county where you are currently registered, you must file the new address information in writing with your voter registrar OR you may submit the "in county" change online. The last day to make a change of address that will be effective for the November 8, 2016 Election is October 11, 2016. If you missed this deadline, you may return to your old precinct to vote, if you still live in the political subdivision holding the election. If you moved within the county, you will have to go back to the precinct in which you are currently registered (your "old" precinct), and, at that location, you will be required to complete a "statement of residence" confirming your new address. This will act to update your registration information for the future. You will then be allowed to vote a regular ballot as long as you are otherwise eligible. If you moved to a "new county," you must re-register in your new county of residence by October 11, 2016, to be eligible to vote in the November 8, 2016 Election (unless you are eligible to vote a "limited ballot," see below).

<u>Addresses and phone numbers of Voter Registrars</u>

LIMITED BALLOT OPTION: If you have moved to a new county and have not re-registered in the new county by the October 11, 2016 deadline, you may be eligible to vote a limited ballot in your new county. A limited ballot means that you would be allowed to vote on any candidates and measures in common between your former and new county. This procedure is only available during the early voting period at the main early voting polling place; you may NOT vote a limited ballot on election day. You must be a current registered voter in your former county in order to qualify OR you must have been registered in your old county at the time you submitted a voter registration application in your new county, if you have done so. For full information on this procedure (including the by-mail option, if qualified to vote by mail), go to Special Forms of Early Voting (PDF). If you feel you qualify to vote a limited ballot, we recommend that you contact the office of the Early Voting Clerk in your new county.

[2] The page provides, among other things, "To use this service, you need your: Current Driver License or ID Card Social Security Number Voter Registration Card VUID (Voter Unique Identifier) Number may be obtained from your County Voter Registrar."

Request No. 12:   Admit that when a registered voter updates his or her address through the DPS website as described above, DPS transmits the voter registration to the Secretary of State's office electronically, without a hard application or wet signature.

Response: Denies. Information voters submit to the DPS change of address online portal relating to voter registration is not transmitted to SOS.

Request No. 13:   Admit that when the Secretary of State's office receives voter registration information transmitted from DPS, it transmits the information to the county where each prospective voter resides.

Response: Admits that information received from persons conducting in-person or by mail transactions with DPS is transmitted from SOS to the county voter registrar in the county in which the voter indicates their "residence address" is located.

Request No. 14:   Admit that in 2013, the State created a web portal where county voter registrars can place information from voters who tell the county that they attempted to register to vote at DPS.

Response: Admits that, in 2013, SOS and DPS established a portal to allow counties to submit inquiries and verify if an individual has registered to vote through DPS, when a voter registrar is not able to locate a copy of the record. Denies that the portal is limited to "information from voters who tell the county that they attempted to register to vote at DPS," to the extent that the "county" is not a person.

Request No. 15:   Admit that the information voter registrars place information into the web portal may include any information the voter provided about attempting to register to vote at DPS along with the other information the voter included on the provisional ballot envelope.

Response: Defendant objects that this request is hypothetical and calls for speculation, and is unintelligible.

Request No. 16:   Admit that DPS will then research the information provided by the voter to determine whether the voter indicated their desire to register to vote and/or update their voter registration when registering with DPS in-person or by mail.

Response: Defendant objects that this request is hypothetical and calls for speculation.

Request No. 17:   Admit that if the voter did indicate their desire to register to vote and/or update their voter registration when registering with DPS in-person or by mail, then the voter's registration is considered to be "submitted to the registrar" for purposes of Texas Election Code

Response: Defendant objects that this request is hypothetical and calls for speculation, and is unintelligible.

Request No. 18:    Admit that if an eligible voter requested voter registration during an in-person transaction with DPS, but the record of his or her transaction was not transmitted by the DPS employee to SOS, the registration is nonetheless considered effective on the date that the eligible voter indicated to DPS he or she wanted to register to vote, whether in-person or by mail.

Response: Defendant objects that this request is hypothetical and calls for speculation.

Request No. 19:    Admit that the date of submission of a change of address to a DPS employee in-person is considered to be the date of submission to the voter registrar for the purpose of determining the effective date of registration.

Response: Defendant objects that this request is hypothetical and calls for speculation.

Request No. 20:    Admit that the date of submission of a driver's license renewal application to a DPS employee in-person is considered to be the date of submission to the voter registrar for the purpose of determining the effective date of registration.

Response: Defendant objects that this request is hypothetical and calls for speculation.

Request No. 21:    Admit that the DPS web portal was created to allow the counties to submit inquiries and verify if an individual has registered to vote through DPS, when a voter registrar is not able to locate a copy of the record.

Response:  Admits. *See* SOS Election Advisory No. 2015-08.

Request No. 22:    Admit that at least since the web portal was implemented in 2013, SOS has kept records of each voter who has been submitted into the system, as well as the outcome of the investigation DPS conducts for each individual whose name has been run through the portal system.

Response: Admits that since the web portal was implemented in 2013, SOS has kept records of information entered into the web portal, which includes information entered by county personnel and DPS. Denies to the extent "records of each voter" includes information other than what was entered into the portal for "each voter".

Request No. 23:    Admit that from May 27, 2015, when Plaintiffs sent their first notice letter to the State, to November 30, 2015 when Plaintiffs sent their last notice letter to the State, the parties engaged in negotiations and communications, resulting in the State agreeing to a number of reforms.

Response: Admits that counsel for Defendants met with counsel for Plaintiffs on July 20, 2015. Admits that counsel for Plaintiffs and counsel for Defendants exchanged several letters between May 27, 2015 and November 30, 2015. Admits that, in a good faith effort to work with Plaintiffs, Defendants made voluntary revisions to certain voter registration policies and procedures.

Request No. 24:   Admit that the letter Plaintiffs sent to the State on November 30, 2015 summarized the reforms to the voter registration process the State agreed to implement.

Response: Denies.

Request No. 25:   Admit that according to the Election Advisory issued by the Secretary of State's office on September 10, 2015, when a voter appears to vote but is not on the rolls, county election officials must: (a) offer that voter a provisional ballot; and (b) ask the voter whether he or she attempted to register at DPS and, if so, when.

Response: Defendant objects that this request is hypothetical and calls for speculation.

Request No. 26:   Admit that after county election officials ask the two questions in the RFA above, officials must then use the DPS web portal to notify DPS representatives, who will review the voter's original file.

Response: While Defendant cannot say with absolute certainty what occurs in each particular factual scenario, Defendant admits that this request is true as a matter of general practice, as outlined in Election Advisory No. 2015-08, issued September 10, 2015.

Request No. 27:   Admit that the outcome of the investigation can include the following results: (a) the voter marked both the "yes" and the "no" boxes and thus they were not registered to vote; (b) the voter did not mark either the "yes" or "no" box and thus they were not registered to vote; (c) the voter marked no that they did not want to register and thus they were not registered to vote; (d) the voter requested voter registration and the clerk at DPS did not transmit the information; (e) the voter updated their information online with DPS and did not complete the process to be registered to vote; (f) the DPS was unable to locate a record for that voter in their files.

Response: Defendant objects that this request is hypothetical and calls for speculation.

## RESPONSE TO BENJAMIN HERNANDEZ'S REQUEST FOR ADMISSIONS

Request No. 1:  Admit that during a transaction on the DPS website in February 2013, Mr. Hernandez updated his driver's license address online.

Response: Denies.

Request No. 2:  Admit that when Mr. Hernandez updated his driver's license address online in February 2013, he checked "yes" in response to the statement, "I want to register to vote."

Response: Denies

Request No. 3:  Admit that when Mr. Hernandez attempted to vote on Election Day 2014, his name was not on the rolls in Dallas County.

Response:   After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny, because Defendant does not have access to Dallas County's 2014 rolls.

Request No. 4:  Admit that on Election Day 2014, Mr. Hernandez was still registered in Ector County.

Response: After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny, because Defendant does not have access to Ector County's 2014 rolls.

Request No. 5:  Admit that on Election Day 2014, Mr. Hernandez cast a provisional ballot.

Response:  After making a reasonable inquiry into this request, Defendant admits that Mr. Hernandez was registered to vote in Dallas County with an effective date of registration of December 4, 2014, date the application was submitted to the registrar of November 4, 2014, and the source code for the registration application was provisional ballot.   Defendant notes however, that, there is no other voting history for Mr, Hernandez in the statewide voter registration system in 2014.

Request No. 6:  Admit that the Secretary of State issued a notice to Mr. Hernandez that his vote on Election Day 2014 was not counted.

Response: Denies.

Request No. 7:  Admit that if an applicant for a driver's license indicates he or she wants to register to vote and correctly completes a voter registration form, it is not the responsibility of DPS employees to confirm that the applicant meets all of the eligibility requirements to register to vote.

Response: Defendant objects that this request is hypothetical, calls for speculation, and calls for a legal conclusion, not an admission of fact or an application of law to fact.

Request No. 8:  Admit that when a completed voter registration form is submitted to the Secretary of State, it is the responsibility of election officials to confirm that an applicant meets all of the eligibility requirements to vote.

Response: Defendant objects that this request is hypothetical, calls for speculation, and calls for a legal conclusion, not an admission of fact or an application of law to fact.

## RESPONSE TO TOTYSA WATKINS' REQUEST FOR ADMISSIONS

Request No. 1:  Admit that during a transaction on the DPS website in 2011, Ms. Watkins updated her driver's license address online.

Response: Denies.

<u>Request No. 2:</u>  Admit that when Ms. Watkins updated her driver's license address online in 2011, she checked "yes" in response to the statement, "I want to register to vote."

<u>Response:</u>  Denies.

<u>Request No. 3:</u>  Admit that during a transaction on the DPS website in 2013, Ms. Watkins updated her driver's license address online.

<u>Response:</u> Denies that this transaction took place on the DPS website. In all other respects, admits.

<u>Request No. 4:</u>  Admit that when Ms. Watkins updated her driver's license address online in 2013, she checked "yes" in response to the statement, "I want to register to vote."

<u>Response:</u>  After making a reasonable inquiry into this request, defendant lacks sufficient information to truthfully admit or deny it, because Defendant does not maintain records of this information.

<u>Request No. 5:</u>  Admit that when Ms. Watkins attempted to vote on Election Day 2014, her name was not on the rolls in Dallas County.

<u>Response:</u>  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny, because Defendant does not have access to Dallas County's 2014 rolls.

<u>Request No. 6:</u>  Admit that on Election Day 2014, Ms. Watkins was still registered in Denton County.

<u>Response:</u>  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny, because Defendant does not have access to Denton County's 2014 rolls.

<u>Request No. 7:</u>  Admit that on Election Day 2014, Ms. Watkins cast a provisional ballot.

<u>Response:</u>  After making a reasonable inquiry into this request, Defendant lacks knowledge sufficient to truthfully admit or deny it. Defendant notes that there is no voting history for Ms. Watkins in the statewide voter registration system in 2014. The effective date of Ms. Watkins' voter registration in Dallas County is December 4, 2014; however, the source code associated with Ms. Watkins' registration is not the provisional ballot source code and thus Defendant cannot infer that it was necessarily done via provisional ballot.

<u>Request No. 8:</u>  Admit that the Secretary of State issued a notice to Ms. Watkins that her vote on Election Day 2014 was not counted.

<u>Response:</u> Denies.

## **RESPONSE TO JOHN WOODS' REQUEST FOR ADMISSIONS**

9

Request No. 1:  Admit that during a transaction on the DPS website in September 2015, Dr. Woods updated his driver's license address online.

Response:  Denies that this transaction took place on the DPS website. In all other respects, admits.

Request No. 2:  Admit that when Dr. Woods updated his driver's license address online in 2015, he checked "yes" in response to the statement, "I want to register to vote."

Response:  After making a reasonable inquiry into this request, defendant lacks sufficient information to truthfully admit or deny it, because defendant does not maintain records of this information.

Request No. 3:  Admit that when Dr. Woods attempted to vote on Election Day 2015, his name was not on the rolls in Harris County.

Response:  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it, because Defendant does not have access to Harris County's 2015 rolls.

Request No. 4:  Admit that on Election Day 2015, Dr. Woods was still registered in Travis County.

Response:  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it, because Defendant does not have access to Travis County's 2015 rolls.

Request No. 5:  Admit that on Election Day 2015, Dr. Woods cast a provisional ballot in Harris County.

Response:  After making a reasonable inquiry into this request, Defendant admits that there was a voter application date for a John Oates Oates for Harris County, with Dr. Woods' driver license number, dated November 3, 2015, with a provisional ballot source code, in the state's voter registration database. Defendant admits that there is a transfer of a John Oates Woods on November 9, 2015, as a new voter registration application for Harris County, with the same driver license number.  The effective date of Dr. Woods' registration in Harris is December 3, 2015. Defendant notes, however, that there is no voting history for Dr. Woods in the statewide voter registration system in 2015.

Request No. 6:  Admit that on March 2, 2015, the Secretary of State's office responded to a public information act request from Mimi Marziani attaching a list of 4,608 voters who reported a problem with their voter registration records that implicated voter registration practices at DPS between January 1, 2012 and March 2, 2015.

Response: Denies that the individuals on this list reported a "problem with their voter registration records that implicated voter registration practices at DPS," and denies that any list provided by

10

the Secretary of State's office on March 2, 2015 was current through March 2, 2015; it was current through February 27, 2015. In all other respects, admits.

Request No. 7:  Admit that on May 26, 2015, the Secretary of State's office responded to a public information act request from Mimi Marziani attaching a list of 332 voters who reported a problem with their voter registration records that implicated voter registration practices at DPS between February 27, 2015 and May 13, 2015.

Response: Denies that the individuals on this list reported a "problem with their voter registration records that implicated voter registration practices at DPS." In all other respects, admits.

Request No. 8:  Admit that between September 2013 and May 26, 2015, the State recorded, and local election workers investigated, complaints from approximately 1,947 voters who completed an online transaction with DPS and, through that transaction, checked "yes…. I want to register to vote", but were subsequently denied a regular ballot when they attempted to vote.

Response:  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it, because Defendant does not maintain records of voters who check "yes…I want to register to vote" *and* are "subsequently denied a regular ballot when they attempt to vote", nor do Defendants track who is "subsequently denied a regular ballot when they attempt to vote" to the extent they would have knowledge of every such voter.

Request No. 9:  Admit that on May 27, 2015, Peter Kraus and Mimi Marziani sent the Secretary of State a letter giving him notice that eligible voters Benjamin Hernandez and Totysa Watkins had claims against the State for violations of the NVRA.

Response:  Objects that this request calls for a legal conclusion regarding whether notice was legally sufficient under the NVRA to waive the Defendant's Eleventh Amendment immunity.

Request No. 10:   Admit that on October 23, 2015, Peter Kraus and Mimi Marziani sent the Secretary of State a second letter, supplementing the May 27th Notice Letter giving him notice that Jarrod Stringer had claims against the State for violations of the NVRA.

Response:  Objects that this request calls for a legal conclusion regarding whether notice was legally sufficient under the NVRA to waive the Defendant's Eleventh Amendment immunity.

Request No. 11:   Admit that on November 18, 2015, Peter Kraus and Mimi Marziani sent the Secretary of State a third letter, supplementing the May 27th Notice Letter giving him notice that John Woods had claims against the State for violations of the NVRA.

Response:  Objects that this request calls for a legal conclusion regarding whether notice was legally sufficient under the NVRA to waive the Defendant's Eleventh Amendment immunity.

Request No. 12:   Admit that over 1,800 of the reports from voters related to problems with voter registration records that implicated voter registration practices at DPS were from voters who thought they had successfully registered online through the DPS website.

<u>Response:</u> Defendant objects that this request as vague and ambiguous as to "problems with voter registration records that implicated voter registration practices at DPS."

<u>Request No. 13:</u>   Admit that over 1,700 of the reports from voters related to problems with voter registration records that implicated voter registration practices at DPS were from voters who visited a DPS office in-person and checked yes in response to the question of whether they wanted to vote.

<u>Response:</u> Defendant objects to this request as vague and ambiguous as to "problems with voter registration records that implicated voter registration practices at DPS."

<u>Request No. 14:</u>   Admit that after Carlos Cascos took office as Texas Secretary of State, he had actual knowledge that there were a significant number of reports from voters regarding problems with online DPS transactions since at least 2012.

<u>Response:</u> Denies.

<u>Request No. 15:</u>   Admit that after Keith Ingram began working in the Texas Secretary of State's office, he had actual knowledge that there were a significant number of reports from voters regarding problems with online DPS transactions since at least 2012.

<u>Response:</u> Denies.

<u>Request No. 16:</u>   Admit that after Carlos Cascos took office as Texas Secretary of State, he had actual knowledge that there were a significant number of reports from voters regarding problems with in-person DPS transactions since at least 2012.

<u>Response:</u> Denies.

<u>Request No. 17:</u>   Admit that after Keith Ingram began working in the Texas Secretary of State's office, he had actual knowledge that there were a significant number of reports from voters regarding problems with in-person DPS transactions since at least 2012.

<u>Response:</u> Denies.

<u>Request No. 18:</u>   Admit that after Betsy Schonhoff began working in the Texas Secretary of State's office, she had actual knowledge of the number of reports from voters regarding problems with online DPS transactions since at least 2012.

<u>Response:</u> Denies.

<u>Request No. 19:</u>   Admit that after Beva Kellison began working in the Texas Secretary of State's office, she had actual knowledge of the number of reports from voters regarding problems with online DPS transactions since at least 2012.

APPENDIX 141

Response: Denies.

Request No. 20:   Admit that after Betsy Schonhoff began working in the Texas Secretary of State's office, she had actual knowledge of the number of reports from voters regarding problems with in-person DPS transactions since at least 2012.

Response: Denies.

Request No. 21:   Admit that after Beva Kellison began working in the Texas Secretary of State's office, she had actual knowledge of the number of reports from voters regarding problems with in-person DPS transactions since at least 2012.

Response: Denies.

APPENDIX 142

# Exhibit 20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JARROD STRINGER, ET AL,                      §
     Plaintiffs,                                    §
                                             §
V.                                           §       No. 5:16-CV-00257
                                             §
CARLOS H. CASCOS, IN HIS OFFICIAL CAPACITY   §
AS THE TEXAS SECRETARY OF STATE AND          §
STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY   §
AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF   §
PUBLIC SAFETY,                               §
     Defendants.                                    §

---

### DEFENDANT STEVEN C. MCCRAW'S FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS

---

TO:    Plaintiffs Jarrod Stringer, Benjamin Hernandez, Totysa Watkins, and John Woods through their attorney of record, by and through their attorney of record, Caitlyn Silhan, WATERS & KRAUS, LLP, 3141 Hood Street, Suite 700, Dallas, Texas 75219.

**Dated: January 20, 2017.**

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

1

/s/Anne Marie Mackin
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4074
(512) 320-0667 FAX
anna.mackin@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

## RESPONSES TO JARROD STRINGER'S REQUEST FOR ADMISSIONS

Request No. 1:  Admit that Defendant Steven C. McCraw is the Director of the Texas Department of Public Safety ("DPS").

Response: Admits.

Request No. 2:  Admit that DPS operates offices around the state and issues Texas driver's licenses.

Response: Admits.

Request No. 3:  Admit that each Texas motor vehicle driver's license application submitted to DPS shall serve as an application for voter registration with respect to elections for Federal office.

Response: Admits, insofar as such driver license application is submitted to the appropriate State motor vehicle authority under State law, is signed by the applicant, and is otherwise consistent with all applicable State and federal law. 52 U.S.C. §20504(a)(1). In all other respects, deny.

Request No. 4:  Admit that DPS shall include a voter registration application for  elections for Federal office as part of an application for a Texas driver's license. Admit that DPS is responsible for transmitting completed voter registration portions of an application for a Texas driver license to the Secretary of State.

Response: Admits that DPS shall include an opportunity to register to vote in elections for Federal office in all driver license applications and renewal applications, and admits that DPS is responsible for transmitting information about voter registration applicants to SOS. In all other respects, denies.

Request No. 5:  Admit that when an applicant visits a DPS office in-person to apply for a new driver's license, he or she must fill out a form called "DL-14A."

Response: Admits that, when an applicant visits a DPS office in-person to apply for an original, non-commercial driver license, he or she must fill out a form called DL-14A *or DL-14As*.

Request No. 6:  Admit that question 2 on form DL-14A asks a DPS applicant to check "Yes" or "No" in response to the question, "If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?"

Response: Admits.

Request No. 7:  Admit that when an applicant visits a DPS office in-person and fills out form DL-14A, a DPS employee manually inputs all of the responses into the DLS via computer, including the response to question 2.

Response: Admits that that when an applicant visits a DPS office in-person and fills out form DL-14A, a DPS employee manually inputs required field information provided on the form into the DLS via computer. Not all information provided on the form is entered into DLS.  The information entered can include the response to question 2. In all other respects, denies.

Request No. 8:  Admit that if an eligible voter checks "Yes" in response to question 2 on form DL-14A, the DPS employee will click on the voter registration box in the Voter Field in the "driver license system," referred to as "DLS."

Response: Admits that if an applicant checks "Yes" in response to question 2 on form DL-14A *or DL-14As*, the DPS employee will click on the voter registration box in the Voter Registration Information Field in the "driver license system," referred to as "DLS."

Request No. 9:  Admit that in the Voter Field, the DPS employee is prompted in the DLS to select from a choice of options in a drop-down menu including: (a) Select "Change" for name or address change; (b) Select "New" for first time Texas voter; or (c) Select "Replacement" if replacing a voter registration card.

Response: Admits that in the Voter Registration *Information* Field, the DPS employee is prompted in the DLS to select from a choice of options in a drop-down menu including: (a) Select "Change" for name or address change; (b) Select "New" for first time Texas voter or (c) Select "Replacement" if replacing a voter registration card.

Request No. 10:   Admit that at least prior to May 27, 2015, if a DPS applicant did not check "Yes" in response to question 2 on form DL-14A, the DPS employee would not click on the voter registration box in the Voter Field, and would leave it blank.

Response: After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it because Defendant cannot say with certainty what each DPS employee has done in each particular factual scenario.

Request No. 11:   Admit that when an applicant visits a DPS office in-person to renew or replace his or her driver's license, he or she must fill out a form called "DL-43."

3

Response: Admits that when an applicant visits a DPS office in-person to renew, replace *or change* his or her non-commercial driver license, he or she must fill out a form called "DL-43."

Request No. 12:    Admit that question 2 on form DL-43 asks an applicant to check "Yes" or "No" in response to the question, "If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?"

Response: Admits, although there is additional language in question 2 that is omitted from this request for admission.

Request No. 13:    Admit that when an applicant visits a DPS office in-person and fills out form DL-43, a DPS employee manually inputs all of the responses into the DLS via computer, including the response to question 2.

Response: Admits that that when an applicant visits a DPS office in-person and fills out form DL-43, a DPS employee manually inputs *required* field information provided on the form into the DLS via computer. Denies that all information provided on the form is manually entered into DLS.

Request No. 14:    Admit that if an eligible voter checks "Yes" in response to question 2 on form DL-43, the DPS employee will click on the voter registration box in the Voter Field in the DLS.

Response: Admits that if an *applicant* checks "Yes" in response to question 2 on form DL-43, the DPS employee will click on the voter registration box in the Voter *Registration Information* Field in the "driver license system," referred to as "DLS."

Request No. 15:    Admit that in the Voter Field in the DLS, the DPS employee is prompted to select from a choice of options in a drop-down menu including: (a) Select "Change" for name or address change; (b) Select "New" for first time Texas voter; or (c) Select "Replacement" if replacing a voter registration card.

Response: Admits that in the Voter *Registration Information* Field, the DPS employee is prompted in the DLS to select from a choice of options in a drop-down menu including: (a) Select "Change" for name or address change; (b) Select "New" for first time Texas voter; or (c) Select "Replacement" if replacing a voter registration card.

Request No. 16:    Admit that at least prior to May 27, 2015, if an applicant did not check "Yes" in response to question 2 on form DL-43, the DPS employee would not click on the voter registration box in the Voter Field in DLS, and would leave it blank.

Response: After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it because Defendant cannot say with certainty what each DPS employee has done in each particular factual scenario.

Request No. 17:    Admit that when an applicant visits a DPS office in-person to update his or her address on a driver's license, he or she must fill out a form called "DL-64."

Response:  Denies.

Request No. 18:    Admit that one question on form DL-64 asks an applicant to check "Yes" or "No" in response to the question, "If you are a US citizen, would you like to register to vote? If registered, would you like to update your voter information?"

Response: Admits.

Request No. 19:    Admit that when an applicant visits a DPS office in-person and fills out form DL-64, a DPS employee manually inputs all of the responses into the DLS via computer, including the response to the question of whether he or she would like to register to vote.

Response: Denies, form DL-64 is not used for in-person address changes.

Request No. 20:    Admit that if an eligible voter checks "Yes" in response to question 2 on form DL-64, the DPS employee will click on the voter registration box in the Voter Field in the DLS.

Response: Denies, form DL-64 is not used for in-person address changes.

Request No. 21:    Admit that at least prior to May 2015, form DL-64 did not include any question about whether the applicant wanted to register to vote.

Response: Admits.

Request No. 22:    Admit that if the eligible voter indicates they are already a registered voter and require no address change, the DPS employee will leave the Voter Field in DLS blank.

Response:  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it because Defendant cannot say with certainty what each DPS employee has done in each particular factual scenario.

Request No. 23:    Admit that DPS employees provide a receipt to every applicant who completes an in-person transaction at DPS.

Response: Admits.

Request No. 24:    Admit that voter registration information is printed on the receipt that a voter receives after the in-person transaction is completed.

Response: Admits that the receipt issued at the completion of an in-person transaction notes whether the individual answered the voter registration question "Y" or "N."

Request No. 25:    Admit that all of the information inputted by DPS employees for in-person transactions is saved electronically in the DLS, including the voter registration information.

Response: Admits.

Request No. 26:    Admit that the electronic file for each prospective voter that is transferred to the Secretary of State's office includes a digital image of that voter's signature.

Response: Admits that the *information* DPS transmits to SOS about each applicant for voter registration includes a digital image of the *applicant's* signature.

## RESPONSES TO BENJAMIN HERNANDEZ'S REQUEST FOR ADMISSIONS

Request No. 1:  Admit that the State of Texas permits certain Texas driver's license holders to renew their driver's license and/or update the address on their licenses online on DPS' website at www.txdps.state.tx.us.

Response: Admits that certain Texas driver license holders may initiate renewal of their driver licenses or updates to the address on those licenses on the DPS website. Denies that these transactions are completed on the DPS website.

Request No. 2:  Admit that all Texas driver's license holders are able to update the address information associated with their driver's license online through a portion of the DPS website entitled "Driver License Renewal and Change of Address," available at https://txapps.texas.gov/tolapp/txdl/ at any time.

Response: Denies.

Request No. 3:  Admit that some Texas driver's license holders are able to renew their license online through a portion of the DPS website entitled "Driver License Renewal and Change of Address," available at https://txapps.texas.gov/tolapp/txdl/.

Response: Denies that these transactions are completed on the DPS website. In all other respects, admits.

Request No. 4:  Admit that website users will be informed after logging into the website whether they are eligible to renew their license online.

Response: Admits.

Request No. 5:  Admit that the DPS Driver License Renewal and Change of Address website page provides a single online process for qualified applicants to renew their driver's license, update the address listed on their driver's license, or complete both processes in a single online transaction.

Response: Denies that these transactions are completed on the DPS website. In all other respects, admits.

6

Request No. 6:  Admit that the online process involves eight "Steps to Complete," including the following steps: Welcome, Login, Select Services, Enter Address, Select Options, Review Order, Submit Payment, and Receipt.

Response: Admits.

Request No. 7:  Admit that, until recently, when applicants reached Step 5 of this online process, they were asked to check "yes" or "no" in response to the statement, "I want to register to vote."

Response: Denies that this is a complete statement. Admits that, until February 27, 2016, Step 5 of this online process required the licensee to select "yes" or "no" beneath the statement "I want to register to vote. Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page." (emphasis original).

Request No. 8:  Admit that the now when applicants reach Step 5 of the online process, they are asked "Do you want to request a voter application?"

Response: Denies that this is a complete statement. Admits that when applicants reach Step 5 of the online process, they are asked "Do you want to request a voter application? You'll receive a link to a voter application on your receipt page."

Request No. 9:  Admit that DPS changed the language in Step 5 after the Complaint was filed in this lawsuit.

Response: Denies.

Request No. 10:  Admit that, previously, if an eligible voter checked "yes" under the statement "I want to register to vote," DPS did not register that individual to vote.

Response: Denies that this is a complete statement. Admits, insofar as DPS does not register any individuals to vote. Admits that individuals are not registered to vote in connection with their interactions with DPS unless they submit an image of their signature, either by submitting a signed application by mail, or providing an electronic image of their physical signature in person at a DPS location.

Request No. 11:  Admit that, currently, if an eligible voter checks "yes" under the question, "Do you want to request a voter application?" they are not registered to vote.

Response: Admits that DPS does not register any individuals to vote. Admits that individuals are not registered to vote in connection with their interactions with DPS unless they submit an image of their signature, either by submitting a signed application by mail, or providing an electronic image of their physical signature in person at a DPS location.

Request No. 12:  Admit that if an eligible voter checks "yes" under the statement "I want to register to vote," DPS does not update that applicant's voter registration records.

7

Response: Admits that DPS does not update any individuals' voter registration records.

Request No. 13:   Admit that if an eligible voter checks "yes" under the statement "Request a voter registration application," DPS does not update that applicant's voter registration records.

Response: Admits that DPS does not update any individuals' voter registration records.

Request No. 14:   Admit that if a correct driver's license number or if correct residence address or mailing address information is missing from a registration application received by DPS in-person, DPS employees have a legal obligation to correct the customer's application by entering that information on the application.

Response: Admits that, under Texas Election Code §20.063(d), "[i]f a completed voter registration application submitted to a department employee does not include the applicant's correct driver's license number or personal identification card number, a department employee shall enter the appropriate information on the application. If a completed application does not include the applicant's correct residence address or mailing address, a department employee shall obtain the appropriate information from the applicant and enter the information on the application." Otherwise, denies.

Request No. 15:   Admit that individuals who receive an invitation to renew their driver's license by mail can renew by mail by filling out form DL-43 and mailing it back to DPS.

Response: Denies.

Request No. 16:   Admit that when DPS processes a request to renew a driver's license by mail, DPS mails a voter registration application form to any requestor who checks "yes" in response to Question 2 on form DL-43.

Response: Denies.

Request No. 17:   Admit that individuals can change their driver's license address by mail by completing form DL-64 and mailing it to DPS along with the required fee.

Response: Admits.

Request No. 18:   Admit that when DPS receives a form DL-64 in the mail which indicates the requestor wants to register to vote, DPS mails a voter registration form to the requestor.

Response: Denies.

Request No. 19:   Admit that a change of address that relates to a driver's license that is submitted to DPS by mail serves as a change of address for voter registration unless the licensee indicates that the change is not for voter registration purposes.

Response: Denies that this is a complete statement. Admits that information regarding a change of address submitted by an applicant to DPS by mail is provided to the SOS in the daily update file.

Request No. 20:   Admit that if a correct driver's license number, residence address, or mailing address information is missing from a renewal or change of address application received by DPS by mail, DPS employees have a legal obligation to correct the individual's application by entering the information on the application.

Response: Admits that, if a person sends DPS an incomplete form by mail, DPS returns the form to the applicant for the applicant to correct and return to DPS. In all other respects, denies.

Request No. 21:   Admit that the date of submission of a change of address to a DPS employee by mail is considered to be the date of submission to the voter registrar for the purpose of determining the effective date of registration.

Response: Admits that the date of submission DPS provides to SOS is the date of the processing of the form received at DPS by mail. *See* TEX. ELEC. CODE §20.063(c).

Request No. 22:   Admit that the date of submission of a driver's license renewal application to a DPS employee by mail is considered to be the date of submission to the voter registrar for the purpose of determining the effective date of registration.

Response: Admits that the date of submission DPS provides to SOS is the date of the processing of the form received at DPS by mail. *See* TEX. ELEC. CODE §20.063(c).

Request No. 23:   Admit that when a DPS employee receives a request to renew a driver's license by mail, a DPS employee manually inputs all of the responses into the DLS via computer, including the response to the question of whether he or she would like to register to vote.

Response: Denies.

Request No. 24:   Admit that when a DPS employee receives a request to change the address on a driver's license by mail, a DPS employee manually inputs all of the responses into the DLS via computer, including the response to the question of whether the individual would like to register to vote.

Response: Admits.

Request No. 25:   Admit that no payment receipt is sent to an applicant who changes his or her driver's license address by mail.

Response: Admits.

## RESPONSES TO TOTYSA WATKIN'S REQUEST FOR ADMISSIONS

9

Request No. 1:  Admit that all of the information inputted by DPS employees for transactions by mail is saved electronically in the DLS, including voter registration information.

Response: Admits that the voter registration information from form DL-64 address changes by mail is input and saved electronically in the DLS. In all other respects, denies.

Request No. 2:  Admit that voter registration information is electronically transmitted from DPS to the SOS each night from Monday through Friday.

Response: Admits that voter registration information is electronically transmitted from DPS to the SOS seven days per week.

Request No. 3:  Admit that voter registration information is electronically transmitted from DPS to the SOS in a single computer file.

Response: Denies.

Request No. 4:  Admit that voter registration information is electronically transmitted from DPS to the SOS in a "batch file," and includes commands that can be processed by the SOS data system.

Response: Admits that voter registration information is electronically transmitted from DPS to the SOS in a "batch file." Otherwise, denies.

Request No. 5:  Admit that each day, the files of applicants where "Yes" has been entered as a response in the Voter Field are combined in a single file.

Response: Admits.

Request No. 6:  Admit that each day, the files of applicants where "Yes" has been entered as a response in the Voter Field following an in-person transaction are combined in a single file.

Response: Admits.

Request No. 7:  Admit that each day, the files of applicants where "Yes" has been entered as a response in the Voter Field following a transaction by mail are combined in a single file.

Response: Admits.

Request No. 8:  Admit that each day, the files of applicants where "Yes" has been entered as a response in the Voter Field are combined in a single file, regardless of whether any individual applicant completed an in-person or mail transaction.

Response: Admits.

Request No. 9:  Admit that "Yes" is never entered as a response in the Voter Field following an online transaction.

<u>Response:</u> Admits that, when an individual updates his or her driver license online, the voter field is not accessed, as a signature is not provided.

<u>Request No. 10:</u>   Admit that for files of applicants where "Yes" has been entered as a response in the Voter Field, the Voter Registration Status is set to "Ready for SOS Batch File."

<u>Response:</u> Admits.

<u>Request No. 11:</u>   Admit that for any DLS file on which an eligible voter has indicated he or she wants to register to vote, the Voter Registration Status is set to "Ready for SOS Batch File."

<u>Response:</u> Denies.

<u>Request No. 12:</u>   Admit that, prior to transmission to SOS, the DPS computer system locates records that meet the following criteria: (i) Voter Registration Status is set to "Ready for SOS Batch File" AND (ii) Administrative Status is not "Reported Deceased" AND (iii) Voter Registration = "Yes" OR (i) Card type = EC AND (ii) Voter Registration Status is set to "Ready for SOS Batch File" AND (iii) Voter Registration = "Yes."

<u>Response:</u> Subject to the protective order entered in this cause, admits.

<u>Request No. 13:</u>   Admit that the DPS computer system writes the following information to the batch file for each record: Last Name, First Name, Middle Name, Suffix, Date of Birth, Physical Address, Mailing Address, Physical County, Card Information including Card Type of Driver's License or Identification Card, the Driver's License or Identification card number, the application date, the Social Security Number, the AKA Name, Voter Status, Election Judge Information, Signature Image, and Sex.

<u>Response:</u> Subject to the protective order entered in this cause, admits that the DPS computer system writes the following information to the daily voter registration batch file for each record: Last Name, First Name, Middle Name, Suffix, Date of Birth, Physical Address, Mailing Address, Physical County, Card Information including Card Type of Driver's License or Identification Card, the Driver's License or Identification card number, the application date, the Social Security Number, the AKA Name, Voter Status, Election Judge Information, Signature Image, and Sex.

<u>Request No. 14:</u>   Admit that the system updates the Voter Registration Status to "Record Sent to SOS" for each record included in the file transmitted to SOS.

<u>Response:</u> Admits that the system updates the Voter Registration Status to "Record Sent to SOS" for each record included in the daily voter registration file transmitted to SOS. In all other respects, denies.

<u>Request No. 15:</u>   Admit that the system records an audit transaction with the following information: Date, Batch Type = Extract, Batch Name = Voter Registration, Error Code, Process Area = License Issuance, Records Count, Start Time, and End Time.

11

Response: Admits.

Request No. 16:    Admit that Ms. Watkins updated her driver's license address online through the DPS website in 2011.

Response: Denies.

Request No. 17:    Admit that during the transaction on the DPS website, Ms. Watkins checked "yes" in response to the statement, "I want to register to vote."

Response: Denies.

Request No. 18:    Admit that Ms. Watkins updated her driver's license address online through the DPS website in 2013.

Response: Denies that this transaction took place on the DPS website. In all other respects, admits.

Request No. 19:    Admit that during that second transaction on the DPS website in 2013, Ms. Watkins checked "yes" in response to the statement, "I want to register to vote."

Response:  After making a reasonable inquiry into this request, Defendant lacks sufficient information to truthfully admit or deny it because Defendant has no record of this information.

Request No. 20:    Admit that when an eligible voter who updated his or her driver's license information on the DPS website before this lawsuit was filed responded "yes" to the statement, "I want to register to vote," or under the statement "Request a voter registration application," DPS did not transfer his or her data to the Texas Secretary of State.

Response: Admits, only those voters who submitted a voter registration application in accordance with State law would have had their voter registration information updated. Defendant further notes that online driver license address changes are initiated on the DPS website, but processed on Texas.gov.

Request No. 21:    Admit that when an eligible voter who updates his or her driver's license information on the current DPS website responds "yes" under the statement "Request a voter registration application," DPS does not transfer his or her data to the Texas Secretary of State

Response: Admits, only those voters who submit a voter registration application in accordance with state law will have their voter registration information updated.

Request No. 22:    Admit that when an eligible voter who updated his or her driver's license information on the DPS website before this lawsuit was filed responded "yes" to the statement, "I want to register to vote," DPS did not transfer his or her data to local election officials.

12

<u>Response:</u> Admits, only those voters who submitted a voter registration application in accordance with State law would have had their voter registration information updated.  Defendant also notes that online driver license address changes are initiated on the DPS website, but processed on Texas.gov.

<u>Request No. 23:</u>   Admit that when an eligible voter who updates his or her driver's license information on the current DPS website responds "yes" under the statement "Request a voter registration application," DPS does not transfer his or her data to local election officials.

<u>Response:</u> Admits, only those voters who submit a voter registration application in accordance with state law will have their voter registration information updated. Defendant also notes that online driver license address changes are initiated on the DPS website, but processed on Texas.gov.

<u>Request No. 24:</u>   Admit that when an eligible voter who renewed his or her driver's license on the DPS website before this lawsuit was filed responded "yes" to the statement, "I want to register to vote" DPS did not transfer his or her data to the Texas Secretary of State.

<u>Response:</u> Admits, only those voters who submitted a voter registration application in accordance with State law would have had their voter registration information updated. Defendant also notes that online driver license address changes are initiated on the DPS website, but processed on Texas.gov.

<u>Request No. 25:</u>   Admit that when an eligible voter who renews his or her driver's license on the current DPS website responds "yes" under the statement "Request a voter registration application," DPS does not transfer his or her data to local election officials.

<u>Response:</u> Admits, only those voters who submit a voter registration application in accordance with state law will have their voter registration information updated. Defendant also notes that online driver license address changes are initiated on the DPS website, but processed on Texas.gov.

<u>Request No. 26:</u>   Admit that previously on the DPS website before the language on Step 5 was changed, above the previous prompt, "I want to register to vote," the website displayed the statement, "Selecting 'Yes' does not register you to vote, but instead a link to the Secretary of State Voter website (where a voter application may be downloaded or requested) will be available on your receipt page."

<u>Response:</u> Admits that, until February 27, 2016, Step 5 of this online process required the licensee to select "yes" or "no" beneath the statement "I want to register to vote. Selecting 'yes' **does not** register you to vote. A link to the [SOS] voter website (where a voter application may be downloaded or requested) will be available on your receipt page." (emphasis original).

<u>Request No. 27:</u>   Admit that currently on the DPS website since the language on Step 5 has changed, next to the prompt, "Do you want to request a voter application," the website displays the statement, "You will receive a link to a voter application on your receipt page."

<u>Response:</u> Admits, but notes that Step 5 takes place on Texas.gov, not the DPS website.

Request No. 28:   Admit that currently on the DPS website since the language on Step 5 has changed, below to the prompt, "Do you want to request a voter application," the website displays language next to the check box for "Yes" which states "(This does not register you to vote.)"

Response: Admits, but note that Step 5 takes place on Texas.gov, not the DPS website.

Request No. 29:   Admit that before this lawsuit was filed, an eligible voter who selected "yes" in response to the prompt, "I want to register to vote," when updating information through DPS online renewal, was told to visit the Secretary of State's website to view instructions for how to register to vote.

Response: Denies.

**RESPONSES TO JOHN WOOD'S REQUEST FOR ADMISSIONS**

Request No. 1:  Admit that on Step 3 in the Answer to FAQ No. 17 on the DPS website, the only reference to registering to vote simply lists "2. Register to vote" without any further explanation.

Response: Defendant objects that this request is unintelligible.

Request No. 2:  Admit that the information an eligible voter submits electronically through the DPS website may be used to *cancel* a voter's prior registration record in his or her prior county of residence pursuant to state law.

Response: Defendant objects that this request is hypothetical, calls for speculation, and calls for a legal conclusion, rather than an application of law to fact. Defendant can neither admit nor deny what any other entities do regarding voter registration status.

Request No. 3:  Admit that the DPS website does not explain that completing DPS' online change-of-address form may jeopardize a voter's registration status at his or her former residence.

Response: Defendant objects that this request is unintelligible.

Request No. 4:  Admit that DPS transmits information about customer change-of-address transactions to counties for the purpose of removing individuals from the rolls.

Response: Denies.

Request No. 5:  Admit that when DPS receives a communication through the web portal, DPS employees research the voter's information and return information to election officials.

Response: Denies.

Request No. 6:  Admit that DPS has designated two individuals who coordinate the agency's voter registration program, and SOS is aware of these designations.

Response: Admits that DPS previously had two individuals who were identified to SOS as having roles in coordinating the agency's voter registration. Admits that DPS currently has one such individual.

Request No. 7:  Admit that currently, one individual who coordinates the DPS voter registration program is Tony Rodriguez, Senior Manager, Customer Operations.

Response: Denies.

Request No. 8:  Admit that currently, one individual who coordinates the DPS voter registration program is Bob Myers, Training Specialist, Customer Support.

Response: Denies.

Request No. 9:  Admit that Mr. Myers is responsible for the training of Driver License Division employees in voter registration procedures and policy.

Response: Denies.

Request No. 10:   Admit that Mr. Rodriguez oversees the program in our driver license offices statewide.

Response: Defendant objects to this request as unintelligible.

Request No. 11:   Admit that DPS has a "DPS Voter Registration Plan" dated September 9, 2015.

Response: Admits.

Request No. 12:   Admit that as set forth in the DPS Voter Registration Plan, all DPS forms have been reviewed to ensure that voter registration questions are included where required.

Response: Admits.

Request No. 13:   Admit that pursuant to an agreement with the named Plaintiffs, the State implemented a new "hard stop" feature to its DLS system earlier this year.

Response: Admits.

Request No. 14:   Admit that as of March 31, 2016, the DLS now requires DPS employees to provide an answer in the voter registration field before they are permitted to proceed to the next screen when helping an eligible voter who visits a DPS office in-person.

Response: Admits.

15

Request No. 15:    Admit that DPS employees must provide a receipt to each applicant and verify that all information is correct, including the applicant's answer to the voter registration question, before any driver's license transaction is finalized when an eligible voter who visits a DPS office in-person.

Response: Admits.

Request No. 16:    Admit that when an eligible voter visits a DPS office in-person, DPS has implemented a policy whereby whenever "any applicant who is a U.S. citizen… checks the 'yes' and 'no' boxes this will be considered an affirmative response, and the DPS employee will enter a 'yes' into the system thereby triggering the submission of the applicant's information to the SOS."

Response: Admits.

Request No. 17:    Admit that when an eligible voter indicates on form DL-14A that he or she wants to register to vote, no hard copy of any document containing the voter's wet signature is ever sent to the Secretary of State's Office.

Response: Admits, DPS uses point-of-sale-style signature pads to collect images of physical signatures from individuals who indicate that they wish to register to vote. Defendant understands this request to refer to "wet signature" as a pen on paper, as opposed to an electronic image of a signature collected using a point-of-sale style electronic signature pad and a stylus.

Request No. 18:    Admit that when an eligible voter indicates on form DL-43 that he or she wants to register to vote, no hard copy of any document containing the voter's wet signature is ever sent to the Secretary of State's Office.

Response: Admits, DPS uses point-of-sale-style signature pads to collect images of physical signatures from individuals who indicate that they wish to register to vote. Defendant understands this request to refer to "wet signature" as a pen on paper, as opposed to an electronic image of a signature collected using a point-of-sale style electronic signature pad and a stylus.

Request No. 19:    Admit that when an eligible voter indicates on form DL-64 that he or she wants to register to vote, no hard copy of any document containing the voter's wet signature is ever sent to the Secretary of State's Office.

Response: Denies.

Request No. 20:    Admit that when DPS sends information to SOS regarding eligible voters, the method by which they transmit information is through the web portal, rather than by sending hard copies of signed documents.

Response: Denies that DPS uses the "web portal" to transmit information to SOS. Admits that DPS sends voter registration information, including electronic images of applicants' signatures, to SOS electronically, rather than by sending hard copies of signed documents.

Request No. 21:    Admit that DPS customer service representatives are subjected to at least two "performance observations" annually to ensure that these employees are performing their basic tasks.

Response: Admits.

Request No. 22:    Admit that after DPS sends voter information to the SOS each night, DPS is not responsible for further reviewing voter registration data for eligibility purposes.

Response: Admits.

Request No. 23:    Admit that DPS currently provides voter registration training during new employee orientation, as well as additional training as needed.

Response: Admits.

# Exhibit 21

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, | § | |
| JOHN HARMS, MOVE TEXAS CIVIC FUND, | § | |
| and LEAGUE OF WOMEN VOTERS OF TEXAS | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 5:20-cv-46 |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY OF | § | |
| STATE and STEVEN C. McCRAW, IN HIS | § | |
| OFFICIAL CAPACITY AS THE DIRECTOR OF | § | |
| THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| Defendants. | § | |

## <u>DECLARATION OF HILLIARD DREW GALLOWAY</u>

My name is Hilliard Drew Galloway. I am over the age of 18 and capable of making this declaration. The facts stated herein are within my personal knowledge.

1. I am the Executive Director of the MOVE Texas Civic Fund ("MOVE Texas").

2. MOVE Texas is a non-profit organization with its main offices in San Antonio, Texas.

3. MOVE Texas is a grassroots nonpartisan organization that builds power in underrepresented youth communities through civic education, leadership development, and issue advocacy.

4. As part of our efforts to increase civic engagement, MOVE Texas commits ample employee and volunteer time and resources to conducting voter registration drives across Texas. To meet our objective to increase voter participation, MOVE Texas engages in and promotes voter registration, voter engagement, voter education, get-out-the-vote, and election protection efforts across Texas.

5. MOVE Texas undertakes a number of activities related to registering voters, including organizing and running voter registration drives; designing and executing public information campaigns about how to register to vote and update one's voter registration; creating brochures about voter registration and early voting; being a partner in the 866-OUR-VOTE election protection hotline; and educating voters about voter ID laws and other Texas election laws of interest.

6. MOVE Texas conducts numerous voter registration drives and provides voter registration services at college campuses, technical schools, and at community events.

7. Our voter registration drives mostly involve registering college students and people between the ages of 18 and 24.

8. On college campuses and technical schools, MOVE Texas registers students to vote during class presentations and while tabling at high traffic areas.

9. MOVE Texas has registered 8,357 people in 2018 and 7,910 people in 2019 who indicated on their application that they are changing their address or updating their information.

10. MOVE Texas must spend time registering voters who were not offered the opportunity to register to vote when they either renewed or updated their driver's licenses online. If MOVE Texas did not have to spend time assisting these individuals register to vote, it would be able to spend that time registering more voters and engaging in its other core activities.

11. MOVE Texas also spends considerable time and resources assisting already-registered voters with updating their voter registration information if they have moved. During voter registration efforts, MOVE Texas employees and volunteers often collect voter

registration forms from Texas residents who are registered to vote at an old address and need to update their voter registration information. Many of these voters have updated the address on their driver's licenses using Texas's online driver's license system, but were unable to update their voter registration at the same time. MOVE Texas employees and volunteers also encounter individuals who mistakenly believe that they did update their voter registration online when updating or renewing their driver's license. MOVE Texas members must then spend time with the individuals checking the status of their registration, explaining that DPS does not offer simultaneous voter registration online, and re-registering the individuals.

12. MOVE Texas trains its employees and volunteers to caution voters about the fact that the DPS online driver's license system does not register customers to vote.

13. MOVE Texas engages in get-out-the-vote efforts leading up to and during elections. These efforts include providing voter information at public forums and in public locations as well as communications efforts across multiple platforms. MOVE Texas's get-out-the-vote efforts are undermined when individuals that we have engaged with—either in person or through media—show up to vote and are not registered or are registered at an incorrect address because they were not provided the opportunity to simultaneously register to vote when they renewed their driver's license online or changed the address on their driver's license online.

14. MOVE Texas supports Texas complying with federal voting laws that increase participation, including the National Voter Registration Act ("NVRA"). Texas's failure to comply with the NVRA runs contrary to and undermines MOVE Texas's mission of democratic participation.

APPENDIX 164

15. MOVE Texas is a non-profit organization with limited resources, and any time funds are spent dealing with the repercussions of Texas's failure to comply with the NVRA, resources that would otherwise go towards accomplishing our primary mission are diverted. This will detract from our normal voter registration, voter education, get-out-the-vote, and election protection efforts surrounding local, state, and federal elections across Texas. The drain on our resources away from these efforts is particularly costly in the crucial period leading up to an election—including the upcoming March 3, 2020 Primary Election and the November 3, 2020 General Election—when these efforts are most useful to the communities we serve.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Date: January 16, 2020

_____
Hilliard Drew Galloway
MOVE Texas Civic Fund Executive Director

Exhibit 22

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, | § | |
| JOHN HARMS, MOVE TEXAS CIVIC FUND, | § | |
| and LEAGUE OF WOMEN VOTERS OF TEXAS | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 5:20-cv-46 |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY OF | § | |
| STATE and STEVEN C. McCRAW, IN HIS | § | |
| OFFICIAL CAPACITY AS THE DIRECTOR OF | § | |
| THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF ERICA ELLIOTT

My name is Erica Elliott. I am over the age of 18 and capable of making this declaration. The

facts stated herein are within my personal knowledge.

1. I am an employee of MOVE Texas Civic Fund ("MOVE Texas."). I work as the

    Regional Organizing Manager for MOVE Texas in and near San Marcos, Austin, and

    Dallas. I have been an active employee of this organization since the Fall of 2018.

2. I am a deputy voter registrar and, as an employee of MOVE Texas, I frequently

    participate in activities that involve registering voters.

3. My MOVE Texas voter-registration activities include mostly registering students at

    college campuses. I, along with the MOVE Texas employees, fellows, and interns I

    manage and supervise, regularly visit college campuses and community events to

    register eligible Texans to vote. At college campuses, we register students during class

    presentations or while tabling around high traffic areas. I have particularly found that I

1

register to vote a large number of people who have recently moved and need to update their voter registration address.

4. I have encountered many college students who mistakenly believe that they registered to vote or updated their voter registration address online through the DPS website.

5. It takes more time than usual to help individuals who mistakenly believe they registered to vote online through the DPS website. When I encounter people who believe they registered to vote online through the DPS website, I will spend time explaining to them that online voter registration, including through online DPS driver's license transactions, does not exist and that those DPS transactions require you to print, fill out, and mail in a voter registration form in order to register to vote. I then try to help them check their current voter registration status and address on the Secretary of State's website. If they agree to look up their voter registration status with me, a majority of the time, the individual I am helping will either not be registered or will be registered at their old address prior to moving. I will then spend time registering these people to vote at their current address if they wish to register. I register to vote dozens of people every month who have the mistaken belief discussed in this paragraph.

6. As a MOVE Texas employee, I also spend time during elections educating voters about issues and candidates and encouraging individuals to turnout to vote. My voter education and outreach activities include speaking at community events, on university campuses, and at other public locations in or around San Marcos, Austin, and Dallas to disseminate voting information, non-partisan voting guides, and pledge cards.

7. In my voter engagement and get-out-the-vote work, I have encountered individuals who go to vote, believing they had registered to vote or updated their voter registration

while using the online driver's license application on the DPS website, only to find out that they are not registered or are registered in a different county at an old address. This problem is specifically prevalent among university students. During MOVE Texas' Party to the Polls event during early voting and on Election Day for the 2018 General Election, an event where we encourage students to go vote, several students MOVE Texas encouraged to vote told me they were unable to cast a full ballot or any ballot (or only able to cast a provisional ballot) for this exact reason. After hearing how they were disenfranchisement and explaining to them that they cannot register to vote through the DPS website, I registered each of them to vote.

8.  Based on conversations with the VDRs I work with or supervise, it is a generally universal experience to encounter individuals who mistakenly believe they registered to vote online through the DPS website.

9.  In addition to voters who mistakenly believe they registered online, we end up spending time registering voters who otherwise would have been able to register to vote when transacting with DPS online had they been provided the opportunity.

10. Because of my own experience registering voters, engaging with would-be voters, comparing notes with fellow VDRs, I train MOVE Texas fellows, interns, and employees about the inability to register to vote when submitting DPS driver's license transactions online and how to discuss this issue with people who mistakenly believe they have registered to vote when submitting those transactions.

11. We have and will continue to increase our efforts to provide voter registration, voter registration verification, and get-out-the-vote services in advance of the 2020 Primary and General Elections.

3

12. If I did not have to spend time making up for the State's failure to provide voter registration services alongside online driver's license transactions, I would be able to spend that time registering new voters, reaching more individuals to actually turn them out to vote, educating voters about issues and candidates, and helping to ensure that our elections run smoothly.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Date: January 15, 2020

Erica Elliott

4

# Exhibit 23

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. _____ |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § | |

## DECLARATION OF GRACE CHIMENE

My name is Grace Chimene. I am over the age of 18 and capable of making this declaration. The facts stated herein are within my personal knowledge.

1. I am the President of the League of Women Voters of Texas ("LWVTX").

2. LWVTX is a non-profit organization with its main offices in Austin, Texas.

3. LWVTX is a non-partisan organization whose mission includes empowering voters, defending democracy and envisioning a democracy where every person has the desire, the right, the knowledge and the confidence to participate.

4. The League has 33 chapters covering 39 Texas counties, with approximately 3000 individual members all across the state.

5. LWVTX is a volunteer-based organization.

6. LWVTX offers a variety of programs to its members and to the public on a wide range of issues including, but not limited to: education, voting rights, the

1

environment, campaign financing, health care, and electoral redistricting. The local chapters of LWVTX host candidate forums for the public to learn about candidates running for local, state, and national offices. Every major election, LWVTX produces voter guides to inform voters about candidates and ballot measures.

7. As part of our efforts to increase civic engagement, LWVTX commits ample member time and resources to conducting voter registration drives across Texas. To meet our objective to increase voter participation, LWVTX engages in and promotes voter registration, voter engagement, voter education, get-out-the-vote, and election protection efforts across Texas.

8. LWVTX undertakes a number of activities related to registering voters, including organizing and running voter registration drives; designing and executing public information campaigns about how to register to vote and update one's voter registration; creating brochures about voter registration and early voting; being a partner in the 866-OUR-VOTE election protection hotline; and educating voters about voter ID laws and other Texas election laws of interest.

9. LWVTX and its local chapters conduct numerous voter registration drives, including at public facilities such as public libraries, at university campuses, and by invitation at events around the state.

10. LWVTX, its chapters, and members must spend time registering voters who were not offered the opportunity to register to vote when they either renewed or updated their driver's licenses online. If LWVTX did not have to spend time assisting these individuals register to vote, it would be able to spend that time registering more voters and engaging in its other core activities.

2

11. LWVTX and its chapters also spend considerable time and resources assisting already-registered voters with updating their voter registration information if they have moved. During voter registration efforts, LWVTX members often collect voter registration forms from Texas residents who are registered to vote at an old address and need to update their voter registration information. Many of these voters have updated the address on their driver's licenses using Texas's online driver's license system but were unable to update their voter registration at the same time. LWVTX members also encounter individuals who mistakenly believe that they did update their voter registrations online when updating or renewing their driver's licenses. LWVTX members must then spend time with the individuals checking the status of their registration, explaining that Texas DPS does not offer simultaneous voter registration online, and re-registering the individuals.

12. LWVTX provides public trainings which include cautioning voters about the fact that the DPS online driver's license system does not register customers to vote.

13. LWVTX engages in get-out-the-vote efforts leading up to and during elections. These efforts include providing voter information at public forums and in public locations as well as communications efforts across multiple platforms. LWVTX produces videos about upcoming elections and how to vote in them. LWVTX's get-out-the-vote are undermined when individuals that we have engaged with – either in person or through media – show up to vote and are not registered or are registered at an incorrect address because they were not provided the opportunity to simultaneously register to vote when they renewed their driver's license online or changed the address on their driver's license online.

3

14. LWVTX   supports Texas complying with federal voting laws that increase participation, including the National Voter Registration Act ("NVRA"). Texas's failure to comply with the NVRA runs contrary to and undermines LWVTX's mission of democratic participation. LWVTX also supports other pro-democracy initiatives such as more broadly opening up online voter registration to all eligible Texans.

15. With approximately 3,000 members statewide, LWVTX constantly has members who are relocating or need to update their driver's license.

16. Individual LWVTX members are harmed by their inability to simultaneously have their voter registrations updated when they change the address on their driver's licenses online or renew their driver's licenses online.

17. LWVTX has at least one member who has updated their driver's license online but was unable to update their voter registration address and remains unregistered to vote at the correct address. This individual must have their new registration submitted by February 03, 2020 in order to be able to fully participate in the March 03, 2020 Primary Election.

18. LWVTX is a volunteer-based group with extremely limited resources, and any time and funds that are spent dealing with the repercussions of Texas's failure to comply with the NVRA are resources that would otherwise go towards accomplishing our primary mission. This will detract from our normal voter registration, voter education, get-out-the-vote, and election protection efforts surrounding local, state and federal elections across Texas. The drain on our resources away from these efforts is particularly costly in the crucial period leading up to an election—including the

4

upcoming March 03, 2020 Primary Election—when these efforts are most useful to the communities we serve.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2020.

Grace Chimene

5

# Exhibit 24

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:20-cv-46 |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § | |

## DECLARATION OF JARROD STRINGER

My name is Jarrod Stringer. I am over the age of 18 and capable of making this declaration. The facts stated herein are within my personal knowledge.

1.  I am a resident of Texas and eligible to vote in Texas.

2.  The State failed to register me to vote after I changed the address on my driver's license through the DPS website, twice.

3.  After moving from Arlington to San Antonio, I updated the address on my driver's license online using the DPS website on August 1, 2014. The State failed to update my voter registration during that transaction. Due to the confusing setup of the online driver's license portal on the DPS website, I mistakenly believed that I had updated my voter registration. As a result of this confusion, I was unable to cast a full ballot in the 2014 General Election.

1

4.  Before November 23, 2019, I moved from a residence in Bexar County to a new residence in Harris County. At that time of my move, I was a registered voter at my old address in Bexar County.

5.  On November 23, 2019, I had my wife visit the DPS website to change the address on my driver's license.

6.  My wife completed the process to change the address on my driver's license to my new address.

7.  I would have also had my wife update my voter registration online when updating my driver's license if that was an option.

8.  I remain registered at my old, incorrect address at this time.

9.  I realize that if my registration is not updated before February 03, 2020, I will not be able to vote at my correct address in the March 2020 Primary Election.

10. I place a great value on voting and civic engagement, and would like for the driver's license change of address transaction that was completed in November to also count for voter registration purposes so that I can vote at my correct address in the March 2020 Primary Election.

11. I plan to move residences again in 2020. Specifically, I and my wife plan to move out of our current rental apartment and into a new residence by August 25, 2020 at the latest.

12. When I move to our new address, I intend to use the DPS website to update my driver's license address. I would like to be able to exercise my legal right to have that transaction also serve as a simultaneous voter registration that does not require me to duplicate any information or engage in any extra procedures.

2

13. When I move again in the future or renew my driver's license, I will use the DPS website to make those transactions. I would like to be able to exercise my legal right to have that online change of address or driver's license renewal also serve as a simultaneous voter registration that does not require me to duplicate any information or engage in any extra procedures.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Date: 1-16-20

Jarrod Stringer

3

APPENDIX 180

Exhibit 25

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. _____ |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § § | |

## DECLARATION OF JOHN HARMS

My name is John Harms. I am over the age of 18 and capable of making this declaration. The facts stated herein are within my personal knowledge.

1. I am a resident of Texas and eligible to vote in Texas.

2. Prior to July of 2019, I was a resident of Bastrop County, Texas.

3. At that time, I was registered to vote and did vote in Bastrop County.

4. My Texas driver's license had my Bastrop County address as my home address.

5. In mid-July of 2019, I moved from Bastrop County to Travis County, where I signed a one-year lease on a house.

6. On or around October 08, 2019, I visited the State of Texas's online system for changing the address on a driver's license.

7. I completed the process to change the address on my driver's license to my new residence in Travis County.

1



APPENDIX 182

8. My current Texas driver's license, which correctly lists my current Travis County residence, has an issuance date of October 08, 2019.

9. If I had been provided the opportunity to simultaneously update my voter registration when I updated my driver's license address online, I definitely would have taken advantage of that opportunity.

10. I remain unregistered at this time to vote in Travis County.

11. A recent search of my voter registration status showed me as being on the Suspense List in Bastrop County, registered at my old address.

12. I realize that if my registration is not updated before February 03, 2020, I will not be able to vote in the March 2020 Primary Elections, or will be restricted in the races that I can vote in and will have to travel to a distant polling location to vote during the early voting period to be able to vote in those limited number of races.

13. I would like for the driver's license change of address transaction I completed in October to also count for voter registration purposes so that I do not have to make a separate registration, duplicate the information I have already provided, and mail it in.

14. When I move in the future or renew my driver's license, I will use the online driver's license system. I would like to be able to exercise my legal right to have that online change of address or driver's license renewal also serve as a simultaneous voter registration that does not require me to duplicate any information or engage in any extra procedures.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2020.

John Harms

2

# Exhibit 26

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, | § | |
| JOHN HARMS, MOVE TEXAS CIVIC FUND, | § | |
| and LEAGUE OF WOMEN VOTERS OF TEXAS | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 5:20-cv-00046 |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY OF | § | |
| STATE and STEVEN C. McCRAW, IN HIS | § | |
| OFFICIAL CAPACITY AS THE DIRECTOR OF | § | |
| THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| Defendants. | § | |

<u>**DECLARATION OF NAYELI GOMEZ**</u>

My name is Nayeli Gomez. I am over the age of 18 and capable of making this declaration. The

facts stated herein are within my personal knowledge.

1. I am a resident of Texas and eligible to vote in Texas.

2. In the Summer of 2019, I moved from one residence in Bexar County to a new
   residence also within Bexar County.

3. At that time of my move I was a registered voter at my old address in Bexar County.

4. On December 09, 2019, I visited the State of Texas's online system for changing the
   address on a driver's license.

5. I completed the process to change the address on my driver's license to my new
   address but was unable to simultaneously update my voter registration. I do not own a
   home printer, so it is difficult for me to print and mail-in an extra form.

1

6. If I had been provided the opportunity to simultaneously update my voter registration when I updated my driver's license address online, I definitely would have taken advantage of that opportunity.

7. I remain registered at my old, incorrect address at this time.

8. I realize that if my registration is not updated before February 03, 2020, I will not be able to vote at my correct address in the March 2020 Primary Election.

9. I place a great value on voting and civic engagement, and would like for the driver's license change of address transaction I completed in December to also count for voter registration purposes so that I can vote at my correct address in the March 2020 Primary Election.

10. When I move in the future or renew my driver's license, I will use the online driver's license system. I would like to be able to exercise my legal right to have that online change of address or driver's license renewal also serve as a simultaneous voter registration that does not require me to duplicate any information or engage in any extra procedures.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2020.

Nayeli Gomez

# Exhibit 27

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS <br><br> Plaintiffs, <br><br> v. <br><br> RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY <br><br> Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Action No. 5:20-cv-00046

## **DECLARATION OF PHYLLIS FINNEMORE**

My name is Phyllis Finnemore. I am over the age of 18 and capable of making this declaration.

The facts stated herein are within my personal knowledge.

1. I am a member of the League of Women Voters of Hays County ("LWV"). I have been an active member of this organization for approximately two years.

2. I am a deputy voter registrar in Hays County, and in my activities as a member of LWV, I frequently participate in activities that involve registering voters.

3. My LWV voter-registration activities include frequently registering college students at Texas State University. I, along with other LWV members, have visited the campus at least a dozen times over the past year to register students to vote. Additionally, we arrange with University faculty to, by invitation, register students at the health center and other campus facilities.

1

4. I have encountered many students who mistakenly believed that they registered to vote or updated their voter registration address when they use Texas's online driver's portal. Students often express that they are used to taking care of most tasks online so are not expecting that they would have to take the extra steps of finding a printer, printing out their forms, filling them out, then mailing them in.

5. When I encounter students on campus who believe they registered to vote online, I will spend time with them to use their phones to check the Secretary of State's website to lookup their current voter registration status and address. A majority of the time, the individual I am helping will either not be registered or will be registered at their old address prior to moving to Hays County.

6. In addition to registering voters on campus, I, and other members of the League of Women Voters of Texas register voters across Hays County. This includes, among other things, going to public libraries and offering to register voters, going to public events and popular public locations to register voters, and being invited to events that are hosted by other organizations in order to register voters.

7. When registering voters in Wimberley, Texas, I have particularly found a large number of voters that have recently moved to the area and need to update their voter registration address.

8. Most of the time that I go out to register voters, I encounter one or more individuals who mistakenly believes that they registered or updated their registration online while using the online Texas driver's license system.

9. As with students who mistakenly believe they registered online, I first help the individual to look up their current registration status on address. The vast majority of time they are unregistered or registered at the incorrect address.

10. It takes more time than usual to help individuals who mistakenly believe they registered or updated their registration online because first I must help them check their current registration information, then I also frequently have to explain that there is no way to complete their registration online and no link between the DPS system and the voter registration system, and then ultimately I must help them register to vote.

11. As a member of LWV, I also spend time during elections educating voters about issues and candidates and encouraging individuals to turnout to vote. My voter education and outreach activities include speaking at public libraries and at public events (for instance, by invitation to local political parties), going to public locations on university campuses and at other public locations around Hays County to disseminate voting information, and helping disseminate the League of Women Voter's Voter Guide.

12. In my voter engagement and get-out-the-vote work, I have frequently encountered individuals who go to vote, believing they had registered to vote or updated their voter registration online while renewing or updating their driver's license, only to find out that they are not registered or are registered in a different county at an old address. This problem is specifically prevalent among university students. Many individuals are directed to cast provisional ballots, or request provisional ballots believing that the ballots will be counted. However, they are not informed, or not understanding, that a provisional ballot will not be counted at all if they are unregistered or registered at an

3

incorrect address and they must follow up within 6 days of the election date and provide address verification and acceptable ID.

13. It is extremely discouraging to see voters turned away at the polls after we have helped convince them to go vote, and the voters themselves often appear very discouraged from the experience. This type of negative experience hurts my work as a LWV member, which is focused on increasing civic participation.

14. During the November 2019 Constitutional Amendment election, I worked with the Hays County Election Department to setup voting machines.

15. While working alongside Elections Department officials and election judges and clerks, I asked them what were some of the most common problems they encountered when operating elections. Multiple workers expressed that a common problem they face is individuals who mistakenly believe they registered online while using the online driver's license system only to show up to the polls to find out that they are not registered or are registered at an old address in a different county and are therefore unable to vote.

16. LWV in Hays County has more than 10 active members who are certified volunteer deputy registrars ("VDR").

17. I work closely the other members of LWV who are VDRs, including my husband who is a VDR and active member of LWV.

18. We frequently compare notes on our experiences as VDRs. Based on conversations with my fellow LWV VDRs, it is a generally universal experience to encounter individuals who mistakenly believed they registered to vote when renewing or updating their driver's license online.

4

19. In addition to voters who mistakenly believed they registered online, we end up spending time registering voters who otherwise would have been able to register when transacting with DPS online had they been provided the opportunity.

20. Because of my own experience registering voters, engaging with would-be voters, comparing notes with fellow VDRs, and the information I acquired from Hays County election workers, I incorporated information on the inability to register to vote through DPS online into a "Ready To Vote" presentation (excerpt attached hereto) that LWV has provided and will provide to the public to make sure they are ready to vote in each election.

21. I have given the presentation at the Wimberley Public Library.

22. I have also helped lead train-the-trainer sessions to prepare other LWV members to give the presentation. These other trainers have provided the Ready To Vote presentation at other libraries across the County, and by invitation to other organizations.

23. We will be increasing our efforts to provide the Ready To Vote presentation in 2020 in advance of the 2020 Primary and General Elections.

24. If I did not have to spend time making up for the State's failure to provide voter registration services alongside online driver's license transactions, I would be able to spend that time registering new voters, reaching more individuals to actually turn them out to vote, educating voters about issues and candidates, and helping to ensure that our elections run smoothly.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2020.

5

Phyllis Finnemore

6

# Exhibit 28

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:20-cv-00046 |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § § | |

## DECLARATION OF SHARON E. WALTHER

My name is Sharon E. Walther. I am over the age of 18 and capable of making this declaration.

The facts stated herein are within my personal knowledge.

1. I am a member of the League of Women Voters of Travis County ("LWV"). I have been an active member of this organization since September 2018.

2. I am a volunteer deputy voter registrar ("VDR") in Travis, Hays, and Williamson Counties, and in my activities as a member of LWV, I frequently participate in registering voters.

3. In 2018 I individually registered approximately 275 voters in Travis County alone, and in 2019 I individually registered approximately 1300 voters across all the counties in which I am active.

APPENDIX 195

4. Some of the most frequent locations that I register voters at include ACC Riverside, Austin, Texas; ACC South, Austin, Texas; ACC Eastview, Austin, Texas; Hays County ACC (Austin Community College); Alamo Drafthouses in the Austin area; and many public events (concerts, festivals, etc.) throughout the counties in which I am active.

5. I participate in 10-12 voter registration activities a week. During practically every voter registration activity I engage in, I come across one or more individuals who mistakenly believes they registered to vote when updating or renewing their driver's license online.

6. How I respond to individuals who believe they have registered to vote online through DPS varies based on how long ago they transacted with DPS and how much time they are willing to spend with me. If they have just registered (5 minutes to 3 weeks ago) we cannot check the various registration-check websites to see if they are registered because their information will not be updated. I explain that they should receive their voter registration card in the mail in about 30 days. I also show them a sample of what it should look like. I tell them if they have not received anything in about 45 days, they should check with the county's voter registration office. I give them a voter registration mail-in application for the counties in which I am a VDR. If it has been a month or more since they transacted with DPS, we look them up on the county's website or the Secretary of State's website. Half or more of the individuals whose voter registrations I check are either not registered or are registered at an old, incorrect address. If they are willing to go through the process with me, I will then

APPENDIX 196

register them to vote. If they are not willing to go through the process, I give them a registration mail in application for their specific county or the Secretary of State to take with them, and I explain how long it often takes for their registration to be recorded and effective. I also tell them that they can go to the public library in their home county and pick up a county specific mail in form.

7.  In my registration activities, I also occasionally come across individuals who completed online driver's license transactions and realized that they were unable to register to vote simultaneously but would have taken the opportunity to do so if it had been available. When I encounter such individuals, I register them to vote if they are willing to let me and it is in a county in which I am a certified VDR, or I give them a registration mail in form to take with them.

8.  I am very active in registering voters at community colleges in the region, and, based on my personal observations, many students must use campus facilities in order to print out materials because they do not otherwise have easy access to printers.

9.  As an experienced VDR, I often give advice to and share notes with other VDRs in the region. I advise other VDRs to be on the lookout for people who mistakenly believe they registered to vote online when renewing or updating a driver's license. Many of the other VDRs I speak with have also encountered this problem.

10. In my voter registration activities, I have frequently encountered individuals who had previously tried to vote in an election believing they had registered to vote online through DPS only to show up at the polls and either be completely unregistered or registered at an incorrect address. These individuals are often frustrated by this

APPENDIX 197

previous experience, and I spend time commiserating with them about their past negative experience and encouraging them to still participate in the process. If they are willing, I will then take the time to check their voter registration status and register them to vote at their correct address if they are not otherwise registered there. Dealing with these individuals can be particularly time consuming because of the previous problems they encountered when trying to vote.

11. If I did not have to spend time making up for the State's failure to provide voter registration services alongside online driver's license transactions, I would be able to spend that time registering new voters, reaching more individuals to actually turn them out to vote, educating voters about issues and candidates, and helping to ensure that our elections run smoothly.

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2020.

Sharon E. Walther

Sharon E. Walther