# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS,<br><br>                    Plaintiffs,<br><br>    v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State;[1] STEVEN C. MCCRAW, in his official capacity as the Director of the Texas Department of Public Safety;<br><br>                    Defendants. | Civil Action<br><br>Case No. 5:16-cv-00257-OLG |

## TEXAS DEMOCRATIC PARTY, DSCC, AND DCCC'S OPPOSED MOTION TO INTERVENE

---

[1] Intervenors have substituted the name of the current Texas Secretary of State (the "Secretary") in the caption pursuant to Fed. R. Civ. P. 25(d).

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

III.  ARGUMENT ....................................................................................................... 3

   A.  Intervenors have independent grounds of jurisdiction to support this  lawsuit ................... 3

   B.  Intervenors are entitled to intervene as of right ...................................................... 5

      1.  Intervenors' motion to intervene is timely ...................................................... 5

      2.  Intervenors have a strong interest in this action ............................................. 8

      3.  Disposition of this matter would impair Intervenors' ability to protect their interest as a practical matter ................................................................................... 8

      4.  Intervenors' interests are inadequately represented by the existing parties ..................... 9

   C.  Intervenors are also entitled to permissive intervention ........................................... 9

IV.  CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Alabama Legislative Black Caucus v. Alabama,*
    575 U.S. 254 (2015)............................................................................................4

*Bay Cty. Democratic Party v. Land,*
    347 F. Supp. 2d 404 (E.D. Mich. 2004)............................................................4

*Ceres Gulf v. Cooper,*
    957 F.2d 1199 (5th Cir. 1992) ..........................................................................8

*Crawford v. Marion Cty. Election Bd.,*
    553 U.S. 181 (2008)............................................................................................4

*Diamond v. Charles,*
    476 U.S. 54 (1986)..............................................................................................8

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ...........................................................................6, 8

*Fla. Democratic Party v. Scott,*
    215 F. Supp. 3d 1250 (N.D. Fla. 2016)..............................................................4

*Fuller v. Volk,*
    351 F.2d 323 (3d Cir. 1965)...............................................................................5

*Gaines v. Dixie Carriers, Inc.,*
    434 F.2d 52 (5th Cir. 1970) ............................................................................8, 9

*Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs. of The Orleans*
    *Levee Dist. & State Of Louisiana,*
    493 F.3d 570 (5th Cir. 2007) ..........................................................................5, 9

*Hunt Tool Co. v. Moore, Inc.,*
    212 F.2d 685 (5th Cir. 1954) ...........................................................................2, 4

*In re Lease Oil Antitrust Litig.,*
    570 F.3d 244 (5th Cir. 2009) ..............................................................................5

*In re Lease Oil Antitrust Litig.,*
    570 F.3d at 247–48 ..............................................................................................6

*Kneeland v. Nat'l Collegiate Athletic Ass'n,*
    806 F.2d 1285 (5th Cir. 1987) ..........................................................................10

*Martinez v. United States,*
    No. DR-05-CA-055, 2005 WL 8155760 (W.D. Tex. Dec. 12, 2005) ...............10

*Piambino v. Bailey,*
   610 F.2d 1306 (5th Cir.), *cert. denied*, 449 U.S. 1011 (1980)..................................8

*Sandusky Cty. Democratic Party v. Blackwell,*
   387 F.3d 565 (6th Cir. 2004) ....................................................................................4

*Simmons v. I.C.C.,*
   716 F.2d 40 (D.C. Cir. 1983) ....................................................................................5

*Stallworth v. Monsanto Co.,*
   558 F.2d 257 (5th Cir. 1977) ...........................................................................6, 7, 10

*Stringer v. Pablos,*
   320 F. Supp. 3d 862 (W.D. Tex. 2018)..............................................................2, 3, 7, 10

*Stringer v. Whitley,*
   942 F.3d 715,726 (5th Cir. 2019) (J. Ho, concurring) ..........................................10

*Summit Office Park, Inc. v. U.S. Steel Corp.,*
   639 F.2d 1278 (5th Cir. 1981) ...................................................................................5

*Tex. Democratic Party v. Benkiser,*
   459 F.3d 582 (5th Cir. 2006) .....................................................................................4

*United States v. City of Jackson, Miss.,*
   519 F.2d 1147 (5th Cir. 1975) ...................................................................................8

## OTHER AUTHORITIES

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
   1917 (3d ed.) ............................................................................................................2

Fed. R. Civ. P. 24(a)(2)....................................................................................1, 5, 8

Fed. R. Civ. P. 24(b)(1)(B), (3)................................................................................10

Fed. R. Civ. P. R. 24 (a)(2) .......................................................................................6

## I.   INTRODUCTION

TEXAS DEMOCRATIC PARTY ("TDP"), DSCC, and DCCC ("Intervenors") seek to enter this case pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B) to ensure that Defendants may not avoid their obligation to follow constitutional law to the detriment of eligible voters throughout Texas, simply because the original Plaintiffs to this action were deemed to not have standing. Defendants encourage Texas driver's license holders to renew and/or update their addresses online at the website of the Department of Public Safety ("DPS") while disenfranchising these same Texans through an unlawful online process which does not permit users to simultaneously register to vote while deceiving them into believing they are doing so. This is in stark contrast to the process for mail or in-person transactions, where Defendants permit simultaneous voter registration.

This Court previously determined that these practices violate both the National Voter Registration Act and equal protection. Defendants appealed and the Fifth Circuit reversed, holding that the original Plaintiffs to this action lacked standing. However, as Judge Ho noted in his concurrence, it did not pass on the merits of this Court's previous determination, saying nothing about the legitimacy of Plaintiffs' claims, or the legality of Texas's current procedure.

Intervenors, a state-wide organization and national committees invested in the success of Democratic candidates, share Plaintiffs' equal protection claims but not their standing infirmities, and seek intervention to permit the merits of this claim to be fully adjudicated. If granted, intervention would not be ancillary to the action of the original Plaintiffs. Rather, Intervenors have *independent* grounds to prosecute this matter and to invoke the Court's jurisdiction over the merits. Intervenors thus have a right to intervene under Fed. R. Civ. P. 24(a)(2). But they also fulfill the requirements of permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), and principles of judicial economy should compel the court to exercise its considerable discretion to permit

intervention on that basis as well. If the motion to intervene is denied, Intervenors would have every right to bring this action instead as a new, independent complaint and pursue relief on the merits against Defendants on the same equal protection grounds here. Denying intervention would cause unnecessary delay and waste the resources of the Court and the parties.

The Fifth Circuit has previously held that intervenors with independent grounds to maintain an action may cure jurisdictional defects even after the action is dismissed. *See Hunt Tool Co. v. Moore, Inc.*, 212 F.2d 685, 688-89 (5th Cir. 1954). This is because when there is an independent basis for jurisdiction with regard to the intervenor's claim, the court has discretion to treat its pleadings as a separate action to adjudicate the claims efficiently and to avoid unnecessary delay. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1917 (3d ed.).

Here, Intervenors possess an independent basis to invoke the Court's jurisdiction and seek to bring a claim the Court already decided on the merits. Granting intervention would streamline the procedure through which this case ultimately gets resolved. Denying intervention would slow resolution, but not alter the result. The equities also strongly favor permitting Intervenors to pursue this action by intervention, because of the important fundamental rights at stake, and every day that Defendants are permitted to continue with their unconstitutional action is a day in which eligible Texans have their right to access the franchise unconstitutionally burdened.

## II.    FACTUAL BACKGROUND

On May 10, 2018, this Court issued an opinion granting summary judgment for Plaintiffs on their claims that Defendants' administration of voter registration through Texas's DPS online system violated the NVRA and the equal protection clause. *Stringer v. Pablos*, 320 F. Supp. 3d 862, 900-901 (W.D. Tex. 2018). Plaintiffs alleged that Defendants "deprive[] Texans of their federal right to register to vote or update their voter registration simultaneously with their

online driver's license renewal and change of address transactions," and Defendants "admit that the key facts of this case are undisputed." *Id.* at 868. Defendants did not allow for simultaneous voter registration or registration updates online despite permitting simultaneous voter registration for mail and in-person transactions. *Id.* at 872-73. Defendants continue to engage in these practices today. *See* Ex. A, Paxton Press Release (Nov. 14, 2019), at 1-2 ("Currently, Texans who use the DPS driver license renewal and change-of-address website are sent to a separate page – administered by the Texas Secretary of State – where they can complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.").

The Fifth Circuit reversed this Court's ruling on November 13, 2019, finding Plaintiffs did not have standing because they became registered prior to filing and because they failed to demonstrate a substantial likelihood of future injury from Defendants' conduct. *Stringer*, 942 F.3d at 721-22, 724-25. The Fifth Circuit's mandate, returning the case to this Court, issued on December 5. ECF No. 122-1. The Fifth Circuit did not reach the merits of Plaintiffs' claims or pass on the Court's judgment.

## III.    ARGUMENT

### A.    Intervenors have independent grounds of jurisdiction to support this lawsuit

The Court may properly grant the motion for intervention because Intervenors have independent grounds of jurisdiction to support an equal protection claim. Intervenors are a state-wide organization and national committees that are invested in the success of Democratic candidates, including in Texas. Intervenors' Compl. at ¶¶ 11-13. Defendants' continuing equal protection violations frustrate these efforts, forcing Intervenors to devote additional resources to combat Defendants' ongoing violations that could otherwise be allocated to different portions of

3

Intervenors' mission. *Id.* The Supreme Court and the Fifth Circuit have held similar injuries sufficient to grant organizational standing, including in a case brought by TDP itself. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with Seventh Circuit that state Democratic party had standing to challenge law requiring government-issued photo identification to vote); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585-86 (5th Cir. 2006) (holding TDP had standing to challenge unconstitutional state action based on diversion of resources and harmed electoral prospects).

Intervenors, as political organizations, also have standing to assert the rights of their members, some number of whom will inevitably be injured by Defendants' continuing arbitrary policies. This provides these organizations with representational standing to bring their members' claims. *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268-271 (2015) (reversing holding that Alabama Democratic Conference lacked standing to bring the claims of its members in racial gerrymandering case); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) (holding political party had associational standing to assert the rights of its supporters even though plaintiffs did not identify a specific voter that would be prospectively harmed; that some voters would be harmed was "inevitable"); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016) ("[P]olitical parties have standing to assert, at least, the rights of its members who will vote in an upcoming election. That [i]s so even [when] the political party c[an] not identify specific voters that would be affected; it is sufficient that some inevitably would."); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 422 (E.D. Mich. 2004) ("[P]olitical parties and candidates have standing to represent the rights of voters.").

Intervenors' independent bases for standing to assert the equal protection claims brought by Plaintiffs provide the Court jurisdiction to continue this action. *Hunt*, 212 F.2d at 688 (reversing

district court's judgment dismissing intervention because intervenors had independent grounds of jurisdiction to support the action); *cf. Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) (holding that "where a plaintiff never had standing to assert a claim against the defendants, [that *plaintiff*] does not have standing to amend the complaint and control the litigation by substituting new plaintiffs" (emphasis added)); *Simmons v. I.C.C.*, 716 F.2d 40, 46 (D.C. Cir. 1983) ("An intervener lacking an *independent* jurisdictional basis cannot maintain suit where the court lacked original subject matter jurisdiction.") (emphasis added); Wright, *supra* ("[I]f there is an independent basis for jurisdiction with regard to the intervenor's claim, the court has discretion to treat those pleadings as a separate action [] to adjudicate the claims raised by the intervenor.").

By allowing the lawsuit to continue with Intervenors, "the [C]ourt can avoid the senseless delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are." *Fuller v. Volk*, 351 F.2d 323, 329 (3d Cir. 1965) (quotations and citations omitted).

### B.      Intervenors are entitled to intervene as of right

Intervenors meet the Fifth Circuit's liberal test for intervention as of right. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) (holding that intervention is liberally construed, and any doubts are resolved in favor of intervenors). Intervenors' application is timely, they have a direct interest in the subject matter of this lawsuit, disposing of this action will practically impair their ability to protect their interests, and Plaintiffs can no longer adequately represent Intervenors' interests. *Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs. of The Orleans Levee Dist. & State Of Louisiana*, 493 F.3d 570, 578 (5th Cir. 2007); *see also* Fed. R. Civ. P. 24(a)(2).

### 1.      Intervenors' motion to intervene is timely

Intervenors' motion is timely under the Fifth Circuit's four-part test. The Court has broad

discretion in considering: "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litig*., 570 F.3d at 247–48. These factors are not dispositive but merely provide a framework for the analysis. *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).

Intervenors' motion is timely because they filed slightly more than two weeks after this case returned to the district court following the Fifth Circuit's ruling, which rendered Plaintiffs unable to continue protecting Intervenors' interest. *Edwards*, 78 F.3d at 1000 ("The timeliness clock runs . . . from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit."); *see also* ECF 122. Until the Fifth Circuit's ruling, Plaintiffs had been adequately representing and protecting Intervenors' interests, so Intervenors had neither the necessity nor the right to intervene. *See* Fed. R. Civ. P. R. 24 (a)(2). Indeed, this Court's favorable decision is particularly salient evidence that Plaintiffs adequately represented Intervenors' interests. When the Fifth Circuit dismissed Plaintiffs' suit based on standing, Intervenors were suddenly faced with inadequate representation, and quickly pursued this motion. *See Stallworth*, 558 F.2d at 267 ("By filing their petition less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly.").

The existing parties will not be prejudiced if Intervenors' motion is granted. The Court only considers the potential prejudice to the parties caused by the delay in intervening, not the prejudice that may result from the intervention itself. *Edwards*, 78 F.3d at 1002; *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). The delay between the matter returning to this Court and the intervention sought here—a day over two weeks—has not harmed the parties;

the docket shows that the parties have not pursued any action in this case since the Fifth Circuit's mandate issued on December 5, 2019. This factor, too, weighs in favor of intervention.

By contrast, Intervenors will be significantly prejudiced if the Court denies this motion. The Court addressed the very same equal protection claim Intervenors seek to raise in its order on the parties' motions for summary judgment, finding that Defendants' conduct violated equal protection. *See Stringer*, 320 F. Supp. 3d at 901. Although it did not reach the merits of those claims on appeal, the Fifth Circuit's conclusion that Plaintiffs lacked standing resulted in reversal of that judgment. To protect their equal protection interests here, Intervenors are left with only two options: they can intervene in this lawsuit and pursue the merits of the Court's judgment, or they can bring a new action raising the same claim against the same Defendants. If Intervenors are forced to bring a new suit, they will necessarily duplicate the efforts of the existing parties, and will be significantly prejudiced as any potential remedy will encounter further, unnecessary delays. *See Stallworth*, 558 F.2d at 267 (finding intervention appropriate when it "concern(ed) the same evidence, memories, and witnesses as the subject matter of the original class suit." (citation and quotation marks omitted)). This factor, too, weighs in favor of intervention.

Intervenors' motion is further supported by the unusual circumstances in this case. Intervenors seek to raise the exact same equal protection argument Plaintiffs successfully raised. The Court is familiar with the facts and record and would not expend many judicial resources if it granted this motion. Similarly, Defendants have already defended their position and would not need to expend many resources if the Court permitted Intervenors to enter the lawsuit as plaintiffs. Intervenors are not seeking to reopen discovery but instead merely wish to file a dispositive motion. Should this case proceed again on appeal, the Fifth Circuit will have the opportunity to decide it on its merits, addressing questions Defendants have already briefed and argued.

### 2.    Intervenors have a strong interest in this action

Intervenors meet the second requirement for intervention as of right because they have both organizational and associational standing to bring the equal protection claims at issue here. To meet this prong, Intervenors need only demonstrate an interest that substantive law recognizes as belonging to them, *Edwards*, 78 F.3d at 1004, which is "direct, substantial, [and] legally protectable." *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir.) (citations omitted), *cert. denied*, 449 U.S. 1011 (1980). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992). As noted above, *supra* at 3-5, Intervenors have separate Article III standing to proceed with this matter, clearing this low bar. *See Diamond v. Charles*, 476 U.S. 54, 68-69 (1986) (noting that interest required for intervention under Rule 24(a)(2) is less burdensome than the requirements of Article III standing).

### 3.    Disposition of this matter would impair Intervenors' ability to protect their interest as a practical matter

Intervenors' equal protection interest would practically be impaired by disposition of this matter because Intervenors would have to pursue additional litigation to protect their interests. The "practical impairment" standard does not require that an intervenor demonstrate that they will be bound by disposition of the action, but rather permits intervention more liberally, *Edwards*, 78 F.3d at 1005, and the decision on whether an interest might be practically impaired "can only be made with reference to the facts and procedural posture of the case." *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1151 (5th Cir. 1975). The Fifth Circuit has, for example, permitted intervention when the practical impairment raised by the intervenor was the burden of pursuing additional litigation. *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970).

Intervenors face a practical impairment similar to that of the intervenors in *Gaines*, where

intervention as of right was permitted because of the practical impairment of pursuing additional litigation. There, a firm which had previously been part of a lawsuit filed a motion to intervene to protect a claimed interest in the attorney's fees at issue in the lawsuit, which it could have pursued in a separate litigation. *Id.* at 54. The Fifth Circuit reversed the district court's denial of intervention, holding that despite the ability to bring a separate lawsuit disposition of the current action would practically impair or impede the ability to protect that interest. *Id.*

The procedural posture of this case and the facts unique to political parties and the harm here enhance this practical impairment. Each day that passes without a resolution results in more of Intervenors' members being unknowingly disenfranchised and causes Intervenors to have to devote greater resources to combat that harm. Requiring Intervenors to pursue needless additional litigation over many months merely to arrive at the same merits determination this Court already made would be a significant practical impairment to Intervenors' interest in this litigation.

### 4. Intervenors' interests are inadequately represented by the existing parties

Intervenors also meet the last requirement because the Fifth Circuit's decision renders existing Plaintiffs unable to adequately represent Intervenors' interests. Establishing inadequate representation is a "minimal" burden which can be surmounted by "show[ing] that representation of [a putative intervenor's] interest 'may be' inadequate." *Haspel*, 493 F.3d at 578. If intervention is prohibited here, representation of Intervenors' interests in this matter will be nonexistent.

### C. Intervenors are also entitled to permissive intervention

In addition to intervention as of right, Intervenors are entitled to permissive intervention because their equal protection claim shares the exact same questions of law and fact as current plaintiffs' equal protection claim, and the only undue delay and prejudice here will occur if Intervenors are forced to file a new lawsuit to advance this claim. To permissively intervene,

9

Intervenors' claims and defenses must have questions of law and fact in common and intervention cannot unduly delay or prejudice the original parties. *Stallworth*, 558 F.2d at 269; Fed. R. Civ. P. 24(b)(1)(B), (3). Intervenors' equal protection claim, like Plaintiffs', turns on Texas' disparate treatment of eligible voters who utilize DPS's online portal for driver's license transactions.

Intervenors meet the requirements of Rule 24(b), and the Court should exercise its broad discretion in allowing intervention. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) ("Permissive intervention 'is wholly discretionary with the [district] court[.]'" (citation omitted)). In exercising that discretion, courts may consider if "the intervenors' interests are adequately represented by other parties and whether intervention will unduly delay the proceedings or prejudice existing parties." *Id.* (citation omitted). Plaintiffs can no longer adequately represent Intervenors' interests. And, undue delay and prejudice will only arise if this motion is denied because Intervenors will file a separate lawsuit advancing the same equal protection claim already decided here. *See, e.g., Martinez v. United States*, No. DR-05-CA-055, 2005 WL 8155760, at *6 (W.D. Tex. Dec. 12, 2005) ("[I]f Plaintiffs' and Applicants' claims are all litigated in one action, the [Defendant] will not be subject to offensive use of non-mutual collateral estoppel with respect to issues determined in this action.").

## IV.  CONCLUSION

The Court already found that Texas' online registration system violates equal protection. *Stringer*, 320 F. Supp. 3d at 901. Judge Ho signaled that the Fifth Circuit may be inclined to agree. *See Stringer v. Whitley*, 942 F.3d 715,726 (5th Cir. 2019) ("If it's good enough for motorist licensing, then it ought to be good enough for voter registration.") (J. Ho, concurring). It defies common sense to force the parties and the Court to restart this lawsuit when the issues are primed for decision. Intervenors respectfully request that the Court grant their motion to intervene.

10

Dated: Dec. 20, 2019.

Respectfully submitted,

/s/ *John R. Hardin*

John R. Hardin
Texas State Bar No. 24012784
PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, TX 75201
Telephone: (214) 965-7743
Facsimile: (214) 965-7793
JohnHardin@perkinscoie.com

Marc E. Elias*
John M. Geise*
Emily Brailey*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
jgeise@perkinscoie.com
ebrailey@perkinscoie.com

*Counsel for the Intervenor-Plaintiffs*

Chad W. Dunn
Texas State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Intervenor- Plaintiff Texas
Democratic Party*

*\*Motions for Admission Pro Hac Vice
Forthcoming*

11

## CERTIFICATE OF CONFERENCE

Counsel for Intervenor-Plaintiffs have conferred with counsel for Plaintiffs and they do not oppose Intervenor-Plaintiffs' motion. Counsel for Intervenor-Plaintiffs have conferred with counsel for Defendants and they indicated their opposition to Intervenor-Plaintiffs' motion.

/s/ *John R. Hardin*
Counsel for the Intervenor-Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I filed a copy of the foregoing Texas Democratic Party, DSCC, and DCCC'S Motion to Intervene with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *John R. Hardin*
Counsel for the Intervenor-Plaintiffs

# EXHIBIT A



Español (/es/news/releases/tribunal-del-quinto-circuito-emite-fallo-favor-de-texas-en-demanda-sistema-de-registro-electoral)

About the Office (/about-office)   News (/news)

Opinions (/attorney-general-opinions)   Contact Us (/contact-us)



November 14, 2019

# Fifth Circuit Rules in Favor of Texas Voter Registration System in "Motor Voter" Lawsuit

SHARE THIS:                              8

Attorney General Ken Paxton praised the U.S. Court of Appeals for the Fifth Circuit after it issued an opinion agreeing with Texas's arguments that the three plaintiffs suing the state over its voter registration process lacked standing.

In May 2018, a U.S. District Court ruled that Texas violated the "motor voter" provision of the National Voter Registration Act (NVRA) because it does not allow individuals who use the Texas Department of Public Safety's (DPS) online driver license renewal and change-of-address website to also update their voter registrations online. The court ordered Texas to design and implement a costly new online system and imposed numerous burdensome requirements on the state that are not mandated by federal law. The Fifth Circuit quickly granted Texas's request for an emergency stay, and reversed the district court's ruling, remanding the case to the district court with instructions to dismiss the three plaintiffs' claims for lack of standing.

"As enacted by Congress, the NVRA recognizes that requiring a voter to sign a voter registration application is an important means of upholding election integrity. Federal judges have no right to alter state voter registration processes on the whim of plaintiffs who are already registered to vote," said Attorney General Paxton. "Election integrity is one of my top priorities, and requiring written signatures on voter registration applications is a necessary aspect of combating fraud and ensuring the security of our elections."

Texas law governing voter registration generally requires written signatures on voter registration applications to deter and reduce election fraud. Currently, Texans who use the DPS driver license renewal and change-of-address website are sent to a separate

page—administered by the Texas Secretary of State—where they can complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.

To view a copy of the opinion, click here (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2019/Press/Opinion.pdf).

*Receive email updates from the OAG Press Office:*

Your Email Add   **Submit**

**Related News**

**Bexar County Court Blocks San Antonio's Unlawful Paid Sick Leave Ordinance (/news/releases/bexar-county-court-blocks-san-antonios-unlawful-paid-sick-leave-ordinance)**

**December 13, 2019**

**AG Paxton: All U.S. Attorneys General Call on Congress to Pass Bipartisan FIGHT Fentanyl Act (/news/releases/ag-paxton-all-us-attorneys-general-call-congress-pass-bipartisan-fight-fentanyl-act)**

**December 11, 2019**

**AG Paxton Joins 18-State Coalition Urging SCOTUS to Overturn the Shut-down of a Job-Producing Pipeline (/news/releases/ag-paxton-joins-18-state-coalition-urging-scotus-overturn-shutdown-job-producing-pipeline)**

**December 10, 2019**

**AG Paxton's Child Exploitation Unit and Copperas Cove Police Department Arrest Six Men in Sting Operation (/news/releases/ag-paxtons-child-exploitation-unit-and-copperas-cove-police-department-arrest-six-men-sting)**

**November 27, 2019**

See all News (/news)

Back to Top

(https://twitter.com/TexasAG)

(https://www.facebook.com/TexasAttorneyGeneral)

PO Box 12548
Austin, TX 78711-2548

Crime Victims
(/crime-victims)

Consumer
Protection
(/consumer-
protection)

Open
Government
(/open-
government)

Opinions
(/attorney-
general-
opinions)

Initiatives
(/initiatives)

Careers
(/careers)

Compact with
Texans (/about-
office/compact-
texans)

Cost Efficiency
Saving Ideas
(/about-
office/cost-
efficiency-saving-
ideas)

Reporting Fraud
(/about-
office/reporting-
fraud-state-
government)

State Agency
Contracts

(https://oagtx.force.com/

TRAILS Search
(https://www.tsl.state.tx.u

Texas Homeland
Security
(https://gov.texas.gov/org

Texas Veterans
Portal
(https://veterans.portal.te

Texas.gov
(http://www.texas.gov/)

Accessibility &
Site Policies (/site-
policies)

(/)

/

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS, | Civil Action |
| Plaintiffs, | |
| and | Case No. 5:16-cv-00257-OLG |
| TEXAS DEMOCRATIC PARTY; DSCC; DCCC, | |
| Intervenor-Plaintiffs, | |
| v. | |
| RUTH HUGHS, in her official capacity as the Texas Secretary of State;[1] STEVEN C. MCCRAW, in his official capacity as the Director of the Texas Department of Public Safety, | |
| Defendants. | |

**INTERVENOR-PLAINTIFFS TEXAS DEMOCRATIC PARTY, DSCC, AND DCCC'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**NATURE OF THE CASE**

1.      This action seeks declaratory and injunctive relief to redress Defendants' systematic and continuing violation of the U.S. Constitution's guarantee of equal protection. Intervenor-Plaintiffs, who have invested and plan to invest substantially in voter registration efforts throughout the state and among whose membership are eligible Texas voters who utilize the Department of Public Safety's ("DPS") online portal for renewal and change of address transactions, have been injured by Defendants' continuing unconstitutional treatment of these individuals, who are arbitrarily subject to differential treatment regarding their efforts to register

---

[1] Intervenor-Plaintiffs have substituted the name of the current Texas Secretary of State in this case pursuant to Fed. R. Civ. P. 25(d).

to vote solely because they choose to utilize DPS's online portal for renewal and change of address transactions rather than accomplishing these tasks in person or by mail. Texas voters will continue to be shut out of the democratic process unless and until Defendants reform their registration practices.

2.      Defendants permit certain Texas driver's license holders to renew their license and/or update the address on their license online on DPS' website at www.txdps.state.tx.us.  While there have been many different iterations of this online process over the years, *see Stringer v. Pablos*, 320 F. Supp. 3d 862, 869, 871, 876,  (W.D. Tex. 2018), none have offered any means for simultaneous voter registration. Today, despite years of litigation over this issue before this Court, Defendants still fail to allow for simultaneous registration with online renewals and changes of address. *See* Press Release, Ken Paxton, Attorney General of Texas, Fifth Circuit Rules in Favor of Texas Voter Registration System in "Motor Voter" Lawsuit (Nov. 14, 2019), https://www.texasattorneygeneral.gov/news/releases/fifth-circuit-rules-favor-texas-voter-registration-system-motor-voter-lawsuit ("Currently, Texans who use the DPS driver license renewal and change-of-address website are sent to a separate page – administered by the Texas Secretary of State – where they can complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.").

3.      In contrast to the multi-step process required for a driver using DPS's online systems to update their voter registration, DPS's in-person driver's license applications, ECF No. 93, exh. A-7, in-person renewal/replacement/change of address forms, ECF No. 93, exh. A-8, and mail in change of address forms, ECF No. 93, ex. A-9, serve as simultaneous voter registration applications.

4.      Defendants' current practices treat similarly situated voters differently based solely on how those voters choose to transact with DPS without any adequate justification, in violation of the U.S. Constitution's requirement of equal protection.

5.      Defendants must not be permitted to continue to ignore constitutional law. Intervenor-Plaintiffs respectfully request that this Court enjoin Defendants from further violations of the law and grant the relief set forth below.

## JURISDICTION AND VENUE

6.      Intervenor-Plaintiffs sue under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

7.      This Court has original jurisdiction over the subject of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

8.      This Court has personal jurisdiction over Defendants, who are citizens of the State of Texas and sued in their official capacity only.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that caused Intervenor-Plaintiffs' claims occurred in this judicial district, and each Defendant conducts business in this district.

10.     This Court has the authority to enter a declaratory judgment and to provide injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     Plaintiff the Texas Democratic Party ("TDP") is the statewide organization representing Democratic candidates and voters throughout the State of Texas within the meaning

of Section 117 of Texas's Election Code and all other applicable provisions of the election laws. TDP's purpose is to elect Democratic Party candidates to public office throughout Texas. To accomplish its purpose, TDP engages in vitally important activities, including supporting Democratic Party candidates in national, state, and local elections through fundraising and organizing; protecting the legal rights of voters; and ensuring that all voters have a meaningful ability to cast ballots in Texas. TDP has millions of members and constituents from across Texas, including millions of Texans who are registered with the Texas Department of State's Division of Elections as Democrats, millions of Texans who are drivers who interact with DPS, and many other Texans who regularly support and vote for candidates affiliated with the Democratic Party.

12.     Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the United States Senate, including in Texas. DSCC works to accomplish its mission across the country and in Texas by, among other things, assisting state parties throughout the country, including in Texas.  In 2018, DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic Senate candidates. In 2020, DSCC expects to invest millions in support of the Democratic candidate selected as the nominee to run against Republican Senator John Cornyn. Texas's conduct directly harms DSCC by frustrating its mission of, and efforts in, electing the Democratic Party candidate to the U.S. Senate in Texas by suppressing the access of eligible Texas citizens to the franchise. DSCC is aware of Texas's online portal system and will have to expend and divert additional funds and resources on ensuring that eligible citizens are not misled into believing that they have effectively registered to vote, and are in fact registered to vote, as well as to support GOTV, voter persuasion efforts, and

other activities in Texas, at the expense of its other efforts to defeat Senator Cornyn, as well as its efforts in other states, to combat the effects of Texas's conduct.

13.     Plaintiff DCCC is the national congressional committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14). DCCC's mission is electing Democratic candidates to the U.S. House of Representatives from congressional districts across the United States, including from Texas's 36 congressional districts. DCCC works to accomplish its mission across the country and in Texas by, among other things, assisting state parties throughout the country, including in Texas in its efforts to elect Democrats to public office.  In 2018, DCCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic congressional candidates—several million dollars of which were spent for those purposes in Texas. For 2020, DCCC has identified at least eight congressional districts in Texas (Congressional Districts 7, 10, 21, 22, 23, 24, 31, and 32) as targeted races, in which it will expend resources to support the Democratic candidate, including specifically through expenditures on voter registration efforts. Overall, in 2020, DCCC expects to make contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic candidates in congressional elections around the country, including in Texas. Defendants' conduct directly harms DCCC by forcing DCCC to spend additional money on voter registration instead of other critical priorities. Defendants' conduct also frustrates DCCC mission of, and efforts in, electing Democratic Party candidates to the U.S. Congress in Texas by suppressing the access of eligible Texas citizens to the franchise. DCCC is aware of Texas's unconstitutional online portal system and will have to expend and divert additional funds and resources on voter registration and on ensuring that eligible citizens are not misled into believing that they have effectively registered to vote when they have not. Additional resources will need to be allocated to these efforts at the

expense of DCCC's other efforts to elect Democrats to Congress from Texas, as well as its efforts in other states, in order to combat the effects of Defendants' conduct.

14.     Defendant RUTH HUGHS is sued in her official capacity as the Secretary of State of Texas. The Secretary is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law in her official capacity. The Secretary's official responsibilities include serving as the Chief Election Officer for Texas, assisting county election officials and ensuring the uniform application and interpretation of election laws throughout Texas. *See* Tex. Elec. Code Ann. § 31.001(a). As the head of the Elections Division of her office, the Secretary is charged with administering the Texas Election Code.

15.     Defendant STEVEN C. MCCRAW is the Director of DPS, and is sued in his official capacity. DPS is Texas' motor vehicle bureau. DPS operates offices around the state, issues driver's licenses and other state identification cards, and is responsible under state and federal law for providing voter registration services and transmitting voter registration information to the Texas Secretary of State. *See* 52 U.S.C. §§ 20503-20504; Tex. Elec. Code Ann. §§ 20.063, 20.066.

### STATEMENT OF FACTS AND LAW

#### A. The Fourteenth Amendment

16.     The Fourteenth Amendment's Equal Protection Clause is implicated any time a state subjects voters to disparate treatment or places arbitrary restrictions upon the right to vote. U.S. Const. amend. XIV, § 1.

17.      There is no "litmus test for measuring the severity of a burden that a state law imposes on . . . an individual voter, or a discrete class of voters. However slight that burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens,

6

J., announcing judgment of Court); *accord Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir.

2012) ("When a plaintiff alleges that a state has burdened voting rights through the disparate

treatment of voters, we review the claim using the flexible standard outlined in *Anderson v.*

*Celebrezze* . . . courts must weigh the burden on voters against the state's asserted justifications

and make the hard judgment that our adversary system demands." (quotation marks and citations

omitted)).

**B. Texas Election Code**

18.    Texas state law specifies that DPS must use "a form and procedure that combines

the department's application form for a license or card with an officially prescribed voter

registration application form." Tex. Elec. Code Ann. § 20.062(a).

19.    DPS must also provide a "change of address form and procedure that combines

department and voter registration functions," *id.* § 20.062(b), so that when a voter submits a change

of address, that "serves as a change of address for voter registration" as well, unless the individual

indicates otherwise. *Id.* § 20.063(c).

20.    In addition, if a "correct driver's license number or personal identification card

number" or if "correct residence address or mailing address" information is missing from a

registration application, DPS employees have a duty to correct the voter's application by

"enter[ing] the information on the application." *Id.* § 20.063(d).

21.    Finally, voter registration applications and change-of-address forms must be

promptly delivered to election officials. Specifically, "[n]ot later than the fifth day after the date a

person completes a voter registration application and provides an electronic signature to the

department, [DPS] shall electronically transfer the applicant's voter registration data, including the

applicant's signature, to the [Texas Secretary of State]." *Id.* § 20.066(b); *see also id.* § 20.065.

**C. DPS does not provide simultaneous voter registration with online transactions despite doing so with mail and in-person transactions**

22.     DPS's in-person driver's license applications, ECF No. 93, exh. A-7, in-person renewal/replacement/change of address forms, ECF No. 93, exh. A-8, and mail in change-of-address forms, ECF No. 93, ex. A-9, serve as simultaneous voter registration applications.

23.     DPS encourages Texans to use a number of online services through its website, www.txdps.state.tx.us, an official governmental website for the State of Texas.

24.     DPS invites many Texas driver's license holders to renew their license and/or update the address information associated with their license online through a portion of its website entitled "Driver License Renewal, Replacement, Change of Address or Change of Emergency Contacts," available at https://txapps.texas.gov/tolapp/txdl/.

25.     This website page provides a single online portal for qualified holders of a Texas driver's license to renew their driver's licenses, update the address listed on their driver's licenses, or both.

26.     The online process involves nine "Steps to Complete," including the following steps: Welcome, Login, Select Services, Enter Address, Select Options, Review Order, Submit Payment, Emergency Contacts, and Receipt.

27.     Unlike Defendants' simultaneous voter registration services for license renewal or address update applications submitted in-person at a DPS office or through the mail, Defendants do not provide for simultaneous voter registration at any point during the online license renewal or address update process. Instead of providing any simultaneous opportunity for voter registration, the DPS website directs voters to an entirely different website, where voters must complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.

8

28.     Even though Defendants refuse to use information from online change-of-address transactions to properly register voters at their new addresses, they are certainly capable of using this information to do so. In fact, Defendants may use the same online information to cancel a voter's prior registration record even though they fail to give voters any notice of this possibility. *See* Tex. Elec. Code Ann. § 16.031.

### D. Defendants' Voter Registration Failures Harm Countless Texas Voters

29.     As a result of Defendants' failure to register eligible voters equally, countless eligible Texas residents have been denied the right to voter registration.

30.     According to data already in the factual record before this Court, between September 2013 and February 2015, the Secretary's Elections Division confirmed over 1,700 incidents reported by voters who checked "yes" on their drivers' license applications at DPS, indicating they wanted to register to vote at that time, but did not appear on the voter rolls. ECF No. 1-4 at 7.

31.     The voters who complained almost certainly represent just a fraction of the total affected during that time frame. Indeed, the State's records capture only those voters who contacted election workers, specifically complained about registration problems at DPS, and had their files investigated — surely, not all affected voters complained; others may have reported problems but had their complaints disregarded by election workers. Further, this data comes from just 123 of Texas' 254 counties, strongly suggesting that the data set itself is incomplete. See ECF No. 1-3; ECF No. 1-4 at 9.

## CLAIMS FOR RELIEF

### COUNT I

#### Violation of Fourteenth Amendment: Disparate Treatment
#### U.S. Const. amend. XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202

32.     Intervenor-Plaintiffs reallege and incorporate by reference all previous and subsequent paragraphs as though set forth herein.

33.     By arbitrarily subjecting eligible voters to disparate voter registration standards, Defendants have denied voters an equal opportunity to participate in federal and state elections in violation of Section 1 of the Fourteenth Amendment. As a result of this disparate treatment, Intervenor-Plaintiffs were directly harmed in their mission to elect Democratic representatives, and those among their membership harmed through disenfranchisement.

34.     No legitimate state interest could justify the state's differential treatment, which creates arbitrary distinctions among Texas voters based on how they choose to interact with DPS.

35.     Absent relief, DSCC, DCCC, and TDP along with its members and constituents, will be denied an equal opportunity to participate in Texas's elections.

### PRAYER FOR RELIEF

**WHEREFORE**, Intervenor-Plaintiffs respectfully request this Court enter judgment:

(a)     declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that Defendants have violated Section 1 of the Fourteenth Amendment by denying voters an equal opportunity to participate in federal and state elections;

(b)     permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing practices and procedures that likewise violate Section 1 of the Fourteenth Amendment;

(c)     directing Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their violation, including, but not limited to providing for the electronic transfer of voter registration information collected through online transactions to the Secretary of State, similar to the existing system to transfer voter registration information collected through in-person transactions;

(d)     awarding Intervenor-Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988 and other applicable laws;

(e)     retaining jurisdiction over this action to ensure that Defendants continue to comply with their obligations under Section 1 of the Fourteenth Amendment; and

(f)     granting such other and further relief as the Court deems just and proper.

Dated: December 20, 2019.                Respectfully submitted,

                                         /s/ *John R. Hardin*
                                         John R. Hardin
                                         Texas State Bar No. 24012784
                                         PERKINS COIE LLP
                                         500 N. Akard St., Suite 3300
                                         Dallas, TX 75201
                                         Telephone: (214) 965-7743
                                         Facsimile: (214) 965-7793
                                         JohnHardin@perkinscoie.com

                                         Marc E. Elias*
                                         John M. Geise*
                                         Emily Brailey*
                                         PERKINS COIE LLP
                                         700 Thirteenth St., N.W., Suite 600
                                         Washington, D.C. 20005-3960
                                         Telephone: (202) 654-6200
                                         Facsimile: (202) 654-9959
                                         melias@perkinscoie.com
                                         jgeise@perkinscoie.com
                                         ebrailey@perkinscoie.com

                                         *Counsel for the Intervenor-Plaintiffs*

                                         Chad W. Dunn
                                         Texas State Bar No. 24036507
                                         Brazil & Dunn, LLP
                                         4407 Bee Caves Road, Suite 111
                                         Austin, Texas 78746
                                         Telephone: (512) 717-9822
                                         Facsimile: (512) 515-9355
                                         chad@brazilanddunn.com

                                         *Counsel for Intervenor-Plaintiff Texas*

11

*Democratic Party*

*\*Motions for Admission Pro Hac Vice
Forthcoming*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| JARROD STRINGER; BENJAMIN HERNANDEZ; JOHN WOODS, | Civil Action |
| Plaintiffs, | |
| and | Case No. 5:16-cv-00257-OLG |
| TEXAS DEMOCRATIC PARTY; DCCC; DSCC, | |
| Intervenor-Plaintiffs, | |
| v. | |
| RUTH HUGHS, in her official capacity as the Texas Secretary of State; STEVEN C. MCCRAW, in his official capacity as the Director of the Texas Department of Public Safety, | |
| Defendants. | |

## ORDER

TEXAS DEMOCRATIC PARTY ("TDP"), DSCC, and DCCC (collectively "Intervenor-Plaintiffs"), have moved to intervene in this matter as Intervenor-Plaintiffs pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B). Having considered Intervenor-Plaintiff's Opposed Motion to Intervene, arguments of counsel, and the record in this case, the Court finds that Intervenor-Plaintiffs are entitled to intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2) and to permissive intervention pursuant to Fed R. Civ. P. 24(b). Accordingly, it is HEREBY ORDERED that the Motion is GRANTED.

SIGNED this the _____ day of _____ 2019.

_____
HONORABLE ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE