



**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

FILED

JAN 2 1 2020

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

JARROD STRINGER; BENJAMIN
HERNANDEZ; JOHN WOODS,

        Plaintiffs,

    and

TEXAS DEMOCRATIC PARTY; DSCC; DCCC,

        Intervenor-Plaintiffs,

    v.

RUTH HUGHS, in her official capacity as the
Texas Secretary of State;[1] STEVEN C. MCCRAW,
in his official capacity as the Director of the Texas
Department of Public Safety,

        Defendants.

Civil Action

Case No. 5:16-cv-00257-OLG

## INTERVENOR-PLAINTIFFS TEXAS DEMOCRATIC PARTY, DSCC, AND DCCC'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF THE CASE

1.    This action seeks declaratory and injunctive relief to redress Defendants' systematic and continuing violation of the U.S. Constitution's guarantee of equal protection. Intervenor-Plaintiffs, who have invested and plan to invest substantially in voter registration efforts throughout the state and among whose membership are eligible Texas voters who utilize the Department of Public Safety's ("DPS") online portal for renewal and change of address transactions, have been injured by Defendants' continuing unconstitutional treatment of these individuals, who are arbitrarily subject to differential treatment regarding their efforts to register

---

[1] Intervenor-Plaintiffs have substituted the name of the current Texas Secretary of State in this case pursuant to Fed. R. Civ. P. 25(d).

to vote solely because they choose to utilize DPS's online portal for renewal and change of address transactions rather than accomplishing these tasks in person or by mail. Texas voters will continue to be shut out of the democratic process unless and until Defendants reform their registration practices.

2.     Defendants permit certain Texas driver's license holders to renew their license and/or update the address on their license online on DPS' website at www.txdps.state.tx.us. While there have been many different iterations of this online process over the years, *see Stringer v. Pablos*, 320 F. Supp. 3d 862, 869, 871, 876, (W.D. Tex. 2018), none have offered any means for simultaneous voter registration. Today, despite years of litigation over this issue before this Court, Defendants still fail to allow for simultaneous registration with online renewals and changes of address. *See* Press Release, Ken Paxton, Attorney General of Texas, Fifth Circuit Rules in Favor of Texas Voter Registration System in "Motor Voter" Lawsuit (Nov. 14, 2019), https://www.texasattorneygeneral.gov/news/releases/fifth-circuit-rules-favor-texas-voter-registration-system-motor-voter-lawsuit ("Currently, Texans who use the DPS driver license renewal and change-of-address website are sent to a separate page – administered by the Texas Secretary of State – where they can complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.").

3.     In contrast to the multi-step process required for a driver using DPS's online systems to update their voter registration, DPS's in-person driver's license applications, ECF No. 93, exh. A-7, in-person renewal/replacement/change of address forms, ECF No. 93, exh. A-8, and mail in change of address forms, ECF No. 93, ex. A-9, serve as simultaneous voter registration applications.

4.      Defendants' current practices treat similarly situated voters differently based solely on how those voters choose to transact with DPS without any adequate justification, in violation of the U.S. Constitution's requirement of equal protection.

5.      Defendants must not be permitted to continue to ignore constitutional law. Intervenor-Plaintiffs respectfully request that this Court enjoin Defendants from further violations of the law and grant the relief set forth below.

## JURISDICTION AND VENUE

6.      Intervenor-Plaintiffs sue under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

7.      This Court has original jurisdiction over the subject of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

8.      This Court has personal jurisdiction over Defendants, who are citizens of the State of Texas and sued in their official capacity only.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that caused Intervenor-Plaintiffs' claims occurred in this judicial district, and each Defendant conducts business in this district.

10.     This Court has the authority to enter a declaratory judgment and to provide injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     Plaintiff the Texas Democratic Party ("TDP") is the statewide organization representing Democratic candidates and voters throughout the State of Texas within the meaning

3

of Section 117 of Texas's Election Code and all other applicable provisions of the election laws. TDP's purpose is to elect Democratic Party candidates to public office throughout Texas. To accomplish its purpose, TDP engages in vitally important activities, including supporting Democratic Party candidates in national, state, and local elections through fundraising and organizing; protecting the legal rights of voters; and ensuring that all voters have a meaningful ability to cast ballots in Texas. TDP has millions of members and constituents from across Texas, including millions of Texans who are registered with the Texas Department of State's Division of Elections as Democrats, millions of Texans who are drivers who interact with DPS, and many other Texans who regularly support and vote for candidates affiliated with the Democratic Party.

12.     Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the United States Senate, including in Texas. DSCC works to accomplish its mission across the country and in Texas by, among other things, assisting state parties throughout the country, including in Texas. In 2018, DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic Senate candidates. In 2020, DSCC expects to invest millions in support of the Democratic candidate selected as the nominee to run against Republican Senator John Cornyn. Texas's conduct directly harms DSCC by frustrating its mission of, and efforts in, electing the Democratic Party candidate to the U.S. Senate in Texas by suppressing the access of eligible Texas citizens to the franchise. DSCC is aware of Texas's online portal system and will have to expend and divert additional funds and resources on ensuring that eligible citizens are not misled into believing that they have effectively registered to vote, and are in fact registered to vote, as well as to support GOTV, voter persuasion efforts, and

other activities in Texas, at the expense of its other efforts to defeat Senator Cornyn, as well as its efforts in other states, to combat the effects of Texas's conduct.

13.     Plaintiff DCCC is the national congressional committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14). DCCC's mission is electing Democratic candidates to the U.S. House of Representatives from congressional districts across the United States, including from Texas's 36 congressional districts. DCCC works to accomplish its mission across the country and in Texas by, among other things, assisting state parties throughout the country, including in Texas in its efforts to elect Democrats to public office.  In 2018, DCCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic congressional candidates—several million dollars of which were spent for those purposes in Texas. For 2020, DCCC has identified at least eight congressional districts in Texas (Congressional Districts 7, 10, 21, 22, 23, 24, 31, and 32) as targeted races, in which it will expend resources to support the Democratic candidate, including specifically through expenditures on voter registration efforts. Overall, in 2020, DCCC expects to make contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic candidates in congressional elections around the country, including in Texas. Defendants' conduct directly harms DCCC by forcing DCCC to spend additional money on voter registration instead of other critical priorities. Defendants' conduct also frustrates DCCC mission of, and efforts in, electing Democratic Party candidates to the U.S. Congress in Texas by suppressing the access of eligible Texas citizens to the franchise. DCCC is aware of Texas's unconstitutional online portal system and will have to expend and divert additional funds and resources on voter registration and on ensuring that eligible citizens are not misled into believing that they have effectively registered to vote when they have not. Additional resources will need to be allocated to these efforts at the

expense of DCCC's other efforts to elect Democrats to Congress from Texas, as well as its efforts in other states, in order to combat the effects of Defendants' conduct.

14.     Defendant RUTH HUGHS is sued in her official capacity as the Secretary of State of Texas. The Secretary is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law in her official capacity. The Secretary's official responsibilities include serving as the Chief Election Officer for Texas, assisting county election officials and ensuring the uniform application and interpretation of election laws throughout Texas. *See* Tex. Elec. Code Ann. § 31.001(a). As the head of the Elections Division of her office, the Secretary is charged with administering the Texas Election Code.

15.     Defendant STEVEN C. MCCRAW is the Director of DPS, and is sued in his official capacity. DPS is Texas' motor vehicle bureau. DPS operates offices around the state, issues driver's licenses and other state identification cards, and is responsible under state and federal law for providing voter registration services and transmitting voter registration information to the Texas Secretary of State. *See* 52 U.S.C. §§ 20503-20504; Tex. Elec. Code Ann. §§ 20.063, 20.066.

## STATEMENT OF FACTS AND LAW

### A. The Fourteenth Amendment

16.     The Fourteenth Amendment's Equal Protection Clause is implicated any time a state subjects voters to disparate treatment or places arbitrary restrictions upon the right to vote. U.S. Const. amend. XIV, § 1.

17.     There is no "litmus test for measuring the severity of a burden that a state law imposes on . . . an individual voter, or a discrete class of voters. However slight that burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens,

J., announcing judgment of Court); *accord Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir.

2012) ("When a plaintiff alleges that a state has burdened voting rights through the disparate

treatment of voters, we review the claim using the flexible standard outlined in *Anderson v.*

*Celebrezze* . . . courts must weigh the burden on voters against the state's asserted justifications

and make the hard judgment that our adversary system demands." (quotation marks and citations

omitted)).

### B. Texas Election Code

18.     Texas state law specifies that DPS must use "a form and procedure that combines

the department's application form for a license or card with an officially prescribed voter

registration application form." Tex. Elec. Code Ann. § 20.062(a).

19.     DPS must also provide a "change of address form and procedure that combines

department and voter registration functions," *id.* § 20.062(b), so that when a voter submits a change

of address, that "serves as a change of address for voter registration" as well, unless the individual

indicates otherwise. *Id.* § 20.063(c).

20.     In addition, if a "correct driver's license number or personal identification card

number" or if "correct residence address or mailing address" information is missing from a

registration application, DPS employees have a duty to correct the voter's application by

"enter[ing] the information on the application." *Id.* § 20.063(d).

21.     Finally, voter registration applications and change-of-address forms must be

promptly delivered to election officials. Specifically, "[n]ot later than the fifth day after the date a

person completes a voter registration application and provides an electronic signature to the

department, [DPS] shall electronically transfer the applicant's voter registration data, including the

applicant's signature, to the [Texas Secretary of State]." *Id.* § 20.066(b); *see also id.* § 20.065.

**C.** **DPS does not provide simultaneous voter registration with online transactions despite doing so with mail and in-person transactions**

22.      DPS's in-person driver's license applications, ECF No. 93, exh. A-7, in-person renewal/replacement/change of address forms, ECF No. 93, exh. A-8, and mail in change-of-address forms, ECF No. 93, ex. A-9, serve as simultaneous voter registration applications.

23.      DPS encourages Texans to use a number of online services through its website, www.txdps.state.tx.us, an official governmental website for the State of Texas.

24.      DPS invites many Texas driver's license holders to renew their license and/or update the address information associated with their license online through a portion of its website entitled "Driver License Renewal, Replacement, Change of Address or Change of Emergency Contacts," available at https://txapps.texas.gov/tolapp/txdl/.

25.      This website page provides a single online portal for qualified holders of a Texas driver's license to renew their driver's licenses, update the address listed on their driver's licenses, or both.

26.      The online process involves nine "Steps to Complete," including the following steps: Welcome, Login, Select Services, Enter Address, Select Options, Review Order, Submit Payment, Emergency Contacts, and Receipt.

27.      Unlike Defendants' simultaneous voter registration services for license renewal or address update applications submitted in-person at a DPS office or through the mail, Defendants do not provide for simultaneous voter registration at any point during the online license renewal or address update process. Instead of providing any simultaneous opportunity for voter registration, the DPS website directs voters to an entirely different website, where voters must complete an online application, print it out, sign it, and mail it to their county voter registrar to ensure their ability to vote in upcoming elections.

28.     Even though Defendants refuse to use information from online change-of-address transactions to properly register voters at their new addresses, they are certainly capable of using this information to do so. In fact, Defendants may use the same online information to cancel a voter's prior registration record even though they fail to give voters any notice of this possibility. *See* Tex. Elec. Code Ann. § 16.031.

### D. Defendants' Voter Registration Failures Harm Countless Texas Voters

29.     As a result of Defendants' failure to register eligible voters equally, countless eligible Texas residents have been denied the right to voter registration.

30.     According to data already in the factual record before this Court, between September 2013 and February 2015, the Secretary's Elections Division confirmed over 1,700 incidents reported by voters who checked "yes" on their drivers' license applications at DPS, indicating they wanted to register to vote at that time, but did not appear on the voter rolls. ECF No. 1-4 at 7.

31.     The voters who complained almost certainly represent just a fraction of the total affected during that time frame. Indeed, the State's records capture only those voters who contacted election workers, specifically complained about registration problems at DPS, and had their files investigated — surely, not all affected voters complained; others may have reported problems but had their complaints disregarded by election workers. Further, this data comes from just 123 of Texas' 254 counties, strongly suggesting that the data set itself is incomplete. See ECF No. 1-3; ECF No. 1-4 at 9.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of Fourteenth Amendment: Disparate Treatment
### U.S. Const. amend. XIV; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202

32.     Intervenor-Plaintiffs reallege and incorporate by reference all previous and subsequent paragraphs as though set forth herein.

33.     By arbitrarily subjecting eligible voters to disparate voter registration standards, Defendants have denied voters an equal opportunity to participate in federal and state elections in violation of Section 1 of the Fourteenth Amendment. As a result of this disparate treatment, Intervenor-Plaintiffs were directly harmed in their mission to elect Democratic representatives, and those among their membership harmed through disenfranchisement.

34.     No legitimate state interest could justify the state's differential treatment, which creates arbitrary distinctions among Texas voters based on how they choose to interact with DPS.

35.     Absent relief, DSCC, DCCC, and TDP along with its members and constituents, will be denied an equal opportunity to participate in Texas's elections.

### PRAYER FOR RELIEF

**WHEREFORE**, Intervenor-Plaintiffs respectfully request this Court enter judgment:

(a)     declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that Defendants have violated Section 1 of the Fourteenth Amendment by denying voters an equal opportunity to participate in federal and state elections;

(b)     permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing practices and procedures that likewise violate Section 1 of the Fourteenth Amendment;

(c)     directing Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their violation, including, but not limited to providing for the electronic transfer of voter registration information collected through online transactions to the Secretary of State, similar to the existing system to transfer voter registration information collected through in-person transactions;

10

(d)     awarding Intervenor-Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988 and other applicable laws;

(e)     retaining jurisdiction over this action to ensure that Defendants continue to comply with their obligations under Section 1 of the Fourteenth Amendment; and

(f)     granting such other and further relief as the Court deems just and proper.

Dated: December 20, 2019.                    Respectfully submitted,

/s/ John R. Hardin
John R. Hardin
Texas State Bar No. 24012784
PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, TX 75201
Telephone: (214) 965-7743
Facsimile: (214) 965-7793
JohnHardin@perkinscoie.com

Marc E. Elias*
John M. Geise*
Emily Brailey*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
jgeise@perkinscoie.com
ebrailey@perkinscoie.com

*Counsel for the Intervenor-Plaintiffs*

Chad W. Dunn
Texas State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Intervenor-Plaintiff Texas*

11

*Democratic Party*

*\*Motions for Admission Pro Hac Vice
Forthcoming*