**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 5:16-cv-00257-OLG |
| | § | |
| RUTH HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS THE TEXAS SECRETARY OF | § | |
| STATE and STEVEN C. McCRAW, IN HIS | § | |
| OFFICIAL CAPACITY AS THE DIRECTOR OF | § | |
| THE TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |
| | § | |
| Defendants. | § | |

# PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY APPLICATION FOR PRELIMINARY INJUNCTION

I.    **Plaintiffs have established a strong likelihood of success on the merits, including a strong likelihood of success in establishing standing to seek their requested relief.**

Defendants' Response to Plaintiffs' Emergency Application for a Preliminary Injunction ("Resp.") contends that Plaintiffs have not established a likelihood of success on the merits, but it does not actually address any of the facts or legal arguments that *Stringer II* Plaintiffs independently raise in their Emergency Application for a Preliminary Injunction ("Application").[1] Defendants' only substantive attempt to address the merits is an oblique reference to *Stringer I* Plaintiffs' lack of standing under different circumstances. Individual, Organizational, and Associational Plaintiffs in *Stringer II* fit squarely within Fifth Circuit standing caselaw.

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). These elements are commonly broken down into three distinct components: (i) injury-in-fact; (ii) causation; and (iii) redressability. *Id*. The injury-in-fact must be "(2) 'concrete and particularized,' not abstract; and (3) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citing *Susan B. Anthony List*, 573 U.S. 149, 158 (2014)). Additionally, to have standing for declaratory and injunctive relief, Plaintiffs must suffer a continuing injury-in-fact or future injury-in-fact rather than a past injury. *Id* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). All Plaintiffs—individual, organizational, and associational—suffer continuing injuries directly caused by Defendants' failure to allow simultaneous voter registration

---

[1] Due to the complicated posture of the present case, we respectfully ask the Court to make an independent ruling on the likelihood of success on the merits as it pertains to the instant Plaintiffs, and to make its preliminary findings based solely on the record presented in Plaintiffs' Application and this Reply.

applications with online driver's license transactions. These injuries will be directly redressed by the relief they seek.

**A. Individuals have standing to pursue the preliminary and permanent relief they request because they suffer the continuing injury of not being registered to vote at their correct address.[2]**

Plaintiffs Stringer, Gomez, and Harms all transacted with DPS online in order to update their driver's licenses. Appendix to Plaintiffs' Application for Preliminary Injunction ("1/17/20 App'x") at 178, ¶¶ 4-8; 185, ¶ 4; 182, ¶¶ 6-7. These transactions did not serve as simultaneous applications. *Id.* at 178, ¶¶ 4-8; 185, ¶ 5; 183, ¶ 9. As a result, at the time of filing and continuing through to present day, each Individual Plaintiff remains incorrectly registered to vote at the wrong address. Declaration of Joaquin Gonzalez at ¶¶ 8-10 (attached hereto as Ex. 10). Plaintiffs Stringer and Harms are not even registered in the correct county. Needless to say, being not properly registered to vote is a concrete injury because a person cannot fully exercise their franchise if they are not properly registered to vote in their correct precinct. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (noting that the Court has upheld standing where plaintiffs have "no more at stake in the outcome of an action than a fraction of a vote, . . . a $5 fine and costs, . . . and a $1.50 poll tax") (internal citations omitted); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("[Plaintiff's] alleged injuries flow directly from the denial of her registration form."); *Williams v. Salerno*, 792 F.2d 323, 328 (2d Cir. 1986) (holding that the application of "more vigorous registration requirements than are generally applied" constituted judicially cognizable injury).

---

[2] Although all Individual Plaintiffs suffer the same injury, Plaintiff Harms' online driver's transaction occurred more than 120 days before a federal election, which may necessitate a longer 90-day notice period rather than the 20-day notice period applicable to Plaintiffs Stringer and Gomez. Though there is supportive caselaw suggesting exceptions to this timeline, to avoid procedural complications at the preliminary stage, Plaintiff Harms moves for relief solely on his constitutional claim.

Simply having to jump through an extraneous hoop to register to vote, in contravention of the NVRA, itself constitutes an injury-in-fact. *See Warth v. Seldin*, 422 U.S. 490, 514 (1975) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue . . . ."); *see also Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d 1259, 1271 (D. Colo. 2010). ("Any burden on the right to vote, even if it is no more than the cancellation of a voter's records in violation of the NVRA, constitutes an injury-in-fact for standing purposes.").

Individual Plaintiffs' injury is particularized rather than generalized because it applies to them specifically as a result of their online driver's license transactions and affects them personally. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Their injuries will be redressed by the requested relief. The preliminary relief requested—that they be properly registered to vote in time to vote in the March 3, 2020 Primary Election—will satisfy their current continuing injury.[3]

In addition to the continuing injury of not being properly registered, Plaintiff Stringer faces an "imminent" threat of future injury because he has concrete plans to move no later than August 25, 2020. 1/17/20 App'x at 179, ¶ 12. This differs from the non-Plaintiff specific, probabilistic future injury found insufficient in *Stringer I. See Stringer*, 942 F.3d at 721-23.

**B. Organizational Plaintiffs have standing to pursue systemic relief because they divert resources from their regular activities to counteract Defendants' legal violations.**

"[A]n organization has standing to sue on its own behalf where it devotes resources to counteract a defendant's allegedly unlawful practices." *ACORN v. Fowler*, 178 F.3d 350, 360. If a defendant's actions perceptibly impair an organization in such a way, "there can be no question that the organization has suffered injury in fact." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). "[T]he injury in fact requirement under Article III is qualitative, not quantitative, in

---

[3] Granting that relief will not moot out their request for a permanent injunction, as that inquiry only requires plaintiffs to show "some cognizable danger of recurrent violation." *Shanks v. City of Dallas, Tex.*, 752 F.2d 1092, 1097 (5th Cir. 1985).

nature," and "need not measure more than an 'identifiable trifle.'" *OCA-Greater Houston*, 867 F.3d at 612 (citing *Fowler*, 178 F.3d at 357–58) (internal quotation marks and brackets omitted).

In the instant case, Organizational Plaintiffs have demonstrated that they expend significant resources countering the states' failures, thereby frustrating their organizational missions. Both organizational plaintiffs—MOVE Texas ("MOVE") and the League of Women Voters of Texas ("LWVTX")—suffer *two* distinct injuries-in-fact: First, they must register voters whose DPS transactions should have acted as simultaneous voter registration applications when transacting with DPS online. 1/17/20 App'x at 162-63, ¶ 10-11; 168-69, ¶¶ 4-5, 7-10; 173-74, ¶ 10-13; 189-192, ¶ 4, 10, 18, 19. They conduct voter registration drives in a variety of public forums, registering tens of thousands of voters over the course of a year. 1/17/20 App'x at 163-64, ¶ 6, 13; 167-68, ¶ 3, 7. In particular, they register voters in regions where people frequently relocate from other Texas counties. 1/17/20 App'x at 162, ¶ 5; 167-68, ¶¶ 1,3; 189-90, ¶¶ 3-5, 8, 12; 196-197, ¶¶ 4, 8. Both the League and MOVE's deputy registrars are active on college campuses in major metro areas, where they register students who recently moved to the area and were unable to apply to register through DPS online. *See id.*

Second, Plaintiffs divert resources to educate voters who mistakenly thought they registered through DPS online. *See OCA-Greater Houston*, 867 F.3d at 612 (Texas statute at issue "'perceptibly impaired' [the organization's] ability to 'get out the vote'" when the organization "went out of its way to counteract the effect of Texas'[] allegedly unlawful" statute by "educat[ing] voters" on how to avoid being negatively impacted by the statute."). It's a virtually universal experience that deputy voter registrars for these organizations come across people who mistakenly thought they applied to register or updated their voter registration when using DPS's online driver's license system. 1/17/20 App'x at 189-91, ¶¶ 4, 8, 12, 18; 196, 197-98 at ¶¶ 5, 9, 10;163-

64 at ¶¶ 11,13; 168-69 at ¶¶ 4-5, 7-8. Both MOVE and the League must check the voter registration statuses of individuals who mistakenly believe they registered through DPS online, and spend time explaining to those individuals that it is not possible to do so, and then re-register those individuals. 1/17/20 App'x at 163-64, ¶¶ 11-12, 15; 168-69, ¶¶ 4-5, 10, 12; 189-90, ¶¶ 5, 9, 10; 196-98, ¶¶5-7, 10. The League specifically spends time during public presentations educating the public about the common misconception that individuals can register through online DPS transactions. 1/17/20 App'x at 174, ¶ 12; 192, ¶¶ 20-23.

**C. Plaintiff LWVTX also has associational standing to seek systemic relief.**

The Plaintiff LWVTX has an identifiable member who would have standing to sue in their own right because she moved from Travis County to Harris County, changed the address on her driver's license online, yet remains unregistered to vote in Harris County.[4] Supplemental Declaration of Grace Chimene at ¶¶ 3-7 (attached hereto as Ex. 9). The interests of ensuring compliance with the NVRA are germane to LWVTX's purpose, *see* 1/17/20 App'x at 17, ¶ 3. and LWVTX's requested injunctive relief can be granted without the participation of individual members.

**II. Plaintiffs have demonstrated numerous irreparable injuries which are amplified by the coming federal elections.**

In the Application, each Plaintiff describes multiple irreparable injuries suffered or threatened by the State's ongoing conduct and amplified by the upcoming election. *See* App. at

---

[4] To establish associational standing, Plaintiff LWVTX  must show:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

34-42. The Individual Plaintiffs are currently denied their rights to register in compliance with federal law; if they are not registered to vote by Monday, February 3, they will *also* suffer the extraordinary injury of losing their right to vote in the upcoming primary election. The voter registration, education and mobilization activities of the Organizational Plaintiffs are heightened in a federal election year and critical in the weeks before voter registration deadlines and voting periods. *See., e.g.*, 1/17/20 App'x at 164, ¶ 13; *id.* at 165, ¶ 15; *id.* at 174, ¶ 13; id. at 175, ¶ 18. During these times, the State's unlawful practices are acutely disruptive for Organizational Plaintiffs, forcing them to divert scarce resources to register and educate voters who were improperly denied registration with drivers' license transactions and dramatically undercutting their missions when they mobilize persons to vote who, as a result of the State's failures, cannot cast a ballot that counts. Moreover, because Plaintiff LWVTX has individual members, it suffers additional harms when its members' rights are violated by the State's practices.[5]

Of course, nothing in the State's Response undermines the extensive factual record Plaintiffs present in support of their claims of irreparable injury. *See* Resp. at 9-14. Instead, without citing any case law, the State suggests that the Individual Plaintiffs could be made whole by simply abandoning their statutory and constitutional rights to simultaneous voter registration and finding another way to register before Monday's deadline. This position overlooks extensive precedent confirming that any "*restriction* on the fundamental right to vote . . . constitutes irreparable injury," including unlawful burdens on the manner of registration or voting that will not necessarily cause disenfranchisement. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (emphasis added)

---

[5] As noted, as of this filing, at least one LWVTX member remains unregistered to vote after moving residences, updating her driver's license address online with DPS, but being denied her right to simultaneous voter registration—threatening acute irreparable harm. 1/17/20 App'x at 175, ¶ 17.

(issuing preliminary injunction against reduction in early voting days for certain voters); *see also League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (finding that "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury" and upholding preliminary injunction of several state law practices); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (issuing preliminary injunction against rejecting student voter registration forms, even though most could presumably register at their parents' home address).

The State also accuses the Organizational Plaintiffs of "substantial delay" in bringing this lawsuit, measured from when their organizations became aware of the State's unlawful practices, and claims that this delay "precludes a finding of irreparable injury" on their behalf. Resp. at 10; *see also id.* at 10-12. This argument fails too. First, the State relies on seven cases, all of which are inapposite. Indeed, five are trademark or patent cases and involve the very different situation of a plaintiff seeking to enjoin the business practices of a competitor on the grounds that such practices are hurting the plaintiff's business.[6] Under those very different fact patterns—which did not involve constitutionally protected rights—courts explained that a delay in bringing suit after the discovery of the alleged violation may undercut claim that money damages are insufficient.

Second, far from sitting on their hands, Organizational Plaintiffs were closely watching the *Stringer I* litigation and, in the meantime, taking significant measures to counteract the State's unlawful practices. They initiated the instant lawsuit within weeks of the Fifth Circuit's decision

---

[6] *See High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551 (Fed. Cir. 1995); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995); *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322 (S.D.N.Y. 2011); *GoNannies, Inc. v. GoAuPair, Inc.*, 464 F. Supp. 2d 603 (N.D. Tex. 2006); *Kensington Partners v. Cordillera Ranch, Ltd.*, No. 98-121, 1998 WL 1782540 (W.D. Tex. June 16, 1998). *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417 (S.D. Tex. 2008) involves the attempted last-minute enforcement of an unenforceable employee noncompete agreement and *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185 (5th Cir. 1975) arises under particular procedures dictated by the Taft-Hartley Act.

in *Stringer I*, when they became concerned that a new lawsuit was necessary to prevent irreparable harm in this critical election year. They then moved for this preliminary injunction within days. Finally, federal courts have repeatedly granted preliminary injunctive relief against longstanding state election law, rejecting laches arguments. *See, e.g.*, *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1326 (11th Cir. 2019) (refusing to stay preliminary injunction against mail-in-ballot law, noting prior similar litigation as one reason for plaintiffs' delay in bringing suit); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1336 (N.D. Ga. 2018) (granting TRO against 15-year old mail-in-ballot law), *appeal dismissed sub nom.*, *Martin v. Sec'y of State of Georgia*, No. 18-14503-GG, 2018 WL 7139247 (11th Cir. Dec. 11, 2018).

**III.    Plaintiffs' amended preliminary requested relief is proper and reasonable.**

In response to the Court's January 24 Order and in consideration of Defendants' Response, Plaintiffs filed an Amended Proposed Order Granting Preliminary Injunction on January 27, 2020. In addition, at approximately 5:00 p.m. on January 27, Counsel for Plaintiffs described their updated requested remedy in a phone call with Counsel for Defendants, in hopes of gaining the State's consent prior to the hearing.

Plaintiffs' Amended Proposed Order seeks two main forms of relief. First, it requires Defendant DPS to send information relevant to voter registration from each Individual Plaintiff's last online driver's license transaction to Defendant SOS and requires that Defendant SOS ensure each Individual Plaintiff is registered to vote by 6:00 p.m. on Friday, January 31, 2020. Second, beginning no later than 60 days from the date of the Order, it requires Defendant DPS to promptly mail a pre-populated voter registration application to every applicant who checks "yes" in response to the voter registration application question currently posed by Defendant DPS during an online driver's license transaction, with postage prepaid to return the application directly to Defendant SOS.

Plaintiffs' Amended Proposed Order meets all the requirements of Rule 65(1). Pursuant to subsection (1)(A), Plaintiffs explain that the order must be issued due to Defendants' committed refusal to comply with the NVRA and U.S. Constitution. Pursuant to subsection (1)(B), Plaintiffs lay out the specific and narrow terms for relief while this matter is pending. And pursuant to subsection (1)(C), Plaintiffs describe in detail, without referring to the Complaint in this matter or any other document, actions each Defendant must take to comply with the order.[7]

## IV.    Defendants' harm is *de minimus*.

As an initial matter, Defendants do not even identify a harm as to the requested individual relief of registering three voters by the end of Friday. As to the other interim relief described above, Plaintiffs do not, at this stage, seek "sweeping technological and procedural changes" before the March election. Resp. at 14. No changes to the DPS website or SOS's statewide voter registration processes are required at this time. Indeed, DPS already sends out voter registration applications by mail with its driver's license renewal notifications, Excerpts of Mar. 7, 2017 30(b)(6) Deposition of Sheri Gipson at 49:18-24 (attached hereto as Ex. 6), 50:17-51:21 (attached hereto as

---

[7] In light of Plaintiffs' Amended Proposed Order, the arguments Defendants raise in their Response as to feasibility and scope are moot. The others are not persuasive. To start, Defendants claim that the phrase "voter registration applications in elections for Federal office" is nonsensical because "voter registration applications are not tied to particular elections." Resp. at 21. However, the NVRA *itself* states that each State motor vehicle driver's license application ". . . shall serve as an application for voter registration with respect to elections for Federal office . . ." Plaintiffs included such language in order to confine the scope of the Amended Proposed Order to the mandates of the NVRA, pursuant to Rule 65(1). In addition, Defendants contend that neither Defendant "has the ability to register any voter at all." Resp. at 21. But Plaintiffs' Amended Proposed Order only requires Defendant DPS to But Plaintiffs' Amended Proposed Order only requires Defendant DPS to track and record information relevant to voter registration for each Individual Plaintiff, send said information  to Defendant SOS, and requires Defendant SOS, thereafter, to ensure each Individual Plaintiff is registered to vote. Section 8 of the NVRA specifically requires Defendant SOS, as the chief election officer of the State, ensure voter registration for online driver's license applicants who wish to register to vote. 52 U.S.C § 20507(a)(1)(A); Tex. Elec. Code § 31.001(a).

Ex. 11); 1/17/20 App'x at 51-53, and SOS already receives, sorts, and mails these same paper voter registration applications to counties. Additional Excerpt of Mar. 22, 2017 Deposition of Keith at 132:5-11 (attached hereto as Ex. 8).

This is a far cry from "last-minute sweeping changes to the State's voter registration system on the eve of an election." Resp. at 15. Instead, Plaintiffs are asking DPS to take information *it already gathers*—driver's license applicants' information submitted to DPS online—and print it on a form that *it already sends to DPS applicants* in the mail. The DPS applicants would then be able to mail it to SOS, which *already collects and sends these same voter registration forms* to counties to ensure that DPS applicants are registered. There is no reason that doing the same for the additional DPS applicants who select "Yes" in response to the voter registration question during an online transaction with DPS would, as Defendants suggest, result in uncertainty among voters or county registrars. Further, any incremental burden on the Defendants in doing for online DPS applicants what they already do for other DPS applicants—with the additional step on DPS's part of pre-populating the form with information submitted to it by eligible applicants—is certainly outweighed by the Individual Plaintiffs' affected LWVTX members' threatened disenfranchisement and the Organizational Plaintiffs' hampered voter registration, education, and mobilization efforts, as well as their diversion of resources in this critical time. *See, e.g., Fish v. Kobach*, 189 F. Supp. 3d 1107, 1149-1150 (D. Kan. 2016).[8]

---

[8] Defendants do not dispute Plaintiffs' argument that protecting "franchise-related rights is without question in the public interest." *Charles H. Wesley Educ. Foundation, Inc.*, 408 F.3d at 1355. Instead, Defendants claim that "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." Resp. 16-17 (citing by citing *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 734 F.3d 406, 419 and *Maryland v. King*, 133 S. Ct. 1, 3 (2012)). However, the cases Defendants cite are inapposite to this case. In both *Planned Parenthood of Greater Texas Surgical Health Services* and *Maryland*, the courts indicate that the party moving for a preliminary injunction was unlikely to succeed on the merits. *Planned Parenthood*, 734 F.3d at 419; *King*, 133 S. Ct. at 3.

Dated: January 28, 2020                     Respectfully submitted,


                                             /s/ Mimi Marziani
                                            Mimi Marziani
                                            Texas Bar No. 24091906
                                            mimi@texascivilrightsproject.org
                                            Rebecca Harrison Stevens
                                            Texas Bar No. 24065381
                                            beth@texascivilrightsproject.org
                                            Hani Mirza
                                            Texas Bar No. 24083512
                                            hani@texascivilrightsproject.org
                                            Ryan Cox
                                            Texas Bar No. 24074087
                                            ryan@texascivilrightsproject.org
                                            Joaquin Gonzalez
                                            Texas Bar No. 24109935
                                            Joaquin@texascivilrightsproject.org

                                            TEXAS CIVIL RIGHTS PROJECT
                                            1405 Montopolis Drive
                                            Austin, Texas 78741
                                            Tel. (512) 474-5073
                                            Fax (512) 474-0726

                                            Caitlyn E. Silhan
                                            Texas State Bar No. 24072879
                                            csilhan@waterskraus.com
                                            Peter A. Kraus
                                            Texas State Bar No. 11712980
                                            kraus@waterskraus.com
                                            Charles S. Siegel
                                            Texas State Bar No. 18341875
                                            siegel@waterskraus.com

                                            WATERS & KRAUS, LLP
                                            3141 Hood St., #700
                                            Dallas, Texas 75219
                                            214-357-6244 (Telephone)
                                            214-871-2263 (Facsimile)

                                            ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record on January 28, 2020 via email and on January 29, 2020 via certified mail, return receipt requested.

<u>/s/ Rebecca Harrison Stevenson</u>