**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JARROD STRINGER, NAYELI GOMEZ, JOHN HARMS, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:20-cv-00046-OLG |
| RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE and STEVEN C. McCRAW, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY INJUNCTION**

Given the time-sensitive nature of these proceedings, with a voter registration deadline fast approaching, Plaintiffs submit this brief Reply to Defendants' Supplemental Brief, Doc. 74 (May 23, 2020), and rest on the merits of the other evidence and briefing associated with their original Application for Preliminary Injunction.

*Likelihood of Success on the Merits*

Defendants' supplemental brief makes clear by omission that there is no good-faith contention that the State's practices comply with the NVRA's requirements for simultaneous, non-duplicative registration applications and updates. Rather, the State's substantive arguments relate only to the Plaintiffs' standing—apparently arguing that if the plaintiffs in *Stringer I* lacked standing, that no plaintiffs will ever have standing to challenge their unlawful practices. However, the evidence already presented to this Court clearly demonstrates that the individual Plaintiffs in

1

this case meet the standing requirements set out in *Stringer I*, and the organizational and associational plaintiffs also have standing independent of the individual Plaintiffs.

1.     *Individual Plaintiffs*

Defendants continue to ignore that "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *See* Plaintiffs' Resp. to MTD, Doc. 64 (Mar. 30, 2020) at 9 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (emphasis in original)). Individual Plaintiffs in this case were not registered to vote due to Defendants' NVRA violations at the time they instituted this suit, making their injuries on-going and "continuing injuries" at the time of filing. *See id.* Plaintiff Stringer's concrete future plans to move again also suffice to establish the likelihood of future injury sufficient to confer standing. *See* Plaintiffs' Supplemental Brief, Doc. 69 at n.25-27 and accompanying text (May 13, 2020); App'x, Doc. 69-1 at 72-74 (May 13, 2020). Texas law expressly allows an individual's spouse to register them to vote, so it is of no consequence that Stringer's wife may be the one transacting on his behalf with DPS online upon their future move. *See* TEX. ELEC. CODE § 13.003. Further, contrary to Defendants' claim, Plaintiff Stringer did affirm a concrete intention to simultaneously update both his driver's license and voter registration online upon moving in August, if Defendants permit him to do so. Plaintiffs' Supplemental Brief, Doc. 69 at n.27 (May 13, 2020); App'x, Doc. 69-1 at 73-74 (May 13, 2020).

2.     *Organizational Plaintiffs*

Defendants make much of the fact that Plaintiffs LWVTX and MOVE do not keep separate budgetary accounting for how much they spend specifically on registering voters who were harmed by Defendants' violations. But this fundamentally misunderstands the well-established principle that "the injury in fact requirement under Article III is qualitative, not quantitative, in nature." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (citing *Ass'n of Cmty.*

*Organizations for Reform Now v. Fowler*, 178 F.3d 305, 357–58) (5th Cir. 1999)) (internal quotation marks and brackets omitted); *see* Plaintiffs Response to Defendants' Motion to Dismiss at 12 (Mar. 30, 2020). So, while an injury-in-fact must be (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, "it need not measure more than an 'identifiable trifle.'" *OCA-Greater Houston*, 867 F.3d at 612 (quoting *Fowler*, 178 F.3d at 358).

Regardless, Plaintiffs have identified far more than a trifle of an injury. Defendants' Supplemental Brief entirely elides the significant evidence that Plaintiffs previously produced of direct resource diversion caused by Defendants' violations, which includes, *inter alia*, specifically educating members of the public about the problem with online driver's license transactions during public presentations, and members and staff routinely expending resources registering voters who were unable to register to vote when transacting with DPS online. *See* Response to Defendants' Motion to Dismiss, Doc. 64 at 11-18 (Mar. 30, 2020) (citing App'x to Plaintiffs' Emergency App. for Preliminary Injunction and Request for Hearing, Doc. 5-1 at 161-176 and 187-198 (Jan. 17, 2020)). It is indisputable that if Plaintiffs' members and staff did not have to divert resources educating the public and registering or re-registering individuals who transacted with DPS online, they would allocate those resources to their other core activities, including, but not limited to, registering even greater numbers of unregistered voters. *See id.*

3.   *Associational Plaintiffs*

Defendants continue to claim that Plaintiff LWVTX has not and cannot produce evidence of an individual member who is harmed by Defendants' conduct. But LWVTX already *has* identified a member who had standing at the time the suit was initiated, and evidence of this specific member's membership status was also the subject of documents produced and deposition testimony elicited by Defendants. *See* App'x to Plaintiffs' Reply to Defendants' Opposition, Doc. 44-1 at 160-61 (Jan. 28, 2020) (identifying an individual member by name); *see also* Plaintiffs'

Supplemental Brief, Doc. 69 at n.40 and accompanying text (May 13, 2020).

***Irreparable Harm***

"An irreparable injury is one that cannot be undone by monetary damages." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (citing *DFW Metro Line Servs. v. Sw. Bell*, 901 F.2d 1267, 1269 (5th Cir.1990)). Plaintiffs—in particular LWVTX, MOVE, and Stringer— have no adequate remedy at law to remedy their injuries caused by Defendants' ongoing and future violations, and, by the terms of the NVRA itself, Plaintiffs' only recourse is injunctive and declaratory relief. The fact that Plaintiffs have been suffering these injuries daily for many years and months while litigation plays out does not undercut the irreparability or severity of their injuries.

Plaintiffs have previously documented the irreparable harm they suffer. With regard to the new evidence from expedited discovery, Defendants contend that MOVE does not need to spend money mailing voter registration applications because SOS allows applicants to request their own pre-paid voter registration applications online. Defendants' Supplemental Brief, Doc. 74 at 9-10 (May 23, 2020). This misses the point. First, MOVE would need to contact the individuals just to inform them of the existence of the Secretary of State's website. Second, if the unregistered individuals were already engaging with the SOS's website, they would not be unregistered in the first place, and hence MOVE would not need to contact them about registering. The fact of the matter is, MOVE mails voter registration applications to eligible but unregistered, or improperly registered, individuals to make it easy and convenient for them to register, and this universe of unregistered voters would be substantially smaller if individuals were properly able to apply to register simultaneously when transacting with DPS online. *See* Plaintiffs' Supplemental Brief, Doc. 69 at n.31-32 and accompanying text (May 13, 2020); App'x, Doc. 69-1 at 81-82, 92-93 (May 13, 2020).

Defendants' laches-type argument—that Plaintiffs should be denied equitable relief due to delay in bringing suit and the subsequent "four months since," Defendants' Supplemental Brief, Doc. 74 at 10—fails to acknowledge that its Defendants' refusal to comply with the NVRA that has caused this delay. There has been ongoing litigation on this issue since 2016. Early this year, within a matter of weeks after the Fifth Circuit issued its reversal of this Court's previous judgment, Plaintiffs, including previous Plaintiff Stringer, initiated legal proceedings. Plaintiffs requested immediate relief in *Stringer II*, and Defendants objected to the quick timeline that was proposed for a full fix. Defendants now attempt to have it both ways: they vigorously dispute in protracted litigation that any individuals or organizations have standing to remedy their legal violations and complain that any proposed remedy is burdensome and time-consuming, while in the same breath attempting to blame Plaintiffs for not being quick enough in requesting their relief.

In any event, Plaintiffs have diligently and urgently pursued the relief they seek. They proceeded on an extremely expedited discovery schedule, which was only slightly extended by unprecedented COVID-related delays, and filed their advisory to the Court within a week of the close of depositions.

### Burden on the State/Public Interest

Given they cannot continue to rely on the administrative and technical burdens previously asserted, Defendants' sole identified burden at this point is that its alleged interest in enforcing its own laws. Defendants' Supplemental Brief, Doc. 74 at 11-12 (May 23, 2020). This argument takes for granted that they will succeed on the underlying merits of the legal issue—a dubious proposition as this Court has previously noted.

Additionally, Defendants contend that preliminary relief would be improper here because "[t]he Supreme Court 'has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.'" *Id.* at 10-11 (quoting *Republican Nat'l Comm.*

*v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020)).  First, this rule should not be applied here because it is concerned with election administration procedures that would result in confusion at the polls or in some other way "change the rules of the game." *See Republican Nat'l Comm.*, 140 S. Ct. at 1207 (considering the legal deadline for sending and receiving mail ballots). Simply allowing more voters to register in accordance with their federal rights does not "change the rules" sufficient to invoke this rule, and any Texas voter registered in accordance with the NVRA still has to comply with the rule that they apply to be registered 30 days before an election—no significant changes to the actual administration of an election are involved in any way.  Second, Defendants fail to explain how DPS updating its website to be less misleading will possibly result in confusion on the part of voters. To the contrary, such updates will lead to less confusion at the polls because individuals will not mistakenly believe they have registered to vote through DPS online. *See* App'x to Plaintiffs' Motion for Preliminary Injunction, Doc. 5-1 at Ex. D (Jan. 17, 2020). Third, in *Republican Nat'l Comm*, the Supreme Court stayed a district court order entered five days before an election that required immediate compliance by state election officials. 140 S. Ct. at 1206-1207.  Here, Plaintiffs request compliance by June 4th, 40 days before the July 14th Primary Runoff Election and 153 days before the November 3rd Presidential Election.

### *Feasibility of Requested Relief*

Finally, Defendants' contend that Plaintiffs' requested relief "continues to be problematic" Defendants' Supplemental Brief, Doc. 74 at 12 (May 23, 2020). But Plaintiffs request only three eminently reasonable actions, specifically that the Court order:

- DPS to update the front end of the website within the time frame they themselves stated was possible ("one to two weeks"). *See* Plaintiffs' Supplemental Brief, Doc. 69 at n.13 and accompanying text.

- DPS to send the information from the voters who interact with the website from that date going forward to SOS. DPS is already prepared to do so, and, indeed, was scheduled to have begun doing so on May 17, 2020. *See id.* at 4-7. Defendants do not indicate DPS failed to meet

this goal.

- SOS to ensure that the eligible individuals who apply to register to vote through DPS online between the time DPS makes its front-end changes and June 15 are registered with correct effective registration dates in time for the July 14 runoff, and that going forward SOS continues to ensure that other voter registration applications through DPS online be processed as required by law. This is SOS's legal duty, and, even if it does not directly register individuals to vote, it has the authority to compel county voter registrars to do so, and, as a practical matter has already demonstrated its ability to ensure registration in this very case. *See* Defendants' Advisory, Doc. 48 (Feb. 14, 2020).

Plaintiffs maintain that these requests are reasonable considering the ongoing violations, and have attempted in good faith to identify a practicable timeline and implementation plan, and trust in the wisdom of this Court to enforce any order in a just way that balances holding Defendants accountable while allowing for the possibility of legitimate, insurmountable problems that might prevent Defendants from—in good faith—complying with court-ordered timelines.

Dated: May 24, 2020.                         Respectfully submitted,

By: /s/ Rebecca Harrison Stevens

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Joaquin Gonzalez
Texas Bar No. 24109935
joaquin@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)

512-474-0726 (Facsimile)

Peter A. Kraus
Texas State Bar No. 11712980
kraus@waterskraus.com
Charles S. Siegel
Texas State Bar No. 18341875
siegel@waterskraus.com
Caitlyn E. Silhan
Texas State Bar No. 24072879
csilhan@waterskraus.com

WATERS & KRAUS, LLP
3141 Hood St., #700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-871-2263 (Facsimile)

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of May 2020, a true and correct copy of the foregoing was served upon counsel of record via the Court's ECF system.

<u>/s/</u> Rebecca Harrison Stevens