# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

JARROD STRINGER, et al.

                Plaintiffs,

   v.

RUTH HUGHS, in her official capacity as Texas Secretary of State and STEVEN C. MCCRAW, in his official capacity as Director of the Texas Department of Public Safety

                Defendants.

Civil Action Case No. 5:20-cv-00046-OLG

## PLAINTIFF-INTERVENORS' REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' AND PLAINTIFF-INTERVENORS' APPLICATION FOR TEMPORARY INJUNCTION

Plaintiff-Intervenors Texas Democratic Party ("TDP"), DCCC, and DSCC (collectively, "Intervenors") submit this brief Reply to Defendants' Supplemental Brief, which incorporates by reference the arguments set forth in Defendants' motion to dismiss. *See* ECF. No. 74 at 1 n.1. If it was not clear before expedited discovery was conducted in this case, it is now abundantly clear that Defendants' voter registration practices *still* violate the National Voter Registration Act and the Equal Protection Clause, and Defendants fail to assert any legitimate reason for their failure to comply with the law. Instead, Defendants continue to press unconvincing arguments related to Plaintiff-Intervenors' standing, because that is their only perceived escape route to continue to flout the law. For the reasons discussed below and in Intervenors' Response to Defendants' Motion to Dismiss, ECF No. 71, Intervenors have standing, and this Court should reject Defendants' erroneous arguments.

The overarching theme of Defendants' response brief—that because Intervenors are political parties whose mission is to elect Democratic candidates, Intervenors can only assert a generalized grievance insufficient for standing—is an odd one because it directly contradicts Fifth Circuit precedent. The Fifth Circuit held in *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006), that while "harm to a political party's election prospects" may be "less tangible than money, threatened loss of that power is still a concrete and particularized injury sufficient for standing purposes." Intervenors' missions are to elect Democratic candidates, and one of the ways they achieve that mission is by increasing the number of eligible Democratic voters who are registered to vote, particularly in the upcoming 2020 election. *See* ECF No. 73-1 at 79:17-80:24 (explaining that TDP has a goal of registering the 2.6 million unregistered voters in Texas who are likely to vote Democratic); ECF No. 73-2 at 89:4-90:2 (DCCC identifies voters who are likely to vote Democratic and seeks to register them in an effort to increase the number of voters

who "are likely to support Democratic candidates or vote for Democrats"); ECF No. 73-3 at 57:20-59:5 (DSCC anticipates transferring significant sums to TDP to spend on field programs, which will involve voter registration efforts to help elect Democratic candidates to national office). Intervenors have standing to challenge Defendants' continuing illegal conduct, which directly threatens the electoral prospects of the candidates they support. Indeed, Defendants' novel theory—that harm to electoral prospects is an insufficient injury to confer Article III standing—is not merely contrary to the law in the Fifth Circuit, but to the law in at least six other Circuits as well. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 543-44 (6th Cir. 2014); *LaRoque v. Holder*, 650 F.3d 777, 786 (D.C. Cir. 2011); *Smith v. Boyle*, 144 F.3d 1060, 1061–63 (7th Cir. 1998); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994); *Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981); *Schiaffo v. Helstoski*, 492 F.2d 413, 417 (3d Cir. 1974). A threatened injury to electoral prospects is plainly sufficient to demonstrate standing.

The cases cited by Intervenors on this point are clearly inapposite. *First*, the Supreme Court's holding in *Gill v. Whitford*, which involved claims of partisan gerrymandering in the redistricting context, has no application to this case. There, the issue was whether certain individual voter plaintiffs had standing to bring statewide claims of *vote dilution* based on harm to their interest in their collective representation in the legislature. *Gill v. Whitford*, 138 S. Ct. 1916, 1930-31 (2018). The Supreme Court held that they did not because the injury caused by vote dilution is necessarily individual in nature. *Id*. By contrast, the alleged harm suffered by Intervenors in this case is not vote dilution, and the Intervenors are not individual plaintiffs who live in particular voting districts. Intervenors allege harm to the political prospects of their candidates, a concept of standing that has been repeatedly recognized by many federal courts. *See* ECF No. 71 at 3-4.

*Second*, Intervenors assert standing based on the direct threat of injury that Defendants'

illegal practices pose to their candidates' electoral prospects in the upcoming 2020 elections—a basis for standing that *Jacobson v. Florida Democratic Party*, explicitly did not consider. 957 F.3d 1193, 1206-07 (11th Cir. 2020). Here, in contrast to *Jacobson*, Intervenors have identified specific candidates—for example, the TDP and DCCC have identified Representatives Lizzie Fletcher and Colin Allred—who are members of the U.S. House of Representatives from Texas and the DCCC's "Frontline" program, which seeks to protect incumbents in competitive elections, and DSCC has identified U.S. Senate candidate MJ Hegar—whose electoral prospects are threatened as a result of Defendants' continuing violations of the law. *See e.g.*, ECF No. 73-2 at 104:18-105:23; ECF No. 73-3 at 34:23-35:2.

In addition to suffering an injury based on threat of harm to the electoral prospects of the candidates they support, Intervenors have been forced to divert resources and expend more resources in order to lessen the harm caused by Defendants' refusal to comply with the law. *See* ECF No. 71 at 10-16. Defendants' argument that Intervenors would engage in voter registration activities regardless of Intervenors' conduct means that they lack standing, *see* ECF No. 73 at 7, ignores that Intervenors are spending more money than ever before on voter registration and get-out-the-vote ("GOTV") efforts in Texas, in order to counteract the difficulties imposed by Defendants' failure to automatically register individuals who update their driver's license information online. *See* ECF Nos. 71-2, 71-3, 71-4. And it also entirely overlooks that Intervenors are all organizations with finite resources, and that spending additional resources on voter registration and standing necessarily means diverting resources from other mission-critical efforts. *See* ECF No. 71-2 ¶¶ 11-13; ECF No. 71-3 ¶¶ 10-12; ECF No. 71-4 ¶¶ 5-6.  For DSCC and DCCC, which are national organizations, this means spending more in Texas and less in other states, ECF No. 71-3 ¶¶ 10-12; ECF No. 71-4 ¶¶ 5-6, while for TDP money spent on voter registration and

GOTV cannot go towards myriad other activities that are crucial to its mission. ECF No. 71-2 ¶ 13. Taken to its logical conclusion, Defendants' argument is that any organization that has previously engaged in or is already engaged in voter registration activities does not have standing to challenge Defendants' illegal practices. Fortunately, that is not the law. Organizations like Intervenors that are engaged in voter registration and GOTV activities despite the burdens imposed by Defendants' illegal conduct are *precisely* the types of organizations that have standing to challenge Defendants' illegal conduct, because Defendants' refusal to comply with the law makes it more difficult and costly for Intervenors to achieve their goals and missions and causes them to shift resources around. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding organizational plaintiff that was already engaged in efforts to provide equal access to housing through counseling and other referral services suffered an injury-in-fact because the defendant's racial steering practices made it more difficult for the organization to do its work and achieve its mission). Intervenors have shown a direct connection between Defendants' illegal practices and their need to expend more funds and divert resources to register and turn out more voters to achieve their missions. *See, e.g.*, ECF Nos. 71-2, 71-3, 71-4.

Defendants make much of the fact that Intervenors seek to register Democrats and target their voter registration programs and GOTV programs at voters who are likely to support Democratic candidates. ECF No. 73 at 7. Respectfully, this goes without saying given that Intervenors are Democratic political party committees. Unfortunately, however, Democratic voters are not immune from the State's illegal conduct. As a result, Intervenors are forced to divert resources specifically to voter registration and GOTV efforts in Texas to register more voters and turn out more voters to compensate for those voters who mistakenly think they are registered but are not, and are thus likely to be disenfranchised by Defendants' illegal conduct. *See, e.g.*, ECF

Nos. 71-2, 71-3, 71-4; *see also* ECF No. 71-5 at 82:7-9 ("And most of this [additional voter registration and GOTV efforts] we wouldn't have to do if people could update their registration when people got their driver's license updates."). Through their voter registration, voter education, and GOTV programs, Intervenors seek to ensure that voters are aware that updating their driver's license information online will not automatically update their voter registration information or register them to vote. *See*, *e.g.*, ECF No. 71-2 ¶ 13. But for Defendants' violations, Intervenors could direct these resources elsewhere.

Furthermore, Defendants complain that Intervenors have not specifically quantified and do not separately track how much they have spent or will spend to register voters who are harmed by Defendants' violations. But standing is qualitative, not quantitative in nature, and an injury-in-fact "need not measure more than an identifiable trifle" to be sufficient for standing. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). Here, Intervenors have all shown that they are investing significant funds, amounting to much more than a trifle, to counteract Defendants' conduct. For example, the TDP has shown that it is investing funds—including funds transferred to the TDP by the DSCC and DCCC through the "coordinated campaign"—to register millions of Texans by among other things, placing 1,000 field staff and canvassers across the state, and launching a website, www.registertexas.com, so that the TDP can mail voter registration applications to eligible voters. ECF No. 71-2 ¶¶ 14, 15. Similarly, the DCCC has spent $400,000 to compensate a consultant to conduct a voter registration program in Texas Congressional District 23. ECF No. 71-3 at ¶ 6. And, Intervenors anticipate spending more on these efforts as they get closer to the general election. *See* ECF No. 71-2 ¶ 14, ECF No. 71-3 ¶ 9, ECF No. 71-4 ¶ 6. Because Intervenors do not have unlimited resources, they are diverting funds and staff time from other mission-critical activities in order to register more voters to compensate for Defendants'

violations.

Finally, Intervenors have associational standing. Defendants' rebuttal is that Intervenors have not sufficiently shown that they have members and have not identified a particular member who is affected by Defendants' conduct. Each of Defendants' arguments is easily discarded. *First*, courts have repeatedly held that political parties like Intervenors have associational standing on behalf of their voter members when they have challenged state laws that would make it more difficult for their members to engage in the political process. *See* ECF No. 71 at 11-12. Defendants have no answer to this line of case law.[1] *Second*, Defendants attempt to minimize the harm of their conduct by implying that Defendants' members are simply not affected by it. That is not convincing. The TDP, DCCC, and DSCC all consider eligible Democratic voters in Texas to be among their members and constituents. The TDP's Primary Director has stated that he personally interacted with at least one Democratic voter during the 2018 election cycle who had difficulty registering due to Defendants' refusal to allow simultaneous voter registration for individuals who update driver's license information online. ECF No. 71-2 at ¶ 9. Moreover, the TDP testified that it gets "many, many reports from county clerks and election officials of people who believe they have registered with DPS or when they changed their address, but it didn't happen." ECF No. 73-1 at 105:6-9. And, at least one of the named plaintiffs in this action is a constituent of Intervenors.

For the reasons set forth in Plaintiffs' Application for a Temporary Injunction and the associated supplemental briefing, this Court should enter an order granting a Temporary Injunction in favor of Plaintiffs and Plaintiff-Intervenors.

---

[1] Moreover, Intervenors have shown traditional indicia of membership among their members, including that their members support the Intervenors financially through their fundraising efforts.

Dated: May 26, 2020.                    Respectfully submitted,

/s/ *Emily Brailey*
John Hardin
TX State Bar No. 24012784
PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, TX 75201
Telephone: (214) 965-7743
Facsimile: (214) 965-7793
JohnHardin@perkinscoie.com

Marc E. Elias*
Aria C. Branch*
Emily Brailey*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
abranch@perkinscoie.com
ebrailey@perkinscoie.com
jgeise@perkinscoie.com

*Counsel for the Intervenor-Plaintiffs*

Chad W. Dunn
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

Robert Leslie Meyerhoff
Texas Democratic Party
314 E. Highland Mall Blvd. #508
Austin, TX 78752
Telephone: 512-478-9800

7

rmeyerhoff@txdemocrats.org

*Counsel for Intervenor- Plaintiff Texas
Democratic Party*

*\*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2020, I filed a copy of Intervenors' Reply to Defendants' Supplemental Brief in Opposition to Plaintiffs' and Plaintiff-Intervenors' Application for Temporary Injunction of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Emily Brailey*
Counsel for the Intervenor-Plaintiffs