# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| JARROD STRINGER, et al.<br><br>   Plaintiffs,<br><br> v.<br><br>RUTH HUGHS, in her official capacity as Texas Secretary of State and STEVEN C. MCCRAW, in his official capacity as Director of the Texas Department of Public Safety<br><br><br>   Defendants. | Civil Action Case No. 5:20-cv-00046-OLG<br><br>**ORAL ARGUMENT REQUESTED** |

## **TEXAS DEMOCRATIC PARTY, DSCC, AND DCCC'S SUR-REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMEMT AND RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

During discovery, Intervenors Texas Democratic Party ("TDP"), DCCC, and DSCC, properly and more than adequately responded to Defendants' document requests and questions posed to their witnesses in multiple depositions, responding to Defendants' inquiries related to Intervenors' standing to bring their claims in this case. Intervenors have subsequently responded at length to Defendants' arguments regarding their standing and do not repeat those arguments here. Intervenors submit this sur-reply for the limited purpose of responding to new and improper evidentiary arguments set forth by Defendants in their reply brief. ECF No. 92.

## II.     ARGUMENT

**I.     Defendants' reply brief is an improper, veiled motion to strike and attempt to file a discovery motion outside of the discovery period.**

Defendants repeatedly argue that the Court should not consider the declarations of Jada Thompson and Alicia Sisneros or the publicly available Federal Election Commission ("FEC") filings that were attached to Intervenors' declarations, but Defendants noticeably fail to file a motion to strike that evidence. It is improper to hide a motion to strike in a reply brief, and for good reason: doing so does not afford the opposing party any meaningful chance to respond. *See Stephens v. C.I.T. Grp./Equip. Fin., Inc*., 955 F.2d 1023, 1026 (5th Cir. 1992) (holding parties cannot raise new issues in a reply brief). Had Defendants filed a motion to strike, Intervenors would have had a fair opportunity to respond, and it would have been clear that there is no basis to strike this evidence here.

Defendants' reply is also an improper attempt to raise objections to Intervenors' discovery months after the discovery period has ended. Defendants claim to have outstanding objections to Intervenors' document productions and depositions, but they failed to raise those objections with the Court prior to the end of discovery. Nor did they move to compel any evidence that they now

argue Intervenors improperly withheld on privilege grounds. Discovery motions must be made during the discovery period; as a result, Defendants have now waived any objections they may had. *See*, *e.g.*, *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 661 (S.D. Tex. 2009) (denying motion to compel deposition because it was filed two weeks after discovery deadline expired); *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395 (N.D. Tex. 2006) (in determining whether motion to compel is timely filed, most courts look to discovery deadline, and motion was untimely where filed two weeks after discovery deadline); *see also* Local Rule CV-16(d) ("Absent exceptional circumstances, no motions relating to discovery, including motions under Rules 26(c), 29, and 37, shall be filed after the expiration of the discovery deadline, unless they are filed within 7 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery.").

To be clear: Defendants' objections are meritless. Intervenors more than adequately responded to Defendants' document requests that explicitly "did not seek all documents" and were on their face limited to only "the minimum number of documents sufficient" to respond to each request. *See*, *e.g.*, ECF No. 85-1 at 40. Intervenors also produced multiple witnesses to sit for depositions and in those depositions responded more than sufficiently to the questions posed by defense counsel. Where Defendants' counsel attempted to obtain granular and unnecessary details about confidential political strategy and the innerworkings of the Democratic Party, Intervenors properly preserved First Amendment objections to those questions. *See, e.g.*, *The Ohio Org. Collaborative v. Husted*, No. 2:15-CV-01802, 2015 WL 7008530, at *3 (S.D. Ohio Nov. 12, 2015) (recognizing the First Amendment privilege protects disclosure of a "wealth of financial, donor, membership, and strategic information" because the "compelled disclosure of such sensitive information in the context of highly charged litigation involving issues of great political

controversy would have a chilling effect on plaintiffs' freedom of association by adversely impacting their ability to organize, promote their message(s), and conduct their affairs"); *see also Democratic Nat'l Comm. v. Arizona Sec'y of State's Office*, CV-16-01065, PHX-DLR, 2017 WL 3149914 (D. Ariz. July 25, 2017) (denying motion to compel documents protected by the First Amendment privilege). But even then, in almost every case, Intervenors' counsel instructed the witnesses to answer the question to the degree they could do so without revealing confidential First Amendment information, and they did so. Nevertheless, the time for raising objections to Intervenors' discovery responses with this Court has long passed.

## II. The evidence submitted by Intervenors is proper and should be considered by the Court.

The evidence to which Defendants object was properly filed in response to Defendants' cross-motion for summary judgment, which argues that Intervenors lack standing. Because Intervenors have the burden to prove their standing in response, Intervenors were required to provide the Court with all relevant evidence to aid in its determination at this stage, including information that supports it that came to light after the close of discovery. Indeed, the Local Rules of the Western District of Texas provide that discovery may continue after the discovery cutoff, "provided that discovery does not delay other pretrial preparations or the trial setting." Local Rule CV-16(d). Further, federal authority *requires* parties to "submit affidavits and comparable evidence" in response to a motion for summary judgment. *See*, *e.g.*, *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991) (emphasis added).

Intervenors' declarations respond directly to Defendants' arguments that Intervenors' activities are not undertaken to counteract Defendants' conduct, and that they lack members. And, Intervenors' declarations are entirely consistent with the evidence. Defendants are wrong when

they say that this is the first time Intervenors have stated they seek to register voters who have recently moved. Mr. Maxey testified to that specific point in his deposition. *See* ECF No. 77-1 at 425 (TDP) ("If that were the case in Texas, we would not be spending the time and effort to go door to door, to table, to mail out voter registration applications to *newly -- new arrivals in Texas or people who moved in*") (emphasis added); *id.* at 442-43 ("And so using cutting-edge data, we can figure out approximately *30,000 Democrats move to Texas each month that we need to get registered to vote*.") (emphasis added).

Similarly, Ms. Newman testified during her deposition that she could not quantify the value of the staff time spent on registering voters who change their address or renew their driver's license online with Department of Public Safety because time spent on such voter registration is:

> part of our ongoing voter education effort to make sure when we're talking to voters, 'Are you registered to vote?' *Making sure they are aware that if they've moved recently*, depending on how they conducted that transaction online versus in person, that their information is treated differently than going in person to change that and that they might not, in fact, be registered to vote at their current address.

ECF No. 77-1 at 593-94 (DCCC). Ms. Newman's and Ms. Sisneros' declarations are entirely consistent with that testimony. They discuss registering voters who have recently moved, and the time spent educating voters as a result of Defendants' unconstitutional activity. ECF Nos. 90-3 at ¶¶ 10, 11, 14; 90-4 at ¶ 7. Moreover, all three Intervenors stated in their depositions that they consider Democratic voters to be members and constituents of Intervenor political parties. ECF No. 77-1 at 476 (TDP), 604 (DCCC), 682 (DSCC).

Defendants also mischaracterize Intervenors' deposition testimony by suggesting that their declarations contradict it. In making this argument, Defendants offer a specific example: Defendants claim that Mr. Maxey testified that "donations . . . could not be earmarked for specific

4

purposes," yet have "produced evidence suggesting that this was inaccurate." ECF No. 92 at 2 n.2. Though Mr. Maxey did testify to his understanding that a donor cannot legally restrict the use of their donations for specific purposes, ECF No. 77-1 at 437 (TDP), he was clear that if a donation was made, and the donor wished that money would go to a specific program, TDP "can then choose to use it for that program or not." *Id*. at 438. That is, donors do not specifically earmark their contributions for certain purposes, but that does not mean they lack total awareness of how funds are generally used. Thus, when DCCC and DSCC transfer funds to TDP they generally understood that among the TDP programs that would be supported were voter registration efforts. *See*, *e.g.*, ECF No. 73-2 at 27:23-28:6 (DCCC). On behalf of TDP, Mr. Maxey has now confirmed that, indeed, some of their funds have been used to support voter registration efforts. ECF No. 90-2 at ¶¶ 30-31. There is nothing inconsistent about this evidence.

As for Alicia Sisneros' declaration, Defendants offered it to provide the Court with additional evidence of the DCCC's voter registration activities. Since the beginning of Intervenors' involvement in this litigation, they have asserted that DCCC paid a consultant nearly $400,000 to perform voter registration activities in Texas. ECF No. 41-1 at 8. Ms. Newman, DCCC's corporate representative, testified to that effect during her deposition. ECF No. 77-1 at 577-78 (DCCC). And, during discovery, in addition to the documents produced by DCCC, counsel for Intervenors provided counsel for Defendants with links to the specific entries on DCCC's Federal Election Commission ("FEC") reports—reports that are publicly available and therefore just as readily available to Defendants as Intervenors—that clearly showed (a) the amounts of the payments made by DCCC to Sisneros Strategies, (b) the dates of those payments, and (c) clearly identified Sisneros Strategies as the recipient of those payments. Defendants' request for the Court to ignore publicly available FEC reports should be rejected because these public records are as readily available to

Defendants as Intervenors. *See* Fed. R. Civ. P. 26(b); *see also Honeywell Intern. Inc. v. Acer America Corp.*, 655 F. Supp. 2d 650, 656-57 (E.D. Tex. 2009) (granting motion to compel in large part because the information sought was not available on public websites).[1]

As for Jada Thompson, Intervenors were not aware that she had been disenfranchised by Defendants' conduct in 2018 until after the close of discovery. During discovery, Defendants deposed TDP's corporate witness, Glen Maxey, and asked him whether TDP could identify a specific member "eligible to use the DPS website." ECF No. 77-1 at 486, 487 (TDP). At the time of the deposition, Mr. Maxey could not identify a specific member, other than Plaintiffs in this case, who were eligible to interact with the DPS website or who had interacted with the website, though Mr. Maxey knew that such a member certainly existed. *Id*. at 109:15-22. On June 22, after the close of discovery, Intervenors learned that Ms. Thompson is a member who had been disenfranchised by Defendants' conduct in 2018. *See generally*, ECF 90-1. Although Ms. Thompson was not previously available to be deposed or even available to offer a declaration in support of Intervenors' motion for summary judgment, Intervenors have offered it to the Court to assure it that Intervenors are aware of members (in addition to the individual Plaintiffs) who have been disenfranchised due to Defendants' conduct.[2]

---

[1] Despite the fact that Intervenors disclosed during discovery the dates on which the DCCC paid Sisneros Strategies for voter registration, clearly showing that DCCC expended funds to Sisneros Strategies prior to intervening in this lawsuit, that did not stop Defendants from incorrectly asserting that Intervenors had provided no evidence that they expended specific resources on voter registration in Texas prior to joining this lawsuit. *See* ECF No. 78 at 11 n. 11.

[2] There is case law indicating that Intervenors need not identify a specific member to establish associational standing, especially at the preliminary stages. *See Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012); *Richardson v. Tex. Sec'y of State*, No. SA-19-cv-00963-OLG (W.D. Tex. Dec. 23, 2019); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016); *Democratic Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1337 (N.D. Ga. 2018). Even so, Intervenors have maintained throughout the litigation that the named Plaintiffs in this case are specifically identified members of each Intervenor. Ms. Thompson is also

### III. CONCLUSION

For the foregoing reasons, Intervenors respectfully ask the Court to grant their Motion for Summary Judgment and deny Defendants' cross-motion for summary judgment.

Dated: July 8, 2020.                                                         Respectfully submitted,

/s/ *Emily Brailey*

John Hardin
TX State Bar No. 24012784
PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, TX 75201
Telephone: (214) 965-7743
Facsimile: (214) 965-7793
JohnHardin@perkinscoie.com

Marc E. Elias*
Aria Branch*
John M. Geise*
Emily Brailey*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
abranch@prkinscoie.com
jgeise@perkinscoie.com
ebrailey@perkinscoie.com

*Counsel for the Intervenors*

Chad W. Dunn
TX State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

---

among Intervenors' specifically identified members.

7

Robert Leslie Meyerhoff
Texas Democratic Party
314 E. Highland Mall Blvd. #508
Austin, TX 78752
Telephone: 512-478-9800
rmeyerhoff@txdemocrats.org

*Counsel for Intervenor Texas Democratic Party*

*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2020, I filed a copy of the foregoing Texas Democratic Party, DSCC, and DCCC's Sur-Reply with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

　　　　　　　　　　　　　　　　　　　　　　　/s/ *Emily Brailey*

9